IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ABLEST INC., et al.,[1] | ) | Case No. 14-10717 (____) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |

**MOTION OF THE DEBTORS FOR ORDER UNDER SECTIONS
105, 361, 362, 363, 364, 1107 AND 1108 OF THE BANKRUPTCY CODE AND
FEDERAL RULE OF BANKRUPTCY PROCEDURE 6003 (A) AUTHORIZING THE
DEBTORS TO (I) MAINTAIN AND RENEW EXISTING INSURANCE POLICIES;
(II) CONTINUE INSURANCE PREMIUM FINANCING PROGRAMS,
(III) PAY INSURANCE PREMIUM FINANCING OBLIGATIONS ARISING
THEREUNDER, AND (B) AUTHORIZING FINANCIAL INSTITUTIONS TO
HONOR ALL OBLIGATIONS RELATED THERETO**

The above-captioned debtors and debtors in possession (the "Debtors") in these

chapter 11 cases, hereby move this Court (the "Motion") for entry of an order (the "Order"),

substantially in the form attached hereto, pursuant to sections 105, 361, 362, 363, 364, 1107 and

1108 of Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the

"Bankruptcy Code") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), for entry of an order (i) authorizing the Debtors to (a) maintain and renew

existing insurance policies and pay all policy premiums and brokers' fees arising thereunder or in

connection therewith, (b) continue insurance premium financing programs, and (c) pay insurance

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification numbers are: Ablest Inc. (8462); Koosharem, LLC (4537); New Koosharem Corporation (9356); Real Time Staffing Services, Inc. (8189); Remedy Intelligent Staffing, Inc. (0963); Remedy Staffing, Inc. (0080); RemedyTemp, Inc. (0471); Remedy Temporary Services, Inc. (7385); RemX, Inc. (7388); Select Corporation (6624); Select Nursing Services, Inc. (5846); Select PEO, Inc. (8521); Select Personnel Services, Inc. (8298); Select Specialized Staffing, Inc. (5550); Select Temporaries, Inc. (7607); Select Trucking Services, Inc. (5722); Tandem Staffing Solutions, Inc. (5919); Westaff, Inc. (6151); Westaff (USA), Inc. (5781); Westaff Support, Inc. (1039); RemSC LLC (8072); and RemUT LLC (0793). The mailing address for each of the Debtors is: 3820 State Street, Santa Barbara, CA 93105.

premium obligations arising thereunder or in connection therewith; and (ii) authorizing financial institutions to honor all obligations related thereto.

## Jurisdiction

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are sections 105, 361, 362, 363, 364, 1107 and 1108 of the Bankruptcy Code and Bankruptcy Rule 6003.

## Background

**A.    General**

3.      On the date hereof (the "Petition Date"), the Debtors commenced these cases (the "Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      No official committee has been appointed by the Office of the United States Trustee.

DOCS_LA:272351.7 50005-001

6.    Certain of the Debtors were founded in Santa Barbara, California, in 1985, and today the Debtors are a leading national provider of temporary staffing services in the United States and are the largest provider of temporary staffing services in California. Through a network of company-owned and franchise agent offices, the Debtors offer a wide range of temporary staffing solutions across many service categories, including light industrial, clerical, accounting and finance, and information technology. The Debtors' customers include Fortune 1000 companies as well as small and mid-sized local and regional companies that operate in a variety of industries, such as manufacturing, services, retail, and banking as well as governmental agencies.

7.    The Debtors provide these services on temporary, "temp-to-hire," and project-by-project bases through a network of 312 offices in 48 states. As of the Petition Date, the Debtors had 167 company-owned offices and 145 independently managed franchise agent offices. The Debtors currently employ approximately 75,000 full and part time employees in hourly, salaried, supervisory, management, and sales positions (the "Associates"). In addition, the Debtors employ approximately 1,500 corporate and branch employees (together with the Associates, the "Employees") that manage the work assignments of the Associates. Most of the Debtors' Employees work on assignment at over 10,000 client companies. During the fiscal year ended December 29, 2013, the Debtors placed approximately 300,000 temporary Employees and provided staffing services to approximately 11,500 customers. For the 2013 fiscal year, the Debtors had approximately $2 billion in gross revenue.

DOCS_LA:272351.7 50005-001

8.      The factual background relating to the Debtors' commencement of these chapter 11 cases is set forth in detail in the *Declaration of Randall S. Eisenberg in Support of First Day Motions* (the "Eisenberg Declaration") filed contemporaneously with this Motion and incorporated herein by reference.

**B.      The Prepetition Restructuring**

9.      Contemporaneously with the filing of the Cases, the Debtors filed their *Joint Plan of Reorganization for Ablest Inc., et al.* (the "Plan"). The Plan is a "prepackaged" reorganization plan. The Plan is supported by the committee of the holders of the majority of the Claims under that certain First Lien Credit and Guaranty Agreement, dated as of July 12, 2007 (as amended, supplemented or otherwise modified prior to the date hereof, and including all exhibits and other ancillary documentation in respect thereof, "Prepetition First Lien Credit Agreement" and the lenders party thereto, the "Prepetition First Lien Lenders"), and the holders of the majority of the Claims under that certain Second Lien Credit and Guaranty Agreement, dated as of July 12, 2007 (as amended, supplemented or otherwise modified prior to the date hereof, and including all exhibits and other ancillary documentation in respect thereof, the "Prepetition Second Lien Credit Agreement" and the lenders party thereto, the "Prepetition Second Lien Lenders") (such committee, the "Steering Committee"), as well as the Debtors' principal equity holder (the "Consenting Equity Holder").

10.      The Debtors solicited and obtained, prior to commencing these Cases, the requisite acceptances of their Prepetition First Lien Lenders and Prepetition Second Lien Lenders, which constitute the only impaired creditor classes under the Plan (other than holders of

4

prepetition warrants).  The Plan provides for a significant deleveraging of the Debtors' balance sheet and the infusion of $225 million of new equity, which should greatly enhance the Debtors' ability to reorganize successfully and expeditiously.  The Plan provides for the full reinstatement of the legal, equitable and contractual rights of Holders of general unsecured claims and payment in full of such claims on the Effective Date or when otherwise due accordingly.

C.      **Insurance Policies**

        11.     In the ordinary course of the Debtors' business, the Debtors maintain numerous insurance policies providing coverage for, *inter alia*:  general liability, incidental general liability, auto liability, special automobile liability, umbrella, workers compensation, excess liability, property, crime, professional liability/errors and omissions, employment practices liability, fiduciary, employed lawyers, directors and officers, medical professional liability, and foreign travel (collectively, the "Policies").  A summary of the Debtors' policies by type, carrier, term and limit is set forth on **Exhibit A** hereto.  These Policies are essential to the preservation of the Debtors' business and assets, and, in many cases, such insurance coverage is required by various regulations, laws and contracts that govern the Debtors' business conduct. The Policies protect the Debtors' employees, assets and operations.

D.      **The Paid in Full Premiums**

        12.     Other than the Financed Policies (which are discussed below) and the workers compensation policies (which are discussed in the concurrently filed first day motion on employee wages and benefits), the Debtors pay all of the premiums due at the beginning of the policy term to the applicable insurance carrier (the "Insurance Carriers") that provides each

Policy (the "Paid Policies").  Prior to the Petition Date, the Debtors paid the premiums and other

amounts due on the Paid Policies in full.  Thus, no amounts remain due and owing on the Paid

Policies.

**E.      Premium Financing Agreements**

13.     The Debtors currently have four active Insurance Premium Finance

Agreements (the "PFAs") prepetition with an insurance financier, AFCO Acceptance Corp. (the

"Insurance Financier") in order to finance the cost of the insurance premiums for certain

Policies.  Specifically, the PFAs cover the Debtors' umbrella, excess, automobile, property,

professional liability, medical professional liability, fiduciary liability, employment practices

liability, directors and officers, and criminal Policies (the "Financed Policies") that the Debtors

carry to cover potential liability created by their operations.  In the PFAs, the Debtors, among

other things, grant the Insurance Financier security interests in the Debtors' unearned premiums,

return premiums, dividend payments and loss payments under the Financed Policies and appoints

the Insurance Financier "attorney in fact" with respect to the Financed Policies.  Copies of the

PFAs are attached hereto as **Exhibit B**.

14.     Pursuant to the PFAs, the Insurance Financier agreed to pay each

Insurance Carrier the entire premium on the Financed Policies.  In return, the Debtors paid the

Insurance Financier a down payment and monthly installments with respect to the Financed

Policies, payable over 10 months.  The interest rate on the amount financed is 3.75% per annum.

In addition, surplus lines' taxes and fees are included and paid with each monthly installment

under the PFA.  The average annual installment amount paid on account of the PFAs is

$121,415.43 per month.

### Relief Requested

15.     The Policies are essential to the Debtors' business and the Debtors believe

that it is in the best interests of the estates to continue to pay the amounts due under the PFAs,

regardless of whether the payment became due prior to or after the Petition Date.  Furthermore,

the Debtors submit that payment of amounts that come due under the existing PFAs is within the

ordinary course of business.  Unless the Debtors are authorized to continue to pay pursuant to the

PFAs on a monthly basis, the Insurance Financier will have the right to cancel the Financed

Policies and will be entitled to recover from its collateral, the unearned premiums.  The

termination of the Financed Policies would leave the Debtors' estates at risk of catastrophic loss

if an unforeseen event occurred.  To avoid this risk, the Debtors would need to obtain new

insurance policies and pay the policies, which they may not be able to obtain at favorable prices,

or be required to pay the policies in full, which would in turn reduce the estates' assets available

to pay creditors.

16.     The Debtors also seek authority to continue all of the Policies throughout

the duration of these chapter 11 cases.  The Debtors submit that the continuation, renewal or

negotiation of these Policies falls squarely within the ordinary course of their business.  Out of

an abundance of caution, the Debtors request that the Court authorize them to renew the Policies

as they expire in the ordinary course of business.

17.     Finally, the Debtors request that all applicable banks and other financial institutions be authorized and directed to receive, process, honor and pay all checks presented for payment and to honor all fund transfer requests made by the Debtors related to the Policies, whether such checks were presented or fund transfer requests were submitted prior to or after the Petition Date.  The Debtors submit that they will have sufficient cash to promptly pay all obligations, to the extent described herein, on an ongoing basis and in the ordinary course of business.

**Basis For Relief Requested**

A.    **Payment of Premium Financing Obligations and Installment Payments Is Necessary in Order to Comply With United States Trustee Requirements**

18.     The Debtors believe that the ordinary course maintenance of their insurance policies and insurance financing programs, including payment of all monthly obligations under the PFAs, without further order of the Court, is necessary and essential to the Debtors' operation of their business during these chapter 11 cases, especially where, as here, the Debtors' failure to pay their monthly obligations could have severe negative consequences for their estates and creditors.

19.     Under the terms of the PFAs, the Insurance Financier may cancel the Financed Policies for nonpayment and may accelerate and declare due and payable the entire unpaid premiums upon the Debtors' failure to pay the monthly obligation.  Because the Debtors are required to maintain insurance coverage during these chapter 11 cases, a cancellation of the Financed Policies would have material consequences to the Debtors' business and the chapter 11 process.  *See* U.S. Trustee's Operating Guidelines at 3 (requiring maintenance of appropriate

insurance coverage).  Even if the Insurance Financier did not immediately cancel the insurance coverage upon the Debtors' default, the Debtors' failure to pay monthly obligations would result in a depletion of any unearned premium on the Financed Policies, thereby reducing the Insurance Financier's equity cushion.  *See, e.g., In re Universal Motor Express, Inc.*, 72 B.R. 208, 210 (Bankr. W.D.N.C. 1987); *Schwinn Plan Comm. v. Transamerica Ins. Fin. Corp.*, 200 B.R. 980, 989 (Bankr. N.D. Ill. 1996).

**B.    Payment of Premium Financing Obligations Is Warranted Under Bankruptcy Code Sections 361, 362 and 363**

20.    Security interests created by premium finance arrangements generally are recognized as secured claims in bankruptcy to the extent of the amount of unearned premiums financed pursuant to such agreements.  *See In re JII Liquidating Corp.*, 344 B.R. 875 (Bankr. N.D. Ill 2006); *In re Big Squaw Mountain Corp.*, 122 B.R. 831 (Bankr. D. Maine 1990); *TIFCO, Inc. v. U.S. Repeating Arms Co.*, 67 B.R, 990, 994-95 (Bankr. D. Conn. 1986); *Drabkin v. A.I Credit Corp.*, 9 B.R. 159, 164-66 (Bankr. D.D.C. 1981).  As a secured creditor, the Insurance Financier may be entitled to seek relief from the automatic stay, either to cancel the Debtors' insurance policies or to seek adequate protection of its investment.  *See Universal Motor Express*, 72 B.R. at 211 (recognizing that a default under the financing arrangement and the resulting decline in value of the unearned premiums justified relief from the automatic stay).

21.    As a secured creditor, the Insurance Financier may also be entitled to adequate protection of the value of its security, pursuant to section 361 of the Bankruptcy Code, to protect it against the diminution in the value of its collateral.  Adequate protection may take many forms, including relief from the automatic stay, authority to apply unearned premiums to

the outstanding debt, or continuing to make payments pursuant to the PFAs. *See TIFCO*, 67 B.R. at 999. Moreover, pursuant to the PFAs, the Insurance Financier maintains a security interest in the Debtors' unearned premiums, and therefore the Insurance Financier may be entitled to adequate protection of its interests in the unearned premiums under section 363(e) of the Bankruptcy Code. The Debtors' failure to provide such adequate protection -- for example by failing to pay the ongoing installments due under the PFAs -- may constitute cause under section 362(d) of the Bankruptcy Code for the Insurance Financier to obtain relief from the automatic stay and terminate the underlying Financed Policies.

22.   Even if the Debtors were successful in preventing the Insurance Financier from lifting the automatic stay to pursue its remedies, such litigation likely would be contested and thus very costly to the estates. More importantly, if unsuccessful in the automatic stay litigation, the Debtors may be unable to find a carrier willing to provide similar insurance coverage or a company willing to finance the premiums without charging significantly higher premiums and fees.

**C.   Continuation or Renewal of the Policies in the Ordinary Course
of Business Is Warranted Under Bankruptcy Code Sections 363(b) and (c)**

23.   Under section 363(b) of the Bankruptcy Code, a debtor in possession "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate[.]" 11 U.S.C. § 363(b)(1). Section 363(c) of the Bankruptcy Code authorizes a debtor in possession to "enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and…use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C.

§ 363(c)(1). Both the payment of amounts due under the PFAs and the continuation or renewal of existing Policies fall squarely within the ordinary course of the Debtors' business.

24.    Further, even if the continuation and/or renewal of the Policies was not considered to be ordinary course, under applicable case law, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on part of the debtor, such use should be approved. *See, e.g., Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991); *Stephens Indus. Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtors to show that a sound business purpose justifies such actions."); *In re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b) of the Bankruptcy Code).

25.    Moreover, pursuant to section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The basic purpose of section 105(a) is "to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 COLLIER ON BANKRUPTCY, § 105.01 (15th ed. rev. 2008). Essentially, section 105(a) codifies the bankruptcy court's equitable powers.

26.     The Policies provide the Debtors with essential insurance coverage. Any lapse in the coverage to be provided under the Policies could expose the Debtors to substantial liability, monetary and otherwise, for injuries, damages and penalties for failing to maintain proper insurance.

27.     Therefore, in light of the importance of the Policies, the Debtors should be permitted to exercise their reasonable business judgment to continue and/or renew the Policies as they expire.

**D.     Absent the Relief Requested the Debtors Will Suffer Immediate and Irreparable Harm**

28.     Bankruptcy Rule 6003 provides:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding the following: . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001.

*See also In re First NLC Fin. Servs., LLC*, 382 B.R. 547, 549-50 (Bankr. S.D. Fla. 2008) (holding that Rule 6003 permits entry of orders on an interim basis to avoid irreparable harm).

29.     No court within the Third Circuit has interpreted the "immediate and irreparable harm" language in the context of Bankruptcy Rule 6003 in any reported decision. However, the Third Circuit Court of Appeals has interpreted the same language in the context of preliminary injunctions. In that context, irreparable harm has been interpreted as a continuing harm that cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation. *See, e.g., Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 Fed. Appx. 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d 179, 181

(3d Cir. 1977)).  Further, the harm must be shown to be actual and imminent, not speculative or

unsubstantiated.  *See, e.g., Acierno v. New Castle County*, 40 F.3d 645, 653-55 (3d Cir. 1994).

To the extent that the requirements of Bankruptcy Rule 6003 are applicable to the relief

requested in the Motion, the Debtors submit that for the reasons already set forth herein, the

relief requested in this Motion is necessary to avoid immediate and irreparable harm as defined

by the Third Circuit Court of Appeals.

        30.     The Debtors believe that immediate and irreparable harm will result absent

the relief sought herein.  Specifically, the insurance premium financing payments may be

outstanding or soon come due.  The Debtors believe that if their insurance premium financing

obligations are not paid in a timely manner and on an expedited basis, the Insurance Financier

may seek to terminate the Financed Policies.  Specifically, the effect of potential cancellation of

Financed Policies – or even litigation regarding the same – would be devastating to the Debtors'

estates, particularly at the early stages of these chapter 11 cases.  Moreover, cancellation of the

Financed Policies would render the Debtors in violation of both the United States Trustee

Operating Guidelines and various state laws, while putting at risk the financing the Debtors'

need to reorganize their businesses.

        31.     This Court has approved relief similar to that requested herein.  *See e.g.*

*In re Green Field Energy Services, Inc.*, Case No. 13-12783 (KG) (Bankr. D. Del. Oct. 29,

2013); *In re Furniture Brands International, Inc.*, Case No. 13-12329 (CSS) (Bankr. D. Del.

Sept. 11, 2013); *In re Longview Power, LLC*, Case No. 13-12211 (BLS); *In re Exide*

*Technologies*, Case No. 13-11482 (KJC) (Bankr. D. Del. June 6, 2013); *In re Coda Holdings,*

*Inc.*, Case No. 13-11153 (CSS) (Bankr. D. Del. May 3, 2013); *In re ATLS Acquisition, LLC*,

Case No. 13-10262 (PJW) (Bankr. D. Del Feb. 2, 2013); *In re Carl's Patio, Inc.*, Case No. 13-

10102 (KG) (Bankr. D. Del. Jan. 23, 2013); *In re LCI Holding Company*, Case No. 12-13319

(KG) (Bankr. D. Del. Dec. 13, 2012); *In re Back Yard Burgers, Inc.*, Case No. 12-12882 (PJW)

(Bankr. D. Del. Oct. 19, 2012); *In re Digital Domain Media Group, Inc.*, Case No. 12-12568

(BLS) (Bankr. D. Del. Sept. 12, 2012); *In re GameTech International, Inc.*, Case No. 12-11964

(PJW) (Bankr. D. Del. July 3, 2012); *In re CyberDefender Corporation*, Case No. 12-10633

(BLS) (Bankr. D. Del. March 14, 2012); *In re William Lyon Homes*, Case No. 11-14019 (CSS)

(Bankr. D. Del. Dec. 22, 2011); and *In re Filene's Basement, LLC*, Case No. 11-13511 (KJC)

(Bankr. D. Del. Nov. 4, 2011).[2]

## Waiver of Bankruptcy Rules 6003 and 6004

32.    Pursuant to Rule 6003(b) of the Federal Rules of Bankruptcy Procedure,

"a motion to pay all or part of a claim that arose before the filing of the petition" shall not be

granted by the Court within 21 days of the Petition Date "[e]xcept to the extent that relief is

necessary to avoid immediate and irreparable harm . . . ." Fed. R. Bankr. P. 6003(b).  For the

reasons described herein and as supported by the Eisenberg Declaration, the Debtors submit that

the requirements of Rule 6003 have been met and that the relief requested in this Motion is

necessary to avoid immediate and irreparable harm to the Debtors and their estates.  To

implement the foregoing successfully, the Debtors seek a waiver of the requirements under

---

[2] Because of the voluminous nature of the orders cited herein, they are not attached to this Motion. Copies of these orders, however, are available upon request.

Bankruptcy Rule 6004, including the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent these rules are applicable.

33.    Accordingly, the relief requested herein is appropriate under the circumstances and under Bankruptcy Rule 6003 and 6004(h).

34.    To the extent that the Policies, the PFAs or related agreements may be deemed executory contracts within the meaning of section 365 of the Bankruptcy Code, the Debtors do not at this time seek authority to assume such contracts.

## Notice

35.    Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee; (ii) the Steering Committee; (iii) the Prepetition First Lien Agent; (iv) the Prepetition Second Lien Agent; and (v) the Consenting Equity Holder.  Because the Motion is seeking "first day" relief, within two business days after the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered respecting the Motion as required by Delaware Local Bankruptcy Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

36.    No prior motion for the relief requested herein has been made to this or any other Court.  Pursuant to Local Bankruptcy Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to the Motion if it is determined that this Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

DOCS_LA:272351.7 50005-001

WHEREFORE, the Debtors respectfully request entry of an order (i) granting the

relief requested herein and (ii) granting the Debtors such other and further relief as the Court

deems just and proper.

Dated: *April    1*, 2014

PACHULSKI STANG ZIEHL & JONES LLP

Jeffrey N. Pomerantz (CA Bar No. 143717)
Debra Grassgreen (CA Bar No. 169978)
James E. O'Neill (Bar No. 4042)
Jeffrey W. Dulberg (CA Bar No. 181200)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400
E-mail:     jpomerantz@pszjlaw.com
            dgrassgreen@pszjlaw.com
            joneill@pszjlaw.com
            jdulberg@pszjlaw.com

[Proposed] Co-Counsel to Debtors and
Debtors in Possession
