IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ABLEST INC., et al.,[1] | ) | Case No. 14-10717 (____) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |

**APPLICATION OF THE DEBTORS PURSUANT TO 11 U.S.C. § 327(a) AND FED. R. BANKR. P. 2014 FOR AUTHORIZATION TO EMPLOY AND RETAIN KURTZMAN CARSON CONSULTANTS LLC AS ADMINISTRATIVE AGENT *NUNC PRO TUNC* TO THE PETITION DATE**

The above-captioned debtors and debtors in possession (together, the "Debtors") submit this application (the "Section 327 Application") and respectfully represents as follows:

**Jurisdiction and Venue**

1.  The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and the Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification numbers are: Ablest Inc. (8462); Koosharem, LLC (4537); New Koosharem Corporation (9356); Real Time Staffing Services, Inc. (8189); Remedy Intelligent Staffing, Inc. (0963); Remedy Staffing, Inc. (0080); RemedyTemp, Inc. (0471); Remedy Temporary Services, Inc. (7385); RemX, Inc. (7388); Select Corporation (6624); Select Nursing Services, Inc. (5846); Select PEO, Inc. (8521); Select Personnel Services, Inc. (8298); Select Specialized Staffing, Inc. (5550); Select Temporaries, Inc. (7607); Select Trucking Services, Inc. (5722); Tandem Staffing Solutions, Inc. (5919); Westaff, Inc. (6151); Westaff (USA), Inc. (5781); Westaff Support, Inc. (1039); RemSC LLC (8072); and RemUT LLC (0793). The mailing address for each of the Debtors is: 3820 State Street, Santa Barbara, CA 93105.

## Background

A. **General**

2. On the date hereof (the "<u>Petition Date</u>"), the Debtors commenced these cases (the "<u>Cases</u>") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

3. The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. No request has been made for the appointment of a trustee or an examiner in these cases, and no official committee has yet been appointed by the Office of the United States Trustee.

5. Certain of the Debtors were founded in Santa Barbara, California, in 1985, and today the Debtors are a leading national provider of temporary staffing services in the United States and are the largest provider of temporary staffing services in California. Through a network of company-owned and franchise agent offices, the Debtors offer a wide range of temporary staffing solutions across many service categories, including light industrial, clerical, accounting and finance, and information technology. The Debtors' customers include Fortune 1000 companies as well as small and mid-sized local and regional companies that operate in a variety of industries, such as manufacturing, services, retail, and banking as well as governmental agencies.

6.   The Debtors provide these services on temporary, "temp-to-hire," and project-by-project bases through a network of 312 offices in 48 states. As of the Petition Date, the Debtors had 167 company-owned offices and 145 independently managed franchise agent offices. The Debtors currently employ approximately 75,000 full and part time employees in hourly, salaried, supervisory, management, and sales positions (the "Associates"). In addition, the Debtors employ approximately 1,500 corporate and branch employees (together with the Associates, the "Employees") that manage the work assignments of the Associates. Most of the Debtors' Employees work on assignment at over 10,000 client companies. During the fiscal year ended December 29, 2013, the Debtors placed approximately 300,000 temporary Employees and provided staffing services to approximately 11,500 customers. For the 2013 fiscal year, the Debtors had approximately $2 billion in gross revenue.

7.   The factual background relating to the Debtors' commencement of these chapter 11 cases is set forth in detail in the *Declaration of Randall S. Eisenberg in Support of First Day Motions* (the "Eisenberg Declaration") filed contemporaneously with this Motion and incorporated herein by reference.

B.   **The Prepetition Restructuring**

8.   Contemporaneously with the filing of the Cases, the Debtors filed their *Joint Plan of Reorganization for Ablest Inc., et al.* (the "Plan"). The Plan is a "prepackaged" reorganization plan. The Plan is supported by the committee of the holders of the majority of the Claims under that certain First Lien Credit and Guaranty Agreement, dated as of July 12, 2007 (as amended, supplemented or otherwise modified prior to the date hereof, and including all

exhibits and other ancillary documentation in respect thereof, "Prepetition First Lien Credit Agreement" and the lenders party thereto, the "Prepetition First Lien Lenders"), and the holders of the majority of the Claims under that certain Second Lien Credit and Guaranty Agreement, dated as of July 12, 2007 (as amended, supplemented or otherwise modified prior to the date hereof, and including all exhibits and other ancillary documentation in respect thereof, the "Prepetition Second Lien Credit Agreement" and the lenders party thereto, the "Prepetition Second Lien Lenders") (such committee, the "Steering Committee"), as well as the Debtors' principal equity holder (the "Consenting Equity Holder").

9.  The Debtors solicited and obtained, prior to commencing these Cases, the requisite acceptances of their Prepetition First Lien Lenders and Prepetition Second Lien Lenders, which constitute the only impaired creditor classes under the Plan (other than holders of prepetition warrants). The Plan provides for a significant deleveraging of the Debtors' balance sheet and the infusion of $225 million of new equity, which should greatly enhance the Debtors' ability to reorganize successfully and expeditiously. The Plan provides for the full reinstatement of the legal, equitable and contractual rights of Holders of general unsecured claims and payment in full of such claims on the Effective Date or when otherwise due accordingly.

## Relief Requested

10. By this Application, the Debtors respectfully request entry of an order, pursuant to sections 327(a), 330 and 331 of the Bankruptcy Code, Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rule 2014-1 of the Local Bankruptcy Rules of the District of Delaware (the "Local Bankruptcy

Rules"), authorizing the employment and retention of Kurtzman Carson Consultants LLC ("KCC") as administrative agent for the Debtor.

11. Contemporaneous with the filing of this Section 327 Application, the Debtors filed an application under 28 U.S.C. § 156(c) for authorization to retain KCC to serve as the notice and claims agent in these chapter 11 cases (the "Section 156(c) Application"). Given that the administration of the cases will require KCC to perform duties that may be outside the scope of 28 U.S.C. § 156(c), the Debtors supplement the Section 156(c) Application with this Section 327 Application.

12. Title 11 U.S.C. § 327(a) provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

13. Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, and proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

14. In particular, the Debtors seek to retain KCC to provide, among other things, the following bankruptcy administrative services, if and to the extent requested (collectively, the "Professional Services"):

    (a) Tabulate votes and perform subscription services as may be requested or required in connection with any and all Plans filed by the Debtors and provide ballot reports and related balloting and tabulation services to the Debtors and their professionals;

    (b) Generate an official ballot certification and testify, if necessary, in support of the ballot tabulation results;

    (c) Manage any distribution pursuant to a confirmed Plan prior to the effective date of such Plan; and

    (d) Perform such other administrative services as may be requested by the Debtors that are not otherwise allowed under the order approving the Section 156(c) Application.

### Retention of KCC

15. Although the Debtors have not yet filed their schedules of assets and liabilities, the Debtors anticipate that there will be in excess of 11,000 creditors and other parties in interest to be noticed. In view of the number of anticipated creditors and parties in interest and the complexity of the Debtors' business, the Debtors submit that the appointment of KCC as the administrative agent is both necessary and in the best interests of the Debtors, their estates and other parties in interest.

16. KCC is one of the country's leading chapter 11 administrators, with experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases. KCC has substantial experience in matters of this size and complexity, and has provided administrative services in numerous cases of comparable

size and complexity. *See, e.g., In re Otelco Inc.*, Case No. 13-10593 (Bankr. D. Del. 2013); *In re Ormet Corp.*, Case No. 13-10334 (Bankr. D. Del. 2013); *In re Powerwave Techs., Inc.*, Case No. 13-10134 (Bankr. D. Del. 2013); *In re School Specialty, Inc.*, Case No. 13-10125 (Bankr. D. Del. 2013); *In re LodgeNet Interactive Corp.*, Case No. 10238 (Bankr. D. Del. 2013); *In re Penson Worldwide, Inc.*, Case No. 13-10061 (Bankr. D. Del. 2013); *In re THQ, Inc.*, Case No. 12-13398 (Bankr. D. Del. 2012); *In re LCI Holding Co., Inc.*, Case No. 12-13319 (Bankr. D. Del. 2012); *In re Southern Air Holdings, Inc.*, Case No. 12-12690 (Bankr. D. Del. Sept. 28, 2012); *In re Carey Limousine L.A., Inc.*, Case No. 12-12664 (Bankr. D. Del. Sept. 25, 2012); *In re Digital Domain Media Group, Inc.*, Case No. 12-12568 (Bankr. D. Del. Sept. 11, 2012); *In re Ritz Camera & Image, L.L.C.*, Case No. 12-11868 (Bankr. D. Del. June 22, 2012).[2]

17.     The Debtors submit that utilizing KCC to provide the Professional Services will provide the most cost-effective and efficient administrative service for these chapter 11 cases. The Debtors chose KCC based on its experience, reputation and the competitiveness of its fees. Accordingly, the Debtors believe that KCC is well qualified to serve in the capacity of administrative agent, and that KCC's retention in such capacity is in the best interests of the Debtors' estates and their creditors.

18.     By appointing KCC as the administrative agent in these chapter 11 cases, the administration of the cases will be expedited, so the Debtors and the Debtors' professionals will be relieved of handling the Professional Services as necessary for the successful prosecution of the case.

---

[2] Because of the voluminous nature of the orders cited herein, they are not attached to this Application. Copies of these orders, however, are available upon request to KCC attn: Drake Foster at dfoster@kccllc.com.

**Terms of Retention**

19.     KCC intends to apply to the Court for allowances of compensation and reimbursement of out-of-pocket expenses incurred after the Petition Date in connection with the performance of Professional Services in these chapter 11 cases subject to Court approval and in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the guidelines established by the United States Trustee for the District of Delaware (the "U.S. Trustee") and further orders of this Court.

20.     As part of the overall compensation payable to KCC under the terms of the KCC Agreement, the Debtors have agreed to certain indemnification and contribution obligations. The KCC Agreement provides that the Debtors will indemnify and hold harmless KCC, its officers, employees and agents under certain circumstances specified in the KCC Agreement, except in circumstances of gross negligence or willful misconduct. Both the Debtors and KCC believe that such provisions are customary and reasonable for administrative agents in chapter 11 cases.

21.     KCC has informed the Debtors that, subject to Court approval, it will bill at its standard hourly rates, which are set forth in the KCC Agreement attached as Exhibit A to the Section 156(c) Application. KCC has agreed to certain discounts during the Debtors' Cases.

22.     The Debtors believe that these rates are consistent with market rates for comparable services. KCC will maintain detailed records of actual and necessary costs and expenses incurred in connection with the Professional Services described above.

## KCC's Disinterestedness

23. The Debtors have many creditors, and accordingly, KCC may have rendered and may continue to render services to certain of these creditors. KCC has not and will not represent the separate interests of any such creditor in these cases. Additionally, KCC employees may, in the ordinary course of their personal affairs, have relationships with certain creditors of the Debtors. For example, one or more of KCC's employees may have obligations outstanding with financial institutions that are creditors of the Debtors or may have used the Debtors' services.

24. To the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Declaration of Evan Gershbein (the "Gershbein Declaration"), KCC has represented that it neither holds nor represents any interest adverse to the Debtors' estates in connection with any matter on which it would be employed and that it is a "disinterested person," as referenced in Bankruptcy Code § 327(a) and as defined in Bankruptcy Code § 101(14), as modified by Bankruptcy Code § 1107(b). KCC will supplement its disclosure to the Court if any facts or circumstances are discovered that would require disclosure.

## Notice

25. Notice of this Application shall be given to the following parties or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee; (ii) the Steering Committee; (iii) the Prepetition First Lien Agent; (iv) the Prepetition Second Lien Agent; (v) the Consenting Equity Holder; (vi) the thirty-five largest unsecured creditors of the Debtors; and

Committee; (iii) the Prepetition First Lien Agent; (iv) the Prepetition Second Lien Agent; (v) the Consenting Equity Holder; (vi) the thirty-five largest unsecured creditors of the Debtors; and (vii) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form submitted herewith, (a) authorizing KCC to act as administrative agent to the Debtors and (b) granting such other further relief as is just and proper.

Dated: April 1, 2014

ABLEST INC., et al.

By: Robert Olson
Its: Controller