IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ABLEST INC., et al.,[1] | ) | Case No. 14-10717 (KJC) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Related to Docket No. 9** |

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362,
363, 364, AND 507: (I) APPROVING POSTPETITION FINANCING,
(II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING
LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE
STATUS, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING
AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING**

Upon the motion (the "DIP Motion") of Koosharem, LLC (the "Borrower"), New

Koosharem Corporation ("Parent"), and each of the Guarantors (as defined in the DIP Loan

Agreement (as defined herein)), each as a debtor and debtor-in-possession (collectively, the

"Debtors") in the above-captioned chapter 11 cases (collectively with any successor cases, the

"Cases"), pursuant to sections 105, 361, 362, 363, 364, and 507 of title 11 of the United States

Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rules 2002, 4001, and 9014 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local

Bankruptcy Rules for the District of Delaware (the "Local Rules"), seeking entry of an interim

order (this "Interim Order"), *inter alia*:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification numbers are: Ablest Inc. (8462); Koosharem, LLC (4537); New Koosharem Corporation (9356); Real Time Staffing Services, Inc. (8189); Remedy Intelligent Staffing, Inc. (0963); Remedy Staffing, Inc. (0080); RemedyTemp, Inc. (0471); Remedy Temporary Services, Inc. (7385); RemX, Inc. (7388); Select Corporation (6624); Select Nursing Services, Inc. (5846); Select PEO, Inc. (8521); Select Personnel Services, Inc. (8298); Select Specialized Staffing, Inc. (5550); Select Temporaries, Inc. (7607); Select Trucking Services, Inc. (5722); Tandem Staffing Solutions, Inc. (5919); Westaff, Inc. (6151); Westaff (USA), Inc. (5781); Westaff Support, Inc. (1039); RemSC LLC (8072); and RemUT LLC (0793). The mailing address for each of the Debtors is: 3820 State Street, Santa Barbara CA 93105.

(i)    authorizing the Debtors to obtain secured postpetition financing on a superpriority priming basis (the "DIP Facility") in an aggregate principal amount of up to **$50,000,000**, of which up to **$20,000,000** shall be available upon entry of this Interim Order, pursuant to the terms and conditions of that certain *Debtor-in-Possession Financing Agreement*, dated as of April 1, 2014 (as amended, supplemented, restated, or otherwise modified from time to time, the "DIP Loan Agreement"),[2] by and among the Debtors, and the lenders from time to time party thereto (collectively, the "DIP Lenders"), and Credit Suisse AG, Cayman Islands Branch, as administrative and collateral agent (in such capacity, the "DIP Agent"), substantially in the form of Exhibit 2 annexed to the DIP Motion;

(ii)    authorizing the Debtors to execute and deliver the DIP Loan Agreement and the other related credit documents (the "DIP Loan Documents") by and among the Debtors and the DIP Agent, and to perform such other acts as may be necessary or desirable in connection with the DIP Loan Documents;

(iii)    granting the DIP Facility and all obligations owing thereunder and under the DIP Loan Documents to the DIP Agent and the DIP Lenders (collectively, and including all "Obligations" as described in the DIP Loan Agreement, the "DIP Obligations") allowed superpriority administrative expense claim status in each of the Cases;

(iv)    granting to the DIP Agent, for the benefit of itself and the DIP Lenders, automatically perfected security interests in and liens upon all of the DIP Collateral (as defined herein), including, without limitation, all property constituting "Cash Collateral," as defined in section 363(a) of the Bankruptcy Code, which liens shall be subject to the priorities set forth herein;

---

[2] Capitalized terms used, but not defined herein, shall have the meaning ascribed to them in the DIP Loan Agreement.

(v)     authorizing and directing the Debtors to pay the principal, interest, fees, expenses, and other amounts payable under the DIP Loan Documents and this Interim Order as such become due, including, without limitation, closing fees and the reasonable fees and disbursements of the attorneys, advisers, accountants, and other consultants of the DIP Agent and the DIP Lenders, all to the extent provided in and in accordance with the terms of the DIP Loan Documents and this Interim Order;

(vi)     authorizing the use of Cash Collateral of the Prepetition Agents under the Prepetition Credit Documents (each as defined herein), and providing adequate protection to the Prepetition Agents for any Diminution in Value of their interests in the Prepetition Collateral (as defined herein), including the Cash Collateral;

(vii)     vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Interim Order, as limited pursuant hereto; and

(viii)    scheduling a final hearing (the "Final Hearing") to consider the relief requested in the DIP Motion and approving the form of notice with respect to the Final Hearing.

The Court having considered the DIP Motion, the Declaration of Randall S Eisenberg in support of the chapter 11 petitions and first-day motions, the DIP Loan Documents, and the evidence submitted at the interim hearing held on April 2, 2014 (the "Interim Hearing"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 4001(b), (c), and (d), and 9014; and the Interim Hearing to consider the interim relief requested in the DIP Motion having been held and concluded; and all objections, if any, to the interim relief requested in the DIP Motion having been withdrawn, resolved, or overruled by the Court; and it appearing to the Court that granting the interim relief requested is necessary to avoid immediate and

irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and their creditors and equity holders, and is essential for the continued operation of the Debtors' businesses; and it further appearing that the Debtors are unable to obtain either unsecured credit for money borrowed allowable as an administrative expense under Bankruptcy Code section 503(b)(1) or secured credit secured by a lien on property of the estate that is not otherwise subject to a lien under Bankruptcy Code section 364(c)(2) or secured by a junior lien on property of the estate that is subject to a lien pursuant to Bankruptcy Code section 364(c)(3); and adequate protection being provided on account of the interests in and liens on the property of the estates on which liens are to be granted; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING BY THE DEBTORS, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.    *Petition Date*.  On April 1, 2014 (the "Petition Date"), each of the Debtors filed a separate voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court") commencing these Cases.

B.    *Debtors in Possession*.  The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to section 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Cases.

C.    *Jurisdiction and Venue*.  This Court has jurisdiction over these proceedings and over the persons and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of

Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirmed their consent pursuant to Rule 9013-1(f) of the Local Rules to the entry of a final order by the Court in connection with the DIP Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue for the Cases and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    *Committee Formation*. As of the date hereof, the United States Trustee (the "U.S. Trustee") has not yet appointed the official committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code ( "Creditors Committee").

E.    *The Debtors' Stipulations*. After consultation with their attorneys and financial advisors, and without prejudice to the rights of the Creditors Committee or other parties in interest as set forth in paragraph 31 hereof, the Debtors (on behalf of and for themselves) admit, stipulate, acknowledge, and agree that (collectively, paragraphs E(i) through E(xi) hereof shall be referred to herein as the "Debtors' Stipulations"):

(i)    *Prepetition First Lien Facility.* Pursuant to that certain *First Lien Credit and Guaranty Agreement* dated as of July 12, 2007 (as amended, restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "Prepetition First Lien Credit Agreement" and, together with all related loan and security documents, including, without limitation, that certain *First Lien Pledge and Security Agreement*, dated as of July 12, 2007 the "Prepetition First Lien Credit Documents"), between the Borrower,[3] as borrower, the Parent, the Guarantors, as guarantors, Bank of the West, as administrative agent and/or collateral agent (in

---

[3] The Prepetition First Lien Credit Agreement was initially entered into with Koosharem Corporation, which was subsequently merged into the Borrower.

either such capacity, the "Prepetition First Lien Agent") and the lenders party thereto (the "Prepetition First Lien Lenders"), the Prepetition First Lien Lenders provided a revolving credit loan and term loans to or for the benefit of the Debtors (collectively, the "Prepetition First Lien Facility").

(ii)    *Prepetition First Lien Obligations.*  The Prepetition First Lien Facility provided the Debtors with, *inter alia*, term loans and revolving loans in the aggregate principal amount of $450,000,000.  As of the Petition Date, the outstanding amount of principal and accrued and unpaid interest owed by the Debtors under the Prepetition First Lien Credit Agreement was **$492,171,766** (collectively, together with any amounts paid, incurred, or accrued prior to the Petition Date in accordance with the Prepetition First Lien Credit Documents, unpaid principal, accrued and unpaid interest, any fees, expenses, and disbursements (including, without limitation, attorneys' fees, related expenses, and disbursements), indemnification obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Debtors' obligations pursuant to the Prepetition First Lien Credit Documents, including all "Obligations" as described in the Prepetition First Lien Credit Agreement, the "Prepetition First Lien Obligations").

(iii)    *Prepetition Second Lien Facility.*  Pursuant to that certain *Second Lien Credit and Guaranty Agreement*, dated as of July 12, 2007 (as amended, supplemented, restated, or otherwise modified from time to time  prior to the Petition Date, the "Prepetition Second Lien Credit Agreement," together with all related loan and security documents, including, without limitation, that certain *Second Lien Pledge and Security Agreement*, dated as of July 12, 2007 and *Second Lien Parent Pledge and Security Agreement* dated as of March 17, 2010, the

"Prepetition Second Lien Credit Documents" (together with the Prepetition First Lien Credit Documents, the "Prepetition Credit Documents")), between the Borrower,[4] as borrower, the Guarantors, as guarantors, Wilmington Trust, National Association (as successor by merger to Wilmington Trust FSB), as successor to BNP Paribas Securities Corp., as administrative agent and/or collateral agent (in either such capacity, the "Prepetition Second Lien Agent" and, together with the Prepetition First Lien Agent, the "Prepetition Agents") and the lenders party thereto (the "Prepetition Second Lien Lenders" and, together with the Prepetition First Lien Lenders, the "Prepetition Lenders"), the Prepetition Second Lien Lenders provided a term loan to or for the benefit of the Debtors (collectively, the "Prepetition Second Lien Facility" and, together with the Prepetition First Lien Facility, the "Prepetition Facilities").

       (iv)   *Prepetition Second Lien Obligations.*  The Prepetition Second Lien Facility provided the Debtors with a term loan in the original principal amount of $100,000,000. As of the Petition Date, the amount of outstanding principal and accrued and unpaid interest owed by the Debtors under the Prepetition Second Lien Credit Agreement was **$158,781,750** (collectively, together with any amounts paid, incurred, or accrued prior to the Petition Date in accordance with the Prepetition Second Lien Credit Documents, unpaid principal, accrued and unpaid interest, any fees, expenses, and disbursements (including, without limitation, attorneys' fees, related expenses, and disbursements), indemnification obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Debtors' obligations pursuant to the Prepetition Second Lien Credit Documents, including all "Obligations" as described in the Prepetition Second Lien Credit Agreement, the "Prepetition Second Lien

---

[4] The Prepetition Second Lien Credit Agreement was initially entered into with Koosharem Corporation, which was subsequently merged into the Borrower.

Obligations" and, together with the Prepetition First Lien Obligations, the "Prepetition Obligations").

(v)     *Prepetition Collateral.*  To secure the Prepetition First Lien Obligations and the Prepetition Second Lien Obligations, the Debtors granted to the Prepetition First Lien Agent first-priority security interests in and liens (the "Prepetition First Liens") on substantially all of the assets of the Debtors described in the Prepetition First Lien Credit Documents (the "Prepetition First Lien Collateral") and granted to the Prepetition Second Lien Agent second-priority security interests in and liens (the "Prepetition Second Liens" and, together with the Prepetition First Liens, the "Prepetition Liens") on substantially all of the assets of the Debtors described in the Prepetition Second Lien Credit Documents (the "Prepetition Second Lien Collateral" and, together with the Prepetition First Lien Collateral, the "Prepetition Collateral").

(vi)    *The Prepetition First Liens.*  The Prepetition First Liens on the Prepetition First Lien Collateral were perfected as of the Petition Date.

(vii)   *The Prepetition Second Liens.*   The Prepetition Second Liens on the Prepetition Second Lien Collateral were perfected as of the Petition Date.

(viii)  *Priority of the Prepetition First Liens and the Prepetition Second Liens; Intercreditor Agreement.*  The respective rights, obligations, and priorities of the Prepetition First Lien Agent, on the one hand, and the Prepetition Second Lien Agent, on the other hand, with respect to their interests in the Prepetition Collateral are governed by that certain *Intercreditor Agreement*, dated as of July 12, 2007 (as amended, supplemented, restated, or otherwise modified prior to the Petition Date, the "Intercreditor Agreement") among the Prepetition First Lien Agent and the Prepetition Second Lien Agent.  As of the Petition Date and pursuant to the

Intercreditor Agreement, the Prepetition First Liens are senior in priority to the Prepetition Second Liens.

(ix)   *Validity of the Prepetition First Liens, the Prepetition Second Liens, Claims, and Obligations.*   After consultation with their attorneys and financial advisors, but subject to the provisions of paragraph 31 hereof, the Debtors and the Prepetition Agents acknowledge and agree that: (a) the Prepetition First Liens are valid, binding, enforceable, non-avoidable, and perfected; (b) the Prepetition Second Liens are valid, binding, enforceable, non-avoidable, and perfected; (c) as of the Petition Date, the Prepetition First Liens had priority over any and all other liens on the Prepetition Collateral, subject only to certain liens otherwise permitted by the Prepetition First Lien Credit Documents (to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition First Liens as of the Petition Date, the "Permitted Liens"); (d) as of the Petition Date, the Prepetition Second Liens were junior to the Prepetition First Liens, Permitted Liens, and certain liens otherwise permitted by the Prepetition Second Lien Credit Documents (to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition Second Liens as of the Petition Date, the "Other Permitted Liens" and, together with the Permitted Liens, the "Permitted Prior Liens")[5] and otherwise had priority over any and all other liens on the Prepetition Collateral; (e) the Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors, enforceable in accordance with the terms of the Prepetition Credit Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code); (f) no offsets, challenges, objections, defenses, claims, or

---

[5] Nothing herein shall constitute a finding or ruling by this Court that any such Permitted Prior Liens are valid, senior, perfected, and non-avoidable. Moreover, nothing shall prejudice the rights of any party in interest including, but not limited to, the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Agents, the Prepetition Lenders, or the Creditors' Committee to challenge the validity, priority, perfection or extent of any such Permitted Prior Lien and/or security interest.

counterclaims of any kind or nature to any of the Prepetition Liens or the Prepetition Obligations exist, and no portion of the Prepetition Liens or the Prepetition Obligations of the DIP Lenders or the Backstop Providers (as defined in the DIP Loan Agreement) is subject to any challenge or defense, including, without limitation, avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (g) the Debtors and their estates have no offsets, defenses, claims, objections, challenges, causes of action, and/or choses in action, including, without limitation, avoidance claims under chapter 5 of the Bankruptcy Code, against any of the Prepetition Agents, the Prepetition Lenders that are DIP Lenders or the Backstop Providers, and/or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to the Prepetition Credit Documents; (h) the Debtors have waived, discharged, and released any right they may have to challenge any of the Prepetition Obligations and the security for these obligations, and to assert any offsets, defenses, claims, objections, challenges, causes of action, and/or choses in action against the Prepetition Lenders that are DIP Lenders or Backstop Providers, and/or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees; and (i) any payments made on account of the Prepetition First Lien Obligations to or for the benefit of the Prepetition First Lien Agent or the Prepetition First Lien Lenders prior to the Petition Date were on account of amounts in respect of which the Prepetition First Lien Agent was oversecured, were payments out of the Prepetition First Lien Agent's Prepetition First Lien Collateral, and such payments did not diminish any property otherwise available for distribution to unsecured creditors; and (j) any payments made on account of the Prepetition Second Lien Obligations to or for the benefit of the Prepetition Second Lien Agent or the Prepetition Second Lien Lenders prior to the Petition Date were on account of amounts in respect of which the

Prepetition Second Lien Agent was secured, were payments out of the Prepetition Second Lien Agent's Prepetition Second Lien Collateral, and such payments did not diminish any property otherwise available for distribution to unsecured creditors.

(x)    *Cash Collateral.*  All of the Debtors' cash, including the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes the Cash Collateral of the Prepetition Agents.

(xi)    *Default by the Debtors.*  The Debtors acknowledge and stipulate that the Debtors are in default of their debts and obligations under the Prepetition Credit Documents.

F.    *Findings Regarding Postpetition Financing.*

(i)    *Request for Postpetition Financing.*  The Debtors seek authority to (a) enter into the DIP Facility on the terms described herein and in the DIP Loan Documents, and (b) use Cash Collateral on the terms described herein to administer their Cases and fund their operations.    At the Final Hearing, the Debtors will seek final approval of the proposed postpetition financing arrangements and use of Cash Collateral arrangements pursuant to a proposed final order (the "Final Order"), which shall be in form and substance acceptable to the Required DIP Lenders and the Prepetition First Lien Agent and notice of which Final Hearing and Final Order will be provided in accordance with this Interim Order.

(ii)    *Priming of Prepetition Liens.*  The priming of the prepetition liens against assets of the Debtors (except for those expressly excluded by this Interim Order or the DIP Documents, including the Permitted Prior Liens), including, the Prepetition Liens, under section 364(d) of the Bankruptcy Code, as contemplated by the DIP Facility and as further described below, will enable the Debtors to obtain the DIP Facility and to continue to operate their businesses for the benefit of the estates and their creditors.    The Prepetition Agents are

11

entitled to receive adequate protection as set forth in this Interim Order, pursuant to sections 361, 363, and 364 of the Bankruptcy Code, for any diminution in the value of each of their respective interests in the Prepetition Collateral (including Cash Collateral) resulting from the Debtors' use, sale, or lease (or other decline in value) of such collateral, the imposition of the automatic stay, the priming of the Prepetition Liens on the Prepetition Collateral, and the subordination to the Carve-Out Expenses (defined below) (collectively, and solely to the extent of any such diminution in value, the "Diminution in Value").

(iii)    *Need for Postpetition Financing and Use of Cash Collateral.*    The Debtors' need to use Cash Collateral on an interim basis and to obtain credit on an interim basis pursuant to the DIP Facility is immediate and critical in order to enable the Debtors to continue operations and to administer and preserve the value of their estates.  The ability of the Debtors to finance their operations, maintain business relationships with their vendors, suppliers, and customers, to pay their employees, and otherwise finance their operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates, and their creditors, and the consensual, pre-packaged plan of reorganization (the "Plan") that is now on file with the Bankruptcy Court.  The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the DIP Facility and authorized use of Cash Collateral.

(iv)    *No Credit Available on More Favorable Terms.*    Given their current financial condition, financing arrangements, and capital structure and short timetable to confirmation of the Plan, the Debtors are unable to obtain financing from sources other than the DIP Lenders on terms more favorable that the DIP Facility.  The Debtors have been unable to

obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense. The Debtors have also been unable to obtain credit: (a) having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a), and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien. Financing on a postpetition basis is not otherwise available without granting the DIP Agent, for the benefit of itself and the DIP Lenders: (1) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets with the priorities set forth in paragraph 7 hereof, (2) superiority claims and liens, and (3) the other protections set forth in this Interim Order.

(v)    *Use of Proceeds of the DIP Facility.* As a condition to entry into the DIP Loan Agreement, the extension of credit under the DIP Facility and the authorization to use Cash Collateral, the Debtors have agreed that proceeds of the DIP Facility shall be used, in each case in a manner consistent with the terms and conditions of the DIP Loan Documents and in accordance with the Budget (as defined in the DIP Loan Agreement, the initial form of which for the interim period is attached hereto as **Exhibit A**), including, without limitation: (a) to pay all fees and expenses due to the DIP Agent, the DIP Lenders, and the Backstop Provider Group (as defined in the DIP Loan Agreement), each as provided under the DIP Facility, including, without limitation, the prepetition and postpetition professional fees and expenses of the following firms: Milbank Tweed Hadley & McCloy LLP ("Milbank"), Morris, Nichols, Arsht & Tunnell LLP ("MNAT"), Stikeman Elliott, LLP ("Stikeman"), Halloran & Sage LLP ("H&S"), and Cravath, Swaine & Moore LLP ("Cravath"); (b) to pay administration costs of the chapter 11 Cases and claims or amounts approved by the Bankruptcy Court, including any payments required to be

made as adequate protection pursuant to the terms of this Interim Order, (c) to provide working capital for the Debtors, and (d) for other general corporate purposes of the Debtors.

G. *Adequate Protection.* The Prepetition First Lien Agent, for the benefit of itself and the Prepetition First Lien Lenders, and the Prepetition Second Lien Agent, for the benefit of itself and the Prepetition Second Lien Lenders (in each case, to the extent any such Prepetition Obligations remain outstanding and subject to the Intercreditor Agreement), are each entitled to receive adequate protection to the extent of any Diminution in Value of their respective interests in the Prepetition Collateral (including Cash Collateral). Pursuant to Bankruptcy Code sections 361, 363, and 507(b), as adequate protection: (i) the Prepetition First Lien Agent, for the benefit of itself and the Prepetition First Lien Lenders, will receive the Senior Adequate Protection Liens and Senior Superpriority Claims (as defined below) and (ii) the Prepetition Second Lien Agent, for the benefit of itself and the Prepetition Second Lien Lenders, will receive the Junior Adequate Protection Liens and Junior Superpriority Claims (as defined below). In addition to the foregoing adequate protection, each of the Prepetition First Lien Agent, the Prepetition Second Lien Agent, and the Backstop Providers, will be reimbursed by the Debtors, in the ordinary course of business for all outstanding prepetition and postpetition fees and expenses, including legal and other professionals fees and expenses incurred by them in connection with the Prepetition First Lien Facility, the Prepetition Second Lien Facility, and these Chapter 11 Cases, including, without limitation, those fees and expenses incurred by Milbank, MNAT, Stikeman, H&S, the Prepetition First Lien Agent, the Prepetition Second Lien Agent, Katten Muchin & Rosenman LLP ("Katten"), Cousins Chipman & Brown LLP ("CCB"), Dechert LLP ("Dechert"), and Young Conaway Stargatt & Taylor LLP ("YCST"). The amount of adequate protection payments of fees and expenses (including legal and other professionals

fees and expenses) of the Prepetition First Lien Agent and the Prepetition Second Lien Agent payable hereunder shall be limited to $37,500 per month for the Prepetition First Lien Agent and $37,500 per month for the Prepetition Second Lien Agent through May 31, 2014 and $18,750 for each of the Prepetition Agents for each month thereafter, provided that any unused portion in a given month may be carried over to subsequent months and that, to the extent either of the Prepetition First Lien Agent or the Prepetition Second Lien Agent incurs fees and expenses greater than $37,500 (or $18,750 after May 31, 2014) in one month, they can apply such amounts in succeeding months.  For the avoidance of doubt, nothing herein shall limit the allowance or payment of any fees and expenses (including legal and other professionals fees and expenses) of the Prepetition First Lien Agent and the Prepetition Second Lien Agent in excess of the amounts payable hereby.

H.     _Sections 506(c) and 552(b)_.  In light of (i) the subordination of the DIP Agent's and the DIP Lenders' liens and superpriority claims to the Carve-Out Expenses, (ii) the subordination of the Prepetition First Lien Agent's liens and superpriority claims to the Carve-Out Expenses and the DIP Liens, and (iii) the subordination of the Prepetition Second Lien Agent's liens and superpriority claims to the Carve-Out Expenses, the DIP Liens, and the Senior Adequate Protection Liens (as defined herein), (a) the Prepetition Agents and the Backstop Providers are entitled to, subject to entry of a Final Order, a waiver of any "equities of the case" claims under Bankruptcy Code section 552(b), and (b) subject to entry of a Final Order, the DIP Agent, the DIP Lenders, the Prepetition Agents, and the Backstop Providers are each entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code.

I.    *Good Faith of the DIP Agent and the DIP Lenders.*

(i)    *Willingness to Provide Financing.*  The DIP Lenders have indicated a willingness to provide financing to the Debtors subject to: (a) the entry of this Interim Order and the Final Order; (b) approval of the terms and conditions of the DIP Facility and the DIP Loan Documents; and (c) entry of findings by this Court that such financing is essential to the Debtors' estates, that the DIP Agent and the DIP Lenders are extending credit to the Debtors pursuant to the DIP Loan Documents in good faith, and that the DIP Agent's and DIP Lenders' claims, superpriority claims, security interests and liens, and other protections granted pursuant to this Interim Order and the DIP Loan Documents will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument, or reconsideration of this Interim Order or any other order.

(ii)    *Business Judgment and Good Faith Pursuant to Section 364(e).*  The terms and conditions of the DIP Facility and the DIP Loan Documents, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Debtors under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.  The DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors, the DIP Agent, the DIP Lenders, and the Backstop Providers.  Use of Cash Collateral and credit to be extended under the DIP Facility shall be deemed to have been so allowed, advanced, made, used, or extended in good faith, and for valid business purposes and uses, within the meaning of Bankruptcy Code section 364(e), and the DIP Agent and the DIP Lenders are therefore entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Interim Order.

J.    _Good Cause; Immediate Entry_.  The relief requested in the Motion is necessary, essential and appropriate, and is in the best interests of and will benefit the Debtors, their estates, and their creditors and equity holders, as its implementation will, *inter alia*, provide the Debtors with the necessary liquidity to (a) minimize the disruption to the Debtors' business and ongoing operations, including in connection with the Plan, (b) preserve and maximize the value of the Debtors' estates for the benefit of all the Debtors' creditors and equity holders, and (c) avoid immediate and irreparable harm to the Debtors, their estates, their creditors and equity holders, their businesses, their employees, and their assets.  Thus, sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

K.    _Notice_.  Notice of the Interim Hearing and the emergency relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile, email, overnight courier, or hand delivery, to certain parties in interest, or, in lieu thereof, to their counsel, if known, including:  (i) the United States Trustee for the District of Delaware; (ii) the United States Attorney for the District of Delaware; (iii) the parties included on the Debtors' list of thirty-five (35) largest unsecured creditors on a consolidated basis; (iv) all persons or entities known to the Debtors that have asserted a lien or interest in any of the DIP Collateral (as defined below); (v) counsel to the DIP Agent; (vi) counsel to the DIP Lenders and the Backstop Provider Group; (vii) counsel to the Prepetition Agents; and (viii) all parties entitled to notice pursuant to Local Rule 9013-1(m).  The parties have made reasonable efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the interim relief set forth in this Interim Order.

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.      <u>Interim Financing Approved</u>.  The DIP Motion is granted, the Interim Financing (as defined herein) is authorized and approved, and the use of Cash Collateral on an interim basis is authorized, subject to the terms and conditions set forth in this Interim Order.

2.      <u>Objections Overruled</u>.  All objections to the Interim Financing or entry of this Interim Order, to the extent not withdrawn or resolved, are hereby overruled.

**DIP Facility Authorization**

3.      <u>Authorization of the DIP Financing</u>.  The Interim Financing (as defined below) is hereby approved.  The Debtors are expressly and immediately authorized, empowered, and directed to execute and deliver the DIP Loan Documents and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Loan Documents, and to deliver all instruments and documents which may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by this Interim Order and the DIP Loan Documents. The Debtors are hereby authorized and directed to pay, in accordance with this Interim Order, the principal, interest, fees, expenses, and other amounts described in the DIP Loan Documents and all other documents comprising the DIP Facility as such become due and without need to obtain further Court approval, including, without limitation, closing fees, and the reasonable fees and disbursements of the attorneys, advisors, accountants, and other consultants, and the reasonable legal fees and expenses of the DIP Agent and the DIP Lenders.  All collections and proceeds, whether ordinary course or otherwise, will be deposited and applied as required by this

Interim Order and the DIP Loan Documents.  Upon execution and delivery, the DIP Loan Documents shall represent valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms.

4.    <u>Authorization to Borrow</u>.  Until the DIP Termination Date (as defined herein), and subject to the terms and conditions set forth in the DIP Loan Documents, DIP Facility, and this Interim Order, and in order to prevent immediate and irreparable harm to the Debtors' estates, the Debtors are hereby authorized to draw from the DIP Facility up to **$20,000,000** pursuant to this Interim Order (the "<u>Interim Financing</u>").  Any further borrowings under the DIP Facility will be subject to the entry of the Final Order.

5.    <u>DIP Obligations</u>.  The DIP Obligations shall be enforceable against the Debtors, their estates, and any successors thereto, including, without limitation, any trustee appointed in the Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "<u>Successor Cases</u>").  The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease on the DIP Termination Date, except as provided in paragraph 29 herein.

6.    <u>Postpetition Liens</u>.  In order to secure the DIP Obligations, effective immediately upon entry of this Interim Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, subject only to the Permitted Prior Liens and the Carve-Out Expenses, the DIP Agent, for the benefit of itself and the DIP Lenders, is hereby granted continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens (collectively, the "<u>DIP Liens</u>") upon all personal property, real property, assets, and rights of the Debtors, wherever located, whether now owned or hereafter

acquired or arising, and all proceeds and products thereof, whether tangible or intangible, including, without limitation, (a) all personal and fixture property of every kind and nature, including all goods (including inventory, equipment, and any accessions thereto); (b) all instruments, including promissory notes; (c) all documents, including, if applicable, electronic documents; (d) all accounts, including health-care-insurance receivables; (e) all books and records; (f) all chattel paper, whether tangible or electronic; (g) all deposit accounts; (h) all letters of credit and letter of credit rights, whether or not the letter of credit is evidenced by a writing; (i) all commercial tort claims; (j) all securities and all other investment property; (k) all intellectual property; (l) all supporting obligations; (m) all money and any other contract rights or rights to the payment of money; (n) all insurance claims and proceeds; (o) all extracted collateral, general intangibles, including all payment intangibles; (p) the proceeds of any avoidance actions brought pursuant to section 549 of the Bankruptcy Code to recover any postpetition transfer of collateral; (q) subject to entry of the Final Order, the proceeds of any other claims or actions under chapter 5 of the Bankruptcy Code (subparagraphs (p)-(q), collectively, the "Avoidance Actions"); (r) subject to the entry of a Final Order, the Borrower's rights under section 506(c) of the Bankruptcy Code, other than against the DIP Lenders, and the proceeds thereof; (s) the Prepetition First Lien Collateral; and (t) the Prepetition Second Lien Collateral (collectively, the "DIP Collateral").

7.      DIP Lien Priority. The DIP Liens securing the DIP Obligations are valid, binding, continuing, automatically perfected, non-avoidable, senior in priority and superior to any security, mortgage, collateral interest, lien or claim to any of the DIP Collateral, except that the DIP Liens shall be junior only to Permitted Prior Liens and the Carve-Out Expenses. Pursuant to section 364(d) of the Bankruptcy Code, the DIP Liens shall be senior to the Prepetition First

Liens, the Senior Adequate Protection Liens (as defined herein), the Prepetition Second Liens, and the Junior Adequate Protection Liens (as defined herein) on all DIP Collateral. For purposes of this Interim Order, it shall be an Event of Default (defined below) if, other than as set forth herein, the DIP Liens shall be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases, upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Cases or Successor Cases. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

8.    <u>Superpriority Claims</u>.  Upon entry of this Interim Order, the DIP Agent and the DIP Lenders are hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (collectively, the "<u>DIP Superpriority Claim</u>") for all DIP Obligations: (a) except as set forth herein, with priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in any of the Cases and any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 507(a), 507(b) (except as set forth herein), 546(c), 546(d), 726 (to the extent permitted by law), 1113, and 1114, and any other provision of the Bankruptcy Code, as provided under Bankruptcy Code section 364(c)(1); and (b) which shall at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law. Notwithstanding the foregoing, the DIP Superpriority Claim shall be subject to the Carve-Out Expenses. The allowed DIP Superpriority Claim shall be payable

from and have recourse to all pre- and postpetition property of the Debtors and all proceeds thereof, including, upon entry of a Final Order, any proceeds or property recovered in connection with the pursuit of Avoidance Actions.

9.     No Obligations to Extend Credit. The DIP Agent and the DIP Lenders shall have no obligation to make any loan or advance under the DIP Loan Documents, unless all of the conditions precedent to the making of such extension of credit under the DIP Loan Documents and this Interim Order have been satisfied in full or waived by the DIP Agent in its sole discretion.

10.    Use of DIP Facility Proceeds. From and after the Petition Date, the Debtors shall use advances of credit under the DIP Facility only for the purposes specifically set forth in this Interim Order, the DIP Loan Documents, and in compliance with the Budget, subject to the permitted variances set forth in the DIP Loan Documents.  Immediately upon entry of this Interim Order, the Debtors are authorized to draw upon the DIP Facility subject to the terms and conditions of this Interim Order and the DIP Loan Documents.

**Authorization to Use Cash Collateral**

11.    Authorization to Use Cash Collateral. Subject to the terms and conditions of this Interim Order, the DIP Facility, and the DIP Loan Documents, and in accordance with the Budget, the Debtors are authorized to use Cash Collateral until the DIP Termination Date. Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order, the DIP Facility, the DIP Loan Documents, and in accordance with the Budget.

12.    <u>Adequate Protection Liens</u>.

(a)    <u>Senior Adequate Protection Liens</u>.  Pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition First Lien Agent in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral on account of the granting of the DIP Liens, the Debtors' use of Cash Collateral and sale, lease or use of other Prepetition Collateral, and the imposition of the automatic stay, the Debtors hereby grant to the Prepetition First Lien Agent, for the benefit of itself and the Prepetition First Lien Lenders, continuing valid, binding, enforceable, and perfected postpetition security interests in and liens on the DIP Collateral (the "<u>Senior Adequate Protection Liens</u>") to the extent of any Diminution in Value.

(b)    <u>Junior Adequate Protection Liens</u>.  Pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Second Lien Agent in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral on account of the granting of the DIP Liens, the Debtors' use of Cash Collateral and sale, lease or use of other Prepetition Collateral, and the imposition of the automatic stay, the Debtors hereby grant to the Prepetition Second Lien Agent, for the benefit of itself and the Prepetition Second Lien Lenders, continuing valid, binding, enforceable, and perfected postpetition security interests in and liens on the DIP Collateral (the "<u>Junior Adequate Protection Liens</u>" and, together with the Senior Adequate Protection Liens, the "<u>Adequate Protection Liens</u>") to the extent of any Diminution in Value.

(c)    <u>Priority of Adequate Protection Liens</u>.

(i)    The Senior Adequate Protection Liens shall be junior only to: (A) Permitted Prior Liens; (B) the Carve-Out Expenses; and (C) the DIP Liens.  The Senior

Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the DIP Collateral.

(ii)     The Junior Adequate Protection Liens shall be junior only to: (A) Permitted Prior Liens; (B) the Carve-Out Expenses; (C) the DIP Liens; (D) the Senior Adequate Protection Liens; and (E) the Prepetition First Liens on the Prepetition Collateral. The Junior Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the DIP Collateral.

(iii)     For purposes of this Interim Order, it shall be an Event of Default if, except as provided herein, the Adequate Protection Liens shall be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter in the Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in the Cases or any Successor Cases, or upon the dismissal of any of the Cases or Successor Cases. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

(iv)     The Adequate Protection Liens shall be subject to the reservation of rights set forth in paragraph 31 of this Interim Order.

13.     <u>Adequate Protection Superpriority Claims.</u>

(a)     <u>Senior Superpriority Claim.</u>  As further adequate protection of the interests of the Prepetition First Lien Agent in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral on account of the granting of the DIP Liens, the Debtors' use of Cash Collateral, the use, sale, or lease of any other Prepetition Collateral, and the imposition of the automatic stay, the Prepetition First Lien Agent, for the benefit of itself and the

Prepetition First Lien Lenders, is hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (the "Senior Superpriority Claim").

(b)    Junior Superpriority Claim.  As further adequate protection of the interests of the Prepetition Second Lien Agent in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral on account of the granting of the DIP Liens, the Debtors' use of Cash Collateral, the use, sale, or lease of any other Prepetition Collateral, and the imposition of the automatic stay, the Prepetition Second Lien Agent, for the benefit of itself and the Prepetition Second Lien Lenders, is hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (the "Junior Superpriority Claim" and, together with the Senior Superpriority Claim, the "Adequate Protection Superpriority Claims").

(c)    Priority of the Adequate Protection Superpriority Claims. Except as set forth herein, the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113, and 1114; *provided. however*, that:  (i) the Senior Superpriority Claim shall be junior to the DIP Superpriority Claim; (ii) the Junior Superpriority Claim shall be junior to the DIP Superpriority Claim and the Senior Superpriority Claim; (iii) the Adequate Protection Superpriority Claims each shall be junior to the Carve-Out Expenses; and (iv) the Adequate Protection Superpriority Claims each shall be subject to the reservation of rights set

forth in paragraph 31 of this Interim Order, and (v) the Adequate Protection Superpriority Claims each shall have recourse to any proceeds or property recovered in connection with the Avoidance Actions upon entry of the Final Order.

14.    **Reimbursement of Fees and Expenses of Prepetition First Lien Agent, Prepetition Second Lien Agent, DIP Agent, DIP Lenders, and Backstop Provider Group.** The Debtors are hereby authorized and directed to pay, in accordance with this Interim Order, the reasonable unpaid prepetition and postpetition fees and disbursements of the Prepetition First Lien Agent, the Prepetition Second Lien Agent, attorneys, advisors, accountants, and other consultants of each of the Prepetition First Lien Agent, the Prepetition Second Lien Agent, the DIP Agent, the DIP Lenders, and the Backstop Provider Group, including, without limitation, the fees and disbursements of Milbank, MNAT, Stikeman H&S, Cravath, Katten, CCB, Dechert, and YCST. The amount of adequate protection payments of fees and expenses (including legal and other professionals fees and expenses) of the Prepetition First Lien Agent and the Prepetition Second Lien Agent payable hereunder shall be limited to $37,500 per month for the Prepetition First Lien Agent and $37,500 per month for the Prepetition Second Lien Agent through May 31, 2014 and $18,750 for each of the Prepetition Agents for each month thereafter, provided that any unused portion in a given month may be carried over to subsequent months and that, to the extent either of the Prepetition First Lien Agent or the Prepetition Second Lien Agent incurs fees and expenses greater than $37,500 (or $18,750 after May 31, 2014) in one month, they can apply such amounts in succeeding months. For the avoidance of doubt, nothing herein shall limit the allowance or payment of any fees and expenses (including legal and other professionals fees and expenses) of the Prepetition First Lien Agent and the Prepetition Second Lien Agent in excess of the amounts payable hereby.  Any payment to any such party shall be made within seven (7)

business days following such party's delivery of an invoice to the Debtors or their bankruptcy counsel. Failure to make such payments shall be an Event of Default under DIP Loan Agreement.

14(b). <u>Reimbursement of Fees and Expenses of Settling Minority First Lien Lenders</u>. Upon (a) execution and delivery of a joinder to the Restructuring Support Agreement (as defined in the DIP Loan Agreement) by the members of that certain group of Prepetition First Lien Lenders represented by Willkie Farr & Gallagher LLP ("<u>Willkie</u>") and Stutman Treister & Glatt ("<u>Stutman</u>") (together, the "<u>Settling Minority First Lien Lenders</u>") and the delivery of documents required thereunder and (b) dismissal with prejudice of that certain lawsuit entitled *Bowery Opportunity Fund, L.P., et al. v. Sorensen*, Case No. 2:13-cv-09275-RGK-JCG (C.D. Cal.), the Debtors are authorized and directed to pay the fees and expenses of Willkie and Stutman in an aggregate amount not to exceed $440,000, which payments shall not be subject to review or approval of this Court. The deadline to vote to accept or reject the Plan shall be extended until April 4, 2014 to allow the members of the Settling Minority First Lien Lenders to submit their ballots in accordance with this paragraph.

15. <u>Credit Bidding</u>. (a) Except upon further order of the Court, for cause, the DIP Agent (on behalf of the DIP Lenders), acting at the direction of the DIP Lenders to the extent provided for under the DIP Documents, shall have the right to "credit bid" the amount of the Interim Financing in connection with any sale of the DIP Collateral, including, without limitation, any sale pursuant to Bankruptcy Code section 363, or included as part of any plan of reorganization subject to confirmation under Bankruptcy Code section 1129(b), and (b) subject to, and effective upon entry of, the Final Order, as additional adequate protection, the Prepetition First Lien Agent (on behalf of the Prepetition First Lien Lenders) shall, acting at the direction of

the Prepetition First Lien Lenders to the extent provided for under the Prepetition First Lien Credit Documents, and subject to the rights of the DIP Agent, have the right to "credit bid" the amount of the Prepetition First Lien Obligations in connection with any sale of the Prepetition Collateral, including without limitation, any sale pursuant to section 363 of the Bankruptcy Code or included as part of any plan of reorganization subject to confirmation under section 1129(b) of the Bankruptcy Code.  Subject to, and effective upon entry of, the Final Order, as additional adequate protection, the Prepetition Second Lien Agent (on behalf of the Prepetition Second Lien Lenders) shall, acting at the direction of the Prepetition Second Lien Lenders to the extent provided for under the Prepetition Second Lien Credit Documents, and subject to the rights of the DIP Agent and the Prepetition First Lien Agent and the terms of the Intercreditor Agreement, have the right to "credit bid" the amount of the Prepetition Second Lien Obligations in connection with any sale of the Prepetition Collateral, including without limitation, any sale pursuant to section 363 of the Bankruptcy Code or included as part of any plan of reorganization subject to confirmation under section 1129(b) of the Bankruptcy Code.

**Provisions Common to DIP Financing**
**and Use of Cash Collateral Authorizations**

16.    _Amendments of the DIP Loan Documents_.  The Debtors, the DIP Agent, and the DIP Lenders are hereby authorized to implement, in accordance with the terms of the DIP Loan Documents, any nonmaterial modifications (including, without limitation, any change to the number or composition of the DIP Lenders) of the DIP Loan Documents without further order of this Court, or any other modifications to the DIP Loan Documents; _provided, however_, that subject to entry of a Final Order, notice of any material modification or amendment to the DIP Loan Documents shall be provided to counsel for a Creditors Committee, if appointed in these Cases, the Prepetition Agents, and the U.S. Trustee, each of whom shall have five (5) days from

the date of such notice within which to object, in writing, to such modification or amendment.  If any of the foregoing parties' timely objects in writing to any material modification or amendment to the DIP Loan Documents, such modification or amendment shall only be permitted pursuant to an order of this Court.  The foregoing shall be without prejudice to the Debtors' right to seek approval from the Court of a material modification on an expedited basis.

17.    <u>Budget Maintenance</u>.  Any changes from a prior Budget and any amounts in periods not included in the prior Budget shall be satisfactory to the "Required DIP Lenders" (which term shall mean "Requisite Lenders", as defined in the DIP Loan Agreement).

18.    <u>Modification of the Automatic Stay</u>.  The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to:  (a) permit the Debtors to grant the DIP Liens, the Adequate Protection Liens, the DIP Superpriority Claim, and the Adequate Protection Superpriority Claims; (b) permit the Debtors to perform such acts as the DIP Agent, the DIP Lenders, or any Prepetition Agent may request in their sole discretion to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the DIP Agent, the DIP Lenders, the Prepetition Agents, and the Prepetition Lenders under the DIP Loan Documents, the DIP Facility, and this Interim Order; and (d) authorize the Debtors to pay and the DIP Agent, the DIP Lenders, the Prepetition Agents, and the Prepetition Lenders to retain and apply payments made in accordance with the terms of this Interim Order.

19.    <u>Perfection of DIP Liens and Adequate Protection Liens</u>.  This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of

filing or recording any financing statement, mortgage, notice, or other instrument or document, which may otherwise be required under the law or regulation of any jurisdiction, or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens, or to entitle the DIP Agent, the DIP Lenders, the Prepetition Agents, and the Prepetition Lenders to the priorities granted herein. Notwithstanding the foregoing, the DIP Agent and each of the Prepetition Agents are authorized to file, as each, in its sole discretion deems necessary, such financing statements, mortgages, notices of liens, and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens and the Adequate Protection Liens, and all such financing statements, mortgages, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided, however*, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens and/or the Adequate Protection Liens. The Debtors are authorized and directed to execute and deliver promptly upon demand to the DIP Agent and the Prepetition Agents all such financing statements, mortgages, notices, and other documents as the DIP Agent or any Prepetition Agent may reasonably request. The DIP Agent and the Prepetition Agents, each in its discretion, may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instrument.

20.     <u>Proceeds of Subsequent Financing</u>.  If the Debtors, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed in these Cases or any Successor Cases, shall obtain credit or incur debt in violation of the DIP Loan Documents at any

time prior to the indefeasible repayment in full of all DIP Obligations and the termination of the DIP Agent's and the DIP Lenders' obligation to extend credit under the DIP Facility, including subsequent to the confirmation of any plan with respect to any or all of the Debtors and the Debtors' estates, and such facilities are secured by any DIP Collateral, then cash proceeds derived from such credit or debt shall be used to the extent necessary to indefeasibly repay in full the DIP Obligations.

21.     Maintenance of DIP Collateral.  Until the indefeasible payment in full of all DIP Obligations and all Prepetition Obligations and the termination of the DIP Agent's and the DIP Lenders' obligation to extend credit under the DIP Facility, the Debtors shall:  (a) insure the DIP Collateral as required under the DIP Facility or the Prepetition Facilities, as applicable; and (b) maintain the cash management system in effect as of the Petition Date, as modified by any order that may be entered by the Court, to which the DIP Agent has first agreed, or as otherwise required by the DIP Loan Documents; *provided, however*, that the foregoing obligations of the Debtors shall be conditioned upon the DIP Agent and the DIP Lenders providing the Debtors with adequate funding to fulfill such obligations.

22.     DIP Termination Date.  On the DIP Termination Date, (a) all DIP Obligations shall be immediately due and payable, and all commitments to extend credit under the DIP Facility will terminate, and (b) all authority to use Cash Collateral shall cease.  For purposes of this Interim Order, the "DIP Termination Date" shall mean the "Final Maturity Date" as defined in the DIP Loan Agreement.

23.     Events of Default.  The occurrence of an "Event of Default" under the DIP Loan Documents shall constitute an Event of Default under this Interim Order, unless waived in writing by the Required DIP Lenders.

24.   <u>Rights and Remedies Upon Event of Default</u>.  Immediately upon the occurrence of an Event of Default, the Required DIP Lenders, or the DIP Agent at the direction of the Required DIP Lenders, may declare (a) all DIP Obligations owing under the DIP Loan Documents to be immediately due and payable, (b) the termination, reduction, or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains, (c) the termination of the DIP Loan Agreement and any other DIP Document as to any future liability or obligation of the DIP Agent and the DIP Lenders, but without affecting any of the DIP Liens or the DIP Obligations, and a termination, reduction, or restriction on the ability of the Debtors to use any Cash Collateral derived solely from the proceeds of the DIP Collateral (any such declaration, shall be referred to herein as "<u>Termination Declaration</u>").   The Termination Declaration shall be given by facsimile (or other electronic means) to counsel to each of the Debtors, the Prepetition Agents, any Creditors Committee and the U.S. Trustee (and the earliest date any such Termination Declaration is made shall be referred to herein as the "<u>Termination Declaration Date</u>").  Any automatic stay otherwise applicable to the DIP Agent, the DIP Lenders, and the Prepetition Agents is hereby modified so that five (5) business days after the Termination Declaration Date (the "<u>Remedies Notice Period</u>"), (A) the DIP Agent and the DIP Lenders shall be entitled to exercise their rights and remedies in accordance with the DIP Loan Documents and this Interim Order and shall be permitted to satisfy the DIP Superpriority Claim and the DIP Liens, subject to the Carve-Out Expenses, (B) to the extent any Prepetition First Lien Obligations remain outstanding, the Prepetition First Lien Agent and, in accordance with the Prepetition First Lien Credit Documents, the Prepetition First Lien Lenders shall be entitled to exercise their rights and remedies to satisfy the Prepetition First Lien Obligations, the Senior Superpriority Claim, and the Senior Adequate Protection Liens, subject to the Carve-Out

Expenses, and (C) to the extent any Prepetition Second Lien Obligations remain outstanding, the Prepetition Second Lien Agent in accordance with the Prepetition Second Lien Credit Documents, the Prepetition Second Lien Lenders shall be entitled to exercise their rights and remedies to satisfy the Prepetition Second Lien Obligations, the Junior Superpriority Claim, and the Junior Adequate Protection Liens, subject to and consistent with (i) the Carve-Out Expenses, (ii) this Interim Order, and (iii) the Intercreditor Agreement. During the Remedies Notice Period, the Debtors, any Creditors Committee, and/or other party in interest shall be entitled to seek an emergency hearing within the Remedies Notice Period with the Court solely (as to the Debtors but not as to any Creditors Committee or any other party in interest) for the purpose of contesting whether an Event of Default has occurred, and the Debtors waive their right to, and shall not be entitled to seek from the Court relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent that such relief would in any way impair or restrict the rights and remedies of the DIP Agent, on behalf of the DIP Lenders, set forth in this Interim Order or the DIP Loan Documents. Unless the Court grants relief from the Termination Declaration, the automatic stay, as to all of the DIP Agent, the DIP Lenders, each Prepetition Agent, and the Backstop Providers shall automatically be terminated at the end of the Remedies Notice Period without further notice or order. Upon expiration of the Remedies Notice Period, the DIP Agent and each Prepetition Agent shall be permitted to exercise all applicable remedies set forth herein, and in the DIP Loan Agreement, the DIP Loan Documents, and the Prepetition Credit Documents, as applicable, and as otherwise available at law without further order or application or motion to the Court, and without restriction or restraint by any stay under sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interest or any other rights and remedies granted to any of the DIP Agent, the DIP

Lenders, and the Prepetition Agents pursuant to the DIP Loan Agreement, the DIP Loan Documents, the Prepetition Credit Documents, or this Interim Order.

25.    <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of This Interim Order</u>.  Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter modified, amended, or vacated by a subsequent order of this Court or any other court, each of the DIP Agent, the DIP Lenders, the Backstop Providers, the Prepetition First Lien Agent, and the Prepetition Second Lien Agent is entitled to the protections provided in section 364(e) of the Bankruptcy Code.  Any liens or claims granted to the DIP Agent and the DIP Lenders hereunder arising prior to the effective date of any such modification, amendment, or vacatur of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges, and benefits granted herein.

26.    <u>DIP and Other Expenses</u>.  The Debtors are authorized and directed to pay all reasonable out-of-pocket expenses of the DIP Agent and of the DIP Lenders in connection with the DIP Facility, as provided in the DIP Loan Documents and/or this Interim Order, whether or not the transactions contemplated hereby are consummated, including, without limitation, legal, accounting, collateral examination, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, and indemnification and reimbursement of fees and expenses. Payment of all such fees and expenses shall not be subject to allowance by the Court, *provided, however*, that the Court shall have jurisdiction to determine any dispute concerning such fees and expenses.  Professionals of the DIP Agent and the DIP Lenders will promptly forward copies of their invoices to the U.S. Trustee and counsel for any Creditors Committee.

27.    <u>Proofs of Claim</u>.    Subject to entry of the Final Order, the DIP Agent, the DIP Lenders, the Prepetition Agents, and the Prepetition Lenders will not be required to file proofs of claim in any of the Cases or Successor Cases for any claim allowed herein.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Cases or Successor Cases to the contrary, each of the Prepetition Agents, on behalf of itself and the applicable Prepetition Lenders, is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate proofs of claim in each of the Cases or Successor Cases for any claim allowed herein.  Any order entered by the Court in relation to the establishment of a bar date in any of the Cases or Successor Cases shall not apply to the DIP Agent, the DIP Lenders, the Prepetition Agents, or the Prepetition Lenders.

28.    <u>Rights of Access and Information</u>.    Without limiting the rights of access and information afforded the DIP Agent and the DIP Lenders under the DIP Loan Documents, the Debtors shall be, and hereby are, required to afford representatives, agents, and/or employees of the DIP Agent, the DIP Lenders, the Prepetition Agents, and the Backstop Providers reasonable access to the Debtors' premises and their books and records in accordance with the DIP Loan Documents and the Prepetition Credit Documents, as applicable, and shall reasonably cooperate, consult with, and provide to the DIP Agent and the Prepetition Agents all such information as may be reasonably requested.  In addition, the Debtors authorize their independent certified public accountants, financial advisors, investment bankers, and consultants to cooperate, consult with, and provide to the DIP Agent all such information as may be reasonably requested with respect to the business, results of operations, and financial condition of any Debtor.

29. <u>Carve-Out Expenses</u>.

(a) <u>Carve-Out Expenses</u>. The Debtors' obligations to the DIP Lenders and the liens and superpriority claims granted as provided herein shall be subject in each case only to a carve out (the "<u>Carve-Out Expenses</u>") which shall equal the sum total of (i) all statutory fees payable to the clerk of the Bankruptcy Court or the United States Trustee pursuant to 28 U.S.C. § 1930 in such amount as agreed to by the Clerk or the U.S. Trustee (as the case may be) or as determined by the Court; (ii) allowed and unpaid professionals fees, expenses and disbursements incurred prior to the Termination Declaration Date by (x) professionals of the estates retained by final order of the Court (which order has not been vacated or stayed, unless the stay has been vacated), including professionals of the Debtors employed under sections 327, 328 or 363 of the Bankruptcy Code ("<u>Estate Professionals</u>") and (y) professionals of a Creditors Committee ("<u>Creditors Committee Professionals</u>"), if any, up to the amount provided for such Creditors Committee Professionals in the Budget (including the reimbursement of expenses allowed by the Bankruptcy Court incurred by a Creditors Committee member in the performance of its duties, but excluding fees and expenses of third party professionals employed by such members and, together with the Estate Professionals and Creditors' Committee Professionals, the "<u>Case Professionals</u>"); and (iii) the allowed and unpaid professional fees, expenses and disbursements under section 327 or 1103(a) of the Bankruptcy Code incurred on or after the Termination Declaration Date, in the aggregate not to exceed $600,000 for Estate Professionals and $50,000 for Creditors Committee Professionals.

(b) <u>Payment of Professional Fees</u>. Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any Case Professionals or shall affect the right of the DIP Agent, the DIP Lenders, the Backstop Provider Group, the Prepetition

First Lien Agent, and/or the Prepetition Second Lien Agent to object to the allowance and payment of such fees and expenses. The DIP Agent and the DIP Lenders shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Case Professionals incurred in connection with the Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Agent or the DIP Lenders, in any way to pay compensation to or to reimburse expenses of any Case Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(c) Payment of Allowed Professional Fees Prior to the Termination Declaration Date. Prior to the occurrence of the Termination Declaration Date, the Debtors shall be permitted to pay allowed fees of Case Professionals, provided that such fees are covered by the Carve-Out Expenses.

(d) Payment of Carve-Out Expenses After Termination Declaration Date. Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any allowed fees of Case Professionals (exclusive of the application of any retainers by any of the Case Professionals) shall permanently reduce the applicable Carve-Out Expenses on a dollar-for-dollar basis. Any funding of the Carve-Out Expenses shall be added to and made a part of the DIP Obligations and secured by the DIP Collateral and otherwise entitled to the protections granted under this Interim Order, the DIP Loan Documents, the Bankruptcy Code, and applicable law.

30. Limitations on the DIP Facility, the DIP Collateral, the Cash Collateral, and the Carve-Out Expenses. The DIP Facility, the DIP Collateral, the Cash Collateral, and the Carve-Out Expenses may not be used in connection with: (a) subject to the Debtors' right to seek an

emergency hearing pursuant to paragraph 24 above, preventing, hindering, or delaying any of the DIP Agent's, the DIP Lenders', the Prepetition Agents', or the Backstop Providers' enforcement or realization upon any of the DIP Collateral once an Event of Default has occurred; (b) using or seeking to use Cash Collateral or selling or otherwise disposing of DIP Collateral without the consent of the DIP Agent acting at the direction of the Required DIP Lenders; (c) for any purpose that is prohibited under the Bankruptcy Code, this Interim Order or the DIP Loan Documents; (d) the funding or payment in any way of any adversary action, suit, arbitration, proceeding, application, motion or other litigation or challenge of any type adverse to the interest of any or all of the DIP Agent, the DIP Lenders, the Prepetition Agents, or the Backstop Providers or their respective rights and remedies under the DIP Loan Documents, this Interim Order, the Final Order, or the Prepetition Credit Documents; (e) except as expressly required by the DIP Loan Documents, this Interim Order, or the Final Order, for the payment of fees, expenses, interest or principal under the Prepetition Credit Documents; (f) to make any distribution under a plan of reorganization in the chapter 11 Cases except as agreed in writing by the Required DIP Lenders; and (g) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body without the prior written consent of the DIP Agent acting at the direction of the Required DIP Lenders; *provided, however*, that the Carve-Out Expenses and such collateral proceeds and loans under the DIP Loan Documents may be used for allowed fees and expenses, in an amount not to exceed $50,000 in the aggregate, incurred solely by the Creditors Committee, if appointed, in investigating the validity, enforceability, perfection, priority, or extent of the Prepetition Liens during the Challenge Period (as defined herein).

31.     <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>.
Nothing in this Interim Order or the DIP Loan Documents shall prejudice the rights of any
parties in interest, including any Creditors Committee, if appointed, to seek to object to or to
challenge the findings, the Debtors' Stipulations, or any other stipulations herein, including, but
not limited to, those in relation to: (a) the validity, extent, priority, or perfection of the mortgage,
security interests, and liens of the Prepetition First Lien Agent with respect to the Prepetition
Collateral, or the Prepetition Second Lien Agent with respect to the Prepetition Collateral; or
(b) the validity, allowability, priority, fully-secured status, or amount of the Prepetition First Lien
Obligations or the Prepetition Second Lien Obligations.   Any party in interest (including a
Creditors Committee, if appointed) must commence, as appropriate, without limitation, any
claim against a Prepetition Agent or a Prepetition Lender in the nature of a setoff, counterclaim,
or defense to the Prepetition Obligations, through counsel to such party in interest, by the earlier
of (i) seventy-five (75) calendar days following the date of entry of this Interim Order or (ii) the
date by which the Court enters an order confirming the Plan (the "<u>Challenge Period</u>").   The
Challenge Period identified in (i) and (ii) above may be extended by order of the Court after
notice and a hearing.  Upon the expiration of such Challenge Period, to the extent not otherwise
waived or barred:  (A) any and all such challenges and objections by any party (including,
without limitation, the Creditors Committee, any chapter 11 trustee, and/or any examiner
appointed in these Cases, and any chapter 7 trustee and/or examiner appointed in any Successor
Case), shall be deemed to be forever waived and barred; (B) all of the Debtors' Stipulations,
waivers, releases, affirmations, and other stipulations as to the priority, extent, and validity of the
claims, liens, and interests of the Prepetition Agents and the Prepetition Lenders that are DIP
Lenders or Backstop Providers of any nature, under the Prepetition Credit Documents or

otherwise incorporated or set forth in this Interim Order, shall be of full force and effect and forever binding upon the Debtors, the Debtors' bankruptcy estates, and all creditors, interest holders, and other parties in interest in these Cases and any Successor Cases; and (C) without further order of the Court, the Prepetition Obligations shall be allowed in full for all purposes in connection with these Cases and any Successor Cases. Upon a timely, successful challenge brought pursuant to this paragraph, the Court may fashion any appropriate remedy. Nothing herein shall or shall be deemed to confer standing on a Creditors Committee or any other party to initiate any action with respect to a Challenge. For the avoidance of doubt, any trustee appointed or elected in these cases shall, until the expiration of the Challenge Period and thereafter for the duration of any Challenge commenced pursuant to this paragraph 31 (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates), shall not, for purposes of such Challenge, be bound by the Debtors' stipulations, waivers, releases and affirmations in this Interim Order.

32.    <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

33.    <u>Section 506(c) Claims</u>.  Subject to entry of a Final Order, no costs or expenses of administration, which have been or may be incurred in the Cases at any time, shall be charged against the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, the Prepetition Second Lien Agent, or the Backstop Providers or any of their respective claims, the DIP Collateral, or the Prepetition Collateral pursuant to Bankruptcy Code sections 105 or 506(c), or otherwise, without the prior written consent, as applicable, of the Required DIP Lenders, Prepetition First Lien Lenders holding in the aggregate at least a majority in principal amount of the claims

arising under the Prepetition First Lien Facility, and Prepetition Second Lien Lenders holding in the aggregate at least a majority in principal amount of the claims arising under the Prepetition Second Lien Facility, and no such consent shall be implied from any other action, inaction, or acquiescence by any such parties.

34.    No Marshaling/Application of Proceeds.  Subject to entry of a Final Order, the DIP Agent, the DIP Lenders, and the Prepetition Agents shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as the case may be, and proceeds shall be received and applied pursuant to the terms of the DIP Loan Documents notwithstanding any other agreement or provision to the contrary, *provided, however*, that nothing herein shall impair the rights of the DIP Agent or DIP Lenders with respect to the DIP Collateral.

35.    Section 552(b).  Subject to entry of a Final Order, the Prepetition Agents and the Backstop Providers shall each be entitled to all of the rights and benefits of Bankruptcy Code section 552(b), and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to any Prepetition Agent or Backstop Provider, with respect to the proceeds, product, offspring, or profits of any of the Prepetition Collateral.

36.    Joint and Several Liability.  Nothing in this Interim Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for the obligations hereunder and in accordance with the terms of the DIP Facility and the DIP Loan Documents.

37.    Discharge Waiver.  The DIP Obligations and the Prepetition Obligations shall not be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the DIP Obligations have been

indefeasibly paid in full in cash on or before the effective date of a confirmed plan of reorganization. None of the Debtors shall propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets or entry of any confirmation order or sale order that is not consistent with the Plan and not conditioned upon the indefeasible payment in full in cash, on or prior to the earliest to occur of the effective date of the Plan and the DIP Termination Date, of all DIP Obligations.

38.  <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not impair or constitute a waiver, expressly or implicitly, of: (a) the DIP Agent's, the DIP Lenders', the Prepetition Agents', and the Backstop Providers' rights to seek any other or supplemental relief, including additional adequate protection, in respect of the Debtors and their assets; (b) any of the rights of any of the DIP Agent, the DIP Lenders, the Prepetition Agents, and/or the Backstop Providers under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases or Successor Cases, conversion of any of the Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (c) subject to the Intercreditor Agreement, any other rights, claims, or privileges (whether legal, equitable, or otherwise) of any of the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, the Prepetition Second Lien Agent, or the Backstop Providers. The consent to the priming of the Prepetition Agents' liens on the Prepetition Collateral by the DIP Liens and the Carve-Out Expenses (a) is limited to the DIP Loans and the Carve-Out Expenses and (b) does not constitute, and shall not be construed as constituting, an acknowledgement or

stipulation by the Prepetition Agents that, absent such consent, their interests in the Prepetition Collateral would be adequately protected pursuant to this Interim Order. Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors', the Creditors Committee's, or any party in interest's right to oppose any of the relief requested in accordance with the first sentence of this paragraph except as expressly set forth in this Interim Order.

39.    No Waiver by Failure to Seek Relief. The delay by or failure of the DIP Agent, the DIP Lenders, any Prepetition Agent, or the Backstop Providers to seek relief or otherwise exercise their respective rights and remedies under this Interim Order, the DIP Loan Documents, the Prepetition Credit Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Agent, the DIP Lenders, the Prepetition Agents, the Backstop Providers, or the Creditors Committee, or any party in interest.

40.    Binding Effect of Interim Order. Immediately upon execution by this Court, the terms and provision of this Interim Order shall be become valid and binding upon and inure to the benefit of the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Agents, the Prepetition Lenders, all other creditors of any of the Debtors, the Creditors Committee or any other court-appointed committee appointed in the Cases, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.

41.    No Modification of Interim Order. Until and unless the DIP Obligations and the Prepetition Obligations have been indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge

by their terms), and all commitments to extend credit under the DIP Facility have been terminated, an Event of Default shall occur if the Debtors seek or consent to, directly or indirectly, without the prior written consent of the Required DIP Lenders, or the DIP Agent at the direction of the Required DIP Lenders, (i) any modification, stay, vacatur, or amendment to this Interim Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising or any kind or nature whatsoever, including, without limitation, any administrative expense of the kind specified in Bankruptcy Code sections 503(b), 507(a), 507(b), or, subject to the entry of the Final Order, 506(c) of the Bankruptcy Code) in any of the Cases or Successor Cases, equal or superior to the DIP Superpriority Claim, Senior Superpriority Claim, or Junior Superpriority Claim, other than the Carve-Out Expenses.   No such consent shall be implied by any other action, inaction, or acquiescence of the DIP Agent or the DIP Lenders.

42.    Survival.   The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered; (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases.   The terms and provisions of this Interim Order, including the claims, liens, security interests, and other protections granted to the DIP Agent, the DIP Lenders, the Prepetition Agents, and the Backstop Providers, pursuant to this Interim Order and/or the DIP Loan Documents, notwithstanding the entry of any such order, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by this Interim Order until, in respect of the DIP Facility, all the DIP Obligations, pursuant to the

DIP Loan Documents and this Interim Order, have been indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP Facility are terminated.  In addition, (y) the terms and provisions of this Interim Order shall continue in full force and effect for the benefit of the Prepetition First Lien Agent and the Backstop Providers notwithstanding the repayment in full of or termination of the DIP Obligations and the Prepetition Second Lien Obligations, and (z) the terms and provisions of this Interim Order shall continue in full force and effect for the benefit of the Prepetition Second Lien Agent and the Backstop Providers notwithstanding the repayment in full of or termination of the DIP Obligations or the Prepetition First Lien Obligations.

43.    <u>Final Hearing</u>.  The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for ~~May~~ April 23, 2014 at 10:00 a.m. before the Honorable Kevin J. Carey, United States Bankruptcy Judge, in Courtroom 5 at the United States Bankruptcy Court for the District of Delaware.  Within two (2) business days following entry of this Interim Order, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "<u>Final Hearing Notice</u>"), together with copies of this Interim Order and the DIP Motion, on:  (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed, prior to such date, a request for notices with this Court; and (c) counsel for the Creditors Committee, if any.  The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than on ~~May~~ April 16, 2014 at 4:00 p.m. (Prevailing Eastern Time), which objections shall be served so as to be received on or before such date by: (i) counsel to the Debtors, (a) Skadden, Arps, Slate, Meagher & Flom, LLP, One Rodney Square,

P.O. Box 636, Wilmington, Delaware 19899-0636, Attn: Anthony Clark, (b) Skadden, Arps, Slate Meagher & Flom, LLP, Four Times Square, New York, NY 10036, Attn: Kenneth S. Ziman and Glenn S. Walter, (c) Pachulski Stang Ziehl & Jones, LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801, Attn: James E. O'Neill, and (d) Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067, Attn: Jeffrey N. Pomerantz; (ii) counsel for the DIP Agent, Cravath, Swaine & Moore, LLP, 825 Eighth Avenue, New York, NY 10019-7475, Attn: Stephanie R. Tumbiolo; (iii) counsel for the DIP Lenders and Backstop Provider Group: (a) Milbank Tweed Hadley & McCloy LLP, 601 S. Flower Street, 30th Floor, Attn: Mark Shinderman and David Zolkin, and (b) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, Wilmington, DE 19801, Attn: Robert J. Dehney; (iii) counsel for the Prepetition First Lien Agent, (a) Katten Muchin & Rosenman LLP, 2029 Century Park East, Suite 2600, Los Angeles, CA 90067-3012, Attn: William Freeman and Jan Cate, (b) Katten Muchin & Rosenman LLP, 575 Madison Avenue, New York, NY 10022-2585, Attn: Karen B. Dine, and (c) Cousins Chipman & Brown LLP, 1007 North Orange Street, Suite 1110, Wilmington, DE 19801, Attn: Scott Cousins; (iv) counsel for the Prepetition Second Lien Agent, (a) Dechert LLP, 1095 Avenue of the Americas, New York, NY 10036, Attn: Allan S. Brilliant and Craig P. Druehl, and (b) Young Conaway Stargatt & Taylor LLP, 1000 North King Street, Wilmington, DE 19801, Attn: Robert S. Brady; (v) counsel to the Creditors Committee, if any; and (vi) the U.S. Trustee.

44.    *Nunc Pro Tunc* Effect of This Interim Order. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution thereof.

45.    <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

46.    <u>ACE Reservation of Rights</u>.  Notwithstanding anything to the contrary in this Interim Order or the DIP Loan Documents, (i) nothing in this Interim Order or the DIP Loan Documents shall alter, modify, impair, subordinate, waive or otherwise affect the rights of ACE American Insurance Company and its affiliates (collectively, "<u>ACE</u>") under insurance policies and related agreements with the Debtors (collectively, the "<u>ACE Insurance Program Agreements</u>") and (ii) the DIP Collateral shall not include, and the DIP Liens, the DIP Superpriority Claim, the Senior Adequate Protection Liens, the Junior Adequate Protection Liens, the Senior Superpriority Claim and Junior Superpriority Claim shall not attach to, or be payable from, any collateral, including, without limitation, cash collateral and letters of credit, held by ACE pursuant to the ACE Insurance Program Agreements until such time that the Debtors' obligations to ACE under the ACE Insurance Program Agreements have been satisfied in full.

*the Debtors and ACE agree that*

SO ORDERED by the Court this 2nd day of April 2014.

_____
THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE