IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ABLEST INC., et al.,[1] | ) | Case No. 14-10717 (KJC) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**Hearing Date:  April 23, 2014 at 10:00 a.m. ET**
**Objection Deadline:  April 16, 2014 at 4:00 p.m. ET**

**DEBTORS' MOTION FOR ORDER (A) AUTHORIZING THE DEBTORS TO
MAKE PAYMENTS IN CONNECTION WITH ENGAGEMENT LETTER TO
PROCURE EXIT FINANCING, (B) GRANTING ADMINISTRATIVE EXPENSE
PRIORITY STATUS TO RELATED FEES AND EXPENSES, AND (C) AUTHORIZING
THE DEBTORS TO PERFORM THEIR OBLIGATIONS THEREUNDER**

The above-captioned debtors and debtors in possession (the "Debtors") in these

chapter 11 cases hereby move (the "Motion") this Court for entry of an order under sections

363(b), 105(a) and 503(b)(1) of title 11 of the United States Code (the "Bankruptcy Code"):  (a)

authorizing the Debtors (i) to make payments to Credit Suisse Securities (USA) LLC (together

with its affiliates, "Credit Suisse") and RBC Capital Markets (together with its affiliates, "RBC"

and together with Credit Suisse, the "Engagement Parties") as joint lead arrangers and

bookrunners in connection with the Debtors' contemplated exit financing as set forth in the letter

agreement dated February 3, 2014 between the Engagement Parties and the Debtors thereto (the

"Engagement Letter"), attached hereto as **Exhibit A**, and (ii) to perform their other obligations

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification numbers are:
Ablest Inc. (8462); Koosharem, LLC (4537); New Koosharem Corporation (9356); Real Time Staffing Services,
Inc. (8189); Remedy Intelligent Staffing, Inc. (0963); Remedy Staffing, Inc. (0080); RemedyTemp, Inc. (0471);
Remedy Temporary Services, Inc. (7385); RemX, Inc. (7388); Select Corporation (6624); Select Nursing Services,
Inc. (5846); Select PEO, Inc. (8521); Select Personnel Services, Inc. (8298); Select Specialized Staffing, Inc. (5550);
Select Temporaries, Inc. (7607); Select Trucking Services, Inc. (5722); Tandem Staffing Solutions, Inc. (5919);
Westaff, Inc. (6151); Westaff (USA), Inc. (5781); Westaff Support, Inc. (1039); RemSC LLC (8072); and RemUT
LLC (0793).  The mailing address for each of the Debtors is:  3820 State Street, Santa Barbara, CA 93105.

(including indemnification obligations) under the Engagement Letter, (b) according administrative expense priority status to fees and expenses incurred by the Engagement Parties under the Engagement Letter; and (c) authorizing the Debtors to take any necessary action as contemplated therein as may be necessary in the Debtors' judgment to obtain exit financing.

Because the Engagement Parties view the fees payable to them under the Engagement Letter as sensitive and confidential information, the Debtors have filed concurrently herewith a motion seeking authorization to file an unredacted version of the Engagement Letter under seal. The Engagement Parties have consented to the Engagement Letter being shared with the United States Trustee for the District of Delaware, any counsel for a statutory committee of unsecured creditors that may be appointed, and the Court. The publicly-filed redacted version of the Engagement Letter redacts the detailed fee provisions set forth in the Engagement Letter.

In support of the Motion, the Debtors respectfully represent as follows:

## Jurisdiction and Venue

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

2.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and the Court may enter a final order consistent with Article III of the United States Constitution.

3.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    The statutory predicates for the relief requested herein are sections 363(b), 105(a) and 503(b)(1) of the Bankruptcy Code.

## Background

### A.    General

5.    On April 1, 2014 (the "Petition Date"), the Debtors commenced these cases (the "Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

6.    The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.    No official committee has been appointed by the Office of the United States Trustee.

8.    Certain of the Debtors were founded in Santa Barbara, California, in 1985, and today the Debtors are a leading national provider of temporary staffing services in the United States and are the largest provider of temporary staffing services in California.  Through a network of company-owned and franchise agent offices, the Debtors offer a wide range of temporary staffing solutions across many service categories, including light industrial, clerical, accounting and finance, and information technology.  The Debtors' customers include Fortune 1000 companies as well as small and mid-sized local and regional companies that operate in a variety of industries, such as manufacturing, services, retail, and banking as well as governmental agencies.

3

9.      The Debtors provide these services on temporary, "temp-to-hire," and project-by-project bases through a network of 312 offices in 48 states. As of the Petition Date, the Debtors had 167 company-owned offices and 145 independently managed franchise agent offices. The Debtors currently employ approximately 75,000 full and part time employees in hourly, salaried, supervisory, management, and sales positions (the "Associates"). In addition, the Debtors employ approximately 1,500 corporate and branch employees (together with the Associates, the "Employees") that manage the work assignments of the Associates. Most of the Debtors' Employees work on assignment at over 10,000 client companies. During the fiscal year ended December 29, 2013, the Debtors placed approximately 300,000 temporary Employees and provided staffing services to approximately 11,500 customers. For the 2013 fiscal year, the Debtors had approximately $2 billion in gross revenue.

10.     The factual background relating to the Debtors' commencement of these Cases is set forth in detail in the *Declaration of Randall S. Eisenberg in Support of First Day Motions*, filed on the Petition Date and incorporated herein by reference.

**B.     The Prepetition Restructuring**

11.     On the Petition Date, the Debtors filed their *Joint Plan of Reorganization for Ablest Inc., et al.* (the "Plan"). The Plan is a "prepackaged" reorganization plan. The Plan is supported by the vast majority of the Claims under that certain First Lien Credit and Guaranty Agreement, dated as of July 12, 2007 (as amended, supplemented or otherwise modified prior to the date hereof, and including all exhibits and other ancillary documentation in respect thereof, "Prepetition First Lien Credit Agreement" and the lenders party thereto, the "Prepetition First

4

Lien Lenders"), and the holders of the majority of the Claims under that certain Second Lien

Credit and Guaranty Agreement, dated as of July 12, 2007 (as amended, supplemented or

otherwise modified prior to the date hereof, and including all exhibits and other ancillary

documentation in respect thereof, the "Prepetition Second Lien Credit Agreement" and the

lenders party thereto, the "Prepetition Second Lien Lenders"), as well as the Debtors' principal

equity holder (the "Consenting Equity Holder").

   12. The Debtors solicited and obtained, prior to commencing these Cases and

then following the Petition Date, *nearly unanimous* acceptances of the Plan by the Prepetition

First Lien Lenders and the Prepetition Second Lien Lenders, which constitute the only impaired

creditor classes under the Plan (other than holders of prepetition warrants). This Court has set

May 5, 2014 as the date of the hearing to consider confirmation of the Plan.

   13. The Plan provides for a significant deleveraging of the Debtors' balance

sheet and the infusion of $225 million of new equity, which should greatly enhance the Debtors'

ability to reorganize successfully and expeditiously. The Plan provides for the full reinstatement

of the legal, equitable and contractual rights of Holders of general unsecured claims and payment

in full of such claims on the Effective Date or when otherwise due accordingly.

**C.**  **The Exit Financing and Engagement Letter**

   14. Distributions under the Plan will be funded through a $225 million Rights

Offering of New Common Stock and new exit financing consisting of: (a) a $350 million senior

secured term loan facility (the "Term Facility") and (b) a $120 million senior secured asset-based

revolving facility (the "Revolving Facility" and together with the Term Facility, the "Exit

Financing"). The proceeds of the Exit Financing will be used to: (a) consummate the transactions contemplated by the Plan and (b) provide working capital and funding for general corporate purposes of the Debtors.

15.    As set forth in the Disclosure Statement, the Debtors have engaged Credit Suisse and RBC to arrange the Exit Financing. The terms of the engagement are set forth in Engagement Letter.

16.    Although the Engagement Letter is dated February 3, 2014, the Engagement Parties commenced work for the Debtors prior to that date by: (a) meeting with the Debtors and their representatives and analyzing the Debtors' financial performance in order to understand the borrowing needs of the company, (b) contacting rating agencies in connection with the anticipated Exit Financing, (c) preparing informational materials for potential funding sources, and (d) beginning the process of contacting prospective lenders to consider the opportunity.

17.    In consideration for the services provided and contemplated under the Engagement Letter, the Engagement Parties are entitled to fees upon closing of the proposed Exit Financing, as set forth in the Engagement Letter (filed under seal).

18.    The Engagement Letter[2] contains the following relevant provisions:

(a)    **Arrangement Fees.** Upon consummation of the Term Loan Facility and/or Revolving Facility, as applicable, the Engagement Letter requires

---

[2]  Capitalized terms used in the summary of the Engagement Letter that are not defined herein shall have the meaning given in the Engagement Letter. To the extent that any inconsistencies exist between the summary set forth herein and the Engagement Letter, the terms and conditions of the Engagement Letter shall govern.

the Debtors to pay to each Engagement Party the Arrangement Fees set forth in the Engagement Letter upon the terms set forth therein.

(b)    **Agent Fees.** The Engagement Letter contemplates that separate agent fee letters will be executed between the Debtors and the Engagement Parties as to the Exit Financing. Such fee letters have not yet been agreed upon by the parties.

(c)    **Participation Fees.** The Engagement Letter contains an acknowledgement by the Debtors that further Participation Fees may be payable to the lenders under the Exit Financing in connection with the syndication of the facilities.

(d)    **Exclusivity.** The Engagement Letter provides that the Debtors agree to appoint the Engagement Parties as joint lead arrangers and bookrunners as to any Alternate Transaction similar in nature and scope with the Exit Financing within one year from the date of the Engagement Letter.

(e)    **Expense Reimbursement**. The Engagement Letter requires the Debtors to reimburse each Engagement Party and its affiliates on demand for all out-of-pocket fees legal and other fees and expenses incurred by or on behalf of the Engagement Parties in connection with the Exit Financing. The Engagement Letter requires the Debtors to maintain a deposit (the "Deposit") on account of such fees and expenses. In the event that the Deposit is drawn upon and reduced to below $200,000, the Debtors agree to provide additional funds to the

7

Engagement Parties, such that the amounts constituting the Deposit will not be less than $50,000.

(f)     **Indemnification.**  The Engagement Letter requires the Debtors to indemnify and hold harmless the Engagement Parties, their affiliates and their respective officers, directors, employees, agents, advisors, representatives, controlling persons, members and successors and assigns (each, an "<u>Indemnified Person</u>") from and against all losses, claims, damages and liabilities arising from or related to the Exit Financing, except for claims judicially determined to have resulted primarily from bad faith, gross negligence or willful misconduct.

**Relief Requested**

19.     By this Motion, the Debtors seek entry of an order under sections 363(b), 105(a) and 503(b)(1) of the Bankruptcy Code:  (a) authorizing the Debtors (i) to make required payments of fees and expenses under the Engagement Letter to the Engagement Parties and (ii) to perform their other obligations (including indemnification obligations) under the Engagement Letter; (b) granting administrative expense priority status to fees and expenses incurred in connection therewith; and (c) authorizing the Debtors to take any and all actions as may be contemplated by the Engagement Letter relating to the Exit Financing.

**Basis for Relief Requested**

A.    **The Debtors' Contemplated Entry Into the Exit Financing Upon the Effective Date of the Plan and Performance of Their Obligations Under the Engagement Letter is Within the Debtors' Sound Business Judgment**

20.    Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). The proposed use, sale or lease of property of the estate, other than in the ordinary course of business, should generally be approved if the debtor employed its reasonable business judgment in determining the use to be made of the property. *See, e.g., Official Comm. of Unsecured Creditors v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143, 145 (2d Cir. 1992) (affirming the decision of the bankruptcy court); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) (holding that "some articulated business justification" is required to approve the use, sale or lease of property of the estate under section 363(b) of the Bankruptcy Code); *In re Continental Airlines, Inc.*, 780 F. 2d 1223, 1226 (5th Cir. 1986) (a transaction involving property of the estate generally should be approved so long as the trustee can demonstrate "some articulated business justification for using, selling, or leasing property outside of the ordinary course of business").

21.    To determine whether the business judgment test is met, the court "is required to examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Exide Techs, Inc.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006), *rev'd on other grounds*, 607 F.3d 957 (3d Cir. 2010); *see also In re Helm*, 335 B.R. 528, 538-39

(Bankr. S.D.N.Y. 2006). Provided that a debtor's business judgment does not run afoul of the provisions of and policies underlying the Bankruptcy Code, courts grant debtors in possession deference in accordance therewith. *See, e.g., In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) (holding that "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct"); *see also In re Integrated Res.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992). If the debtor provides a valid business justification for its proposed action, there is a strong presumption "that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Id.* (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

22.      In the present case, the Debtors have sound business reasons for procuring the Exit Financing through the Plan and incurring obligations related thereto. The Exit Financing is necessary for the Debtors to successfully emerge from chapter 11 and to have sufficient funding to implement the Plan and, therefore, to maximize the value of their estates for the benefit of creditors. In order to obtain the Exit Financing, the Debtors require the services of the Engagement Parties on the terms set forth in the Engagement Letter. The terms set forth in the Engagement Letter are the product of arms-length, good faith negotiations between the Debtors and the Engagement Parties. Further, the Engagement Parties have a wealth of experience procuring financing and are uniquely qualified in these Cases given the extent of knowledge and experience that the Engagement Parties already have with the Debtors.

10

23.     The Debtors, in consultation with their financial advisors, believe that the Engagement Letter reflects fair and competitive market terms and conditions.  Accordingly, the Debtors request authorization to perform their obligations thereunder, and to pay the required fees and other expenses in connection therewith.  Absent such approval, the Debtors will be hard-pressed to maintain their proposed emergence time-table and may be forced to obtain exit financing on significantly less favorable terms.

24.     Finally, section 105(a) of the Bankruptcy Code provides, in relevant part, that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

25.     Based on the foregoing, the Debtors respectfully submit that it is in the best interest of the Debtors' estates, their creditors and other parties in interest for the Court to authorize them to perform all actions as may be required under the Engagement letter.

**B.      The Fees and Expenses Incurred in Connection with the Engagement Letter Should be Accorded Administrative Expense Priority Status**

26.     Section 503(b)(1) of the Bankruptcy Code provides that administrative expense priority status should be accorded to fees and expenses that are "necessary costs and expenses of preserving the estate."  11 U.S.C. § 503(b)(1)(A).  The Debtors must secure the Exit Financing in order to consummate the transactions contemplated under the Plan and successfully exit chapter 11 bankruptcy.  If the Debtors are not permitted to pay the fees and expenses payable to the Engagement Parties under the Engagement Letter, they will be unable to secure the Exit Financing, as presently contemplated, to the detriment of the Debtors' estates, their

11

creditors, and other parties in interest. Therefore, the fees and expenses incurred in connection with the Engagement Letter should be accorded administrative expense priority status under section 503(b)(1) of the Bankruptcy Code.

### No Prior Request

No prior motion for the relief requested herein has been made to this or any other Court. Pursuant to local Bankruptcy Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to the Motion if it is determined that this Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

### Notice

27.    Notice of this Motion has been provided by the Debtors, whether by facsimile, email, overnight courier, or hand delivery, to certain parties in interest, or, in lieu thereof, to their counsel, if known, including: (i) the United States Trustee for the District of Delaware; (ii) the United States Attorney for the District of Delaware; (iii) the parties included on the Debtors' list of thirty-five (35) largest unsecured creditors on a consolidated basis; (iv) counsel to the DIP Agent; (v) counsel to the DIP Lenders and the Backstop Provider Group; (vi) counsel to the Prepetition Agents; and (vii) all parties entitled to notice pursuant to Local Rule 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

12

WHEREFORE, the Debtors respectfully request this Court enter an order, substantially in the form annexed hereto, granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated:  April 4, 2014

PACHULSKI STANG ZIEHL & JONES LLP

*James E. O'Neill*

Jeffrey N. Pomerantz (CA Bar No. 143717)
Debra I. Grassgreen (CA Bar No. 169978)
James E. O'Neill (Bar No. 4042)
Maxim B. Litvak (CA Bar No. 215852)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400
E-mail:        jpomerantz@pszjlaw.com
                   dgrassgreen@pszjlaw.com
                   joneill@pszjlaw.com
                   mlitvak@pszjlaw.com

[Proposed] Co-Counsel to Debtors and
Debtors in Possession