## **Annex 3**

**Intercreditor Agreement**

INTERCREDITOR AGREEMENT

dated as of

_____, 2014

between

ROYAL BANK OF CANADA,
as ABL Agent

and

CREDIT SUISSE AG,
as Term Loan Agent

# Table of Contents

                                                                      **Page**

Section 1.    Definitions; Interpretation ................................................................... 1

    1.1    Definitions. ............................................................................................ 1
    1.2    Terms Generally. ................................................................................. 12

Section 2.    Lien Priorities ................................................................................... 13

    2.1    Acknowledgment of Liens. ................................................................ 13
    2.2    Relative Priorities. ............................................................................. 13
    2.3    Prohibition on Contesting Liens. ....................................................... 15
    2.4    New Liens. .......................................................................................... 15

Section 3.    Enforcement ...................................................................................... 15

    3.1    Exercise of Rights and Remedies. ..................................................... 15
    3.2    Release of Second Priority Liens. ...................................................... 19
    3.3    Insurance and Condemnation Awards. ............................................... 21

Section 4.    Payments ............................................................................................ 22

    4.1    Application of Proceeds. .................................................................... 22
    4.2    Payments Over. ................................................................................... 23

Section 5.    Bailee for Perfection ......................................................................... 23

    5.1    Each Agent as Bailee. ........................................................................ 23
    5.2    Transfer of Pledged Collateral. ......................................................... 24

Section 6.    Insolvency Proceedings ..................................................................... 26

    6.1    General Applicability. ........................................................................ 26
    6.2    Use of Cash Collateral; Bankruptcy Financing. ............................... 27
    6.3    Relief from the Automatic Stay. ........................................................ 29
    6.4    Adequate Protection. .......................................................................... 30
    6.5    Reorganization Securities. ................................................................. 32
    6.6    Separate Grants of Security and Separate Classes. ........................... 32
    6.7    Asset Dispositions. ............................................................................. 33
    6.8    Certain Waivers as to Section 1111(b)(2) of Bankruptcy Code. ........... 34
    6.9    Avoidance Issues. ............................................................................... 34
    6.10    Other Bankruptcy Laws. ................................................................... 34
    6.11    Post-Petition Claims. ........................................................................ 34

Section 7.    Term Loan Lenders' Purchase Option ............................................... 34

    7.1    Exercise of Option. ............................................................................ 35
    7.2    Pro Rata Offer. ................................................................................... 35
    7.3    Purchase and Sale. ............................................................................. 35
    7.4    Payment of Purchase Price. ............................................................... 35
    7.5    Representations Upon Purchase and Sale. ......................................... 36

7.6     Notice from ABL Agent Prior to Enforcement Action...............................36

Section 8.    ABL Lenders' Purchase Option .........................................................37

8.1     Exercise of Option .................................................................................37
8.2     Pro Rata Offer. ......................................................................................37
8.3     Purchase and Sale. .................................................................................37
8.4     Payment of Purchase Price......................................................................38
8.5     Representations Upon Purchase and Sale. ...............................................38
8.6     Notice from ABL Agent Prior to Enforcement Action............................38

Section 9.    Access and Use of Term Loan Priority Collateral .............................39

9.1     Access and Use Rights of ABL Agent.....................................................39
9.2     Responsibilities of ABL Secured Parties. ...............................................40
9.3     Grantor Consent. ....................................................................................41

Section 10.    Reliance; Waivers; Etc. ...................................................................41

10.1     Reliance..................................................................................................41
10.2     No Warranties or Liability. .....................................................................41
10.3     No Waiver of Lien Priorities. ..................................................................42
10.4     Obligations Unconditional. .....................................................................43
10.5     Amendments to ABL Documents .............................................................43
10.6     Amendments to Term Loan Documents ....................................................44

Section 11.    Miscellaneous ...................................................................................44

11.1     Conflicts.................................................................................................44
11.2     Continuing Nature of this Agreement; Severability. ................................44
11.3     Refinancing. ...........................................................................................45
11.4     Amendments; Waivers.............................................................................46
11.5     Subrogation. ...........................................................................................46
11.6     Notices. ..................................................................................................47
11.7     Further Assurances..................................................................................48
11.8     Consent to Jurisdiction; Waiver of Jury Trial..........................................48
11.9     Governing Law. ......................................................................................49
11.10     Binding on Successors and Assigns.........................................................49
11.11     Specific Performance. .............................................................................49
11.12     Section Titles; Time Periods....................................................................49
11.13     Counterparts. ..........................................................................................50
11.14     Authorization. .........................................................................................50
11.15     No Third Party Beneficiaries. ..................................................................50
11.16     Additional Grantors. ...............................................................................50

# INTERCREDITOR AGREEMENT

THIS INTERCREDITOR AGREEMENT, dated as of _____, 2014, is by and between Royal Bank of Canada, in its capacity as ABL Agent (as hereinafter defined) pursuant to the ABL Agreement (as hereinafter defined) acting for and on behalf of the ABL Secured Parties (as hereinafter defined), and Credit Suisse AG, in its capacity as Term Loan Agent (as hereinafter defined) pursuant to the Term Loan Agreement (as hereinafter defined) acting for and on behalf of the Term Loan Secured Parties (as hereinafter defined).

## W I T N E S S E T H:

WHEREAS, [New Koosharem Corporation, a Delaware corporation] ("Holdings"), Koosharem, LLC, a California limited liability company (the "Company"), and the other subsidiaries of Holdings set forth on Exhibit A hereto, as borrowers, have entered into a secured revolving credit facility with ABL Agent and the lenders and other parties for whom it is acting as agent as set forth in the ABL Agreement (as hereinafter defined) pursuant to which such lenders have made and from time to time may make loans and provide other financial accommodations to such borrowers which are guaranteed by certain other subsidiaries and affiliates of the Company and secured by certain of the assets of the Grantors as hereinafter defined;

WHEREAS, the Company, as borrower, and the other Grantors, as guarantors, have entered into a secured term loan facility with Term Loan Agent and the lenders and other parties for whom it is acting as agent as set forth in the Term Loan Agreement (as hereinafter defined) pursuant to which such lenders have made term loans to the Company which are guaranteed by the other Grantors and secured by certain of the assets of Grantors; and

WHEREAS, ABL Agent, for itself and on behalf of the other ABL Secured Parties, and Term Loan Agent, for itself and on behalf of the other Term Loan Secured Parties, desire to enter into this Agreement (as hereinafter defined) to (i) confirm the relative priority of the security interests of ABL Agent and Term Loan Agent in the assets and properties of Grantors, (ii) provide for the orderly sharing among the ABL Secured Parties and the Term Loan Secured Parties, in accordance with such priorities, of proceeds of such assets and properties upon any foreclosure thereon or other disposition thereof and (iii) address related matters.

NOW, THEREFORE, in consideration of the foregoing, the mutual covenants and obligations herein set forth and for other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

Section 1.    **Definitions; Interpretation**

1.1    Definitions.  All terms defined in the UCC and not defined in this Agreement have the meanings specified in the UCC.  As used in this Agreement, the following terms have the meanings specified below:

"<u>ABL Agent</u>" shall mean Royal Bank of Canada, in its capacity as administrative and collateral agent pursuant to the ABL Documents acting for and on behalf of the other ABL Secured Parties, and any successor or permitted replacement agent.

"<u>ABL Agreement</u>" shall mean the Credit Agreement, dated of even date herewith, by and among Grantors, ABL Agent and ABL Lenders, as the same now exists or may hereafter be amended, modified, supplemented, extended, renewed, restated, refinanced or otherwise replaced in accordance with the terms of this Agreement.

"<u>ABL Bank Products</u>" shall mean any service or facility extended to any Grantor by an ABL Bank Product Provider including: (a) credit cards, (b) debit cards, (c) purchase cards, (d) credit card, debit card and purchase card processing services, (e) treasury, cash management or related services (including the Automated Clearing House processing of electronic funds transfers through the direct Federal Reserve Fedline system), (f) cash management, including controlled disbursement, accounts or services, and (g) return items, netting, overdraft and interstate depositary network services.

"<u>ABL Bank Product Agreement</u>" shall mean those agreements entered into from time to time by any Grantor with an ABL Bank Product Provider in connection with the obtaining of any of the ABL Bank Products.

"<u>ABL Bank Product Obligations</u>" shall mean all obligations, liabilities, contingent reimbursement obligations, fees, and expenses owing by any Grantor to an ABL Bank Product Provider pursuant to or evidenced by the ABL Bank Product Agreements and irrespective of whether for the payment of money, whether direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising, and including all such amounts that any Grantor is obligated to reimburse to an ABL Bank Product Provider as a result of such Person purchasing participations or executing indemnities or reimbursement obligations with respect to the ABL Bank Products provided to any Grantor pursuant to the ABL Bank Product Agreements.

"<u>ABL Bank Product Provider</u>" shall mean a Cash Management Bank as defined in the ABL Agreement as in effect on the date hereof.

"<u>ABL Cap</u>" shall mean $225,000,000; <u>provided</u>, <u>that</u>, if an ABL DIP Financing is provided in accordance with the terms of Section 6.2(a), the ABL Cap shall be $250,000,000.

"<u>ABL Cash Collateral</u>" shall have the meaning set forth in Section 6.2 hereof.

"<u>ABL Debt</u>" shall mean all "Obligations" as such term is defined in the ABL Agreement, including, obligations, liabilities and indebtedness of every kind, nature and description owing by any Grantor to any ABL Secured Party, including principal, interest, charges, fees, premiums, indemnities and expenses, however evidenced, whether as principal, surety, endorser, guarantor or otherwise, arising under any of the ABL Documents, ABL Bank Product Obligations, and ABL Hedge Obligations, in each case whether now existing or hereafter arising, whether arising before, during or after the initial or any renewal or replacement term of the ABL Documents or after the commencement of any case with respect to any Grantor under the Bankruptcy Code or any other Bankruptcy Law or any other Insolvency Proceeding (and including, any principal, interest, fees, costs, expenses and other amounts which would accrue and become due but for the

commencement of such case, whether or not such amounts are allowed or allowable in whole or in part in such case or similar proceeding), whether direct or indirect, absolute or contingent, joint or several, due or not due, primary or secondary, liquidated or unliquidated, secured or unsecured; <u>provided</u>, <u>that</u>, Excess ABL Debt shall not constitute ABL Debt.

"<u>ABL DIP Financing</u>" shall have the meaning set forth in Section 6.2 hereof.

"<u>ABL Documents</u>" shall mean, collectively, the ABL Agreement and all agreements, documents and instruments at any time executed and/or delivered by any Grantor or any other Person to, with or in favor of any ABL Secured Party in connection therewith or related thereto, as all of the foregoing now exist or may hereafter be amended, modified, supplemented, extended, renewed, restated, refinanced, replaced or restructured (in whole or in part and including any agreements with, to or in favor of any other lender or group of lenders, or agent of any such other lender or group of lenders, that at any time refinances, replaces or succeeds to all or any portion of the ABL Debt) in accordance with the terms of this Agreement.

"<u>ABL Event of Default</u>" shall mean any "Event of Default" as defined in the ABL Agreement.

"<u>ABL Hedge Obligations</u>" shall mean the due and punctual payment and performance of all obligations of each Grantor under each Hedging Agreement (other than any Excluded Swap Obligations) that is entered into with any ABL Hedge Provider if the Company designates such ABL Hedge Provider as an ABL Secured Party with respect to such Hedging Agreement in a written notice to the ABL Agent at the time or promptly after such Hedging Agreement is entered into (or, with respect to any such Hedging Agreement in effect on the Closing Date, on or prior to the Closing Date).

"<u>ABL Hedge Provider</u>" shall mean a Hedge Bank as defined in the ABL Agreement as in effect on the date hereof.

"<u>ABL Lenders</u>" shall mean, collectively, any person party to the ABL Documents as lender (and including any other lender or group of lenders that at any time refinances, replaces or succeeds to all or any portion of the ABL Debt or is otherwise party to the ABL Documents as a lender); sometimes being referred to herein individually as a "ABL Lender".

"<u>ABL Priority Collateral</u>" shall mean the Collateral described on <u>Annex A</u> hereto.

"<u>ABL Purchase Event</u>" shall have the meaning set forth in Section 8.1 hereof.

"<u>ABL Secured Parties</u>" shall mean, collectively, (a) ABL Agent, (b) the ABL Lenders, (c)the issuing bank or banks of letters of credit or similar or related instruments under the ABL Agreement, (d) each other person to whom any of the ABL Debt (including ABL Debt constituting ABL Bank Product Obligations owing to any ABL Bank Product Provider or ABL Hedge Obligations owing to any ABL Hedge Provider) is owed and (e) the successors, replacements and assigns of each of the foregoing; sometimes being referred to herein individually as a "ABL Secured Party".

"<u>Access Period</u>" shall have the meaning set forth in Section 9.1(b) hereof.

"Additional Term Debt" shall have the meaning set forth in Section 11.4(b) hereof.

"Affiliate" shall mean, with respect to any Person, (i) any other Person that directly or indirectly controls such Person, (ii) any other Person which is controlled by or is under common control with such controlling Person and (iii) in the case of an individual, the parents, descendants, siblings and spouse of such individual.  As used in this definition, the term "*control*" of a Person shall mean the possession of the power to vote ten percent (10%) or more of any class of voting securities of such Person or to direct or cause the direction of the management or policies of such Person, whether through the ownership of voting securities, by contract or otherwise.

"Agents" shall mean, collectively, ABL Agent and Term Loan Agent, sometimes being referred to herein individually as an "Agent".

"Agreement" shall mean this Intercreditor Agreement, as the same now exists or may hereafter be amended, amended and restated, modified, supplemented, extended, renewed, restated or replaced from time to time in accordance with the terms hereof.

"Bankruptcy Code" shall mean the United States Bankruptcy Code, being Title 11 of the United States Code, as the same now exists or may from time to time hereafter be amended, modified, recodified or supplemented.

"Bankruptcy Law" shall mean the Bankruptcy Code, the Bankruptcy and Insolvency Act of Canada, the Companies Creditors Arrangement Act of Canada, the Companies' Creditors Arrangement Act of Canada, the Winding Up and Restructuring Act of Canada and all other liquidation, conservatorship, bankruptcy, assignment for the benefit of creditors, moratorium, rearrangement, receivership, insolvency, reorganization, or similar debtor relief laws of the United States or other applicable jurisdictions from time to time in effect and affecting the rights of creditors generally and includes all applicable orders and rulings issued thereunder.

"Borrowers" shall mean, collectively, (a) the Company, (b) for purposes of the ABL Agreement, the subsidiaries or affiliates of the Company set forth on Exhibit A hereto, (c) any other person that at any time after the date hereof becomes a party to the ABL Agreement or the Term Loan Agreement as a Borrower, and (d) their respective successors and assigns; sometimes being referred to herein individually as a "Borrower".

"Business Day" shall mean any day other than a Saturday, Sunday or day on which banks in New York City (or Toronto in the case of any Grantor that is not a Domestic Grantor) are authorized or required by law to close.

"Collateral" shall mean all of the property and interests in property, real or personal, tangible or intangible, now owned or hereafter acquired by any Grantor in or upon which a Lien has been granted (or has been purported to be granted) to secure any ABL Debt or Term Loan Debt.

"Commodity Exchange Act" shall mean the Commodity Exchange Act (7 U.S.C. § 1 et seq.) and any successor statute, and any rule, regulation or order promulgated thereunder, in each case as amended from time to time.

"Company" shall have the meaning set forth in the introductory statements hereto.

"Discharge of ABL Debt" shall mean, subject to Sections 6.9 and 11.3 hereof:

(a)    the payment in full in cash of the principal and interest (including any interest which would accrue and become due but for the commencement of an Insolvency Proceeding, whether or not such amounts are allowed or allowable in whole or in part in such case) constituting ABL Debt;

(b)    the payment in full in cash of all other ABL Debt that is due and payable or otherwise accrued and owing at or prior to the time such principal and interest are paid (including any such amounts which would accrue and become due but for the commencement of an Insolvency Proceeding, whether or not such amounts are allowed or allowable in whole or in part in such case), other than obligations described in clause (c) below;

(c)    (i) the delivery to ABL Agent, or at ABL Agent's option, each Issuing Lender (as defined in the ABL Agreement) of cash collateral, or at ABL Agent's option, the delivery to ABL Agent (or at its option, each Issuing Lender) of a letter of credit payable to ABL Agent (or at ABL Agent's option, such Issuing Lender) issued by a bank reasonably acceptable to ABL Agent (or if issued to such Issuing Lender, a bank reasonably acceptable to such Issuing Lender) in form and substance reasonably satisfactory to ABL Agent (or if issued to such Issuing Lender, in form and substance reasonably acceptable to such Issuing Lender), in either case in respect of letters of credit, banker's acceptances or similar or related instruments issued under the ABL Documents (in such amount as required by the ABL Documents but not to exceed one hundred five percent (105%) of the amount of such letters of credit, banker's acceptances or similar or related instruments), (ii) the delivery of cash collateral in respect of ABL Bank Product Obligations or ABL Hedge Obligations owing to any ABL Secured Party (or, at the option of the ABL Secured Party with respect to such ABL Bank Product Obligations or ABL Hedge Obligations, the termination of the applicable Hedging Agreements, ABL Bank Product Agreement or cash management or other arrangements and the payment in full in cash of the ABL Debt due and payable in connection with such termination or the execution and implementation of alternative arrangements satisfactory to the applicable ABL Secured Party), and (iii) the delivery of cash collateral to the ABL Agent, or at ABL Agent's option, the delivery to ABL Agent of a letter of credit payable to ABL Agent issued by a bank reasonably acceptable to ABL Agent in form and substance reasonably satisfactory to ABL Agent, in respect of continuing obligations of ABL Agent and ABL Lenders under control agreements and other contingent ABL Debt for which a claim or demand for payment has been made at such time or in respect of matters or circumstances known to an ABL Secured Party at the time, of which such ABL Secured Party has informed the ABL Agent and which are reasonably expected to result in any loss, cost, damage or expense (including attorneys' fees and legal expenses) to any ABL Secured Party for which such ABL Secured Party is entitled to indemnification by any Grantor; and

(d)    the termination of the commitments of the ABL Lenders and the financing arrangements provided by ABL Agent and the ABL Lenders to Grantors under the ABL Documents.

"Discharge of Term Loan Debt" shall mean, subject to Sections 6.9 and 11.3 hereof:

(a)     the payment in full in cash of the principal and interest (including any interest which would accrue and become due but for the commencement of an Insolvency Proceeding, whether or not such amounts are allowed or allowable in whole or in part in such case) constituting Term Loan Debt;

(b)     the payment in full in cash of all other Term Loan Debt that is due and payable or otherwise accrued and owing at or prior to the time such principal and interest are paid (including any such amounts which would accrue and become due but for the commencement of an Insolvency Proceeding, whether or not such amounts are allowed or allowable in whole or in part in such case), other than obligations described in clause (c) below;

(c)     (i) the delivery of cash collateral in respect of Term Loan Hedge Obligations or Term Loan Bank Product Obligations owing to any Term Loan Secured Party (or, at the option of the Term Loan Secured Party with respect to such Term Loan Hedge Obligations or Term Loan Bank Product Obligations, the termination of the applicable Hedging Agreements, the Term Loan Bank Product Agreement or cash management or other arrangements and the payment in full in cash of the Term Loan Debt due and payable in connection with such termination or the execution and implementation of alternative arrangements satisfactory to the applicable Term Loan Secured Party), and (ii) the delivery to Term Loan Agent of cash collateral, or at Term Loan Agent's option, the delivery to Term Loan Agent of a letter of credit payable to Term Loan Agent issued by a bank reasonably acceptable to Term Loan Agent and in form and substance reasonably satisfactory to Term Loan Agent, in either case in respect of contingent Term Loan Debt for which a claim or demand for payment has been made at such time or in respect of matters or circumstances known to a Term Loan Secured Party at the time, of which such Term Loan Secured Party has informed the Term Loan Agent and which are reasonably expected to result in any loss, cost, damage or expense (including attorneys' fees and legal expenses) to any Term Loan Secured Party for which such Term Loan Secured Party is entitled to indemnification by any Grantor; and

(d)     the termination of the commitments of the Term Loan Lenders and the financing arrangements provided by Term Loan Agent and the Term Loan Lenders to Grantors under the Term Loan Documents.

"Disposition" or "Dispose" shall mean the sale, transfer or other disposition of any Property of any Person (including any sale and leaseback transaction, the sale of any Equity Interest owned by such Person and any issuance of Equity Interest by any subsidiary of such Person to any other Person).

"Domestic Grantor" shall mean any Grantor that is organized under the laws of any political subdivision of the United States.

"Enforcement Expenses" shall mean all costs, expenses or fees (including fees incurred by any Agent or any attorneys or other agents or consultants retained by such Agent) that any Agent or any other Secured Party (in the case of any other Secured Party, to the extent such costs, expenses or fees are reimbursable under the terms of the ABL Agreement or the Term

Loan Agreement, as applicable) may suffer or incur after the occurrence of an Event of Default on account or in connection with (a) the repossession, storage, repair, appraisal, insuring, completion of the manufacture of, preparing for sale, advertising for sale, selling, collecting or otherwise preserving or realizing upon any Collateral, (b) the settlement or satisfaction of any prior Lien or other encumbrance upon any Collateral or (c) the enforcement of any of the ABL Documents or the Term Loan Documents, as the case may be.

"Equity Interests" shall mean shares of capital stock, partnership interests, membership interests in a limited liability company, beneficial interests in a trust or other equity interests in any Person, and any option, warrant or other right entitling the holder thereof to purchase or otherwise acquire any such equity interest (excluding any agreement for the purchase of the equity interests of a Subsidiary).

"Event of Default" shall mean, an ABL Event of Default or a Term Loan Event of Default, as the case may be.

"Excess ABL Debt" shall mean the amount equal to: (a) the sum of: (i) the portion of the principal amount of the loans outstanding under the ABL Agreement, plus (ii) the undrawn amount of all outstanding letters of credit issued pursuant to the ABL Agreement, plus (iii) the unreimbursed amount of all draws under such letters of credit that, in the aggregate for amounts described in clauses (i), (ii) and (iii), is in excess of the ABL Cap, plus (b) without duplication, the portion of accrued and unpaid interest and fees on account of such portion of the loans and letters of credit described in clause (a); provided, that, interest, fees, costs and expenses (excluding the interest and fees described in clause (b) above but including Enforcement Expenses) shall not constitute Excess ABL Debt regardless of whether such amounts are added to the principal balance of the loans pursuant to the ABL Documents and in no event shall the term Excess ABL Debt be construed to include ABL Bank Product Obligations or ABL Hedge Obligations.

"Excess Term Loan Debt" shall mean the amount equal to (a) the portion of the principal amount of the loans outstanding under the Term Loan Agreement that is in excess of the Term Loan Cap, plus (b) without duplication, the portion of accrued and unpaid interest on account of such portion of the loans described in clause (a); provided, that, interest, fees, costs and expenses (including Enforcement Expenses) shall not constitute Excess Term Loan Debt regardless of whether such amounts are added to the principal balance of the loans pursuant to the Term Loan Documents and in no event shall the term Excess Term Loan Debt be construed to include Term Loan Bank Product Obligations or Term Loan Hedge Obligations.

"Excluded Assets" shall have the meaning set forth in the ABL Documents and the Term Loan Documents on the date hereof.

"Excluded Swap Obligation" shall mean, with respect to any Grantor, any Swap Obligation if, and to the extent that, any guarantee by such Grantor of, or the grant by such Grantor of a security interest to secure, such Swap Obligation (or any guarantee thereof) under any ABL Document or Term Loan Document is or becomes unlawful under the Commodity Exchange Act or any rule or regulation promulgated thereunder (or the application or official interpretation of any provision thereof) by virtue of such Grantor's failure for any reason not to

constitute an "eligible contract participant" as defined in the Commodity Exchange Act at the time any such ABL Document or Term Loan Document, as applicable, becomes effective with respect to such related Swap Obligation.

"Exigent Circumstance" shall mean an event or circumstance that materially and imminently threatens the ability of ABL Agent or the Term Loan Agent, as the case may be, to realize upon all or a material portion of the ABL Priority Collateral or the Term Loan Priority Collateral, as the case may be, including fraudulent removal, concealment, destruction (other than to the extent covered by insurance), material waste or abscondment thereof.

"Foreign Grantor" shall mean any Grantor other than a Domestic Grantor.

"Governmental Authority" shall mean any nation or government, any state or other political subdivision thereof, any central bank (or similar monetary or regulatory authority) thereof, any entity exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government, and any corporation or other entity owned or controlled, through stock or capital ownership or otherwise, by any of the foregoing.

"Grantors" shall mean, collectively, the Company and each Subsidiary and Affiliate of the Company that shall have granted a Lien on any of its assets to secure any ABL Debt or Term Loan Debt, together with their respective successors and assigns; sometimes being referred to herein individually as a "Grantor".

"Guarantors" shall mean, collectively, (a) the subsidiaries and affiliates of the Company set forth on Exhibit B hereto, (b) any other person that at any time after the date hereof becomes a guarantor in favor of ABL Agent or the other ABL Secured Parties in respect of any of the ABL Debt or in favor of Term Loan Agent or the other Term Loan Secured Parties in respect of any of the Term Loan Debt, and (c) their respective successors and assigns; sometimes being referred to herein individually as a "Guarantor".

 "Hedging Agreement" shall mean any Hedging Agreement as defined in the Term Loan Agreement as in effect on the date hereof, or any Swap Contract as defined in the ABL Agreement as in effect on the date hereof.

"Insolvency Proceeding" shall mean (a) any voluntary or involuntary case or proceeding under any Bankruptcy Law with respect to any Grantor, (b) any other voluntary or involuntary insolvency, reorganization or bankruptcy case or proceeding, or any receivership, liquidation, reorganization, restructuring, power of sale, moratorium, relief of debtors, marshaling of assets, composition or other similar case or proceeding with respect to any Grantor or with respect to any of their respective assets, (c) any proceeding seeking the appointment of any trustee, Receiver, custodian or other insolvency official with similar powers with respect to any Grantor or any or all of its assets or properties, (d) any liquidation, dissolution, reorganization or winding up of any Grantor, whether voluntary or involuntary and whether or not involving insolvency or bankruptcy, or (e) any assignment for the benefit of creditors or any other marshalling of assets and liabilities of any Grantor.

"Lien" shall mean, with respect to any asset, any mortgage, deed of trust, deed to secure debt,  lien (statutory or otherwise), deemed trust, pledge, charge, security interest, hypothecation

or encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such asset.  For the purposes of this Agreement, any Grantor or any of their respective subsidiaries shall be deemed to own, subject to a Lien, any asset which any of them has acquired or holds subject to the interest of a vendor or lessor under any conditional sale agreement, capital lease or other title retention agreement (other than non-exclusive licenses) relating to such asset.

"PPSA" shall have the meaning specified in the definition of "UCC".

"Person" or "person" shall mean any natural person, corporation, business trust, joint venture, association, company, limited liability company, partnership, Governmental Authority or other entity.

"Pledged Collateral" shall have the meaning set forth in Section 5.1 hereof.

"Proceeds" or "proceeds" shall mean all "proceeds" as defined in Article 9 of the UCC, and in any event, shall include, (a) whatever is receivable or received when Collateral or proceeds are sold, exchanged, collected or otherwise disposed of, whether such disposition is voluntary or involuntary and (b) any payment or distribution made in respect of Collateral in an Insolvency Proceeding.

"Property" shall mean any interest in any kind of property or asset, whether real, personal or mixed, and whether tangible or intangible.

"Purchasing ABL Secured Parties" shall have the meaning set forth in Section 8.1 hereof.

"Purchasing Term Loan Secured Parties" shall have the meaning set forth in Section 7.1 hereof.

"Receiver" shall mean a receiver, interim receiver, receiver and manager, liquidator, trustee in bankruptcy or similar Person.

"Recovery" shall have the meaning set forth in Section 6.9 hereof.

"Refinance" or "refinance" shall mean, in respect of any of indebtedness, to refinance, replace, refund or repay, or to issue other indebtedness or enter into alternative financing arrangements, in exchange or replacement for, such indebtedness in whole or in part, including by adding or replacing lenders, creditors, agents, borrowers and/or guarantors, and including in each case, but not limited to, after the original instrument giving rise to such indebtedness has been terminated.  "Refinanced" or "refinanced" and "Refinancing" or "refinancing" shall have correlative meanings.

"Secured Parties" shall mean, collectively, the ABL Secured Parties and the Term Loan Secured Parties; sometimes being referred to herein individually as a "Secured Party".

"Subsidiary" shall mean, with respect to any Person (herein referred to as the "parent"), any corporation, partnership, limited liability company, association or other business entity (a) of which securities or other ownership interests representing more than 50% of the equity or more

than 50% of the ordinary voting power or more than 50% of the general partnership interests are, at the time any determination is being made, owned, controlled or held, or (b) that is, at the time any determination is made, otherwise controlled by the parent or one or more subsidiaries of the parent or by the parent and one or more subsidiaries of the parent.  Unless otherwise specified, all references herein to a "Subsidiary" or to "Subsidiaries" shall refer to a Subsidiary or Subsidiaries of Holdings.

"Swap Obligation" shall mean, with respect to any Grantor, any obligation to pay or perform under any agreement, contract, or transaction that constitutes a "swap" within the meaning of section 1a(47) of the Commodity Exchange Act.

"Term Loan Agent" shall mean Credit Suisse AG, in its capacity as administrative and collateral agent pursuant to the Term Loan Documents acting for and on behalf of the other Term Loan Secured Parties and any successor or permitted replacement agent.

"Term Loan Agreement" shall mean the Credit Agreement, dated of even date herewith, by and among the Company, certain affiliates of the Company, Term Loan Agent and Term Loan Lenders, as the same now exists or may hereafter be amended, modified, supplemented, extended, renewed, restated, refinanced or otherwise replaced in accordance with the terms of this Agreement.

"Term Loan Bank Products" shall mean any service or facility extended to any Grantor by a Term Loan Bank Product Provider including: (a) credit cards, (b) debit cards, (c) purchase cards, (d) credit card, debit card and purchase card processing services, (e) treasury, cash management or related services (including the Automated Clearing House processing of electronic funds transfers through the direct Federal Reserve Fedline system), (f) cash management, including controlled disbursement, accounts or services, and (g) return items, netting, overdraft and interstate depositary network services.

"Term Loan Bank Product Agreement" shall mean those agreements entered into from time to time by any Grantor with a Term Loan Bank Product Provider in connection with the obtaining of any of the Term Loan Bank Products.

"Term Loan Bank Product Obligations" shall mean all obligations, liabilities, contingent reimbursement obligations, fees, and expenses owing by any Grantor to a Term Loan Bank Product Provider pursuant to or evidenced by the Term Loan Bank Product Agreements and irrespective of whether for the payment of money, whether direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising, and including all such amounts that any Grantor is obligated to reimburse to a Term Loan Bank Product Provider as a result of such Person purchasing participations or executing indemnities or reimbursement obligations with respect to the Term Loan Bank Products provided to any Grantor pursuant to the Term Loan Bank Product Agreements.

"Term Loan Bank Product Provider" shall mean a Cash Management Bank as defined in the Term Loan Agreement as in effect on the date hereof.

"Term Loan Cap" shall mean $420,000,000 plus the Incremental Cap as defined in the Term Loan Agreement as in effect on the date hereof; provided, that, if a Term Loan DIP

Financing is provided in accordance with the terms of Section 6.2(b), the Term Loan Cap shall be $25,000,000 greater than the amount provided above.

"Term Loan Cash Collateral" shall have the meaning set forth in Section 6.2 hereof.

"Term Loan Debt" shall mean all "Obligations" as such term is defined in the Term Loan Agreement, including, obligations, liabilities and indebtedness of every kind, nature and description owing by any Grantor to any Term Loan Secured Party, including principal, interest, charges, fees, premiums, indemnities and expenses, however evidenced, whether as principal, surety, endorser, guarantor or otherwise, arising under any of the Term Loan Documents, Term Loan Bank Product Obligations, and Term Loan Hedge Obligations, in each case whether now existing or hereafter arising, whether arising before, during or after the initial or any renewal or replacement term of the Term Loan Documents or after the commencement of any case with respect to any Grantor under the Bankruptcy Code or any other Bankruptcy Law or any other Insolvency Proceeding (and including, any principal, interest, fees, costs, expenses and other amounts which would accrue and become due but for the commencement of such case, whether or not such amounts are allowed or allowable in whole or in part in such case or similar proceeding), whether direct or indirect, absolute or contingent, joint or several, due or not due, primary or secondary, liquidated or unliquidated, secured or unsecured; provided, that, Excess Term Loan Debt shall not constitute Term Loan Debt.

"Term Loan DIP Financing" shall have the meaning set forth in Section 6.2 hereof.

"Term Loan Documents" shall mean, collectively, the Term Loan Agreement and all agreements, documents and instruments at any time executed and/or delivered by any Grantor or any other Person to, with or in favor of any Term Loan Secured Party in connection therewith or related thereto, as all of the foregoing now exist or may hereafter be amended, modified, supplemented, extended, renewed, restated, refinanced, replaced or restructured (in whole or in part and including any agreements with, to or in favor of any other lender or group of lenders, or agent of any such other lender or group of lenders, that at any time refinances, replaces or succeeds to all or any portion of the Term Loan Debt) in accordance with the terms of this Agreement.

"Term Loan Event of Default" shall mean any "Event of Default" as defined in the Term Loan Agreement.

"Term Loan Hedge Obligations" shall mean the due and punctual payment and performance of all obligations of each Grantor under each Hedging Agreement (other than any Excluded Swap Obligations) that is entered into with any Term Loan Hedge Provider if the Company designates such Term Loan Hedge Provider as a Term Loan Secured Party with respect to such Hedging Agreement in a written notice to the Term Loan Agent at the time or promptly after such Hedging Agreement is entered into (or, with respect to any such Hedging Agreement in effect on the Closing Date, on or prior to the Closing Date).

"Term Loan Hedge Provider" shall mean a Qualified Counterparty as defined in the Term Loan Agreement as in effect on the date hereof.

"Term Loan Lenders" shall mean, collectively, any person party to the Term Loan Documents as lender (and including any other lender or group of lenders that at any time refinances, replaces or succeeds to all or any portion of the Term Loan Debt or is otherwise party to the Term Loan Documents as a lender); sometimes being referred to herein individually as a "Term Loan Lender".

"Term Loan Priority Collateral" shall mean the Collateral described on Annex B hereto.

"Term Loan Priority Collateral Pledged Account" shall mean an account of the Domestic Grantors subject to a control agreement in favor of Term Loan Agent and ABL Agent, which is intended to exclusively contain the identifiable proceeds of Term Loan Priority Collateral.

"Term Loan Purchase Event" shall have the meaning set forth in Section 7.1 hereof.

"Term Loan Secured Parties" shall mean, collectively, (a) Term Loan Agent, (b) the Term Loan Lenders, (c) each other person to whom any of the Term Loan Debt (including Term Loan Debt constituting Term Loan Bank Product Obligations owing to any Term Loan Bank Product Provider or Term Loan Hedge Obligations owing to any Term Loan Hedge Provider) is owed, (d) the administrative agent under the Term Loan Documents and (e) the successors, replacements and assigns of each of the foregoing; sometimes being referred to herein individually as a "Term Loan Secured Party".

"Third Party Purchaser" shall have the meaning set forth in Section 9.1 hereof.

"Uniform Commercial Code" or "UCC" shall mean the Uniform Commercial Code as from time to time in effect in the State of New York; provided, that, if by reason of mandatory provisions of law, perfection, or the effect of perfection or non-perfection, of a security interest in any Collateral or the availability of any remedy hereunder is governed by the Uniform Commercial Code as in effect in a jurisdiction other than the State of New York, "Uniform Commercial Code" or "UCC" means the Uniform Commercial Code as in effect in such other jurisdiction for purposes of the provisions hereof relating to such perfection or effect of perfection or non-perfection or availability of such remedy, as the case may be.  For the purposes hereof, as to Property for which the Personal Property Security Act and regulations thereunder, as in effect from time to time, of any jurisdiction ("PPSA") shall govern the attachment, perfection or priority of any Lien or any remedies, UCC shall include the PPSA.

1.2    Terms Generally.  The definitions of terms herein shall apply equally to the singular and plural forms of the terms defined.  Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms.  The words "include", "includes" and "including" shall be deemed to be followed by the phrase "without limitation". The word "will" shall be construed to have the same meaning and effect as the word "shall". Unless the context requires otherwise (a) any definition of or reference to any agreement, instrument or other document herein shall be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented or otherwise modified, subject to any limitations thereon set forth herein, (b) any reference herein to any Person shall be construed to include such Person's successors and assigns, and as to any Borrower, any Guarantor or any other Grantor shall be deemed to include a receiver, trustee or

debtor-in-possession on behalf of any of such person or on behalf of any such successor or assign, (c) the words "herein", "hereof" and "hereunder", and words of similar import, shall be construed to refer to this Agreement in its entirety and not to any particular provision hereof, (d) all references herein to Sections shall be construed to refer to Sections of this Agreement and (e) the words "asset" and "property" shall be construed to have the same meaning and effect and to refer to any and all tangible and intangible assets and properties, including cash, securities, accounts and contract rights.

Section 2.    **Lien Priorities**

2.1    Acknowledgment of Liens.

(a)    ABL Agent, on behalf of itself and each other ABL Secured Party, hereby acknowledges that Term Loan Agent, acting for and on behalf of itself and the other Term Loan Secured Parties, has been granted Liens upon all of the Collateral pursuant to the Term Loan Documents to secure the Term Loan Debt and the Excess Term Loan Debt.

(b)    Term Loan Agent, on behalf of itself and each other Term Loan Secured Party, hereby acknowledges that ABL Agent, acting for and on behalf of itself and the other ABL Secured Parties, has been granted Liens upon all of the Collateral pursuant to the ABL Documents to secure the ABL Debt and the Excess ABL Debt.

2.2    Relative Priorities.

(a)    Notwithstanding the date, manner or order of grant, attachment or perfection of any Liens granted to ABL Agent or the other ABL Secured Parties or Term Loan Agent or the other Term Loan Secured Parties and notwithstanding any provision of the UCC, or any applicable law or any provisions of the ABL Documents or the Term Loan Documents or any defect or deficiencies in, or failure to grant or perfect, any Liens or the failure of such Liens to attach or any other circumstance whatsoever, the Term Loan Agent, on behalf of itself and the other Term Secured Parties, and the ABL Agent, on behalf of itself and the other ABL Secured Parties, hereby agree that:

(i)    Subject to clauses (iii) and (v), any Lien on the ABL Priority Collateral securing the ABL Debt now or hereafter held by or for the benefit or on behalf of any ABL Secured Party or any agent or trustee therefor shall be senior in right, priority, operation, effect and in all other respects to any Lien on the ABL Priority Collateral securing the Term Loan Debt now or hereafter held by or for the benefit or on behalf of any Term Loan Secured Party or any agent or trustee therefor and any Lien on the ABL Priority Collateral securing any of the Term Loan Debt now or hereafter held by or for the benefit or on behalf of any Term Loan Secured Party or any agent or trustee therefor regardless of how acquired, whether by grant, statute, operation of law, subrogation or otherwise, shall be junior and subordinate in all respects to all Liens on the ABL Priority Collateral securing any ABL Debt;

(ii)    Subject to clauses (iv) and (vi), any Lien on the Term Loan Priority Collateral securing the Term Loan Debt now or hereafter held by or for the benefit or on behalf of any Term Loan Secured Party or any agent or trustee therefor shall be senior in right, priority, operation, effect and in all other respects to any Lien on the Term Loan Priority

Collateral securing the ABL Debt now or hereafter held by or for the benefit or on behalf of any ABL Secured Party or any agent or trustee therefor and any Lien on the Term Loan Priority Collateral securing any of the ABL Debt now or hereafter held by or for the benefit or on behalf of any ABL Secured Party or any agent or trustee therefor regardless of how acquired, whether by grant, statute, operation of law, subrogation or otherwise, shall be junior and subordinate in all respects to all Liens on the Term Loan Priority Collateral securing any Term Loan Debt;

(iii)    any Lien on the ABL Priority Collateral securing Excess ABL Debt now or hereafter held by or for the benefit or on behalf of any ABL Secured Party or any agent or trustee therefor shall be junior and subordinate in right, priority, operation, effect and in all other respects to any Lien on the ABL Priority Collateral securing Term Loan Debt now or hereafter held by or for the benefit or on behalf of any Term Loan Secured Party or any agent or trustee therefor and any Lien on the ABL Priority Collateral securing any of the Term Loan Debt now or hereafter held by or for the benefit or on behalf of any Term Loan Secured Party or any agent or trustee therefor regardless of how acquired, whether by grant, statute, operation of law, subrogation or otherwise, shall be senior in all respects to all Liens on the ABL Priority Collateral securing any Excess ABL Debt;

(iv)    any Lien on the Term Loan Priority Collateral securing Excess Term Loan Debt now or hereafter held by or for the benefit or on behalf of any Term Loan Secured Party or any agent or trustee therefor shall be junior and subordinate in right, priority, operation, effect and in all other respects to any Lien on the Term Loan Priority Collateral securing ABL Debt now or hereafter held by or for the benefit or on behalf of any ABL Secured Party or any agent or trustee therefor and any Lien on the Term Loan Priority Collateral securing any of the ABL Debt now or hereafter held by or for the benefit or on behalf of any ABL Secured Party or any agent or trustee therefor regardless of how acquired, whether by grant, statute, operation of law, subrogation or otherwise, shall be senior in all respects to all Liens on the Term Loan Priority Collateral securing any Excess Term Loan Debt;

(v)    any Lien on the ABL Priority Collateral securing Excess ABL Debt now or hereafter held by or for the benefit or on behalf of any ABL Secured Party or any agent or trustee therefor shall be senior in right, priority, operation, effect and in all other respects to any Lien on the ABL Priority Collateral securing Excess Term Loan Debt now or hereafter held by or for the benefit or on behalf of any Term Loan Secured Party or any agent or trustee therefor and any Lien on the ABL Priority Collateral securing any of the Excess Term Loan Debt now or hereafter held by or for the benefit or on behalf of any Term Loan Secured Party or any agent or trustee therefor regardless of how acquired, whether by grant, statute, operation of law, subrogation or otherwise, shall be junior and subordinate in all respects to all Liens on the ABL Priority Collateral securing any Excess ABL Debt now or hereafter held by or for the benefit or on behalf of any ABL Secured Party or any agent or trustee therefor; and

(vi)    any Lien on the Term Loan Priority Collateral securing Excess Term Loan Debt now or hereafter held by or for the benefit or on behalf of any Term Loan Secured Party or any agent or trustee therefor shall be senior in right, priority, operation, effect and in all other respects to any Lien on the Term Loan Priority Collateral securing Excess ABL Debt now or hereafter held by or for the benefit or on behalf of any ABL Secured Party or any agent or trustee therefor and any Lien on the Term Loan Priority Collateral securing any of the

Excess ABL Debt now or hereafter held by or for the benefit or on behalf of any ABL Secured Party or any agent or trustee therefor regardless of how acquired, whether by grant, statute, operation of law, subrogation or otherwise, shall be junior and subordinate in all respects to all Liens on the Term Loan Priority Collateral securing any Excess Term Loan Debt now or hereafter held by or for the benefit or on behalf of any Term Loan Secured Party or any agent or trustee therefor.

(b)    As between ABL Secured Parties and Term Loan Secured Parties, the terms of this Agreement, including the priorities set forth above, shall govern even if part or all of the ABL Debt or Term Loan Debt or the Liens securing payment and performance thereof are not perfected or are subordinated, avoided, disallowed, set aside or otherwise invalidated in any judicial proceeding or otherwise.

2.3    Prohibition on Contesting Liens.  Each of ABL Agent, for itself and on behalf of the other ABL Secured Parties, and Term Loan Agent, for itself and on behalf of the other Term Loan Secured Parties, agrees that it shall not (and hereby waives any right to) contest or support any other Person in contesting, in any proceeding (including any Insolvency Proceeding), the perfection, priority, validity or enforceability of a Lien held, or purported to be held, by or for the benefit or on behalf of any Term Loan Secured Party in any Collateral or by or on behalf of any ABL Secured Party in any Collateral, as the case may be; provided, that, nothing in this Agreement shall be construed to prevent or impair the rights of any ABL Secured Party or Term Loan Secured Party to enforce this Agreement.

2.4    New Liens.  The parties hereto agree that it is their intention that the Collateral of the Domestic Grantors securing the Term Loan Debt and the ABL Debt be identical.  In furtherance of the foregoing, the parties hereto agree, subject to the other provisions of this Agreement, upon request by the ABL Agent or the Term Loan Agent, to cooperate in good faith (and to direct their counsel to cooperate in good faith) from time to time in order to determine the specific items of Collateral of the Domestic Grantors included in the ABL Priority Collateral and the Term Loan Priority Collateral and the steps taken to perfect their respective Liens thereon and the identity of the respective parties obligated under the Term Loan Documents and the ABL Loan Documents.

Section 3.    **Enforcement**

3.1    Exercise of Rights and Remedies.

(a)    So long as the Discharge of ABL Debt has not occurred, whether or not any Insolvency Proceeding has been commenced by or against any Grantor, Term Loan Agent, for itself and on behalf of the other Term Loan Secured Parties:

(i)    will not enforce or exercise, or seek to enforce or exercise, any rights or remedies (including any right of setoff or notification of account debtors) with respect to any ABL Priority Collateral (including the enforcement of any right under any lockbox agreement, account control agreement, landlord waiver or bailee's letter or any similar agreement or arrangement, in each case relating to ABL Priority Collateral, to which the Term Loan Agent or any other Term Loan Secured Party is a party) or commence or join with any

Person (other than ABL Agent with its consent) in commencing, or filing a petition for, any action or proceeding with respect to such rights or remedies (including any foreclosure action, provided, that, Term Loan Agent or any other Term Loan Secured Party may commence or join with any Person in commencing, or filing, a petition for any Insolvency Proceeding);

(ii)    will not contest, protest or object to any foreclosure action or proceeding brought by ABL Agent or any other ABL Secured Party, or any other enforcement or exercise by any ABL Secured Party of any rights or remedies relating solely to the ABL Priority Collateral, so long as the Liens of Term Loan Agent attach to the Proceeds thereof subject to the relative priorities set forth in Section 2.1 and such actions or proceedings are being pursued in good faith;

(iii)    will not object to the forbearance by ABL Agent or the other ABL Secured Parties from commencing or pursuing any foreclosure action or proceeding or any other enforcement or exercise of any rights or remedies with respect to any of the ABL Priority Collateral;

(iv)    will not except for actions permitted under Section 3.1(a)(i), take or receive any ABL Priority Collateral, or any Proceeds thereof or payment with respect thereto, in connection with the exercise of any right or remedy (including any right of setoff) with respect to any ABL Priority Collateral (it being understood and agreed that payments made by any Grantor in respect of the Term Loan Debt with proceeds of loans or advances under the ABL Documents shall not constitute a breach of this Section 3.1(a)(iv));

(v)    agrees that no covenant, agreement or restriction contained in any Term Loan Document shall be deemed to restrict in any way the rights and remedies of ABL Agent or the other ABL Secured Parties with respect to the ABL Priority Collateral as set forth in this Agreement and the ABL Documents;

(vi)    will not object to the manner in which ABL Agent or any other ABL Secured Party may seek to enforce or collect the ABL Debt or the Liens of such ABL Secured Party on any ABL Priority Collateral, regardless of whether any action or failure to act by or on behalf of ABL Agent or any other ABL Secured Party is, or could be, adverse to the interests of the Term Loan Secured Parties, and will not assert, and hereby waive to the fullest extent permitted by law, any right to demand, request, plead or otherwise assert or claim the benefit of any marshalling, appraisal, valuation or other similar right that may be available under applicable law with respect to the ABL Priority Collateral or any other rights a junior secured creditor may have under applicable law with respect to the matters described in this clause (vi); and

(vii)    will not attempt, directly or indirectly, whether by judicial proceeding or otherwise, to challenge or question the validity or enforceability of any ABL Debt or any Lien of ABL Agent or this Agreement, or the validity or enforceability of the priorities, rights or obligations established by this Agreement.

(b)     So long as the Discharge of Term Loan Debt has not occurred, whether or not any Insolvency Proceeding has been commenced by or against any Grantor, ABL Agent, for itself and on behalf of the other ABL Secured Parties:

(i)     will not enforce or exercise, or seek to enforce or exercise, any rights or remedies (including any right of setoff with respect to any deposit accounts used exclusively for identifiable proceeds of Term Loan Priority Collateral; it being understood and agreed that any property in such deposit accounts that is not identifiable proceeds of Term Loan Priority Collateral shall not be Term Loan Priority Collateral solely by virtue of being on deposit in any such deposit account) with respect to any Term Loan Priority Collateral (including the enforcement of any right under any lockbox agreement, account control agreement, landlord waiver or bailee' s letter or any similar agreement or arrangement, in each case relating to Term Loan Priority Collateral, to which the ABL Agent or any other ABL Secured Party is a party) or commence or join with any Person (other than Term Loan Agent with its consent) in commencing, or filing a petition for, any action or proceeding with respect to such rights or remedies (including any foreclosure action, provided, that, ABL Agent or any other ABL Secured Party may commence or join with any Person in commencing, or filing, a petition for any Insolvency Proceeding);

(ii)     will not contest, protest or object to any foreclosure action or proceeding brought by Term Loan Agent or any other Term Loan Secured Party, or any other enforcement or exercise by any Term Loan Secured Party of any rights or remedies relating solely to the Term Loan Priority Collateral, so long as the Liens of ABL Agent attach to the Proceeds thereof subject to the relative priorities set forth in Section 2.1 and such actions or proceedings are being pursued in good faith;

(iii)     will not object to the forbearance by Term Loan Agent or the other Term Loan Secured Parties from commencing or pursuing any foreclosure action or proceeding or any other enforcement or exercise of any rights or remedies with respect to any of the Term Loan Priority Collateral;

(iv)     will not except for actions permitted under Section 3.1(b)(i), take or receive any Term Loan Priority Collateral, or any Proceeds thereof or payment with respect thereto, in connection with the exercise of any right or remedy (including any right of setoff) with respect to any Term Loan Priority Collateral (it being understood and agreed that payments made by any Grantor in respect of the ABL Debt with proceeds of loans or advances under the Term Loan Documents shall not constitute a breach of this Section 3.1(b)(iv));

(v)     agrees that no covenant, agreement or restriction contained in any ABL Document shall be deemed to restrict in any way the rights and remedies of Term Loan Agent or the other Term Loan Secured Parties with respect to the Term Loan Priority Collateral as set forth in this Agreement and the Term Loan Documents;

(vi)     will not object to the manner in which Term Loan Agent or any other Term Loan Secured Party may seek to enforce or collect the Term Loan Debt or the Liens of such Term Loan Secured Party on any Term Loan Priority Collateral, regardless of whether any action or failure to act by or on behalf of Term Loan Agent or any other Term Loan Secured

Party is, or could be, adverse to the interests of the ABL Secured Parties, and will not assert, and hereby waive, to the fullest extent permitted by law, any right to demand, request, plead or otherwise assert or claim the benefit of any marshalling, appraisal, valuation or other similar right that may be available under applicable law with respect to the Term Loan Priority Collateral or any other rights a junior secured creditor may have under applicable law with respect to the matters described in this clause (vi); and

(vii)    will not attempt, directly or indirectly, whether by judicial proceeding or otherwise, to challenge or question the validity or enforceability of any Term Loan Debt or any Lien of Term Loan Agent or this Agreement, or the validity or enforceability of the priorities, rights or obligations established by this Agreement.

(c)    Until the Discharge of ABL Debt has occurred, whether or not any Insolvency Proceeding has been commenced by or against any Grantor, subject to Section 3.1(a)(i) hereof, the ABL Secured Parties shall have the exclusive right to commence, and maintain the exercise of their rights and remedies with respect to the ABL Priority Collateral, including, the exclusive right, to the extent provided for in the ABL Documents or under applicable law, to appoint an administrator, receiver or trustee in respect of the ABL Priority Collateral, to take or retake control or possession of such Collateral and to hold, prepare for sale, process, and sell, lease, dispose of, or liquidate such ABL Priority Collateral, without any consultation with or the consent of any Term Loan Secured Party; provided, that, the Lien securing the Term Loan Debt shall continue as to the Proceeds of such Collateral released or disposed of subject to the relative priorities described in Section 2 hereof.  In exercising enforcement rights and remedies with respect to the ABL Priority Collateral, the ABL Secured Parties may enforce the provisions of the ABL Documents with respect to the ABL Priority Collateral and exercise remedies thereunder, all in such order and in such manner as they may determine in the exercise of their sole discretion.  Such exercise and enforcement shall include the rights of an agent appointed by them to sell or otherwise realize on or dispose of any ABL Priority Collateral upon foreclosure, to incur expenses in connection with such sale or other realization or disposition, and to exercise all of the rights and remedies of a secured creditor under the UCC and of a secured creditor under the Bankruptcy Laws of any applicable jurisdiction.  Term Loan Secured Parties shall not have any right to direct any ABL Secured Party to exercise any right, remedy or power with respect to the ABL Priority Collateral and each Term Loan Secured Party shall have no right to consent to any exercise of remedies under the ABL Documents or applicable law in respect of any of the ABL Priority Collateral.

(d)    Until the Discharge of Term Loan Debt has occurred, whether or not any Insolvency Proceeding has been commenced by or against any Grantor, subject to Section 3.1(b)(i) hereof, the Term Loan Secured Parties shall have the exclusive right to commence, and maintain the exercise of their rights and remedies with respect to the Term Loan Priority Collateral, including, the exclusive right, to the extent provided for in the Term Loan Documents or under applicable law, to appoint an administrator, receiver or trustee in respect of the Term Loan Priority Collateral, to take or retake control or possession of such Collateral and to hold, prepare for sale, process, and sell, lease, dispose of, or liquidate such Term Loan Priority Collateral, without any consultation with or the consent of any ABL Secured Party; provided, that, the Lien securing the ABL Debt shall continue as to the Proceeds of such Collateral released or disposed of subject to the relative priorities described in Section 2 hereof.  In

exercising enforcement rights and remedies with respect to the Term Loan Priority Collateral, the Term Loan Secured Parties may enforce the provisions of the Term Loan Documents with respect to the Term Loan Priority Collateral and exercise remedies thereunder, all in such order and in such manner as they may determine in the exercise of their sole discretion.  Such exercise and enforcement shall include the rights of an agent appointed by them to sell or otherwise realize on or dispose of any Term Loan Priority Collateral upon foreclosure, to incur expenses in connection with such sale or other realization or disposition, and to exercise all of the rights and remedies of a secured creditor under the UCC and of a secured creditor under the Bankruptcy Laws of any applicable jurisdiction.  ABL Secured Parties shall not have any right to direct any Term Loan Secured Party to exercise any right, remedy or power with respect to the Term Loan Priority Collateral and each ABL Secured Party shall have no right to consent to any exercise of remedies under the Term Loan Documents or applicable law in respect of any of the Term Loan Priority Collateral.

(e)     Notwithstanding the foregoing, each of the Term Loan Agent and the ABL Agent may:

(i)     file a claim or statement of interest with respect to the ABL Debt, Excess ABL Debt, Term Loan Debt or Excess Term Loan Debt, as the case may be, in an Insolvency Proceeding that has been commenced by or against any Grantor;

(ii)     in the case of the Term Loan Agent, take any action in order to create, perfect, preserve or protect (but not, prior to the Discharge of ABL Debt, enforce) its Lien on any of the ABL Priority Collateral, and in the case of the ABL Agent, take any action in order to create, perfect, preserve or protect (but not, prior to the Discharge of Term Loan Debt, enforce) its Lien on any of the Term Loan Priority Collateral;

(iii)     file any necessary responsive or defensive pleadings in opposition to any motion, claim, adversary proceeding or other pleading made by any Person objecting to or otherwise seeking the disallowance of the claims of the ABL Secured Parties or Term Loan Secured Parties, including any claims secured by the Collateral, if any, or otherwise make any agreements or file any motions or objections pertaining to the claims of such Secured Parties, in each case in accordance with the terms of this Agreement;

(iv)     file any pleadings, objections, motions or agreements which assert rights or interests that are available to unsecured creditors of the Grantors, including, the commencement of an Insolvency Proceeding against any Grantor, in each case, in accordance with applicable law and in a manner not inconsistent with the terms of this Agreement (including, but not limited to, any of the provisions of Section 6 hereof); and

(v)     vote on any plan of reorganization, file any proof of claim, make other filings and make any arguments and motions that are, in each case, not inconsistent with the terms of this Agreement.

3.2     Release of Second Priority Liens.

(a)     If the Agent with the senior Lien on any Collateral releases its Liens on any part of such Collateral in connection with either any Disposition of any Collateral permitted

under the terms of the ABL Documents and the terms of the Term Loan Documents or the exercise by the Agent with the senior Lien on any Collateral of its enforcement remedies in respect of such Collateral, and including any Disposition of such Collateral by or on behalf of any Grantor that is approved or consented to by the Agent with the senior Lien therein at any time after an ABL Event of Default, in the case of ABL Priority Collateral, or a Term Loan Event of Default, in the case of Term Loan Priority Collateral, has occurred and is continuing, then effective upon the consummation of any such Disposition or exercise of enforcement remedies, the Agent with the junior Lien on any such Collateral shall:

(i)       be deemed to have automatically and without further action released and terminated any Liens it may have on such Collateral; provided, that, (A) the Liens of the Agent with such senior Lien on the Collateral so sold or disposed of are released at the same time, and (B) such junior Lien shall remain in place with respect to any Proceeds of such sale, transfer or other disposition under this clause (a)(i) that are not applied to the repayment of ABL Debt (in the case of ABL Priority Collateral) or the repayment of Term Loan Debt (in the case of Term Loan Priority Collateral); and

(ii)       be deemed to have authorized the Agent (including, if applicable, any Receiver appointed by such Agent) with the senior Lien on such Collateral to file UCC amendments and terminations and mortgage releases (as applicable) covering the Collateral so sold or otherwise disposed of with respect to the UCC financing statements and mortgage releases (as applicable) between any Grantor and the Agent with the junior Lien thereon to evidence such release and termination; and

(iii)       promptly upon the request of the Agent with the senior Lien thereon, execute and deliver such other release documents and confirmations of the authorization to file UCC amendments and terminations and mortgage releases (as applicable) provided for herein, in each case as the Agent with the senior Lien thereon may reasonably require in connection with such sale or other Disposition by such Agent, such Agent's agents or any Grantor with the consent of such Agent to evidence and effectuate such termination and release; provided, that, any such release or UCC amendment or termination by or on behalf of the Agent with the junior Lien thereon shall not extend to or otherwise affect any of the rights, if any, of such Agent with the junior Lien to the Proceeds from any such sale or other Disposition of Collateral that are not applied to the repayment of ABL Debt (in the case of ABL Priority Collateral) or the repayment of Term Loan Debt (in the case of Term Loan Priority Collateral).

(b)       Each Agent, for itself and on behalf of the other Secured Parties for whom such Agent is acting, hereby irrevocably constitutes and appoints the other Agent and any officer or agent of such Agent (including, if applicable, any Receiver appointed by such Agent), with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority in the place and stead of such Agent with the junior Lien or such holder or in the Agent's own name, from time to time in such Agent's (holding the senior Lien) discretion, for the purpose of carrying out the terms of this Section 3.2, to take any and all appropriate action and to execute any and all documents and instruments which may be necessary or desirable to accomplish the purposes of this Section 3.2, including any termination statements, endorsements or other instruments of transfer or release.  Nothing contained in this Agreement shall be construed to modify the obligation of the Agent with the senior Lien to act in a commercially

reasonable manner in the exercise of its rights to sell, lease, license, exchange, transfer or otherwise dispose of any Collateral.

3.3     Insurance and Condemnation Awards.

(a)     So long as the Discharge of ABL Debt has not occurred, ABL Agent and the other ABL Secured Parties shall have the sole and exclusive right, subject to the rights of Grantors under the ABL Documents, to settle and adjust claims in respect of the ABL Priority Collateral under policies of insurance and to approve any award granted in any condemnation or similar proceeding, or any deed in lieu of condemnation in respect of the ABL Priority Collateral.  So long as the Discharge of ABL Debt has not occurred, all Proceeds of any such policy and any such award, or any payments with respect to such a deed in lieu of condemnation, shall (i) first, up to an amount not to exceed the ABL Debt, be paid to ABL Agent for the benefit of the ABL Secured Parties to the extent required under the ABL Documents, (ii) second, up to an amount not to exceed the Term Loan Debt, be paid to Term Loan Agent for the benefit of the Term Loan Secured Parties to the extent required under the applicable Term Loan Documents, (iii) third, up to an amount not to exceed the Excess ABL Debt, be paid to ABL Agent for the benefit of the ABL Secured Parties to the extent required under the ABL Documents, (iv) fourth, up to an amount not to exceed the Excess Term Loan Debt, be paid to Term Loan Agent for the benefit of the Term Loan Secured Parties to the extent required under the applicable Term Loan Documents and (v) fifth, if no Excess Term Loan Debt is outstanding, be paid to the owner of the subject property or as a court of competent jurisdiction may otherwise direct or may otherwise be required by applicable law.  Until the Discharge of ABL Debt, if Term Loan Agent or any other Term Loan Secured Party shall, at any time, receive any Proceeds of any such insurance policy or any such award or payment, it shall pay such Proceeds over to ABL Agent in accordance with the terms of Section 4.2.

(b)     So long as the Discharge of Term Loan Debt has not occurred, Term Loan Agent and the other Term Loan Secured Parties shall have the sole and exclusive right, subject to the rights of Grantors under the Term Loan Documents, to settle and adjust claims in respect of the Term Loan Priority Collateral under policies of insurance and to approve any award granted in any condemnation or similar proceeding, or any deed in lieu of condemnation in respect of the Term Loan Priority Collateral.  So long as the Discharge of Term Loan Debt has not occurred, all Proceeds of any such policy and any such award, or any payments with respect to such a deed in lieu of condemnation, shall (i) first, up to an amount not to exceed the Term Loan Debt, be paid to Term Loan Agent for the benefit of the Term Loan Secured Parties to the extent required under the Term Loan Documents, (ii) second, up to an amount not to exceed the ABL Debt, be paid to ABL Agent for the benefit of the ABL Secured Parties to the extent required under the applicable ABL Documents, (iii) third, up to an amount not to exceed the Excess Term Loan Debt, be paid to Term Loan Agent for the benefit of the Term Loan Secured Parties to the extent required under the Term Loan Documents, (iv) fourth, up to an amount not to exceed the Excess ABL Debt, be paid to ABL Agent for the benefit of the ABL Secured Parties to the extent required under the applicable ABL Documents and (v) fifth, if no Excess ABL Debt is outstanding, be paid to the owner of the subject property or as a court of competent jurisdiction may otherwise direct or may otherwise be required by applicable law.  Until the Discharge of Term Loan Debt, if ABL Agent or any other ABL Secured Party shall, at any time, receive any

Proceeds of any such insurance policy or any such award or payment, it shall pay such Proceeds over to Term Loan Agent in accordance with the terms of Section 4.2.

Section 4.    **Payments**

    4.1    Application of Proceeds.

      (a)    So long as the Discharge of ABL Debt and the repayment in full in cash of the Excess ABL Debt has not occurred, the ABL Priority Collateral or Proceeds thereof received in connection with any Disposition of, or collection on, such ABL Priority Collateral, shall be applied in the following order of priority:

      (i)    <u>first</u>, to the ABL Debt in accordance with the ABL Documents until the Discharge of ABL Debt has occurred;

      (ii)    <u>second</u>, to the Term Loan Debt in accordance with the Term Loan Documents until the Discharge of Term Loan Debt has occurred;

      (iii)    <u>third</u>, to the Excess ABL Debt in accordance with the ABL Documents until such obligations are paid in full in cash;

      (iv)    <u>fourth</u>, to the Excess Term Loan Debt in accordance with the Term Loan Documents until such obligations are paid in full in cash;

      (v)    <u>fifth</u>, to the applicable Grantor or as otherwise required by applicable law.

      (b)    So long as the Discharge of Term Loan Debt and the repayment in full in cash of the Excess Term Loan Debt has not occurred, the Term Loan Priority Collateral or Proceeds thereof received in connection with the Disposition of, or collection on, such Term Loan Priority Collateral shall be applied in the following order of priority:

      (i)    <u>first</u>, to the Term Loan Debt in accordance with the Term Loan Documents until the Discharge of Term Loan Debt has occurred;

      (ii)    <u>second</u>, to the ABL Debt in accordance with the ABL Documents until the Discharge of ABL Debt has occurred;

      (iii)    <u>third</u>, to the Excess Term Loan Debt in accordance with the Term Loan Documents until such obligations are paid in full in cash;

      (iv)    <u>fourth</u>, to the Excess ABL Debt in accordance with the ABL Documents until such obligations are paid in full in cash;

      (v)    <u>fifth</u>, to the applicable Grantor or as otherwise required by applicable law.

(c)    The provisions of this Section 4.1 are intended solely to govern the respective Lien priorities as between Term Loan Agent and ABL Agent and shall not impose on any Agent or any other Secured Party any obligations in respect of the disposition of Proceeds of foreclosure on any Collateral which would conflict with prior perfected claims therein in favor of any other person or any order or decree of any court or other governmental authority or any applicable law.

4.2    Payments Over.

(a)    At all times (i) prior to the Discharge of ABL Debt or (ii) after both the Discharge of ABL Debt and the Discharge of Term Loan Debt, but prior to the payment in full in cash of the Excess ABL Debt, in any case, whether or not any Insolvency Proceeding has been commenced by or against any Grantor, Term Loan Agent agrees, for itself and on behalf of the other Term Loan Secured Parties, that any ABL Priority Collateral or Proceeds thereof (including any ABL Priority Collateral or Proceeds thereof subject to Liens that have been avoided or otherwise invalidated, but excluding cash proceeds of Term Loan Priority Collateral) or payment with respect thereto received by Term Loan Agent or any other Term Loan Secured Party (including any right of set-off), and including in connection with any insurance policy claim or any condemnation award (or deed in lieu of condemnation), shall be segregated and held in trust and promptly transferred or paid over to ABL Agent for the benefit of the ABL Secured Parties in the same form as received, with any necessary endorsements or assignments or as a court of competent jurisdiction may otherwise direct.  ABL Agent is hereby authorized to make any such endorsements or assignments as agent for Term Loan Agent.  This authorization is coupled with an interest and is irrevocable.  Any payments made by Grantors in respect of the Term Loan Debt with proceeds of loans or advances under the ABL Documents shall not be required to be transferred or paid over to ABL Agent for the benefit of the ABL Secured Parties.

(b)    At all times (i) prior to the Discharge of Term Loan Debt or (ii) after both the Discharge of ABL Debt and the Discharge of Term Loan Debt, but prior to the payment in full in cash of the Excess Term Loan Debt, in any case, whether or not any Insolvency Proceeding has been commenced by or against any Grantor, ABL Agent agrees, for itself and on behalf of the other ABL Secured Parties, that any Term Loan Priority Collateral or Proceeds thereof (including any Term Loan Priority Collateral or Proceeds thereof subject to Liens that have been avoided or otherwise invalidated but excluding cash proceeds of ABL Priority Collateral) or payment with respect thereto received by ABL Agent or any other ABL Secured Party (including any right of set-off), and including in connection with any insurance policy claim or any condemnation award (or deed in lieu of condemnation), shall be segregated and held in trust and promptly transferred or paid over to Term Loan Agent for the benefit of the Term Loan Secured Parties in the same form as received, with any necessary endorsements or assignments or as a court of competent jurisdiction may otherwise direct. Term Loan Agent is hereby authorized to make any such endorsements or assignments as agent for ABL Agent.  This authorization is coupled with an interest and is irrevocable.

Section 5.    **Bailee for Perfection**

5.1    Each Agent as Bailee.

(a)     Each Agent agrees to hold any Collateral that is in the possession or control of such Agent (or its agents or bailees), to the extent that possession or control thereof is effective to perfect a Lien thereon under the Uniform Commercial Code (such Collateral being referred to herein as the "Pledged Collateral"), as bailee and agent for and on behalf of the other Agent solely for the purpose of perfecting the Lien granted to the other Agent in such Pledged Collateral (including as to any securities or any deposit accounts or securities accounts, if any, for purposes of satisfying the requirements of Sections 8-106(d)(3), 8-301(a)(2) and 9-313(c) of the UCC and similar provision of the PPSA and the Securities Transfer Act of any applicable jurisdiction) pursuant to the ABL Documents or Term Loan Documents, as applicable, subject to the terms and conditions of this Section 5.

(b)     Until the Discharge of ABL Debt has occurred, ABL Agent shall be entitled to deal with the Pledged Collateral constituting ABL Priority Collateral in accordance with the terms of the ABL Documents. The rights of Term Loan Agent to such Pledged Collateral shall at all times be subject to the terms of this Agreement and to ABL Agent's rights under the ABL Documents.  Until the Discharge of Term Loan Debt has occurred, Term Loan Agent shall be entitled to deal with the Pledged Collateral constituting Term Loan Priority Collateral in accordance with the terms of the Term Loan Documents.  The rights of ABL Agent to such Pledged Collateral shall at all times be subject to the terms of this Agreement and to Term Loan Agent's rights under the Term Loan Documents.

(c)     Each Agent shall have no obligation whatsoever to the other Agent or any other Secured Party to assure that the Pledged Collateral is genuine or owned by any of the Grantors or to preserve rights or benefits of any Person except as expressly set forth in this Section 5. The duties or responsibilities of each Agent under this Section 5 shall be limited solely to holding the Pledged Collateral as gratuitous bailee and agent for and on behalf of the other Agent for purposes of perfecting the Lien held by the other Agent.

(d)     Each Agent shall not have by reason of the ABL Documents, the Term Loan Documents or this Agreement or any other document or otherwise in connection with the transactions contemplated by this Agreement, the ABL Documents and the Term Loan Documents a fiduciary relationship in respect of the other Agent or any of the other Secured Parties and shall not have any liability to the other Agent or any other Secured Party in connection with its holding the Pledged Collateral.  Each Agent hereby waives any claims against the other Agent for any breach or alleged breach of fiduciary duty.

5.2     Transfer of Pledged Collateral.

(a)     Upon the Discharge of ABL Debt, to the extent permitted under applicable law:

(i)     ABL Agent shall, without recourse or warranty, transfer the possession and control of the Pledged Collateral, if any, then in its possession or control to Term Loan Agent, except in the event and to the extent (A) ABL Agent or any other ABL Secured Party has retained or otherwise acquired such Collateral in full or partial satisfaction of any of the ABL Debt, (B) such Collateral is sold or otherwise disposed of by ABL Agent or any other

ABL Secured Party or by a Grantor as provided herein or (C) it is otherwise required by any order of any court or other governmental authority.

(ii)     In connection with any transfer described herein to Term Loan Agent, ABL Agent agrees to take reasonable actions in its power (with all reasonable and documented costs and expenses in connection therewith to be for the account of Term Loan Agent and to be paid by Grantors in accordance with the terms of the Term Loan Documents) as shall be reasonably requested by Term Loan Agent to permit Term Loan Agent to obtain, for the benefit of the Term Loan Secured Parties, a first priority security interest in the Pledged Collateral, including in connection with the terms of any Collateral Access Agreement (as defined in the ABL Agreement), whether with a landlord, processor, warehouse or other third party or any Control Agreement (as defined in the ABL Agreement), with respect to any such agreement delivered on or after the date hereof, ABL Agent shall notify the other parties thereto that it is no longer the "Secured Party Representative", "Agent Representative", "Lender Representative" or otherwise entitled to act under such agreement and shall confirm to such parties that Term Loan Agent is thereafter the "Secured Party Representative", "Agent Representative", "Lender Representative" as any of such terms are used in any such agreement and is otherwise entitled to the rights of the secured party under such agreement.

(iii)     The foregoing provision shall not impose on ABL Agent or any other ABL Secured Party any obligations which would conflict with prior perfected claims therein in favor of any other person or any order or decree of any court or other governmental authority or any applicable law.

(b)     Upon the Discharge of Term Loan Debt, to the extent permitted under applicable law:

(i)     Term Loan Agent shall, without recourse or warranty, transfer the possession and control of the Pledged Collateral, if any, then in its possession or control to ABL Agent, except in the event and to the extent (A) Term Loan Agent or any other Term Loan Secured Party has retained or otherwise acquired such Collateral in full or partial satisfaction of any of the Term Loan Debt, (B) such Collateral is sold or otherwise disposed of by Term Loan Agent or any other Term Loan Secured Party or by a Grantor as provided herein or (C) it is otherwise required by any order of any court or other governmental authority.

(ii)     In connection with any transfer described herein to ABL Agent, Term Loan Agent agrees to take reasonable actions in its power (with all reasonable and documented costs and expenses in connection therewith to be for the account of ABL Agent and to be paid by Grantors in accordance with the terms of the ABL Documents) as shall be reasonably requested by ABL Agent to permit ABL Agent to obtain, for the benefit of the ABL Secured Parties, a first priority security interest in the Pledged Collateral.

(iii)     The foregoing provision shall not impose on Term Loan Agent or any other Term Loan Secured Party any obligations which would conflict with prior perfected claims therein in favor of any other person or any order or decree of any court or other governmental authority or any applicable law.

(c)     After both the Discharge of ABL Debt and the Discharge of Term Loan Debt, but prior to the payment in full in cash of the Excess ABL Debt, Term Loan Agent shall take the same actions set out in Section 5.2(a) above to be taken by the ABL Agent upon the Discharge of ABL Debt so as to transfer the possession and control and related rights to the Pledged Collateral back to ABL Agent.  After the payment in full in cash of the Excess ABL Debt, ABL Agent shall take the same actions set out in Section 5.2(a) above to be taken by the ABL Agent upon the Discharge of ABL Debt so as to transfer the possession and control and related rights to the Pledged Collateral back to Term Loan Agent.

(d)     After both the Discharge of Term Loan Debt and the Discharge of ABL Debt, but prior to the payment in full in cash of the Excess Term Loan Debt, ABL Agent shall take the same actions set out in Section 5.2(b) above to be taken by the Term Loan Agent upon the Discharge of Term Loan Debt so as to transfer the possession and control and related rights to the Pledged Collateral back to Term Loan Agent. After the payment in full in cash of the Excess Term Loan Debt, Term Loan Agent shall take the same actions set out in Section 5.2(b) above to be taken by the Term Loan Agent upon the Discharge of Term Loan Debt so as to transfer the possession and control and related rights to the Pledged Collateral back to ABL Agent.

(e)     Each Grantor acknowledges and agrees to the delivery or transfer of control by ABL Agent to Term Loan Agent, and by Term Loan Agent to ABL Agent, of any such Collateral and waives and releases ABL Agent and the other ABL Secured Parties, and Term Loan Agent and the other Term Loan Secured Parties, from any liability as a result of such action, except to the extent resulting from such Agent's own gross negligence or willful misconduct as determined pursuant to a final, non-appealable order of a court of competent jurisdiction.  Each Grantor shall take such further actions as are reasonably required to effectuate the transfer contemplated in this Section 5.2 and shall indemnify the Agent having the first priority Lien prior to such transfer for loss or damage suffered by such Agent as a result of such transfer, except to the extent resulting from such Agent's own gross negligence or willful misconduct as determined pursuant to a final, non-appealable order of a court of competent jurisdiction.

Section 6.     **Insolvency Proceedings**

6.1     General Applicability.  This Agreement shall be applicable both before and after the institution of any Insolvency Proceeding involving any Grantor, including, the filing of any petition by or against any Grantor under the Bankruptcy Code or under any other Bankruptcy Law and all converted or subsequent cases in respect thereof, and all references herein to any Grantor shall be deemed to apply to the trustee for such Grantor and such Grantor as debtor-in-possession.  The relative rights of the ABL Secured Parties and the Term Loan Secured Parties in or to any distributions from or in respect of any Collateral or Proceeds shall continue after the commencement of any Insolvency Proceeding involving any Grantor, including, the filing of any petition by or against any Grantor under the Bankruptcy Code or under any other Bankruptcy Law and all converted cases and subsequent cases, on the same basis as prior to the date of such commencement.  This Agreement shall constitute a subordination agreement for the purposes of Section 510(a) of the Bankruptcy Code and other Bankruptcy Laws and shall be enforceable in any Insolvency Proceeding in accordance with its terms.

6.2     Use of Cash Collateral; Bankruptcy Financing.

(a)     If any Grantor becomes subject to any Insolvency Proceeding, and if ABL Agent or the ABL Secured Parties shall seek to provide a Grantor with, or consent to a third party providing, any post-petition financing under Section 364 of the Bankruptcy Code, or any comparable provision of any other Bankruptcy Law (an "ABL DIP Financing") (it being agreed that ABL Agent and the ABL Secured Parties shall not propose or consent to any ABL DIP Financing that purports to be secured by a priming or pari passu lien on the Term Loan Priority Collateral without the consent of Term Agent), or the ABL Agent or the ABL Secured Parties consent to the use of any ABL Priority Collateral constituting cash collateral under Section 363 of the Bankruptcy Code, or any comparable provision of any other Bankruptcy Law ("ABL Cash Collateral"), until the Discharge of ABL Debt has occurred, Term Loan Agent, for itself and on behalf of the other Term Loan Secured Parties, agrees that each Term Loan Secured Party (i) will raise no objection to, nor support any other Person objecting to, and will be deemed to have consented to, the use of any ABL Cash Collateral, or ABL DIP Financing, (ii) will not request or accept adequate protection or any other relief in connection with the use of such ABL Cash Collateral or such ABL DIP Financing except as set forth in Section 6.4 below, and (iii) will subordinate (and will be deemed hereunder to have subordinated) the Liens on ABL Priority Collateral granted to Term Loan Agent or any other Term Loan Secured Parties pursuant to such ABL DIP Financing on the same terms as such Liens are subordinated hereunder to the Liens granted with respect to such ABL DIP Financing (and such subordination will not alter in any manner the terms of this Agreement), to any adequate protection provided to the ABL Secured Parties and to any "carve-out" or other similar administrative priority expense or claim consented to in writing by ABL Agent to be paid prior to the Discharge of ABL Debt, provided, that:

(A)     the aggregate principal amount of the ABL DIP Financing plus the aggregate outstanding principal amount of ABL Debt under the ABL Agreement plus the aggregate face amount of any letters of credit issued and not reimbursed under the ABL Agreement shall not exceed the ABL Cap,

(B)     the Term Loan Secured Parties retain a Lien on the Collateral (including Proceeds thereof arising after the commencement of such proceeding) with the same priority relative to the Liens on such Collateral of ABL Agent as existed prior to the commencement of the case under the Bankruptcy Code or other Bankruptcy Law (junior in priority to the Liens securing such ABL DIP Financing and the existing Liens in favor of the ABL Agent on the ABL Priority Collateral but senior to the Liens of the ABL Agent and the Liens securing such ABL DIP Financing on the Term Loan Priority Collateral to the same extent as provided under Section 2.2),

(C)     Term Loan Agent receives additional or replacement Liens on all post-petition assets of any Grantor which are subject to an additional or replacement Lien to secure the ABL DIP Financing with same priority relative to the Liens of ABL Agent as existed prior to such Insolvency Proceeding to the extent Term Loan Agent seeks such Liens and is entitled to such additional or replacement Liens under the Bankruptcy Code or other applicable Bankruptcy Law as determined by the Bankruptcy Court having jurisdiction over the case,

(D)    such ABL DIP Financing or use of ABL Cash Collateral is subject to the terms of this Agreement,

(E)    the Term Loan Agent retains the right to object to any agreements or arrangements regarding the use of ABL Cash Collateral or the ABL DIP Financing that require a specific treatment of a claim in respect of the Term Loan Debt for purposes of a plan of reorganization or contravene the terms of this Agreement, and

(F)    as a condition of such ABL DIP Financing or use of ABL Cash Collateral, until the Discharge of Term Loan Debt, (1) all proceeds of the Term Loan Priority Collateral shall either (x) be remitted to the Term Loan Agent for application in accordance with Section 4.1 hereof or (y) only be used by Borrowers subject to terms and conditions reasonably acceptable to the Term Loan Agent, and (2) no portion of the Term Loan Priority Collateral shall be used to repay the ABL Loan Debt outstanding as of the date of the commencement of any Insolvency Proceeding or any ABL Debt incurred thereafter pursuant to any such ABL DIP Financing or use of ABL Cash Collateral.

(b)    If any Grantor becomes subject to any Insolvency Proceeding, and if Term Loan Agent or the Term Loan Secured Parties shall seek to provide a Grantor with, or consent to a third party providing, any post-petition financing under Section 364 of the Bankruptcy Code, or any comparable provision of any other Bankruptcy Law (a "Term Loan DIP Financing") (it being agreed that Term Loan Agent and the Term Loan Secured Parties shall not propose or consent to any Term Loan DIP Financing that purports to be secured by a priming or pari passu lien on the ABL Priority Collateral without the consent of ABL Agent), or the Term Loan Agent or the Term Loan Secured Parties consent to the use of any Term Loan Priority Collateral constituting cash collateral under Section 363 of the Bankruptcy Code, or any comparable provision of any other Bankruptcy Law ("Term Loan Cash Collateral"), until the Discharge of Term Loan Debt has occurred, ABL Agent, for itself and on behalf of the other ABL Secured Parties, agrees that each ABL Secured Party (i) will raise no objection to, nor support any other Person objecting to, and will be deemed to have consented to, the use of any Term Loan Cash Collateral, or Term Loan DIP Financing, (ii) will not request or accept adequate protection or any other relief in connection with the use of such Term Loan Cash Collateral or such Term Loan DIP Financing except as set forth in Section 6.4 below, and (iii) will subordinate (and will be deemed hereunder to have subordinated) the Liens on Term Loan Priority Collateral granted to ABL Agent or any other ABL Secured Parties pursuant to such Term Loan DIP Financing on the same terms as such Liens are subordinated hereunder to the Liens granted with respect to such Term Loan DIP Financing (and such subordination will not alter in any manner the terms of this Agreement), to any adequate protection provided to the Term Loan Secured Parties and to any "carve-out" or other similar administrative priority expense or claim consented to in writing by Term Loan Agent to be paid prior to the Discharge of Term Loan Debt, provided, that:

(A)    the aggregate principal amount of the Term Loan DIP Financing plus the aggregate outstanding principal amount of Term Loan Debt under the Term Loan Agreement shall not exceed the Term Loan Cap,

(B)    the ABL Secured Parties retain a Lien on the Collateral (including Proceeds thereof arising after the commencement of such proceeding) with the same priority

relative to the Liens on such Collateral of Term Loan Agent as existed prior to the commencement of the case under the Bankruptcy Code or other Bankruptcy Law (junior in priority to the Liens securing such Term Loan DIP Financing and the existing Liens in favor of the Term Loan Agent on the Term Loan Priority Collateral but senior to the Liens of the Term Loan Agent and the Liens securing such Term Loan DIP Financing on the ABL Priority Collateral to the same extent as provided under Section 2.2),

(C)     ABL Agent receives additional or replacement Liens on all post-petition assets of any Grantor which are subject to an additional or replacement Lien to secure the Term Loan DIP Financing with same priority relative to the Liens of Term Loan Agent as existed prior to such Insolvency Proceeding to the extent ABL Agent seeks such Liens and is entitled to such additional or replacement Liens under the Bankruptcy Code or other applicable Bankruptcy Law as determined by the Bankruptcy Court having jurisdiction over the case,

(D)     such Term Loan DIP Financing or use of Term Loan Cash Collateral is subject to the terms of this Agreement,

(E)     the ABL Agent retains the right to object to any agreements or arrangements regarding the use of Term Loan Cash Collateral or the Term Loan DIP Financing that require a specific treatment of a claim in respect of the ABL Debt for purposes of a plan of reorganization or contravene the terms of this Agreement, and

(F)     as a condition of such Term Loan DIP Financing or use of Term Loan Cash Collateral, until the Discharge of ABL Debt, (1) all proceeds of the ABL Priority Collateral shall either (x) be remitted to the ABL Agent for application in accordance with Section 4.1 hereof or (y) only be used by Borrowers subject to terms and conditions reasonably acceptable to the ABL Agent, and (2) no portion of the ABL Priority Collateral shall be used to repay the Term Loan Debt outstanding as of the date of the commencement of any Insolvency Proceeding or any Term Loan Debt incurred thereafter pursuant to any such Term Loan DIP Financing or use of Term Loan Cash Collateral.

(c)     No ABL Secured Party shall, directly or indirectly, provide, or seek to provide, or support any other Person providing or seeking to provide, the use of ABL Cash Collateral or ABL DIP Financing secured by Liens equal or senior in priority to the Liens on the Term Loan Priority Collateral (including any assets or property arising after the commencement of a case under the Bankruptcy Code) of Term Loan Agent, without the prior written consent of Term Loan Agent.  No Term Loan Secured Party shall, directly or indirectly, provide, or seek to provide, or support any other Person providing or seeking to provide, the use of Term Loan Cash Collateral or Term Loan DIP Financing secured by Liens equal or senior in priority to the Liens on the ABL Priority Collateral (including any assets or property arising after the commencement of a case under the Bankruptcy Code) of ABL Agent, without the prior written consent of ABL Agent.  For purposes hereof, all references to Collateral shall include any assets or property of Grantors arising after the commencement of any Insolvency Proceeding that are subject to the Liens of Agents.

6.3     Relief from the Automatic Stay.

(a)     The Term Loan Agent, for itself and on behalf of the other Term Loan Secured Parties, agrees that, so long as the Discharge of ABL Debt has not occurred, no Term Loan Secured Party shall, without the prior written consent of the ABL Agent, seek or request relief from or modification of the automatic stay or any other stay in any Insolvency or Liquidation Proceeding in respect of any part of the ABL Priority Collateral, any Proceeds thereof or any Lien thereon securing any of the Term Loan Debt.

(b)     The ABL Agent, for itself and on behalf of the other ABL Secured Parties, agrees that, so long as the Discharge of Term Loan Debt has not occurred, no ABL Secured Party shall, without the prior written consent of the Term Loan Agent, seek or request relief from or modification of the automatic stay or any other stay in any Insolvency or Liquidation Proceeding in respect of any part of the Term Loan Priority Collateral, any Proceeds thereof or any Lien thereon securing any of the ABL Debt.

6.4    Adequate Protection.

(a)     The Term Loan Agent, on behalf of itself and the other Term Loan Secured Parties, agrees that none of them shall contest (or support any other Person contesting):

(i)     any request by the ABL Agent or the other ABL Secured Parties for adequate protection with respect to Liens on the ABL Priority Collateral; or

(ii)     any objection by the ABL Agent or the other ABL Secured Parties to any motion, relief, action or proceeding based on the ABL Agent or the other ABL Secured Parties claiming a lack of adequate protection with respect to Liens on the ABL Priority Collateral to the extent not inconsistent with the other terms of this Agreement.

(b)     The ABL Agent, on behalf of itself and the other ABL Secured Parties, agrees that none of them shall contest (or support any other Person contesting):

(i)     any request by the Term Loan Agent or the other Term Loan Secured Parties for adequate protection with respect to Liens on the Term Loan Priority Collateral; or

(ii)     any objection by the Term Loan Agent or the other Term Loan Secured Parties to any motion, relief, action or proceeding based on the Term Loan Agent or the other Term Loan Secured Parties claiming a lack of adequate protection with respect to Liens on the Term Loan Priority Collateral to the extent not inconsistent with the other terms of this Agreement.

(c)     Notwithstanding anything to the contrary in Sections 6.4(a) and 6.4(b), in any Insolvency Proceeding:

(i)     if any or all of the ABL Secured Parties are granted adequate protection in the form of additional collateral or a super-priority claim in connection with any use of ABL Cash Collateral or an ABL DIP Financing or in connection with any Liens on the ABL Priority Collateral and such additional collateral is the type of asset or property that would constitute ABL Priority Collateral, then (A) the Term Loan Agent, on behalf of itself or any of

the Term Loan Secured Parties, may seek or request adequate protection in the form of a Lien or super-priority claim on such additional collateral, which Lien or claim will be subordinated to the Liens securing the ABL Debt and such use of ABL Cash Collateral or ABL DIP Financing (and all obligations relating thereto) on the same basis as the other Liens on ABL Priority Collateral securing the Term Loan Debt are so subordinated to the Liens on ABL Priority Collateral securing the ABL Debt under this Agreement and (B) subject to clause (ii) below, the ABL Agent, on behalf of itself and the other ABL Secured Parties, agrees that none of them shall contest (or support any other Person contesting) (1) any request by the Term Loan Agent or any other Term Loan Secured Party for adequate protection pursuant to the preceding clause (A) or (2) any motion, relief, action or proceeding in support of a request for adequate protection pursuant to the preceding clause (A);

(ii)    in the event the Term Loan Agent, on behalf of itself or any other Term Loan Secured Parties, seeks or requests adequate protection in respect of Term Loan Debt and such adequate protection is granted in the form of additional collateral or super-priority claims of a type of asset or property that would constitute ABL Priority Collateral, then the Term Loan Agent, on behalf of itself and the other Term Loan Secured Parties, agrees that it will support any request by the ABL Agent to also be granted a Lien or super-priority claim on such additional collateral as security for the ABL Debt and for any use of ABL Cash Collateral or ABL DIP Financing and that any Lien or claim on such additional collateral securing the applicable Term Loan Debt shall be subordinated to the Lien on such collateral securing the ABL Debt and any such use of ABL Cash Collateral or ABL DIP Financing (and all obligations relating thereto) and to any other Liens granted to the ABL Secured Parties as adequate protection on the same basis as the other Liens on ABL Priority Collateral securing the Term Loan Debt are so subordinated to the Liens on ABL Priority Collateral securing the ABL Debt under this Agreement;

(iii)    if any or all of the Term Loan Secured Parties are granted adequate protection in the form of additional collateral or a super-priority claim in connection with any use of Term Loan Cash Collateral or a Term Loan DIP Financing or in connection with any Liens on the Term Loan Priority Collateral and such additional collateral is the type of asset or property that would constitute Term Loan Priority Collateral, then (A) the ABL Agent, on behalf of itself or any of the ABL Secured Parties, may seek or request adequate protection in the form of a Lien or super-priority claim on such additional collateral, which Lien or claim will be subordinated to the Liens securing the Term Loan Debt and such use of Term Loan Cash Collateral or Term Loan DIP Financing (and all obligations relating thereto) on the same basis as the other Liens on Term Loan Priority Collateral securing the ABL Debt are so subordinated to the Liens on Term Loan Priority Collateral securing the Term Loan Debt under this Agreement and (B)  subject to clause (iv) below, the Term Loan Agent, on behalf of itself and the other Term Loan Secured Parties, agrees that none of them shall contest (or support any other Person contesting) (1)  any request by the ABL Agent or any other ABL Secured Party for adequate protection pursuant to the preceding clause (A) or (2) any motion, relief, action or proceeding in support of a request for adequate protection pursuant to the preceding clause (A);

(iv)    in the event the ABL Agent, on behalf of itself or any other ABL Secured Parties, seeks or requests adequate protection in respect of ABL Debt and such adequate protection is granted in the form of additional collateral or super-priority claims of a type of asset

or property that would constitute Term Loan Priority Collateral, then the ABL Agent, on behalf of itself and the other ABL Secured Parties, agrees that it will support any request by the Term Loan Agent to also be granted a Lien or super-priority claim on such additional collateral as security for the Term Loan Debt and for any use of Term Loan Cash Collateral or Term Loan DIP Financing and that any Lien or claim on such additional collateral securing the applicable ABL Debt shall be subordinated to the Lien on such collateral securing the Term Loan Debt and any such use of Term Loan Cash Collateral or Term Loan DIP Financing (and all obligations relating thereto) and to any other Liens granted to the Term Loan Secured Parties as adequate protection on the same basis as the other Liens on Term Loan Priority Collateral securing the ABL Debt are so subordinated to the Liens on Term Loan Priority Collateral securing the Term Loan Debt under this Agreement; and

        (v)     except as otherwise expressly set forth in Section 6.2 or in connection with the exercise of remedies with respect to the ABL Priority Collateral, nothing herein shall limit the rights of the Term Loan Agent or the other Term Loan Secured Parties from seeking adequate protection with respect to their rights in the Term Loan Priority Collateral in any Insolvency Proceeding (including adequate protection in the form of a cash payment, periodic cash payments or otherwise). Except as otherwise expressly set forth in Section 6.2 or in connection with the exercise of remedies with respect to the Term Loan Priority Collateral, nothing herein shall limit the rights of the ABL Agent or the other ABL Secured Parties from seeking adequate protection with respect to their rights in the ABL Priority Collateral in any Insolvency Proceeding (including adequate protection in the form of a cash payment, periodic cash payments or otherwise).

        (d)     Except as otherwise provided in this Section 6.4, (i) no ABL Secured Party may seek or assert any right it may have for adequate protection of its interest in the Term Loan Priority Collateral without the prior written consent of the Term Loan Secured Parties, and (ii) no Term Loan Secured Party may seek or assert any right it may have for adequate protection of its interest in the ABL Priority Collateral without the written consent of the ABL Secured Parties.

        6.5     Reorganization Securities.  If, in any Insolvency Proceeding, debt obligations of any reorganized Grantor secured by Liens upon any property of such reorganized Grantor are distributed, pursuant to a plan of reorganization, on account of both the ABL Debt and the Term Loan Debt, then, to the extent the debt obligations distributed on account of the ABL Debt and on account of the Term Loan Debt are secured by Liens upon the same assets or property, the provisions of this Agreement will survive the distribution of such debt obligations pursuant to such plan and will apply with like effect to the Liens securing such debt obligations.

        6.6     Separate Grants of Security and Separate Classes.  Each of the parties hereto irrevocably acknowledges and agrees that (a) the claims and interests of the ABL Secured Parties and the Term Loan Secured Parties are not "substantially similar" within the meaning of Section 1122 of the Bankruptcy Code, or any comparable provision of any other Bankruptcy Law, (b) the grants of the Liens to secure the ABL Debt and the grants of the Liens to secure the Term Loan Debt constitute two separate and distinct grants of Liens, (c) the ABL Secured Parties' rights in the Collateral are fundamentally different from the Term Loan Secured Parties' rights in the Collateral and the Term Loan Secured Parties' rights in the Collateral are fundamentally

different from the ABL Secured Parties' rights in the Collateral and (d) as a result of the foregoing, among other things, the ABL Debt and the Term Loan Debt must be separately classified in any plan of reorganization proposed or adopted in any Insolvency Proceeding.

6.7    Asset Dispositions.

(a)    Until the Discharge of ABL Debt has occurred, the Term Loan Agent, for itself and on behalf of the other Term Loan Secured Parties, agrees that, in the event of any Insolvency Proceeding, the Term Loan Secured Parties will not object or oppose (or support any Person in objecting or opposing) a motion for any Disposition of any ABL Priority Collateral free and clear of the Liens of Term Loan Agent and the other Term Loan Secured Parties or other claims under Sections 363, 365 or 1129 of the Bankruptcy Code, or any comparable provision of any Bankruptcy Law (and including any motion for bid procedures or other procedures related to the Disposition that is the subject of such motion), and shall be deemed to have consented to any such Disposition of any ABL Priority Collateral under Section 363(f) of the Bankruptcy Code or any comparable provision of other Bankruptcy Law that has been consented to by the ABL Agent; provided, that the junior Lien of Term Loan Agent shall remain in place with respect to any proceeds of any such Disposition that are not applied to the repayment of ABL Debt.

(b)    Until the Discharge of Term Loan Debt has occurred, the ABL Agent, for itself and on behalf of the other ABL Secured Parties, agrees that, in the event of any Insolvency Proceeding, the ABL Secured Parties will not object or oppose (or support any Person in objecting or opposing) a motion to any Disposition of any Term Loan Priority Collateral free and clear of the Liens of ABL Agent and the other ABL Secured Parties or other claims under Sections 363, 365 or 1129 of the Bankruptcy Code, or any comparable provision of any Bankruptcy Law (and including any motion for bid procedures or other procedures related to the Disposition that is the subject of such motion), and shall be deemed to have consented to any such Disposition of any Term Loan Priority Collateral under Section 363(f) of the Bankruptcy Code or any comparable provision of any other Bankruptcy Law that has been consented to by the Term Loan Agent; provided, that the junior Lien of ABL Agent shall remain in place with respect to any proceeds of any such Disposition that are not applied to the repayment of Term Loan Debt.

(c)    The Term Loan Secured Parties agree that the ABL Secured Parties shall have the right to credit bid under Section 363(k) of the Bankruptcy Code or otherwise under any applicable Bankruptcy Law with respect to any Disposition of the ABL Priority Collateral and the ABL Secured Parties agree that the Term Loan Secured Parties shall have the right to credit bid under Section 363(k) of the Bankruptcy Code or otherwise under any applicable Bankruptcy Law with respect to any Disposition of the Term Loan Priority Collateral; provided, that, the Secured Parties shall not be deemed to have agreed to any credit bid by other Secured Parties in connection with the Disposition of Collateral including both Term Loan Priority Collateral and ABL Priority Collateral.  The Term Loan Agent, for itself and on behalf of the other Term Loan Secured Parties, agrees that, so long as the Discharge of ABL Debt has not occurred, no Term Loan Secured Party shall, without the prior written consent of the ABL Agent, credit bid under Section 363(k) of the Bankruptcy Code or otherwise under any applicable Bankruptcy Law with respect to the ABL Priority Collateral.  The ABL Agent, for itself and on behalf of the other ABL Secured Parties, agrees that, so long as the Discharge of Term Loan Debt has not occurred,

no ABL Secured Party shall, without the prior written consent of the Term Loan Agent, credit bid under Section 363(k) of the Bankruptcy Code or otherwise under any applicable Bankruptcy Law with respect to the Term Loan Priority Collateral.

6.8     Certain Waivers as to Section 1111(b)(2) of Bankruptcy Code.  Term Loan Agent, for itself and on behalf of the other Term Loan Secured Parties, waives any claim any Term Loan Secured Party may hereafter have against any ABL Secured Party arising out of the election by any ABL Secured Party of the application of Section 1111(b)(2) of the Bankruptcy Code, or any comparable provision of any other Bankruptcy Law.  ABL Agent, for itself and on behalf of the other ABL Secured Parties, waives any claim any ABL Secured Party may hereafter have against any Term Loan Secured Party arising out of the election by any Term Loan Secured Party of the application of Section 1111(b)(2) of the Bankruptcy Code or any comparable provision of any other Bankruptcy Law.

6.9     Avoidance Issues.  If any ABL Secured Party is required in any Insolvency Proceeding or otherwise to turn over or otherwise pay to the estate of any Grantor or any other person any amount (a "Recovery"), then the ABL Debt shall be reinstated to the extent of such Recovery and the ABL Secured Parties shall be entitled to a Discharge of ABL Debt with respect to all such recovered amounts.  If any Term Loan Secured Party is required in any Insolvency Proceeding or otherwise to turn over or otherwise pay to the estate of any Grantor or any other person any Recovery, then the Term Loan Debt shall be reinstated to the extent of such Recovery and the Term Loan Secured Parties shall be entitled to a Discharge of Term Loan Debt with respect to all such recovered amounts.  If this Agreement shall have been terminated prior to any Recovery, this Agreement shall be reinstated in full force and effect, and such prior termination shall not diminish, release, discharge, impair or otherwise affect the obligations of the parties hereto from such date of reinstatement.

6.10     Other Bankruptcy Laws.  In the event that an Insolvency Proceeding is filed in a jurisdiction other than the United States or is governed by any Bankruptcy Law other than the Bankruptcy Code, each reference in this Agreement to a section of the Bankruptcy Code shall be deemed to refer to the substantially similar or corresponding provision of the Bankruptcy Law applicable to such Insolvency Proceeding, or, in the absence of any specific similar or corresponding provision of Bankruptcy Law, such other general Bankruptcy Law as may be applied in order to achieve substantially the same result as would be achieved under each applicable section of the Bankruptcy Code.

6.11     Post-Petition Claims.  Neither the ABL Agent nor any other ABL Secured Party shall oppose or seek to challenge any claim by the Term Loan Agent or any other Term Loan Secured Party for allowance in any Insolvency Proceeding of Term Loan Debt consisting of post-petition interest, fees, costs, charges or expenses to the extent of the value of any Term Loan Secured Party's Lien.  Neither the Term Loan Agent nor any other Term Loan Secured Party shall oppose or seek to challenge any claim by the ABL Agent or any other ABL Secured Party for allowance in any Insolvency Proceeding of ABL Debt consisting of post-petition interest, fees, costs, charges or expenses to the extent of the value of any ABL Secured Party's Lien.

Section 7.     **Term Loan Lenders' Purchase Option**

7.1     Exercise of Option.   On or after the occurrence and during the continuance of an ABL Event of Default and the acceleration of all of the ABL Debt or the commencement of an Insolvency Proceeding as to Grantors (each a "Term Loan Purchase Event"), one or more of the Term Loan Secured Parties (the "Purchasing Term Loan Secured Parties"), shall have the option, subject to Section 7.2, for a period of ten (10) Business Days after a Term Loan Purchase Event to purchase all (but not less than all) of the ABL Debt from the ABL Secured Parties.  Notice of the exercise of such option shall be sent by Term Loan Agent to ABL Agent within such ten (10) Business Day period and shall be irrevocable.  The obligations of ABL Secured Parties hereunder to sell the ABL Debt owing to them are several and not joint and several.  Each Grantor irrevocably consents to such sale.

7.2     Pro Rata Offer.  The Term Loan Secured Parties agree, solely as among themselves, that upon the occurrence of any Term Loan Purchase Event, the Term Loan Agent shall send a notice to all Term Loan Secured Parties giving each Term Loan Secured Party the option to purchase at least its pro rata share (calculated based on the aggregate Term Loan Debt) of the ABL Debt.  No Term Loan Secured Party shall be required to participate in any purchase offer hereunder, and a purchase offer may be made by any or all of the Term Loan Secured Parties, subject to the requirements of the preceding sentence.  The provisions of this Section 7.2 are intended solely for the benefit of the Term Loan Secured Parties and may be modified, amended or waived by them without the approval of any Grantor, any ABL Secured Party, or otherwise.

7.3     Purchase and Sale.  On the date specified by Term Loan Agent in such notice (which shall not be less than five (5) Business Days, nor more than ten (10) Business Days, after the receipt by ABL Agent of the notice from Term Loan Agent of the election of the Term Loan Secured Parties to exercise such option), ABL Secured Parties shall, subject to any required approval of any court or other regulatory or governmental authority then in effect, if any, sell to such of the Purchasing Term Loan Secured Parties as are specified in the notice from Term Loan Agent of the election of the Term Loan Secured Parties to exercise such option, and such Purchasing Term Loan Secured Parties shall purchase from ABL Secured Parties, all of the ABL Debt.  Notwithstanding anything to the contrary contained herein, in connection with any such purchase and sale, ABL Secured Parties shall retain all rights under the ABL Documents to be indemnified or held harmless by Grantors in accordance with the terms thereof.  In connection with any such purchase and sale, each ABL Secured Party and each Purchasing Term Loan Secured Party shall execute and deliver an assignment and acceptance agreement, in form reasonably acceptable to all parties thereto (but with respect to representations and warranties therein, subject to the provisions of Section 7.5), pursuant to which, among other things, each ABL Lender shall assign to the Purchasing Term Loan Secured Parties such ABL Lender's pro rata share of the commitments and ABL Debt.  Upon the consummation of such purchase and sale, ABL Agent shall resign as the "Agent" under the ABL Documents and upon the written request of Term Loan Agent, and at the expense of the Purchasing Term Loan Secured Parties, shall execute and deliver all such documents and instruments reasonably requested by Term Loan Agent and/or Purchasing Term Loan Secured Parties to assign and transfer any Collateral, together with any and all rights under deposit account control agreements and collateral access agreements related to Collateral, to the applicable successor Agent under the ABL Documents.

7.4     Payment of Purchase Price.

(a)    Upon the date of such purchase and sale, the Purchasing Term Loan Secured Parties shall (i) pay to ABL Agent for the account of the ABL Secured Parties as the purchase price therefor the full amount of all of the ABL Debt then outstanding and unpaid (including principal and interest) and (ii) furnish cash collateral to ABL Agent in such amounts as are required by the ABL Documents in connection with any issued and outstanding letters of credit, banker's acceptances or similar or related instruments issued under the ABL Documents (but not in any event in an amount greater than one hundred five percent (105%) of the aggregate undrawn face amount of such letters of credit, banker's acceptances and similar or related instruments, ABL Hedge Obligations, ABL Bank Product Obligations (or at the option of the ABL Secured Party to whom such ABL Hedge Obligations or ABL Bank Product Obligations are owing, terminate the applicable Hedging Agreements or cash management or other arrangements and make all payments pursuant thereto, as applicable), and in respect of indemnification obligations of Grantors under the ABL Documents as to matters or circumstances known to ABL Secured Parties and disclosed in writing to Term Loan Agent (unless such disclosure is not permitted under applicable law) at the time of the purchase and sale which would reasonably be expected to result in any loss, cost, damage or expense (including reasonable attorneys' fees and legal expenses) to ABL Secured Parties.

(b)    Such purchase price and cash collateral shall be remitted by wire transfer in federal funds to such bank account of ABL Agent as ABL Agent may designate in writing to Term Loan Agent for such purpose.  Interest shall be calculated to but excluding the Business Day on which such purchase and sale shall occur if the amounts so paid by the Purchasing Term Loan Secured Parties to the bank account designated by ABL Agent are received in such bank account prior to 12:00 noon, New York City time and interest shall be calculated to and including such Business Day if the amounts so paid by the Purchasing Term Loan Secured Parties to the bank account designated by ABL Agent are received in such bank account later than 12:00 noon, New York City time.

7.5    Representations Upon Purchase and Sale.  Such purchase and sale shall be expressly made without representation or warranty of any kind by ABL Agent or any other ABL Secured Party as to the ABL Debt or otherwise and without recourse to the ABL Secured Parties; except, that, each ABL Secured Party that is transferring such ABL Debt shall represent and warrant, severally as to it: (a) the amount of the ABL Debt being purchased from it is as reflected in the books and records of such ABL Secured Party (but without representation or warranty as to the collectability, validity or enforceability thereof), (b) that such ABL Secured Party owns the ABL Debt being sold by it free and clear of any liens or encumbrances and (c) such ABL Secured Party has the right to assign the ABL Debt being sold by it and the assignment is duly authorized.

7.6    Notice from ABL Agent Prior to Enforcement Action.  In the absence of Exigent Circumstances, ABL Agent, for itself and on behalf of the ABL Secured Parties, agrees that it will give Term Loan Agent five (5) Business Days' prior written notice of its intention to commence any foreclosure or other action to sell or otherwise realize upon the ABL Priority Collateral. In the event that during such five (5) Business Day period, Term Loan Agent shall send to ABL Agent the irrevocable notice of the Term Loan Secured Parties' intention to exercise the purchase option given by the ABL Secured Parties to the Term Loan Secured Parties under this Section 7, the ABL Secured Parties shall not commence any foreclosure or other

action to sell or otherwise realize upon the Collateral, provided, that, the purchase and sale with respect to the ABL Debt provided for herein shall have closed within five (5) Business Days after the receipt by ABL Agent of the irrevocable notice from Term Loan Agent.

**Section 8.**    **ABL Lenders' Purchase Option**

8.1    Exercise of Option    On or after the occurrence and during the continuance of a Term Loan Event of Default and the acceleration of all of the Term Loan Debt or the commencement of an Insolvency Proceeding as to Grantors (each a "ABL Purchase Event"), one or more of the ABL Secured Parties (the "Purchasing ABL Secured Parties") shall have the option, subject to Section 8.2, for a period of ten (10) Business Days after an ABL Purchase Event to purchase all (but not less than all) of the Term Loan Debt from the Term Loan Secured Parties.  Notice of the exercise of such option shall be sent by ABL Agent to Term Loan Agent within such ten (10) Business Day period and shall be irrevocable. The obligations of Term Loan Secured Parties hereunder to sell the Term Loan Debt owing to them are several and not joint and several.  Each Grantor irrevocably consents to such sale.

8.2    Pro Rata Offer.  The ABL Secured Parties agree, solely as among themselves, that upon the occurrence of any ABL Purchase Event, the ABL Agent shall send a notice to all ABL Secured Parties giving each ABL Secured Party the option to purchase at least its pro rata share (calculated based on the aggregate ABL Debt) of the Term Loan Debt.  No ABL Secured Party shall be required to participate in any purchase offer hereunder, and a purchase offer may be made by any or all of the ABL Secured Parties, subject to the requirements of the preceding sentence.  The provisions of this Section 8.2 are intended solely for the benefit of the ABL Secured Parties and may be modified, amended or waived by them without the approval of any Grantor, any Term Loan Secured Party, or otherwise.

8.3    Purchase and Sale.  On the date specified by ABL Agent in such notice (which shall not be less than five (5) Business Days, nor more than ten (10) Business Days, after the receipt by Term Loan Agent of the notice from ABL Agent of the election of the ABL Secured Parties to exercise such option), Term Loan Secured Parties shall, subject to any required approval of any court or other regulatory or governmental authority then in effect, if any, sell to such of the Purchasing ABL Secured Parties as are specified in the notice from ABL Agent of the election of the ABL Secured Parties to exercise such option, and such Purchasing ABL Secured Parties shall purchase from Term Loan Secured Parties, all of the Term Loan Debt. Notwithstanding anything to the contrary contained herein, in connection with any such purchase and sale, Term Loan Secured Parties shall retain all rights under the Term Loan Documents to be indemnified or held harmless by Grantors in accordance with the terms thereof.  In connection with any such purchase and sale, each Term Loan Secured Party and each Purchasing ABL Secured Party shall execute and deliver an assignment and acceptance agreement, in form reasonably acceptable to all parties thereto (but with respect to representations and warranties therein, subject to the provisions of Section 8.5), pursuant to which, among other things, each Term Loan Lender shall assign to the Purchasing ABL Secured Parties such Term Loan Lender's pro rata share of the commitments and Term Loan Debt.  Upon the consummation of such purchase and sale, Term Loan Agent shall resign as the "Collateral Agent" and Administrative Agent under the Term Loan Documents and upon the written request of ABL Agent, and at the expense of the Purchasing ABL Secured Parties, shall execute and deliver all such documents

and instruments reasonably requested by ABL Agent and/or Purchasing ABL Secured Parties to assign and transfer any Collateral, together with any and all rights under deposit account control agreements and collateral access agreements related to Collateral, to the applicable successor Agent under the Term Loan Documents.

8.4     Payment of Purchase Price.

(a)     Upon the date of such purchase and sale, the Purchasing ABL Secured Parties shall (i) pay to Term Loan Agent for the account of the Term Loan Secured Parties as the purchase price therefor the full amount of all of the Term Loan Debt then outstanding and unpaid (including principal and interest) and (ii) furnish cash collateral to Term Loan Agent in such amounts as are required by the Term Loan Documents in connection with any Term Loan Hedge Obligations, Term Loan Bank Product Obligations (or at the option of the Term Loan Secured Party to whom such Term Loan Hedge Obligations or Term Loan Bank Product Obligations are owing, terminate the applicable Hedging Agreements or cash management or other arrangements and make all payments pursuant thereto, as applicable), and in respect of indemnification obligations of Grantors under the Term Loan Documents as to matters or circumstances known to Term Loan Secured Parties and disclosed in writing to ABL Agent (unless such disclosure is not permitted under applicable law) at the time of the purchase and sale which would reasonably be expected to result in any loss, cost, damage or expense (including reasonable attorneys' fees and legal expenses) to Term Loan Secured Parties.

(b)     Such purchase price and cash collateral shall be remitted by wire transfer in federal funds to such bank account of Term Loan Agent as Term Loan Agent may designate in writing to ABL Agent for such purpose.  Interest shall be calculated to but excluding the Business Day on which such purchase and sale shall occur if the amounts so paid by the Purchasing ABL Secured Parties to the bank account designated by Term Loan Agent are received in such bank account prior to 12:00 noon, New York City time and interest shall be calculated to and including such Business Day if the amounts so paid by the Purchasing ABL Secured Parties to the bank account designated by Term Loan Agent are received in such bank account later than 12:00 noon, New York City time.

8.5     Representations Upon Purchase and Sale.  Such purchase and sale shall be expressly made without representation or warranty of any kind by Term Loan Agent or any Term Loan Secured Party as to the Term Loan Debt or otherwise and without recourse to the Term Loan Secured Parties; except, that, each Term Loan Secured Party that is transferring such Term Loan Debt shall represent and warrant, severally as to it: (a) the amount of the Term Loan Debt being purchased from it is as reflected in the books and records of such Term Loan Secured Party (but without representation or warranty as to the collectability, validity or enforceability thereof), (b) that such Term Loan Secured Party owns the Term Loan Debt being sold by it free and clear of any liens or encumbrances and (c) such Term Loan Secured Party has the right to assign the Term Loan Debt being sold by it and the assignment is duly authorized.

8.6     Notice from ABL Agent Prior to Enforcement Action.  In the absence of Exigent Circumstances, Term Loan Agent, for itself and on behalf of the Term Loan Secured Parties, agrees that it will give ABL Agent five (5) Business Days' prior written notice of its intention to commence any foreclosure or other action to sell or otherwise realize upon the Term Loan

Priority Collateral. In the event that during such five (5) Business Day period, ABL Agent shall send to Term Loan Agent the irrevocable notice of the ABL Secured Parties' intention to exercise the purchase option given by the Term Loan Secured Parties to the ABL Secured Parties under this Section 8, the Term Loan Secured Parties shall not commence any foreclosure or other action to sell or otherwise realize upon the Collateral, provided, that, the purchase and sale with respect to the Term Loan Debt provided for herein shall have closed within five (5) Business Days after the receipt by Term Loan Agent of the irrevocable notice from ABL Agent.

Section 9.      **Access and Use of Term Loan Priority Collateral**

    9.1      Access and Use Rights of ABL Agent.

        (a)      In the event that Term Loan Agent shall acquire control or possession of any of the Term Loan Priority Collateral or shall, through the exercise of remedies under the Term Loan Documents or otherwise, sell any of the Term Loan Priority Collateral to any third party (a "Third Party Purchaser"), Term Loan Agent shall permit ABL Agent (and require as a condition of such sale to the Third Party Purchaser that the Third Party Purchaser agree to permit the ABL Agent), at ABL Agent's option and in accordance with applicable law and subject to the rights of any landlords under any real property leases, and at the expense of the ABL Secured Parties: (i) to enter and use any or all of the Term Loan Priority Collateral under such control or possession (or sold to a Third Party Purchaser) consisting of real property and the improvements, structures, buildings thereon and all related rights during normal business hours in order to inspect, remove or take any action with respect to the ABL Priority Collateral or to enforce ABL Agent's rights with respect thereto, including, but not limited to, the examination and removal of ABL Priority Collateral and the examination and duplication of the books and records of any Grantor related to the ABL Priority Collateral, or to otherwise handle, deliver, ship, transport, deal with or dispose of any ABL Priority Collateral, such right to include, without limiting the generality of the foregoing, the right to conduct one or more public or private sales or auctions thereon and (ii) use any of the Term Loan Priority Collateral under such control or possession (or sold to a Third Party Purchaser) consisting of equipment (including computers or other data processing equipment related to the storage or processing of records, documents or files pertaining to the ABL Priority Collateral) and intellectual property to handle, deal with or dispose of any ABL Priority Collateral pursuant to the rights of ABL Agent and the other ABL Secured Parties as set forth in the ABL Documents, the UCC of any applicable jurisdiction and other applicable law.  In furtherance of the foregoing in this clause (a) but subject to the terms of clause (b) below, the Term Loan Agent hereby grants to the ABL Agent (and the Term Loan Agent shall require as a condition of the sale to any Third Party Purchaser of any of the Term Loan Priority Collateral consisting of intellectual property that such Third Party Purchaser grant to the ABL Agent), a nonexclusive, irrevocable, royalty-free, worldwide license to use, license or sublicense any and all such intellectual property except to the extent such grant is prohibited by any rule of law, statute or regulation (and including in such license access to all media in which any of the licensed terms may be recorded or stored and to all computer software and programs used for the compilation or printout thereof) as is or may be necessary or advisable in the ABL Agent's reasonable judgment for the ABL Agent to realize upon the ABL Priority Collateral.

        (b)      The rights of ABL Agent set forth in clause (a) above as to the Term Loan Priority Collateral shall be irrevocable and without charge and shall continue at ABL Agent's

option for a period of one hundred eighty (180) days as to any such Term Loan Priority Collateral from the earlier of (i) the date on which Term Loan Agent has notified ABL Agent that Term Loan Agent has acquired possession or control of such Term Loan Priority Collateral and (ii) the date of commencement by the ABL Agent of enforcement actions against the ABL Priority Collateral using such Term Loan Priority Collateral. The time periods set forth herein shall be tolled during the pendency of any proceeding of a Grantor under the Bankruptcy Code or any other Bankruptcy Law or other Insolvency Proceedings if and for so long as ABL Agent is effectively stayed from enforcing its rights against the ABL Priority Collateral. In no event shall Term Loan Agent or any of the Term Loan Secured Parties take any action to interfere, limit or restrict the rights of ABL Agent set forth above or the exercise of such rights by ABL Agent pursuant to this Section 9.1 prior to the expiration of such periods. The one hundred eighty (180) day period described above, as it may be extended as provided for above, is referred to herein as the "Access Period".

(c)    Nothing contained in this Agreement shall restrict the Disposition by Term Loan Agent of any Term Loan Priority Collateral prior to the expiration of the Access Period, subject to the provisions above regarding a Third Party Purchaser.

9.2    Responsibilities of ABL Secured Parties. The ABL Agent shall repair at its expense any physical damage to any Term Loan Priority Collateral used by ABL Agent as a direct result of the actions of the ABL Agent (or its representatives) in exercising its access and use rights as provided in Section 9.1 above (but shall not be responsible for any diminution in value of the Term Loan Priority Collateral resulting from the ABL Agent so dealing with any ABL Priority Collateral so long as the ABL Agent and the other ABL Secured Parties leave the Term Loan Priority Collateral in substantially the same condition as it was prior to their actions with respect to the ABL Priority Collateral, except for ordinary wear and tear resulting from the actions of the ABL Agent and the other ABL Secured Parties contemplated by, and for the time periods specified under, Section 9.1). The ABL Agent and the other ABL Secured Parties shall indemnify and hold harmless the Term Loan Agent and the other Term Loan Secured Parties from any claim, loss, damage, cost or liability arising from any claim by a third party against Term Loan Agent and the other Term Loan Secured Parties as a direct result of any action by ABL Agent (or its representatives). The Term Loan Agent shall not have any responsibility or liability for the acts or omissions of ABL Agent or any of the other ABL Secured Parties, and ABL Agent and the other ABL Secured Parties shall not have any responsibility or liability for the acts or omissions of Term Loan Agent, in each case arising in connection with such other Person's use and/or occupancy of any of the Term Loan Priority Collateral. If the ABL Agent conducts a public auction or private sale of the ABL Priority Collateral at any of the real property constituting Term Loan Priority Collateral, the ABL Agent shall provide the Term Loan Agent with reasonable advance notice and use reasonable efforts to hold such auction or sale in a manner that would not unduly disrupt the Term Loan Agent's use of such real property. Without limiting the rights granted herein, to the extent such rights have been exercised under this Agreement, the ABL Agent and the other ABL Secured Parties shall reasonably cooperate with the Term Loan Agent and the other Term Loan Secured Parties in connection with any Disposition efforts made by the Term Loan Secured Parties with respect to the Term Loan Priority Collateral.

9.3     Grantor Consent.  The Grantors consent to the performance by the Term Loan Agent of the obligations set forth in Section 9.1 and acknowledge and agree that neither the Term Loan Agent (nor any other Term Loan Secured Party) shall ever by accountable or liable for any action taken or omitted to be taken by the ABL Agent or any other ABL Secured Party or its or any of their officers, employees, agents, successors, assigns or representatives in connection therewith or incidental thereto or in consequence thereof, except to the extent resulting from such Person's own gross negligence or willful misconduct as determined pursuant to a final, non-appealable order of a court of competent jurisdiction.

Section 10.    **Reliance; Waivers; Etc.**

10.1    Reliance.

(a)     The consent by the ABL Secured Parties to the execution and delivery of the Term Loan Documents and the grant to Term Loan Agent on behalf of the Term Loan Secured Parties of a Lien on the Collateral and all loans and other extensions of credit made or deemed made on and after the date hereof by the ABL Secured Parties to any Grantor shall be deemed to have been given and made in reliance upon this Agreement.

(b)     The consent by the Term Loan Secured Parties to the execution and delivery of the ABL Documents and the grant to ABL Agent on behalf of the ABL Secured Parties of a Lien on the Collateral and all loans and other extensions of credit made or deemed made on and after the date hereof by the Term Loan Secured Parties to any Grantor shall be deemed to have been given and made in reliance upon this Agreement.

10.2    No Warranties or Liability.

(a)     Term Loan Agent, for itself and on behalf of the other Term Loan Secured Parties, acknowledges and agrees that each of ABL Agent and the other ABL Secured Parties have made no express or implied representation or warranty, including with respect to the execution, validity, legality, completeness, collectability or enforceability of any of the ABL Documents, the ownership of any Collateral or the perfection or priority of any Liens thereon. Term Loan Agent agrees, for itself and on behalf of the other Term Loan Secured Parties, that the ABL Secured Parties will be entitled to manage and supervise their respective loans and extensions of credit under the ABL Documents in accordance with law and as they may otherwise, in their sole discretion, deem appropriate, and the ABL Secured Parties may manage their loans and extensions of credit without regard to any rights or interests that Term Loan Agent or any of the other Term Loan Secured Parties have in the Collateral or otherwise, except as otherwise provided in this Agreement. Neither ABL Agent nor any of the other ABL Secured Parties shall have any duty to Term Loan Agent or any of the other Term Loan Secured Parties to act or refrain from acting in a manner which allows, or results in, the occurrence or continuance of an event of default or default under any agreements with any Grantor (including the Term Loan Documents), regardless of any knowledge thereof which they may have or with which they may be charged.

(b)     ABL Agent, for itself and on behalf of the other ABL Secured Parties, acknowledges and agrees that each of Term Loan Agent and the other Term Loan Secured

Parties have made no express or implied representation or warranty, including with respect to the execution, validity, legality, completeness, collectability or enforceability of any of the Term Loan Documents, the ownership of any Collateral or the perfection or priority of any Liens thereon. ABL Agent agrees, for itself and on behalf of the other ABL Secured Parties, that the Term Loan Secured Parties will be entitled to manage and supervise their respective loans and extensions of credit under the Term Loan Documents in accordance with law and as they may otherwise, in their sole discretion, deem appropriate, and the Term Loan Secured Parties may manage their loans and extensions of credit without regard to any rights or interests that ABL Agent or any of the other ABL Secured Parties have in the Collateral or otherwise, except as otherwise provided in this Agreement.  Neither Term Loan Agent nor any of the other Term Loan Secured Parties shall have any duty to ABL Agent or any of the other ABL Secured Parties to act or refrain from acting in a manner which allows, or results in, the occurrence or continuance of an event of default or default under any agreements with any Grantor (including the ABL Documents), regardless of any knowledge thereof which they may have or with which they may be charged.

       10.3    No Waiver of Lien Priorities.

       (a)    No right of ABL Agent or any of the other ABL Secured Parties to enforce any provision of this Agreement or any of the ABL Documents shall at any time in any way be prejudiced or impaired by any act or failure to act on the part of any Grantor or by any act or failure to act by ABL Agent or any other ABL Secured Party, or by any noncompliance by any Person with the terms, provisions and covenants of this Agreement, any of the ABL Documents or any of the Term Loan Documents, regardless of any knowledge thereof which ABL Agent or any of the other ABL Secured Parties may have or be otherwise charged with.

       (b)    No right of Term Loan Agent or any of the other Term Loan Secured Parties to enforce any provision of this Agreement or any of the Term Loan Documents shall at any time in any way be prejudiced or impaired by any act or failure to act on the part of any Grantor or by any act or failure to act by Term Loan Agent or any other Term Loan Secured Party, or by any noncompliance by any Person with the terms, provisions and covenants of this Agreement, any of the Term Loan Documents or any of the ABL Documents, regardless of any knowledge thereof which Term Loan Agent or any of the other Term Loan Secured Parties may have or be otherwise charged with.

       (c)    Term Loan Agent agrees not to assert and hereby waives, to the fullest extent permitted by law, any right to demand, request, plead or otherwise assert or otherwise claim the benefit of, any marshalling, appraisal, valuation or other similar right that may otherwise be available under applicable law with respect to the Collateral or any other similar rights a junior secured creditor may have under applicable law.

       (d)    ABL Agent agrees not to assert and hereby waives, to the fullest extent permitted by law, any right to demand, request, plead or otherwise assert or otherwise claim the benefit of, any marshalling, appraisal, valuation or other similar right that may otherwise be available under applicable law with respect to the Collateral or any other similar rights a junior secured creditor may have under applicable law.

10.4    Obligations Unconditional.  All rights, interests, agreements and obligations of the ABL Agent, the ABL Secured Parties, the Term Loan Agent and the Term Loan Secured Parties hereunder shall remain in full force and effect irrespective of:

(a)    any lack of validity or enforceability of any ABL Document or Term Loan Document;

(b)    any change in the time, manner or place of payment of, or in any other terms of, all or any of the ABL Debt or Term Loan Debt, or any amendment or waiver or other modification of the terms of any ABL Document or Term Loan Document;

(c)    any exchange of any security interest in any Collateral or any other collateral or any amendment, waiver or other modification of all or any of the ABL Debt or Term Loan Debt or any guarantee thereof;

(d)    the commencement of any Insolvency Proceeding in respect of any Grantor; or

(e)    any other circumstance that otherwise might constitute a defense available to (i) any Grantor (other than the Discharge of ABL Debt or Discharge of Term Loan Debt, as applicable, subject to Sections 6.9 and 11.3) or (ii) a junior lienholder.

10.5    Amendments to ABL Documents.  The ABL Documents may be amended, supplemented or otherwise modified in accordance with their terms and the ABL Agreement may be refinanced, in each case, without notice to, or the consent of the Term Loan Agent or the other Term Loan Secured Parties, all without affecting the lien subordination or other provisions set forth in this Agreement (even if any right of subrogation or other right or remedy of Term Loan Agent or any other Term Loan Secured Party is affected, impaired or extinguished thereby); provided, that:

(a)    the holders of the ABL Debt as so Refinanced bind themselves in a writing addressed to the Term Loan Agent to the terms of this Agreement, and

(b)    without the prior written consent of the Term Loan Agent, any such amendment, supplement, modification or refinancing shall not:

(i)    increase the maximum amount of the aggregate commitments under the ABL Agreement to an amount greater than the ABL Cap; or

(ii)    shorten the scheduled maturity of the ABL Agreement to a date prior to the scheduled maturity date of the ABL Agreement as in effect on the date hereof;

(iii)    add or modify any restriction on payment or prepayment of the Term Loan Debt;

(iv)    add any restriction on amendments, waivers or other modifications to the Term Loan Documents;

(v)    shorten the weighted average life to maturity of the ABL Debt from the weighted average life to maturity as in effect on the date hereof; or

(vi)    contravene the provisions of this Agreement.

10.6    Amendments to Term Loan Documents.  The Term Loan Documents may be amended, supplemented or otherwise modified in accordance with their terms and the Term Loan Agreement may be refinanced, in each case, without notice to, or the consent of the ABL Agent or the other ABL Secured Parties, all without affecting the lien subordination or other provisions set forth in the Intercreditor Agreement (even if any right of subrogation or other right or remedy of ABL Agent or any other ABL Secured Party is affected, impaired or extinguished thereby); provided, that,

(a)    the holders of the Term Loan Debt as so Refinanced bind themselves in a writing addressed to the ABL Agent to the terms of this Agreement, and

(b)    without the prior written consent of the ABL Agent, any such amendment, supplement, modification or refinancing shall not:

(i)    increase the sum of the then outstanding aggregate principal amount of the loans under the Term Loan Agreement in excess of the Term Loan Cap;

(ii)    shorten the scheduled maturity of the Term Loan Agreement to a date prior to the scheduled maturity date of the Term Loan Agreement as in effect on the date hereof;

(iii)    add or modify any restriction on payment or prepayment of the ABL Debt;

(iv)    add any restriction on amendments, waivers or other modifications to the ABL Documents;

(v)    shorten the weighted average life to maturity of the Term Loan Debt from the weighted average life to maturity as in effect on the date hereof; or

(vi)    contravene the provisions of this Agreement.

Section 11.    **Miscellaneous**

11.1    Conflicts.  In the event of any conflict between the provisions of this Agreement and the provisions of the ABL Documents or the Term Loan Documents, the provisions of this Agreement shall govern.

11.2    Continuing Nature of this Agreement; Severability.  This Agreement shall continue to be effective until the first to occur of (a) the Discharge of ABL Debt and the payment in full in cash of the Excess ABL Debt or (b)  the Discharge of Term Loan Debt and the payment in full in cash of the Excess Term Loan Debt.  This is a continuing agreement of lien subordination and the Secured Parties may continue, at any time and without notice to the other

Secured Parties, to extend credit and other financial accommodations and lend monies to or for the benefit of any Grantor constituting ABL Debt and/or Term Loan Debt (as applicable) in reliance hereof.  Each of Term Loan Agent, for itself and on behalf of the Term Loan Secured Parties, and ABL Agent, for itself and on behalf of the ABL Secured Parties, hereby waives any right it may have under applicable law to revoke this Agreement or any of the provisions of this Agreement.  The terms of this Agreement shall survive, and shall continue in full force and effect, in any Insolvency Proceeding. Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall not invalidate the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

      11.3    Refinancing.

      (a)    <u>Refinancing Permitted</u>.  Without prejudice to any rights of the Secured Parties under the ABL Documents and Term Loan Documents, as applicable and subject to the provisions of Section 10.5 and 10.6, the ABL Debt and/or Term Loan Debt may be refinanced in whole or in part if the holders of such indebtedness, or a duly authorized agent on their behalf, agree in writing to be bound by the terms of this Agreement.  ABL Agent, for itself and on behalf of the ABL Secured Parties, and Term Loan Agent, for itself and on behalf of the Term Loan Secured Parties, agree, in connection with any refinancing of the ABL Debt and/or the Term Loan Debt, promptly to enter into such documents and agreements (including amendments or supplements to this Agreement) as Grantors may reasonably request to reflect such refinancing; <u>provided</u>, <u>that</u>, the rights and powers of the Secured Parties contemplated hereby shall not be affected thereby.

      (b)    Effect of Refinancing.

      (i)    If substantially contemporaneously with the Discharge of ABL Debt, Grantors refinance in full the indebtedness outstanding under the ABL Documents in accordance with the provisions of Section 11.3(a), then after written notice to Term Loan Agent, (A) the indebtedness and other obligations arising pursuant to such refinancing of the then outstanding indebtedness under the ABL Documents shall automatically be treated as ABL Debt for all purposes of this Agreement, including for purposes of the Lien priorities and rights in respect of Collateral set forth herein, (B) the credit agreement and the other loan documents evidencing such new indebtedness shall automatically be treated as the ABL Agreement and the ABL Documents for all purposes of this Agreement and (C) the agent under the new ABL Agreement shall be deemed to be ABL Agent for all purposes of this Agreement.  Upon receipt of notice of such refinancing (including the identity of the new ABL Agent), Term Loan Agent shall promptly enter into such documents and agreements (including amendments or supplements to this Agreement) as Grantors or the new ABL Agent may reasonably request in order to provide to the new ABL Agent the rights of ABL Agent contemplated hereby.

      (ii)    If substantially contemporaneously with the Discharge of Term Loan Debt, Grantors refinance in full the indebtedness outstanding under the Term Loan Documents in accordance with the provisions of Section 11.3(a), then after written notice to ABL Agent, (A) the indebtedness and other obligations arising pursuant to such refinancing of the then outstanding indebtedness under the Term Loan Documents shall automatically be

treated as Term Loan Debt for all purposes of this Agreement, including for purposes of the Lien priorities and rights in respect of Collateral set forth herein, (B) the credit agreement and the other loan documents evidencing such new indebtedness shall automatically be treated as the Term Loan Agreement and the Term Loan Documents for all purposes of this Agreement and (C) the agent under the new Term Loan Agreement shall be deemed to be Term Loan Agent for all purposes of this Agreement.  Upon receipt of notice of such refinancing (including the identity of the new Term Loan Agent), ABL Agent shall promptly enter into such documents and agreements (including amendments or supplements to this Agreement) as Grantors or the new Term Loan Agent may reasonably request in order to provide to the new Term Loan Agent the rights of Term Loan Agent contemplated hereby.

11.4    Amendments; Waivers.

(a)    No amendment or modification of any of the provisions of this Agreement by Term Loan Agent or ABL Agent shall be deemed to be made unless the same shall be in writing signed on behalf of both of the Term Loan Agent and the ABL Agent (as directed pursuant to the applicable Term Loan Documents or ABL Documents, as the case may be).  No waiver of any of the provisions of this Agreement shall be deemed to be made unless the same shall be in writing signed by the party making the same or its authorized agent and each waiver, if any, shall be a waiver only with respect to the specific instance involved and shall in no way impair the rights of the parties making such waiver or the obligations of the other parties to such party in any other respect or at any other time. The Grantors shall not have any right to consent to or approve any amendment, modification or waiver of any provision of this Agreement except to the extent their rights or obligations are directly adversely affected.

(b)    ABL Agent and Term Agent, without the consent of any other ABL Secured party or Term Loan Secured Party, may determine that a supplemental agreement (which may take the form of an amendment or an amendment and restatement of this Agreement) is necessary or appropriate to facilitate having additional indebtedness or other obligations of any of the Grantors become Term Loan Debt under this Agreement (such indebtedness or other obligations," Additional Term Debt"); provided that (i) such Additional Term Debt and the Liens securing such Additional Term Debt are permitted under the ABL Credit Agreement and the Term Loan Agreement, (ii) the Liens securing such Additional Debt shall in no event have any higher priority or have any greater rights than the Liens securing the Term Loan Debt have in relation to the Liens securing the ABL Debt as of the date hereof and (iii) such supplemental agreement may contain additional intercreditor terms applicable solely to the holders of such Additional Term Debt, subject to the terms of clause (ii) above. ABL Agent and Term Agent shall, upon the request of Term Agent or Grantors, execute and deliver such supplemental agreement reasonably acceptable to Grantors, ABL Agent and Term Agent and consistent with the Terms of this Agreement in order to give effect to the matters described in this clause (b) above.

11.5    Subrogation.

(a)    Term Loan Agent, for itself and on behalf of the Term Loan Secured Parties, hereby waives any rights of subrogation it may acquire as a result of any payment hereunder until the Discharge of ABL Debt has occurred.

(b)    ABL Agent, for itself and on behalf of the ABL Secured Parties, hereby waives any rights of subrogation it may acquire as a result of any payment hereunder until the Discharge of Term Loan Debt has occurred.

11.6    Notices.All notices to the Term Loan Secured Parties and the ABL Secured Parties permitted or required under this Agreement may be sent to Term Loan Agent and ABL Agent, respectively. Unless otherwise specifically provided herein, any notice or other communication herein required or permitted to be given shall be in writing and may be personally served, electronically mailed or sent by courier service, facsimile or other electronic transmission or U.S. mail and shall be deemed to have been given when delivered in person or by courier service, upon receipt of a facsimile or other electronic transmission or four (4) Business Days after deposit in the U.S. mail (registered or certified, with postage prepaid and properly addressed). For the purposes hereof, the addresses of the parties hereto shall be as set forth below, or, as to each party, at such other address as may be designated by such party in a written notice to all of the other parties.

|  |  |
|---|---|
| ABL Agent: | Royal Bank of Canada<br>20 King Street West, 4th Floor<br>Toronto, Ontario<br>Canada MSH 1C4<br>Attn: Rodica Dutka<br>Fax No.: (416) 842-3901<br>Email:  rodica.dutka@rbccm.com |
| with a copy to | Otterbourg P.C.<br>230 Park Avenue<br>New York, New York  10169<br>Attention: Michael Barocas<br>Fax No.: (212) 682-6104<br>Email:  mbarocas@otterbourg.com |

|                    |                                                                 |
|--------------------|-----------------------------------------------------------------|
| Term Loan Agent:   | Credit Suisse AG                                                |
|                    | Eleven Madison Avenue                                           |
|                    | 23rd Floor, New York, NY 10010                                  |
|                    | Attention of: Sean Portrait – Agency Manager                    |
|                    | Fax No. (212) 322 2291                                          |
|                    | Email:  agency.loanops@credit-suisse.com                        |
|                    |                                                                 |
|                    | with a copy to:                                                 |
|                    |                                                                 |
|                    | Credit Suisse AG                                                |
|                    | Eleven Madison Avenue                                           |
|                    | 23rd Floor, New York, NY 10010                                  |
|                    | Attention of Loan Operations – Boutique                         |
|                    | Management                                                       |
|                    | Fax No. (212) 325 8315                                          |
|                    | Email: ops-collateral@credit-suisse.com                         |

(a)      Unless the parties agree otherwise, (i) notices and other communications sent to an e-mail address shall be deemed received upon the sender's receipt of an acknowledgement from the intended recipient (such as by the "return receipt requested" function, as available, return e-mail or other written acknowledgement); provided that if such notice or other communication is not sent during the normal business hours of the recipient, such notice or communication shall be deemed to have been sent at the opening of business on the next Business Day for the recipient, and (ii)  notices or communications posted to an Internet or intranet website shall be deemed received upon the deemed receipt by the intended recipient at its e-mail address as described in the foregoing clause (i) of notification that such notice or communication is available and identifying the website address therefor

11.7    Further Assurances.

(a)      Term Loan Agent agrees that it shall, for itself and on behalf of the Term Loan Secured Parties, take such further action and shall execute and deliver to ABL Agent such additional documents and instruments (in recordable form, if requested) as ABL Agent may reasonably request to effectuate the terms of and the lien priorities contemplated by this Agreement.

(b)      ABL Agent agrees that it shall, for itself and on behalf of the ABL Secured Parties, take such further action and shall execute and deliver to Term Loan Agent such additional documents and instruments (in recordable form, if requested) as Term Loan Agent may reasonably request to effectuate the terms of and the lien priorities contemplated by this Agreement.

11.8    Consent to Jurisdiction; Waiver of Jury Trial.  EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY CONSENTS TO THE EXCLUSIVE JURISDICTION OF THE SUPREME COURT OF THE STATE OF NEW YORK IN NEW YORK COUNTY AND THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF

NEW YORK AND CONSENT THAT ALL SERVICE OF PROCESS MAY BE MADE BY
REGISTERED MAIL OR BY COURIER SERVICE DIRECTED TO SUCH PARTY AS
PROVIDED IN SECTION 11.6 ABOVE FOR SUCH PARTY.  THE PARTIES HERETO
WAIVE ANY OBJECTION TO ANY ACTION INSTITUTED HEREUNDER BASED ON
FORUM NON CONVENIENS, AND ANY OBJECTION TO THE VENUE OF ANY ACTION
INSTITUTED HEREUNDER.  EACH OF THE PARTIES HERETO WAIVES TRIAL BY
JURY IN ANY ACTION OR PROCEEDING WITH RESPECT TO THIS AGREEMENT OR
ANY COURSE OF CONDUCT, COURSE OF DEALING, VERBAL OR WRITTEN
STATEMENT OR ACTION OF ANY PARTY HERETO IN RESPECT THEREOF.  EACH OF
THE PARTIES HERETO AGREES THAT A FINAL JUDGMENT IN ANY SUCH ACTION
OR PROCEEDING SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN OTHER
JURISDICTIONS BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER
PROVIDED BY LAW.  NOTHING IN THIS AGREEMENT SHALL AFFECT ANY RIGHT
THAT THE TERM LOAN AGENT, ANY OTHER TERM LOAN SECURED PARTY, THE
ABL AGENT OR ANY OTHER ABL SECURED PARTY MAY OTHERWISE HAVE TO
BRING ANY ACTION OR PROCEEDING RELATING TO THIS AGREEMENT AGAINST
ANY GRANTOR OR ANY OF ITS PROPERTIES IN THE COURTS OF ANY
JURISDICTION.

11.9    Governing Law.  The validity, construction and effect of this Agreement shall be
governed by the internal laws of the State of New York but excluding any principles of conflicts
of law or any other rule of law that would result in the application of the law of any jurisdiction
other than the laws of the State of New York.

11.10    Binding on Successors and Assigns.  This Agreement shall be binding upon ABL
Agent, the other ABL Secured Parties, Term Loan Agent, the other Term Loan Secured Parties
and their respective permitted successors and assigns.

11.11    Specific Performance.

(a)    ABL Agent may demand specific performance of this Agreement. Term
Loan Agent, for itself and on behalf of the Term Loan Secured Parties, hereby irrevocably
waives any defense based on the adequacy of a remedy at law and any other defense which
might be asserted to bar the remedy of specific performance in any action which may be brought
by ABL Agent.

(b)    Term Loan Agent may demand specific performance of this Agreement.
ABL Agent, for itself and on behalf of the ABL Secured Parties, hereby irrevocably waives any
defense based on the adequacy of a remedy at law and any other defense which might be asserted
to bar the remedy of specific performance in any action which may be brought by Term Loan
Agent.

11.12    Section Titles; Time Periods.  The section titles contained in this Agreement are
and shall be without substantive meaning or content of any kind whatsoever and are not a part of
this Agreement.

11.13   Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be an original and all of which shall together constitute one and the same document.  Delivery of an executed counterpart of a signature page of this Agreement or any document or instrument delivered in connection herewith by facsimile transmission or other electronic transmission (in pdf or tif format) shall be effective as delivery of a manually executed counterpart of this Agreement or such other document or instrument, as applicable.

11.14   Authorization.  By its signature, each Person executing this Agreement on behalf of a party hereto represents and warrants to the other parties hereto that it is duly authorized to execute this Agreement.

11.15   No Third Party Beneficiaries.  This Agreement and the rights and benefits hereof shall inure to the benefit of each of the parties hereto and their respective successors and assigns and shall inure to the benefit of each of the holders of ABL Debt and Term Loan Debt. No other Person shall have or be entitled to assert rights or benefits hereunder.

11.16   Additional Grantors.   Promptly upon the written request of ABL Agent or Term Loan Agent, Grantors shall cause each of their Subsidiaries that becomes a Grantor to acknowledge and consent to the terms of this Agreement by causing such Subsidiary to execute and deliver to the parties hereto a Grantor Joinder, substantially in the form of Annex C hereto, pursuant to which such Subsidiary shall agree to be bound by the terms of the attached Acknowledgment and Agreement to the same extent as if it had executed and delivered same as of the date hereof.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

**ABL AGENT**                                    **TERM LOAN AGENT**

ROYAL BANK OF CANADA,                    CREDIT SUISSE AG, as Term Loan Agent
as ABL Agent

By: _____                By: _____
Name: _____            Name: _____
Title: _____             Title: _____


                                                By: _____
                                                Name: _____
                                                Title: _____

[Signature Page to Intercreditor Agreement (Koosharem)]

## ACKNOWLEDGMENT AND AGREEMENT

Each of the undersigned hereby acknowledges and agrees to the terms and provisions of the Intercreditor Agreement, dated as of [_____], 2014 (the "Intercreditor Agreement"), between Royal Bank of Canada, in its capacity as administrative and collateral agent for the ABL Secured Parties (in such capacity, the "ABL Agent") and Credit Suisse AG in its capacity as administrative agent and collateral agent for the Term Loan Secured Parties (in such capacity, "Term Loan Agent"), of which this Acknowledgment and Agreement is a part.  By its signature below, the undersigned agrees that it will, together with its successors and assigns, be bound by the provisions hereof to the extent they purport to bind any Grantor.

Each of the undersigned agrees that (a) if either the ABL Agent or the Term Loan Agent holds Collateral it does so as gratuitous bailee (under the UCC) for the other and is hereby authorized to and may turn over to such other Secured Party upon request therefor any such Collateral, after all obligations and indebtedness of the undersigned to the bailee Secured Party have been fully paid and performed, or as otherwise provided in the Intercreditor Agreement, and (b)  it will execute any and all further documents, agreements and instruments, and take all such further actions, that may be required under any applicable Law, or which any Secured Party may reasonably request, to carry out the terms and conditions of the foregoing Intercreditor Agreement.  Each of the undersigned agrees to provide to the Term Loan Agent and the ABL Agent a copy of each Grantor Joinder hereto executed and delivered pursuant to Section 11.16 of the Intercreditor Agreement.

Each of the undersigned acknowledges and agrees that, although it may sign this Acknowledgment and Agreement, it is not a party to the Intercreditor Agreement and does not and will not receive any right, benefit, priority or interest under the Intercreditor Agreement because of the existence of this Acknowledgment and Agreement (other than the right to approve any amendment, modification or waiver of any provision of the Intercreditor Agreement to the extent the rights or obligations of the undersigned are directly adversely affected).

This Acknowledgment and Agreement may be executed in one or more counterparts, each of which shall be an original and all of which shall together constitute one and the same document.  Delivery of an executed counterpart of a signature page of this Acknowledgment and Agreement or any document or instrument delivered in connection herewith by facsimile transmission or other electronic transmission (in pdf or tif format) shall be effective as delivery of a manually executed counterpart of this Acknowledgment and Agreement or such other document or instrument, as applicable.

### [SIGNATURE PAGE FOLLOWS]

[_____]


By:     _____
Name: _____
Title:  _____

[_____]


By:     _____
Name: _____
Title:  _____

Annex A
to
Intercreditor Agreement

<u>ABL Priority Collateral</u>

ABL Priority Collateral means (a) all Collateral now owned or hereafter acquired by any Foreign Grantor and (b) the Collateral now owned or hereafter acquired by any Domestic Grantor which (in the case of this clause (b)) consists of (i) accounts (other than accounts of a Domestic Grantor arising under contracts for sale of Term Loan Priority Collateral), (ii) inventory, (iii) chattel paper, (iv) deposit accounts and, only to the extent of any cash or cash equivalents on deposit therein, securities accounts (and all cash, checks and other negotiable instruments, funds and other evidences of payment held therein, but not any identifiable proceeds of Term Loan Priority Collateral), (v) to the extent evidencing, governing, securing or otherwise relating to any of the foregoing, all general intangibles (including payment intangibles, but excluding Intellectual Property), instruments, commercial tort claims, supporting obligations (including letter of credit rights), books, records, documents (including databases, customer lists and other records, whether tangible or electronic, which contain any information relating to any of the foregoing) and (vi) all proceeds and products of any or all of the foregoing in whatever form received, including proceeds of business interruption insurance; provided that, notwithstanding anything to the contrary contained in this paragraph, in no event shall any of the ABL Priority Collateral include any Excluded Assets.

Extraordinary receipts solely to the extent constituting proceeds of judgments relating to any of the ABL Priority Collateral, insurance proceeds and condemnation awards in respect of any ABL Priority Collateral, indemnity payments in respect of any ABL Priority Collateral and purchase price adjustments in connection with any ABL Priority Collateral shall constitute ABL Priority Collateral; it being understood and agreed that to the extent such receipts constitute proceeds of both ABL Priority Collateral and Term Loan Priority Collateral, only that portion attributable to ABL Priority Collateral shall constitute ABL Priority Collateral.  Proceeds of Excluded Assets that would otherwise constitute ABL Priority Collateral shall be deemed to be ABL Priority Collateral.

Annex B
to
Intercreditor Agreement

<u>Term Loan Priority Collateral</u>

Term Loan Priority Collateral means all Collateral (other than the ABL Priority Collateral, including identifiable proceeds of ABL Priority Collateral) now owned or hereafter acquired by any Domestic Grantor, including: (i) all the equity interests of the Company, (ii) all the equity interests held by each Domestic Grantor, (iii) substantially all tangible and intangible assets of each Domestic Grantor, including but not limited to all real property and fixtures now owned or hereafter acquired by any Domestic Grantor, (iv) the Term Loan Priority Collateral Pledged Account, (v) all investment property, documents, general intangibles (including Intellectual Property), equipment, instruments, letter of credit rights, commercial tort claims and other assets not constituting ABL Priority Collateral, (vi) to the extent evidencing, governing, securing or otherwise relating to any of the foregoing, all books and records of the Domestic Grantors and (vii) all proceeds and products of any or all of the foregoing in whatever form received, including proceeds of insurance (other than business interruption insurance) and claims against third parties; provided that, notwithstanding anything to the contrary contained in this paragraph, in no event shall any of the Term Loan Priority Collateral include any ABL Priority Collateral or Excluded Assets.

Extraordinary receipts solely to the extent constituting proceeds of judgments relating to any of the Term Loan Priority Collateral, insurance proceeds and condemnation awards in respect of any Term Loan Priority Collateral, indemnity payments in respect of any Term Loan Priority Collateral and purchase price adjustments in connection with any Term Loan Priority Collateral shall constitute Term Loan Priority Collateral; it being understood and agreed that to the extent such receipts constitute proceeds of both ABL Priority Collateral and Term Loan Priority Collateral, only that portion attributable to Term Loan Priority Collateral shall constitute Term Loan Priority Collateral.  Proceeds of Excluded Assets that would otherwise constitute Term Loan Priority Collateral shall be deemed to be Term Loan Priority Collateral.

Annex C
to
Intercreditor Agreement

<u>Form of Grantor Joinder</u>

Reference is made to that certain Intercreditor Agreement, dated as of _____, 2014 (as amended, amended and restated, renewed, extended, supplemented or otherwise modified from time to time in accordance with the terms thereof, the "Intercreditor Agreement"), among Royal Bank of Canada, in its capacity as administrative and collateral agent for the ABL Secured Parties (in such capacity, the "ABL Agent") and Credit Suisse AG, in its capacity as administrative and collateral agent for the Term Loan Secured Parties (in such capacity, "Term Loan Agent").  Capitalized terms used herein without definition shall have the meaning assigned thereto in the Intercreditor Agreement.

This Grantor Joinder, dated as of _____, 20__ (this "Grantor Joinder"), is being delivered pursuant to Section 11.16 of the Intercreditor Agreement.

The undersigned, _____, a _____ (the "Additional Grantor"), hereby agrees to become a party to the Acknowledgment and Agreement attached to the Intercreditor Agreement, as fully as if the Additional Grantor had executed and delivered the Acknowledgment and Agreement attached to the Intercreditor Agreement as of the date thereof.

This Grantor Joinder may be executed in two or more counterparts, each of which shall constitute an original but all of which when taken together shall constitute one contract.

THIS GRANTOR JOINDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

[SIGNATURE PAGES FOLLOW]

IN WITNESS WHEREOF, the Additional Grantor has caused this Grantor Joinder to be duly executed by its authorized representative as of the day and year first above written.

[ADDITIONAL GRANTOR]


By: _____
Name: _____
Title: _____

Exhibit A
to
Intercreditor Agreement

<u>Subsidiary Borrowers (ABL Facility)</u>

Exhibit A-1

Exhibit B
to
Intercreditor Agreement

<u>Subsidiary and Affiliate Guarantors</u>

<u>Term Loan Facility Guarantors</u>

<u>ABL Facility Guarantors</u>