## Annex 5

**New Warrants**

NEW KOOSHAREM CORPORATION

and

AMERICAN STOCK TRANSFER & TRUST COMPANY, LLC,

as Warrant Agent

_____

WARRANT AGREEMENT

Dated as of May [•], 2014

_____

Warrants to Purchase Common Stock, par value $0.01 per share

_____

## TABLE OF CONTENTS

**Page**

ARTICLE I
ISSUANCE OF WARRANTS AND EXECUTION AND DELIVERY OF GLOBAL
WARRANT

Section 1.01    Issuance of Warrants...................................................................................1
Section 1.02    Execution and Delivery of Global Warrant. ...........................................2

ARTICLE II
WARRANT PRICE, DURATION AND EXERCISE OF WARRANTS

Section 2.01    Exercise Price.............................................................................................3
Section 2.02    Duration of Warrants ................................................................................3
Section 2.03    Exercise of Warrants..................................................................................3
Section 2.04    Reservation of Warrant Shares ................................................................5

ARTICLE III
OTHER PROVISIONS RELATING TO RIGHTS OF HOLDERS OF WARRANT

Section 3.01    No Rights as Stockholder Conferred by Warrants.................................6
Section 3.02    Notice of Certain Events ...........................................................................6

ARTICLE IV
EXCHANGE AND TRANSFER

Section 4.01    Exchange and Transfer. .............................................................................6
Section 4.02    Restrictions on Transfer; Restrictive Legend. .......................................7
Section 4.03    Treatment of Holders of Warrants .........................................................10
Section 4.04    Cancellation of Global Warrant ..............................................................10

ARTICLE V
ADJUSTMENT OF WARRANT PRICE AND NUMBER OF WARRANT SECURITIES

Section 5.01    Adjustments Generally..............................................................................10
Section 5.02    Stock Dividends; Split-Ups.......................................................................11
Section 5.03    Aggregation of Shares...............................................................................11
Section 5.04    Replacement of Securities upon Reorganization ...................................11
Section 5.05    Notices of Changes in Warrant ................................................................11
Section 5.06    No Fractional Shares.................................................................................12
Section 5.07    Form of Global Warrant............................................................................12

i

ARTICLE VI
CONCERNING THE WARRANT AGENT

Section 6.01    Warrant Agent..................................................................................................12
Section 6.02    Resignation and Appointment of Successor. ..........................................................12

ARTICLE VII
MISCELLANEOUS

Section 7.01    Amendment....................................................................................................14
Section 7.02    Notices and Demands to the Company and Warrant Agent ..................................14
Section 7.03    Addresses ......................................................................................................14
Section 7.04    Applicable Law...............................................................................................14
Section 7.05    Persons Having Rights Under Warrant Agreement ...............................................15
Section 7.06    Depositary Transfer ........................................................................................15
Section 7.07    Headings .......................................................................................................15
Section 7.08    Counterparts...................................................................................................15
Section 7.09    Inspection of Warrant Agreement .....................................................................15
Section 7.10    Notices to Holders of Warrants..........................................................................15
Section 7.11    Binding Effects ...............................................................................................15
Section 7.12    Severability ....................................................................................................15

**WARRANT AGREEMENT**

THIS WARRANT AGREEMENT ("Warrant Agreement") dated as of [•], 2014 (the "Effective Date") between NEW KOOSHAREM CORPORATION, a Delaware corporation (the "Company"), and AMERICAN STOCK TRANSFER & TRUST COMPANY, LLC, a New York limited liability company, as Warrant Agent (the "Warrant Agent").

W I T N E S S E T H :

WHEREAS, this Warrant Agreement is being entered into pursuant to and in accordance with that certain Prepackaged Joint Plan of Reorganization for Ablest, Inc., et al., as filed with the United States Bankruptcy Court for the District of Delaware, Chapter 11 Case No. [_____], on April 1, 2014 (the "Plan"), which provides, among other things, that the Company shall issue to the holders of Prepetition Second Lien Loan Claims (as defined in the Plan) Warrants (the "Warrants"), entitling the holders thereof or their registered permitted assigns (collectively, the "Holders") to purchase shares (the "Warrant Shares") of the Company's Common Stock, par value $0.01 per share (the "Common Stock"); and

WHEREAS, the Company has engaged the Warrant Agent to act on behalf of the Company in connection with the issuance, transfer, exchange, and exercise of the Warrant Shares, and in this Warrant Agreement wishes to set forth, among other things, the provisions of the Warrants and the terms and conditions on which they may be issued, transferred, exchanged, exercised and replaced.

NOW, THEREFORE, in consideration of the premises and of the mutual agreements herein contained, the parties hereto agree as follows:

**ARTICLE I**
**ISSUANCE OF WARRANTS AND EXECUTION AND DELIVERY OF GLOBAL WARRANT**

Section 1.01    Issuance of Warrants.

(a)    Each Warrant shall represent the right, subject to the provisions contained herein and therein, to purchase one share of the Warrant Shares.  The Warrants shall initially entitle the Holders of such Warrants to purchase, in the aggregate, up to [          ] shares of Common Stock, as such amount may be adjusted from time to time pursuant to this Warrant Agreement, upon the exercise of all of the Warrants in accordance with the terms of this Warrant Agreement.

(b)    The Warrants shall be issued by book-entry registration on the books and records of the Warrant Agent and shall be evidenced by a global warrant, substantially in the form of Exhibit A hereto (including the Global Warrant Legend (as defined below) thereon) (the "Global Warrant").

(c)     The Company initially appoints American Stock Transfer & Trust Company, LLC to act as Depositary with respect to the Global Warrant.

Section 1.02     Execution and Delivery of Global Warrant.

(a)     The Global Warrant shall be dated and may have such letters, numbers or other marks of identification or designation and such legends or endorsements printed, lithographed or engraved thereon as the officers of the Company executing the same may approve (execution thereof to be conclusive evidence of such approval) and as are not inconsistent with the provisions of this Warrant Agreement, or as may be required to comply with any law or with any rule or regulation made pursuant thereto.  The Global Warrant shall be signed on behalf of the Company by its chief executive officer, president, chief financial officer, any vice president, any assistant vice president, treasurer or any assistant treasurer of the Company, which may but need not be attested by its secretary or one of its assistant secretaries.  Such signatures may be manual or facsimile signatures of such authorized officers and may be imprinted or otherwise reproduced on the Global Warrant.  From time to time, in accordance with the Warrant Agent's customary practices, the Warrant Agent shall send to each Holder a statement reflecting such Holder's book-entry position in the Warrants and any changes thereto (the "Warrant Statement").  The Global Warrant and the Warrant Statements shall be subject to all of the terms and conditions of the Warrant Agreement, which terms and conditions shall be incorporated therein by reference and made a part thereof.  Notwithstanding anything contained herein to the contrary, if any terms or conditions of the Global Warrant or the Warrant Statement shall be found to conflict with any terms or conditions of this Warrant Agreement, this Warrant Agreement shall control.

(b)     The Global Warrant shall represent the number of outstanding Warrants from time to time endorsed thereon and that the number of outstanding Warrants represented thereby may from time to time be reduced or increased, as appropriate, to reflect exchanges, redemptions, exercises and other similar transactions.

(c)     No Warrant shall be valid for any purpose, and no Warrant evidenced thereby shall be exercisable, until the Global Warrant has been countersigned by the Warrant Agent by manual or facsimile signature.  Such signature by the Warrant Agent upon the Global Warrant executed by the Company shall be conclusive evidence, and the only evidence, that the Global Warrant so countersigned has been duly issued hereunder.

(d)     In case any officer of the Company who shall have signed the Global Warrant either manually or by facsimile signature shall cease to be such officer before the Global Warrant so signed shall have been countersigned and delivered by the Warrant Agent as provided herein, such Global Warrant may be countersigned and delivered notwithstanding that the person who signed such Global Warrant ceased to be such officer of the Company; and the Global Warrant may be signed on behalf of the Company by such persons as, at the actual date of the execution of such Global Warrant, shall be the proper officers of the Company, although at the date of the execution of this Warrant Agreement any such person was not such officer.

## ARTICLE II
## WARRANT PRICE, DURATION AND EXERCISE OF WARRANTS

Section 2.01    Exercise Price.  The initial exercise price for each Warrant shall be $[   ] (the "Exercise Price"), subject to adjustment as provided herein.

Section 2.02    Duration of Warrants.  Subject to the provisions of this Warrant Agreement, each Warrant may be exercised in whole or in part at any time prior to the Expiration Date, as defined herein, on any day other than a Saturday, Sunday or a day on which banking institutions in the State of California are authorized or obligated by law or executive order to close (a "Business Day") prior to 5:00 p.m. Pacific time, at the offices of the Warrant Agent designated for such purpose (the "Warrant Agent Office") on May [•], 2019.  Each Warrant not exercised at or before the Expiration Date shall become void, and all rights of the Holder and any beneficial owners of Warrants under this Warrant Agreement shall cease.

Section 2.03    Exercise of Warrants.

(a)    Warrants may be exercised, at the option of the Holder, in whole or in part, at any time or from time to time, by complying with the Depositary's procedures relating to the exercise of such book-entry interest in the Global Warrant.  In addition, the Holder shall deliver to the Company at the Warrant Agent Office (i) the Exercise Form substantially in the form attached hereto as Exhibit B duly executed by such Holder or its duly authorized agent or attorney (the "Exercise Form"), (ii) payment of the aggregate Exercise Price to the Warrant Agent for the account of the Company, by certified or official bank check payable to the Company, or by wire transfer in immediately available funds, in the amount of the aggregate Exercise Price for such Warrant Shares, and (iii) a Joinder Agreement to the Stockholders Agreement in the form attached hereto as Exhibit D duly executed by the Person in whose name the Warrant Shares are requested to be issued (a "Joinder") unless no Stockholders Agreement is then in effect or if such Holder is already a party to the Stockholders Agreement; provided, however, that if the Warrant Shares are to be issued in a name other than the record holder of the applicable Warrant, such record holder shall be deemed to have requested a Transfer of such Warrant prior to such exercise, which Transfer must comply with the provisions of this Warrant Agreement.

(b)    The date on which payment in full of the Exercise Price is received by the Company at the Warrant Agent Office shall, subject to receipt of a valid Exercise Form and Joinder in accordance with this Warrant Agreement, be deemed to be the date on which the Warrant is exercised.  The Warrant Agent shall promptly deposit all funds received by it in payment for the exercise of Warrants in an account of the Company maintained with it (or in such other account as may be designated by the Company) and shall promptly advise the Company, by telephone or by facsimile transmission or other form of electronic communication available to both parties when a payment for the exercise of Warrants is received and the amount so deposited to its account.  The Warrant Agent shall promptly confirm such advice to the Company in writing.

(c)    Upon such delivery of a valid and duly executed Exercise Form and Joinder, payment of the Exercise Price, and satisfaction of the other requirements set forth herein,

3

the Company shall cause the transfer agent for the Common Stock (the "Transfer Agent"), within ten (10) Business Days following notification from the Warrant Agent of receipt of an Exercise Form pursuant to Section 2.03(g)(iv), to issue to the Holder the aggregate number of whole Warrant Shares issuable upon such exercise and deliver to the Holder written confirmation that such Warrant Shares have been duly issued and recorded on the books of the Company as hereinafter provided. The Warrant Shares so issued shall be registered in the name of the Holder or such other name as shall be designated in the Exercise Form and Joinder delivered by the Holder. Such Warrant Shares shall be deemed to have been issued and any person so designated to be named therein shall be deemed to have become the holder of record of such Warrant Shares as of the date of delivery of the Exercise Form to the Warrant Agent Office duly executed by the Holder thereof and upon payment of the Exercise Price. Notwithstanding any provision herein to the contrary, the Company shall not be required to register Warrant Shares in the name of any person who acquired any Warrant or any Warrant Shares otherwise than in accordance with this Warrant Agreement.

(d)    In case an exercise of Warrants is in part only, the Warrant Agent shall make an appropriate adjustment to the account of the Holder to reflect a number of Warrants for the number of shares of Common Stock equal (without giving effect to any adjustment thereof) to the number of such shares called for by such Holder's Warrants prior to such exercise, minus the number of such shares designated by the Holder upon such exercise.

(e)    Neither the Warrant Agent nor the Company shall be required to pay any stamp or other tax or other charge required to be paid in connection with any transfer involved in the issuance of the Warrant Shares, and in the event that any such transfer is involved, neither the Warrant Agent nor the Company shall be required to issue or deliver any Warrant Share until it has been established to the Company's and the Warrant Agent's satisfaction that such tax or other charge has been paid or that no such tax or other charge is due.

(f)    Any exercise of a Warrant pursuant to the terms of this Warrant Agreement shall be irrevocable and shall constitute a binding agreement between the Holder and the Company, enforceable in accordance with its terms.

(g)    The Warrant Agent shall:

(i)    examine all Exercise Forms, Joinders and all other documents delivered to it by or on behalf of Holders as contemplated hereunder to ascertain whether or not, on their face, such Exercise Forms, Joinders and any such other documents have been executed and completed in accordance with their terms and the terms hereof;

(ii)    where an Exercise Form, Joinder or other document appears on its face to have been improperly completed or executed or some other irregularity in connection with the exercise of the Warrants exists, the Warrant Agent shall endeavor to inform the appropriate parties (including the person submitting such instrument) of the need for fulfillment of all requirements, specifying those requirements which appear to be unfulfilled;

4

(iii)    inform the Company of and cooperate with and assist the Company in resolving any reconciliation problems between the Exercise Forms received and the crediting of Warrant Shares to the respective Holders' accounts; and

(iv)    advise the Company no later than five (5) Business Days after receipt of an Exercise Form, of (A) the receipt of such Exercise Form and the number of Warrants exercised in accordance with the terms and conditions of this Warrant Agreement, (B) the identity of the Holder that has submitted the Exercise Form, (C) the percentage of the then outstanding Warrants represented by such exercise and (D) such other information as the Company shall reasonably request.

(h)    All questions as to the validity, form and sufficiency (including time of receipt) of an exercised Warrant and any Exercise Form and Joinder will be determined by the Company in its sole discretion, which determination shall be final and binding.  The Company reserves the right to reject any and all Exercise Forms not in proper form, not accompanied by a Joinder in proper form and duly executed by the Person in whose name the Warrant Shares are to be issued, pursuant to which Warrant Shares are to be issued in the name of a Person other than the record holder of the applicable Warrant unless such deemed Transfer complies with the terms of this Agreement, or for which any corresponding agreement by the Company to exchange would, in the opinion of the Company, be unlawful.  Such determination by the Company shall be final and binding on the Holders, absent manifest error.  Moreover, the Company reserves the absolute right to waive any of the conditions to the exercise of Warrants or defects in the exercise thereof with regard to any particular exercise of Warrants.  Neither the Company nor the Warrant Agent shall be under any duty to give notice to the Holders of the Warrants of any irregularities in any exercise of Warrants or any Exercise Form, nor shall it incur any liability for the failure to give such notice.

(i)    If, at the time of issuance of Warrant Shares, the Stockholders Agreement is still in effect, then each of the Warrant Shares issued upon the exercise of a Warrant, book-entry account in which such shares are held or statement issued in respect thereof shall also be stamped or otherwise imprinted with the legend set forth in the Stockholders Agreement.

Section 2.04    Reservation of Warrant Shares

(a)    For the purpose of enabling it to satisfy any obligation to issue Warrant Shares upon exercise of Warrants, the Company will at all times through the Expiration Date, reserve and keep available out of its aggregate authorized but unissued or treasury shares of Common Stock, the number of Warrant Shares deliverable upon the exercise of all outstanding Warrants, and the Company's Transfer Agent is hereby irrevocably authorized and directed at all times to reserve such number of authorized and unissued or treasury shares of Common Stock as shall be required for such purpose.  The Company will keep a copy of this Warrant Agreement on file with the Transfer Agent.  If Warrant Shares are to be represented by stock certificates, the Warrant Agent is hereby irrevocably authorized to requisition from time to

5

time from such Transfer Agent stock certificates issuable upon exercise of outstanding Warrants, and the Company will supply such Transfer Agent with duly executed stock certificates for such purpose.

(b)    The Company covenants that all shares of Common Stock issued upon exercise of the Warrants will, upon issuance in accordance with the terms of this Warrant Agreement, be fully paid and nonassessable and free from all taxes, liens, charges and security interests created by or imposed upon the Company with respect to the issuance and holding thereof.

## ARTICLE III
## OTHER PROVISIONS RELATING TO RIGHTS OF HOLDERS OF WARRANT

Section 3.01    No Rights as Stockholder Conferred by Warrants.  No Warrant shall, and nothing contained in this Warrant Agreement, in the Global Warrant or in the Warrant Statement shall be construed to, entitle the Holder or any beneficial owner thereof to any of the rights of a holder or beneficial owner of Warrant Shares, including, without limitation, the right to vote or to consent or to receive notice as a stockholder in respect of any meeting of stockholders for the election of directors of the Company or any other matter, to receive dividends on Warrant Shares or any rights whatsoever as stockholders of the Company, until such Warrant is duly exercised in accordance with this Warrant Agreement and such Holder is issued the Warrant Shares to which it is entitled in connection therewith.

Section 3.02    Notice of Certain Events.  The Company shall (i) provide at least five (5) business days prior written notice to each Holder, at the last address set forth for such Holder in the register books of the Warrant Agent, of any record date relating to the payment by the Company of a dividend or distribution on the Common Stock and (ii) provide prior notice, not later than the time notice is given to eligible stockholders under the Stockholders Agreement, at the last address set forth for such Holder in the register books of the Warrant Agent, of any transaction involving the right of a holder of Common Stock to exercise "tag along" rights under the Stockholders Agreement.

## ARTICLE IV
## EXCHANGE AND TRANSFER

Section 4.01    Exchange and Transfer.

(a)    The Warrant Agent shall keep, at the Warrant Agent Office, books in which, subject to such reasonable regulations as it may prescribe, it shall register Warrants and exchanges and transfers of outstanding Warrants upon request to exchange or transfer such Warrants, provided, that (i) the Warrant Agent shall have received a written instruction of transfer or exchange in form satisfactory to the Warrant Agent, duly executed by the Holder thereof or by such Holder's duly authorized agent or attorney, providing all information required to be delivered hereunder, such signature to be guaranteed by an eligible guarantor institution to the extent required by the Warrant Agent or the Depositary; (ii) such exchange or transfer is not

prohibited by the restrictions set forth in the Warrant Agreement, and (iii) such exchange or transfer otherwise complies with all of the requirements set forth herein.  Upon any such registration of transfer, a Warrant Statement shall be issued to the transferee.

(b)    No service charge shall be made for any exchange or registration of transfer of Warrants, however, the Warrant Agent and/or the Company may require payment of a sum sufficient to cover any stamp or other tax or other charge that may be imposed in connection with any such exchange or registration of transfer.  Neither the Warrant Agent nor the Company shall be required to pay any stamp or other tax or other charge required to be paid in connection with such transfer, and neither the Warrant Agent nor the Company shall be required to issue or deliver any Warrant Share until it has been established to the Company's and the Warrant Agent's satisfaction that such tax or other charge has been paid or that no such tax or other charge is due.

(c)    The Warrant Agent shall not effect any exchange or registration of transfer which will result in the issuance of a Warrant, evidencing a fraction of a Warrant or a number of full Warrants and a fraction of a Warrant.

(d)    All Warrants credited to a Holder's or transferee's  account upon any exchange or transfer of Warrants in accordance with the provisions of this Warrant Agreement shall be the valid obligations of the Company, evidencing the same obligations, and entitled to the same benefits under this Warrant Agreement, as the Warrants that were so exchanged or transferred.

Section 4.02    Restrictions on Transfer; Restrictive Legend.

(a)    General Restriction.  No Holder may Transfer any Warrant or Warrant Shares unless such Transfer (i) would be permitted under the terms of the Stockholders Agreement if such Warrant or Warrant Shares constituted "Shares" as defined in the Stockholders Agreement and (ii) is permitted by the other terms of this Article IV.

(b)    Requests for Transfer.  In order to provide for the effective policing of this Section 4.02, a Holder who proposes to effect a Transfer of Warrants or Warrant Shares to any Person that is not an Affiliate, or who proposes to effect a deemed Transfer pursuant to which Warrant Shares are to be issued in the name of a Person other than the record holder of the applicable Warrant,  must submit, prior to the date of the proposed Transfer, a written request in writing (a "Transfer Request") that the Company review the proposed Transfer and authorize or not authorize the proposed Transfer pursuant to this Section 4.02.  A Transfer Request shall include:  (i) the name, address, jurisdiction of organization or citizenship and telephone number of the proposed Transferee, (ii) the number of Warrants proposed to be so Transferred, (iii) the date on which the proposed Transfer is expected to take place, (iv) the name of the Holder proposing such Transfer, and (v) such information as the Company in its discretion may reasonably request (and which may, in the Company's sole discretion, include an opinion of counsel to be provided at the Transferor's sole cost and expense to such effect) to establish that registration of the proposed Transfer is not required under the Securities Act or any applicable state securities or "blue sky" laws.  The Company shall, within five (5) Business Days after its

receipt of a Transfer Request that includes all of the information set forth in the foregoing clauses (i) through (v), determine whether to authorize the Transfer proposed in such Transfer Request and shall notify the proposed Transferor of such determination; provided, that the only bases on which a Transfer may be denied are failure to comply with the applicable obligations and restrictions set forth in this Article 4 or in Article 5 of the Stockholders Agreement or this Warrant Agreement; provided, further, that if the Company does not notify the proposed Transferor of its determination within such time period, the Transfer proposed in such Transfer Request shall be deemed to be approved hereunder.

(c)     Exchange Act Reporting Obligations.  Notwithstanding anything to the contrary in this Agreement, no Holder may Transfer any Warrants if, as a result of such Transfer, the Warrants, Common Stock (including, for this purpose, all holders of Warrants) or any other class of equity securities of the Company would be held of record by (and, the case of Common Stock, issuable to upon exercise of Warrants) more than 500 Persons or otherwise in circumstances that the Company or the Board determines could require the Company to file reports under the Exchange Act, if it is not otherwise subject to such requirements.  Nothing contained in this Section 4.02 shall limit the authority of the Board to take such other action to the extent permitted by law as it deems necessary or advisable to preserve the Company's status as a non-reporting company under the Exchange Act.

(d)     Any attempted or purported transfer of all or a portion of the Warrants held by a Holder in violation of this Section 4.02 shall be null and void and of no force or effect whatsoever, such purported transferee will not be treated as an owner of the Warrants for purposes of this Warrant Agreement or otherwise, and the Company will not register such transfer.

(e)     Defined Terms.

(i)     "Affiliate" means, with respect to any specified Person, any other Person directly or indirectly controlling or controlled by or under direct or indirect common control with such specified Person, or any Related Fund of any of the foregoing.  For the purposes of this definition, "control" when used with respect to any specified Person means the power to direct or cause the direction of the management and policies of such specified Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

(ii)     "Exchange Act" means the Securities Exchange Act of 1934, and the rules and regulations of the SEC promulgated thereunder.

(iii)     "SEC" means the United States Securities and Exchange Commission, or any other Federal agency at the time administering the Securities Act or the Exchange Act.

(iv)     "Securities Act" means the Securities Act of 1933, and the rules and regulations of the SEC promulgated thereunder.

8

(v)    "Stockholders Agreement" shall mean that certain Stockholders Agreement, dated as of the date hereof, among the Company and the stockholders party thereto, in the form attached hereto as Exhibit C, as may be amended from time to time, which amendments will be promptly provided to the Holders.

(vi)    "Transfer" means to directly or indirectly sell, exchange, transfer, hypothecate, negotiate, gift, bequeath, convey in trust, pledge, mortgage, grant a security interest in, assign, encumber, or otherwise dispose of all or any portion of the Warrants, including by recapitalization, merger, consolidation, liquidation, dissolution, dividend, distribution or otherwise; provided, however, that a pledge or grant of a security interest in Warrants to secure a "bona fide" loan shall in no event be deemed a Transfer for any purpose of this Warrant Agreement so long as (i) written notice is provided to the Company identifying the pledgee or Person to whom a security interest in the Shares is granted (the "Pledgee"); and (ii) the Pledgee's interest in the Warrants is limited to an actual or contingent economic interest, it being understood and agreed that the pledge or grant of a security interest in Warrants does not grant such Pledgee the rights of a Holder under this Agreement; provided, further, that any foreclosure, transfer in lieu of foreclosure or other enforcement of such pledge or security interest shall be deemed to constitute a Transfer hereunder and shall be subject to the rights of the Company set forth in this Warrant Agreement. "Transferred," "Transferor" and "Transferee" shall have the correlative meanings.

(vii)    Any other capitalized term used but not defined herein shall have the meaning ascribed to such term in the Stockholders Agreement.

(f)    The Global Warrant, and each Warrant Statement and account of every Holder shall be stamped or otherwise imprinted with a legend in the following or a comparable form:

THE SECURITIES REPRESENTED BY THIS CERTIFICATE MAY NOT BE SOLD, TRANSFERRED, ENCUMBERED OR OTHERWISE DISPOSED OF IN THE ABSENCE OF SUCH REGISTRATION OR AN EXEMPTION THEREFROM UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR SUCH LAWS AND THE RULES AND REGULATIONS THEREUNDER.

THE VOTING, SALE, TRANSFER, ENCUMBRANCE OR OTHER DISPOSITION OF THE SECURITIES REPRESENTED BY THIS CERTIFICATE ARE SUBJECT TO THE TERMS AND CONDITIONS OF THE WARRANT AGREEMENT AND THE STOCKHOLDERS AGREEMENT REFERRED TO THEREIN.

The Global Warrant shall also be stamped or otherwise imprinted with a legend in the following or a comparable form:

THIS GLOBAL WARRANT IS HELD BY THE DEPOSITARY (AS DEFINED IN THE WARRANT AGREEMENT, DATED AS OF MAY [__], 2014 (THE "WARRANT AGREEMENT") GOVERNING THIS GLOBAL WARRANT) IN CUSTODY FOR THE BENEFIT OF THE BENEFICIAL OWNERS HEREOF, AND IS NOT TRANSFERABLE TO ANY PERSON UNDER ANY CIRCUMSTANCES EXCEPT THAT (I) THIS GLOBAL WARRANT MAY BE DELIVERED TO THE WARRANT AGENT (AS DEFINED IN THE WARRANT AGREEMENT GOVERNING THIS WARRANT) FOR CANCELLATION PURSUANT TO SECTION 4.04 OF THE WARRANT AGREEMENT AND (II) THIS GLOBAL WARRANT MAY BE TRANSFERRED TO A SUCCESSOR DEPOSITARY OR CO-DEPOSITARY WITH THE PRIOR WRITTEN CONSENT OF THE COMPANY.

(g)     A Holder (or its transferee, as applicable) shall be entitled to receive from the Company, without expense, new securities of like tenor not bearing the legends set forth above when (i) such Warrants or restricted shares of Common Stock shall have been (A) effectively registered under the Securities Act and disposed of in accordance with a registration statement covering such securities, (B) disposed of pursuant to the provisions of Rule 144 or any comparable rule under the Securities Act, or (C) when, in the written reasonable opinion of independent counsel for the holder thereof experienced in Securities Act matters, which counsel and opinion shall be reasonably satisfactory to the Company, such restrictions are no longer required in order to insure compliance with the Securities Act (including when the provisions of Rule 144(k) or any comparable rule under the Securities Act have been satisfied) and (ii) in the case of the restricted shares of Common Stock only, such restricted shares of Common Stock are no longer subject to the Stockholders Agreement.

Section 4.03    Treatment of Holders of Warrants.  Each Holder of Warrants, by accepting the same, consents and agrees with the Company, the Warrant Agent and every subsequent Holder of such Warrants that until the transfer of such Warrants is registered on the books of such Warrant Agent, the Company and the Warrant Agent may treat the registered Holder of such Warrants as the absolute owner thereof for any purpose and as the person entitled to exercise the rights represented by the Warrants evidenced thereby, any notice to the contrary notwithstanding.

Section 4.04    Cancellation of Global Warrant.  Promptly following the Expiration Date or at such earlier time that there are no longer outstanding any Warrants, the Global Warrant shall be cancelled or destroyed and the Warrant Agent shall deliver a certificate of such cancellation or destruction to the Company.

## ARTICLE V
## ADJUSTMENT OF WARRANT PRICE AND NUMBER OF WARRANT SECURITIES

Section 5.01    Adjustments Generally.  The Exercise Price, the number of Warrant Shares issuable upon exercise of Warrants and the number of Warrants outstanding are subject to adjustment from time to time upon the occurrence of the events enumerated in this

10

Article V, as determined to be necessary or appropriate in the reasonable discretion of the Board of Directors of the Company.

Section 5.02    Stock Dividends; Split-Ups.  If after the date hereof, and subject to the provisions of Section 5.06, the number of outstanding shares of Common Stock is increased by a stock dividend payable in shares of Common Stock, or by a split-up of shares of Common Stock, or other similar event, then, on the effective date of such stock dividend, split-up or similar event, the number of shares of Common Stock issuable on exercise of each Warrant shall be increased in proportion to such increase in outstanding shares of Common Stock.

Section 5.03    Aggregation of Shares.  If after the date hereof, and subject to the provisions of Section 5.06, the number of outstanding shares of Common Stock is decreased by a consolidation, combination, reverse stock split or reclassification of shares of Common Stock or other similar event, then, on the effective date of such consolidation, combination, reverse stock split, reclassification or similar event, the number of shares of Common Stock issuable on exercise of each Warrant shall be decreased in proportion to such decrease in outstanding shares of Common Stock.

Section 5.04    Replacement of Securities upon Reorganization.  In case of any reclassification or reorganization of the outstanding shares of Common Stock (other than a change covered by Section 5.02 or 5.03 or that solely affects the par value of such shares of Common Stock), or in the case of any merger or consolidation of the Company with or into another corporation (other than a consolidation or merger in which the Company is the continuing corporation and that does not result in any reclassification or reorganization of the outstanding shares of Common Stock), or in the case of any sale or conveyance to another corporation or entity of the assets or other property of the Company as an entirety or substantially as an entirety in connection with which the Company is dissolved, except in each case, with respect to any such transaction pursuant to which holders of the outstanding Common Stock are entitled to receive cash consideration for such shares, the Holders shall thereafter have the right to purchase and receive, upon the basis and upon the terms and conditions specified in the Warrants and in lieu of the shares of the Warrant Shares immediately theretofore purchasable and receivable upon the exercise of the rights represented thereby, the kind and amount of shares of stock or other securities or property (including cash) receivable upon such reclassification, reorganization, merger or consolidation, or upon a dissolution following any such sale or transfer, that the Holder would have received if such Holder had exercised his, her or its Warrant(s) immediately prior to such event; and if any reclassification also results in a change in shares of Common Stock covered by Section 5.02 or 5.03, then such adjustment shall be made pursuant to Sections 5.02, 5.03 and this Section 5.04.  The provisions of this Section 5.04 shall similarly apply to successive reclassifications, reorganizations, mergers or consolidations, sales or other transfers.

Section 5.05    Notices of Changes in Warrant.  Upon every adjustment of the number of shares issuable upon exercise of a Warrant, the Company shall give written notice thereof to the Warrant Agent, which notice shall state the increase or decrease in the number of shares of Common Stock purchasable at such price upon the exercise of a Warrant, setting forth in reasonable detail the method of calculation and the facts upon which such calculation is based. Upon the occurrence of any event specified in Section 5.02, 5.03 or 5.04, then, in any such event,

11

the Company shall give or cause to be given written notice to each Holder, by press release or at the last address set forth for such Holder in the register books of the Warrant Agent, of the record date or the effective date of the event.  Failure to give such notice, or any defect therein, shall not affect the legality or validity of such event.  The Warrant Agent shall be fully protected in relying upon such a certificate and shall have no duty to investigate or inquire as to whether such adjustment is accurate, and shall not be deemed to have knowledge of, and shall not be required to take any action with respect to any adjustments, unless and until the Warrant Agent shall have received such a certificate.

Section 5.06   No Fractional Shares.  Notwithstanding any provision contained in this Warrant Agreement to the contrary, the Company shall not issue fractional shares upon exercise of Warrants.  If, by reason of any adjustment made pursuant to this Article V, any Holder would be entitled, upon the exercise of such Warrant, to receive a fractional interest in a share of Common Stock, the Company shall, upon such exercise, round down to the nearest whole number the number of the shares of Common Stock to be issued to the Holder.  The Warrant Agent shall not be required to effect any registration of transfer or exchange that will result in the issuance of a Warrant for a fraction of a share of Common Stock.

Section 5.07   Form of Global Warrant.  The form of Global Warrant need not be changed because of any adjustment pursuant to this Article V.  However, the Company may at any time in its sole discretion make any change in the form of Global Warrant that the Company may deem appropriate and that does not affect the substance thereof.

## ARTICLE VI
## CONCERNING THE WARRANT AGENT

Section 6.01   Warrant Agent.

The Company has appointed the Warrant Agent to act as agent of the Company in respect of the Warrants pursuant to that certain Transfer Agency and Registrar Services Agreement, dated as of May [___], 2014 (the "Warrant Agent Agreement") and the Warrant Agent has therein accepted such appointment.  The Warrant Agent shall have the powers and authority granted to and conferred upon it in the Warrant Agent Agreement, herein and in the Global Warrant and such further powers and authority to act on behalf of the Company as the Company may hereafter grant to or confer upon it.

Section 6.02   Resignation and Appointment of Successor.

(a)   The Company agrees, for the benefit of the Holders from time to time of the Warrants, that there shall at all times be a Warrant Agent hereunder until all the Warrants have been exercised or are no longer exercisable.

(b)   The Warrant Agent may at any time resign as such by giving written notice of its resignation to the Company, specifying the desired date on which its resignation shall become effective; provided, however, that such date shall be not less than 30 days after the date on which such notice is given unless the Company agrees to accept shorter notice.  Upon

12

receiving such notice of resignation, the Company shall promptly appoint a successor Warrant Agent (which shall be a bank or trust company in good standing, authorized under the laws of the jurisdiction of its organization to exercise corporate trust powers) by written instrument in duplicate signed on behalf of the Company, one copy of which shall be delivered to the resigning Warrant Agent and one copy to the successor Warrant Agent.  The Company may, at any time and for any reason, remove the Warrant Agent and appoint a successor Warrant Agent (qualified as aforesaid) by written instrument in duplicate signed on behalf of the Company and specifying such removal and the date when it is intended to become effective, one copy of which shall be delivered to the Warrant Agent being removed and one copy to the successor Warrant Agent. Any resignation or removal of the Warrant Agent and any appointment of a successor Warrant Agent shall become effective upon acceptance of appointment by the successor Warrant Agent as provided in this subsection (b).  In the event a successor Warrant Agent has not been appointed and accepted its duties within 30 days of the Warrant Agent's notice of resignation, the Warrant Agent may apply to any court of competent jurisdiction for the designation of a successor Warrant Agent.  Upon its resignation, replacement or removal, the Warrant Agent shall be entitled to the payment by the Company of the compensation and to the reimbursement of all reasonable out-of-pocket expenses incurred by it hereunder as agreed to in Section 6.02(a).

(c)    The Company shall remove the Warrant Agent and appoint a successor Warrant Agent if the Warrant Agent (i) shall become incapable of acting, (ii) shall be adjudged bankrupt or insolvent, (iii) shall commence a voluntary case or other proceeding seeking liquidation, reorganization or other relief with respect to it or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect or seeking the appointment of a trustee, receiver, liquidator, custodian or other similar official of it or any substantial part of its property, (iv) shall consent to, or shall have had entered against it a court order for, any such relief or to the appointment of or taking possession by any such official in any involuntary case or other proceedings commenced against it, (v) shall make a general assignment for the benefit of creditors or (vi) shall fail generally to pay its debts as they become due.  Upon the appointment as aforesaid of a successor Warrant Agent and acceptance by it of such appointment, the predecessor Warrant Agent shall, if not previously disqualified by operation of law, cease to be Warrant Agent hereunder.

(d)    Any successor Warrant Agent appointed hereunder shall execute, acknowledge and deliver to its predecessor and the Company an instrument accepting such appointment hereunder, and thereupon such successor Warrant Agent, without any further act, deed or conveyance, shall become vested with all the authority, rights, powers, immunities, duties and obligations of such predecessor with like effect as if originally named as Warrant Agent hereunder, and such predecessor shall thereupon become obligated to transfer, deliver and pay over, and such successor Warrant Agent shall be entitled to receive, all monies, securities and other property on deposit with or held by such predecessor as Warrant Agent hereunder.

(e)    Any person into which the Warrant Agent hereunder may be merged or converted or any person with which the Warrant Agent may be consolidated, or any person resulting from any merger, conversion or consolidation to which the Warrant Agent shall be a party, or any person to which the Warrant Agent shall sell or otherwise transfer all or substantially all the assets and business of the Warrant Agent, provided that it shall be qualified

as aforesaid, shall be the successor Warrant Agent under this Warrant Agreement without the execution or filing of any paper or any further act on the part of any of the parties hereto.

# ARTICLE VII
# <u>MISCELLANEOUS</u>

     Section 7.01    <u>Amendment</u>.  The terms of the Warrants may be amended by the Company together with the affirmative vote or consent of the Holders of a majority of the Warrants then outstanding.  Notwithstanding the foregoing, the Company and the Warrant Agent may from time to time supplement or amend this Warrant Agreement without the approval of any Holders in order to cure any ambiguity, manifest error or other mistake in this Warrant Agreement, or to correct or supplement any provision contained herein that may be defective or inconsistent with any other provision herein.  The Company and the Warrant Agent may also from time to time supplement or amend this Warrant Agreement to make any other provisions in regard to matters or questions arising hereunder that the Company and the Warrant Agent may deem necessary or desirable and that shall not adversely affect, alter or change the interests of any Holder.  Notwithstanding anything to the contrary herein, upon the delivery of a certificate from an appropriate officer of the Company, which states that the proposed supplement or amendment is in compliance with the terms of this Section 7.01 and, provided such supplement or amendment does not change the Warrant Agent's own rights, duties, liabilities, immunities or obligations hereunder, the Warrant Agent shall execute such supplement or amendment.  Any amendment, modification or waiver effected pursuant to and in accordance with the provisions of this Section 7.01 will be binding upon all Holders and upon each future Holder, the Company and the Warrant Agent.  In the event of any amendment, modification or waiver, the Company will give prompt notice thereof to all Holders.  For the avoidance of doubt, the Stockholders Agreement may be amended in accordance with the terms thereof at any time without the consent of any Holder.

     Section 7.02    <u>Notices and Demands to the Company and Warrant Agent</u>.  If the Warrant Agent shall receive any notice or demand addressed to the Company by the Holder of a Warrant, the Warrant Agent shall promptly forward such notice or demand to the Company.

     Section 7.03    <u>Addresses</u>.  Any communication from the Company to the Warrant Agent with respect to this Warrant Agreement shall be addressed to American Stock Transfer & Trust Company, LLC, 6201 15th Avenue, Brooklyn, NY 11219, Attention:  General Counsel, and any communication from the Warrant Agent to the Company with respect to this Warrant Agreement shall be addressed to New Koosharem Corporation, 3820 State Street, Santa Barbara, CA 93105, Attention: Corporate Secretary (or such other address as shall be specified in writing by the Warrant Agent or by the Company).  For the avoidance of doubt, the Company may satisfy its obligation to provide the Warrant Agent with a written order or direction pursuant to this Warrant Agreement through the use of electronic mail delivered to the Warrant Agent.

     Section 7.04    <u>Applicable Law</u>.  The validity, interpretation and performance of this Warrant Agreement and the Global Warrant issued hereunder and of the respective terms and provisions hereof and thereof shall be governed by, and construed in accordance with, the laws of the State of Delaware.

Section 7.05    <u>Persons Having Rights Under Warrant Agreement</u>.  The Warrants shall not, and nothing contained herein or in the Global Warrant or otherwise shall, be construed as conferring upon the Holder any right as a stockholder of the Company or the right to vote or to consent or to receive notice as a stockholder in respect of any meeting of stockholders for the election of directors of the Company or any other matter, to receive dividends or any rights whatsoever as stockholders of the Company.

Section 7.06    <u>Depositary Transfer</u>.  In connection with the transfer of the Global Warrant to any successor depositary or co-depositary, the Company shall be entitled to issue one or more new global warrant certificates solely to reflect such transfer.

Section 7.07    <u>Headings</u>.  The descriptive headings of the several Articles and Sections of this Warrant Agreement are inserted for convenience only and shall not control or affect the meaning or construction of any of the provisions hereof.

Section 7.08    <u>Counterparts</u>.  This Warrant Agreement may be executed in any number of counterparts, each of which as so executed shall be deemed to be an original, but such counterparts shall together constitute but one and the same instrument.

Section 7.09    <u>Inspection of Warrant Agreement</u>.  A copy of this Warrant Agreement shall be available at all reasonable times at the principal corporate trust office of the Warrant Agent for inspection by the Holder of any Warrant.  The Warrant Agent may require such Holder to submit evidence of ownership of a Warrant for inspection by it.

Section 7.10    <u>Notices to Holders of Warrants</u>.  Any notice to Holders of Warrants which by any provisions of this Warrant Agreement is required or permitted to be given shall be given by first class mail prepaid at such Holder's address as it appears on the books of the Warrant Agent.

Section 7.11    <u>Binding Effects</u>.  This Warrant Agreement shall inure to the benefit and shall be binding upon the Company, the Warrant Agent and the Holders and their respective heirs, legal representatives, successors and assigns.  Nothing in this Warrant Agreement, express or implied, is intended to or shall confer on any Person other than the Company, the Warrant Agent and the Holders, or their respective heirs, legal representatives, successors or assigns, any rights, remedies, obligations or liabilities under or by reason of this Warrant Agreement.

Section 7.12    <u>Severability</u>.  In the event that any one or more of the provisions contained herein, or the application thereof in any circumstances, is held invalid, illegal or unenforceable, the validity, legality and enforceability of any such provisions in every other respect and of the remaining provisions contained herein and therein shall not be affected or impaired thereby.

[SIGNATURE PAGE FOLLOWS]

15

IN WITNESS WHEREOF, the parties hereto have caused this Warrant Agreement to be duly executed.

NEW KOOSHAREM CORPORATION

By: _____
    Name:
    Title:

AMERICAN STOCK TRANSFER & TRUST COMPANY, LLC

By: _____
    Name:
    Title:

EXHIBIT A

[FORM OF GLOBAL WARRANT CERTIFICATE]

[Face]

EXERCISABLE ONLY IF AUTHENTICATED BY THE WARRANT
AGENT AS PROVIDED HEREIN

VOID AFTER THE CLOSE OF BUSINESS ON MAY [•], 2019
NEW KOOSHAREM CORPORATION

Global Warrant Certificate representing
Warrants to purchase _____
Class A Common Stock, par value $0.01 per share
as described herein

_____

THE SECURITIES REPRESENTED HEREBY (THE "SECURITIES") WERE ORIGINALLY
ISSUED IN RELIANCE UPON AN EXEMPTION FROM THE REGISTRATION
REQUIREMENT OF SECTION 5 OF THE SECURITIES ACT OF 1933, AS AMENDED
(THE "ACT"), PROVIDED BY SECTION 1145 OF THE BANKRUPTCY CODE, 11 U.S.C.
1145.  THE SECURITIES HAVE NOT BEEN REGISTERED UNDER THE ACT OR ANY
STATE SECURITIES LAW, AND TO THE EXTENT THE HOLDER OF THE SECURITIES
IS AN "UNDERWRITER," AS DEFINED IN SECTION 1145(B)(1) OF THE BANKRUPTCY
CODE, THE SECURITIES MAY NOT BE SOLD OR TRANSFERRED IN THE ABSENCE
OF AN EFFECTIVE REGISTRATION STATEMENT UNDER THE ACT OR AN
EXEMPTION FROM REGISTRATION THEREUNDER.

THIS GLOBAL WARRANT CERTIFICATE IS HELD BY THE DEPOSITARY (AS
DEFINED IN THE WARRANT AGREEMENT, DATED AS OF MAY [__], 2014 ("THE
WARRANT AGREEMENT") GOVERNING THIS WARRANT) IN CUSTODY FOR THE
BENEFIT OF THE BENEFICIAL OWNERS HEREOF, AND IS NOT TRANSFERABLE TO
ANY PERSON UNDER ANY CIRCUMSTANCES EXCEPT THAT (I) THIS GLOBAL
WARRANT MAY BE DELIVERED TO THE WARRANT AGENT (AS DEFINED IN THE
WARRANT AGREEMENT GOVERNING THIS WARRANT) FOR CANCELLATION
PURSUANT TO SECTION 4.04 OF THE WARRANT AGREEMENT AND (II) THIS
GLOBAL WARRANT MAY BE TRANSFERRED TO A SUCCESSOR DEPOSITARY OR
CO-DEPOSITARY WITH THE PRIOR WRITTEN CONSENT OF THE COMPANY.

Each Warrant (each, a "Warrant") represented hereby,  entitles the holder to purchase
one share of the Common Stock, par value $0.01 per share (the "Warrant Shares") of New
Koosharem Corporation (the "Company") for the benefit of certain Holders (as defined below)
of such Warrants on the following basis.

The Warrants may be exercised in whole or in part at any time on or before the close of business on May [•], 2019.  Each Warrant not exercised at or before the Expiration Date shall become void, and all rights of the Holder and any beneficial owners of the Warrant Certificate evidencing such Warrant under the Warrant Agreement shall cease.

Prior to the Expiration Date, each Warrant shall entitle the Holder thereof, subject to the provisions of the Warrant Agreement, to purchase from the Company one Warrant Share at the exercise price of $[     ] (the "Exercise Price").  Each Holder of Warrants may exercise such Warrants, in whole or in part, by complying with the Depositary's procedures relating to the exercise of such book entry interest in the Global Warrant.  In addition, such Holder shall deliver the Exercise Form duly executed by such Holder or its duly authorized agent or attorney, accompanied by payment in full, in lawful money of the United States of America, in immediately available funds, the Exercise Price for each Warrant exercised, to the Warrant Agent, or its successor as warrant agent at the addresses specified on the reverse hereof and upon compliance with and subject to the conditions set forth herein and in the Warrant Agreement.  Capitalized terms used in this Global Warrant Certificate, but not otherwise defined, herein, shall have the meaning ascribed to such terms in the Warrant Agreement.

The term "Holder" as used herein shall mean a person who shall be registered as an owner of a book-entry interest in the Global Warrant in the books to be maintained by the Warrant Agent for that purpose pursuant to the Warrant Agreement.

Any whole number of Warrants may be exercised to purchase Warrant Shares.  Upon any exercise of fewer than all of a Holder's Warrants, the Warrant Agent shall make an adjustment to the Holder's account by subtracting from such account  the number of such Warrants exercised.

This Global Warrant Certificate represents the number of outstanding Warrants from time to time endorsed hereon and the number of outstanding Warrants represented hereby may from time to time be reduced or increased, as appropriate to reflect exchanges, redemptions, exercises or other similar transactions.

This Global Warrant Certificate is issued under and in accordance with the Warrant Agreement, and is subject to the terms and provisions contained therein, all of which terms and provisions the Holders consent to by acceptance of their book-entry interests in the Global Warrant.  Copies of the Warrant Agreement are on file at the office of the Company designated for such purpose.  In the event of any conflict or inconsistency between this Global Warrant Certificate and the Warrant Agreement, the Warrant Agreement shall control.

Neither this Global Warrant Certificate nor the Warrants evidenced hereby, shall, and nothing contained in the Warrant Agreement shall be construed to entitle the registered owner hereof, or any beneficial owner, to any of the rights of a registered Holder or beneficial owner of the Warrant Shares, including, without limitation, the right to vote or to consent or to receive notice as a stockholder in respect of any meetings of stockholders for the election of directors of the Company or any other matter, to receive dividends on Warrant Shares or any rights whatsoever as stockholders of the Company.

Reference is hereby made to further provisions of this Global Warrant Certificate set forth on the reverse hereof, which further provisions shall for all purposes have the same effect as if set forth at this place.

This Global Warrant Certificate shall not be valid or obligatory for any purpose until authenticated by the Warrant Agent.

IN WITNESS WHEREOF, the Company has caused this Global Warrant Certificate to be duly executed.

Dated: May _____, 2014

NEW KOOSHAREM CORPORATION

By:_____

Attest:

_____

Certificate of Authentication

This is the Global Warrant Certificate referred to in the within-mentioned Warrant Agreement.

_____

AMERICAN STOCK TRANSFER &
TRUST COMPANY, LLC,
            As Warrant Agent

By:_____
            Authorized Signature

A-4

[REVERSE] [FORM OF GLOBAL WARRANT CERTIFICATE]
(Instructions for Exercise of Warrants)

To exercise any Warrants evidenced hereby, the Holder of the Warrants must pay by certified check or official bank check or by bank wire transfer, in each case, in immediately available funds, then by instructing the Warrant Agent to withhold Warrants equal to, the aggregate Exercise Price in full for each of the Warrants exercised, to American Stock Transfer & Trust Company, LLC, Attn: [Corporate Action Department], which payment should specify the name of the holder of the Warrants and the number of Warrants exercised by such Holder.

No registration or transfer of the Warrant Shares issuable pursuant to the Warrants will be recorded on the books and records of the Company or the Warrant Agent until the provisions set forth in this Global Warrant Certificate and in the Warrant Agreement have been complied with.

[TO BE ATTACHED TO GLOBAL WARRANT CERTIFICATE]

SCHEDULE OF INCREASES OR DECREASES IN GLOBAL WARRANT CERTIFICATE

The following increases or decreases in this Global Warrant have been made:

| Date | Amount of decrease in the number of Warrants represented by this Global Warrant | Amount of increase in number of Warrants represented by this Global Warrant | Number of Warrants represented by this Global Security following such decrease or increase | Signature of authorized officer of the Depositary |
|------|------|------|------|------|

EXHIBIT B

FORM OF EXERCISE FORM

(To be executed upon exercise of Warrant(s))

The undersigned hereby irrevocably elects to exercise the right, represented by the book-entry Warrant(s), to purchase \_\_\_\_\_ shares of Common Stock, par value $0.01 per share (the "Warrant Shares") of NEW KOOSHAREM CORPORATION and represents that he has tendered payment for such Warrant Shares by certified check or official bank check or by bank wire transfer, in each case, in immediately available funds, to the order of American Stock Transfer & Trust Company, LLC c/o NEW KOOSHAREM CORPORATION in the amount of $ _____ in accordance with the terms of the Warrant Agreement.  The undersigned requests the Warrant Shares to which the Holder is entitled be registered in such names and a statement representing such Warrant Shares be delivered, all as specified in accordance with the instructions set forth below.

Dated:_____

Name_____
          (Please Print)

_____
(Insert Social Security or Other
Identifying Number of Holder)

Address _____
_____

Signature_____
          (Signed exactly as name appears
          in the records of the Warrant
          Agent)

This Warrant may be exercised by delivering the Exercise Form to AST at the following addresses:

|  |  |
|---|---|
| By hand at | American Stock Transfer & Trust Company, LLC [Corp Action REORGANIZED PARENT Warrants] 6201 15th Avenue Brooklyn, NY 11219 |
| By mail at | American Stock Transfer & Trust Company, LLC [Corp Action REORGANIZED PARENT Warrants] |

6201 15th Avenue
Brooklyn, NY 11219

(Instructions as to form and delivery of Warrant Shares):

**(NOTE:  The signature(s) must be medallion guaranteed by a commercial bank or trust company in the United States or by a member firm of the New York Stock Exchange)**

[FORM OF ASSIGNMENT]

(TO BE EXECUTED TO TRANSFER THE WARRANT)

For value received, _____ hereby sells, assigns and transfers unto the Assignee(s) named below the rights represented by such number of Warrants listed opposite the respective name(s) of the Assignee(s) named below and all other rights of the Holder with respect to such Warrants, and does hereby irrevocably constitute and appoint _____ attorney, to transfer said Warrant on the books of the Depositary and/or the Warrant Agent with respect to the number of Warrants set forth below, with full power of substitution:

| Name(s) of Assignee(s) | Address | No. of Warrants |
|---|---|---|

Dated: _____

_____
Signature
(Signed exactly as name appears in the
records of the Depositary)

Signature Guarantee:

_____
Participant in a recognized Signature
Guarantee Medallion Program (or other
signature guarantor program reasonably
acceptable to the Warrant Agent)

**(NOTE:  The signature(s) must be medallion guaranteed by a commercial bank or trust company in the United States or by a member firm of the New York Stock Exchange)**

EXHIBIT C

[STOCKHOLDERS AGREEMENT]

EXHIBIT D

[FORM OF JOINDER]