**<u>Annex 11</u>**

**Management Incentive Plan**

**New Koosharem Corporation**

**2014 Stock Incentive Plan**

1.  Purpose.  The purpose of the New Koosharem Corporation 2014 Stock Incentive Plan is to further align the interests of participants with those of the shareholders by providing incentive compensation opportunities tied to the performance of the Common Stock and by promoting increased ownership of the Common Stock by such individuals.  The Plan is also intended to advance the interests of the Company and its shareholders by attracting, retaining and motivating key personnel upon whose judgment, initiative and effort the successful conduct of the Company's business is largely dependent, as part of a management equity plan designed to comply with Regulation D or Rule 701, as applicable, promulgated under the Securities Act.

2.  Definitions.  Wherever the following capitalized terms are used in the Plan, they shall have the meanings specified below:

"*Affiliate*" shall mean any person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, the Company (within the meaning of the Exchange Act).

"*Award*" means an award of a Stock Option, Restricted Stock Award, or Restricted Stock Unit Award granted under the Plan.

"*Award Agreement*" means an agreement entered into between the Company and a Participant setting forth the terms and conditions of an Award granted to a Participant, as provided in Section 11.1 hereof.

"*Board*" means the Board of Directors of the Company.

"*Cause*" shall have the meaning set forth in Section 9.2(b) hereof.

"*Change in Control*" shall mean: (i) the acquisition by a Person or group of Persons (other than one or more Permitted Holders) of Common Stock of the Company that constitutes at least 50% of the total fair market value or the total voting power of the Common Stock of the Company then outstanding, (B) a merger, amalgamation, consolidation or similar transaction that results in the stockholders of the Company, as of immediately prior to such transaction, together with the Permitted Holders, ceasing to collectively and beneficially own at least 50% of the outstanding Common Stock of the surviving or resulting corporation as of immediately following such transaction, or (C) a sale of at least 40% of the assets of the Company (or any Affiliate or subsidiary of the Company holding substantially all of the assets of the Company on a consolidated basis) to a Person or a group of Persons (other than one or more Permitted Holders) in a twelve (12) month period, measured from the date of the most recent acquisition of the Company's (or such Affiliate's or subsidiary's) assets by such Person or group of Persons.

"*Code*" means the United States Internal Revenue Code of 1986, as amended.

#4847-7931-5735v5

"*Committee*" means the Compensation Committee of the Board, or such other committee of the Board appointed by the Board to administer the Plan, or the full Board if no such committee is appointed.

"*Common Stock*" means the Company's common stock, par value $.01 per share.

"*Company*" means New Koosharem Corporation, a Delaware corporation.

"*Date of Grant*" means the date on which an Award under the Plan is granted by the Committee, or such later date as the Committee may specify to be the effective date of an Award.

"*Disability*" means, unless otherwise provided in an Award Agreement or as set forth in an employment agreement between a Participant and the Company, a Participant being considered "disabled" within the meaning of Section 409A(a)(2)(C) of the Code and the regulations thereunder.

"*Eligible Person*" means any person who is an employee, director, or consultant of the Company or any of its Subsidiaries.

"*Exchange Act*" means the United States Securities Exchange Act of 1934, as amended.

"*Fair Market Value*" of a share of Common Stock shall be the fair market value of such share as determined by the Committee in its discretion, and to the extent deemed appropriate by the Committee, based upon a recent transaction price per share or third-party valuation of the Common Stock and, to the extent necessary, shall be determined in a manner consistent with Section 409A of the Code and Treasury Regulation 1.409A-1(b)(5)(iv), as well as any successor regulation or interpretation; provided, that in the event the Common Stock is publicly traded as of the date of any determination hereunder, "Fair Market Value" shall be determined by reference to the closing trading price of the Common Stock on the trading date immediately prior to such date of determination.

"*Good Reason*" means unless otherwise provided in an applicable Award Agreement or as set forth in a written employment agreement between a Participant and the Company, the occurrence of any of the following changes to a Participant's employment, (i) a material adverse diminution in the Participant's duties and responsibilities; (ii) the Participant's base salary or other compensation is materially reduced, other than in connection with a region-wide or company-wide pay cut/furlough program; or (iii) a material change in the geographic location of the Participant's principal place of business of more than fifty (50) miles from the Participant's location at the time an Award is granted; provided that in any event the Participant has provided written notice (which shall set forth in reasonable detail the specific conduct of the Company that constitutes Good Reason and the specific provisions of this Plan on which Participant relies) to the Company of the existence of any condition described in any one of the above subparagraphs within thirty (30) days of the initial existence of such condition, and the Company has not cured the condition within thirty (30) days of the receipt of such notice. For the avoidance of doubt, Good Reason shall not exist hereunder unless and until the thirty-day cure period following receipt by the Company of the Participant's written notice expires and the

Company shall not have cured such circumstances, and in such case Participant's employment shall terminate for Good Reason on the day following expiration of such thirty-day cure period. For the avoidance of doubt, a mere change in title and/or reporting relationship shall not be grounds for a claim of Good Reason.

"*Incentive Stock Option*" means a Stock Option granted under Section 6 hereof that is intended to meet the requirements of Section 422 of the Code and the regulations thereunder.

"*Nonqualified Stock Option*" means a Stock Option granted under Section 6 hereof that is not an Incentive Stock Option.

"*Participant*" means any Eligible Person who holds an outstanding Award under the Plan.

"*Permitted Holder*" means (a) Anchorage Capital Master OffShore, Ltd., (b) GRF Master Fund II, L.P., (c) Blue Mountain Credit Alternatives Master Fund L.P., (d) BlueMountain Distressed Master Fund L.P., (e) BlueMountain Guadalupe Peak Fund L.P., (f) BlueMountain Kicking Horse Fund L.P., (g) BlueMountain Long/Short Credit Master Fund L.P., (h) BlueMountain Montenvers Master Fund SCA SICAV-SIF, (i) BlueMountain Long/Short Credit and Distressed Reflection Fund, a sub-fund of AAI BlueMountain Fund PLC, (j) BlueMountain Timberline Ltd., (k) BlueMountain Strategic Credit Master Fund L.P., (l) BlueMountain Credit Opportunities Master Fund I L.P., (m) Pine River Fixed Income Master Fund Ltd., (n) LMA SPC for and on behalf of the MAP 89 Segregated Portfolio, (o) Pine River Opportunistic Credit Master Fund Ltd., (p) Pine River Master Fund Ltd., (q) Pine River Credit Relative Value Master Fund Ltd., (r) Marblegate Special Opportunities Master Fund, L.P., (s) Redwood Master Fund, Ltd., (t) each Affiliate of the foregoing, (u) in the case of any of the foregoing that is, or is managed by, an investment manager, such investment manager, any of such investment manager's Affiliates, and each fund or pooled investment fund managed by such investment manager or any of such investment manager's Affiliates.

"*Person*" means an individual, partnership, corporation, unincorporated organization, joint stock company, limited liability company, trust, joint venture or other legal entity, or a governmental agency or political subdivision thereof.

"*Plan*" means the New Koosharem Corporation 2014 Stock Incentive Plan as set forth herein, effective as provided in Section 13.1 hereof and as may be amended from time to time.

"*Qualified Initial Public Offering*" or "*IPO*" means the first underwritten public offering of the Common Stock covering the offer and sale of Common Stock for the account of the Company underwritten by a reputable nationally recognized underwriter pursuant to which the Common Stock will be quoted on the NASDAQ or NYSE.

"*Qualified Liquidity Event*" or "*QLE*" means the occurrence of either (i) a Qualified Initial Public Offering or (ii) a Change in Control.

"*Restricted Stock Award*" means a grant of shares of Common Stock to an Eligible Person under Section 7 hereof that are issued subject to such vesting and transfer restrictions as the Committee shall determine, and such other conditions, as are set forth in the Plan and the applicable Award Agreement.

"*Restricted Stock Unit Award*" means a grant of a right to receive shares of Common Stock (or other consideration based on the value of shares of Common Stock) to an Eligible Person under Section 8 hereof that are issued subject to such vesting and transfer restrictions as the Committee shall determine, and such other conditions, as are set forth in the Plan and the applicable Award Agreement.

"*Securities Act*" means the United States Securities Act of 1933, as amended.

"*Service*" means a Participant's service as an employee, director, consultant of the Company or any of its Subsidiaries, as applicable.

"*Stock Option*" means a grant to an Eligible Person under Section 6 hereof to purchase shares of Common Stock at such time and price, and subject to such conditions, as are set forth in the Plan and the applicable Award Agreement.

"*Subsidiary*" means an entity (whether or not a corporation) that is wholly or majority owned or controlled, directly or indirectly, by the Company, or any other Affiliate of the Company that is so designated, from time to time, by the Committee, during the period of such affiliated status; provided, however, that with respect to Incentive Stock Options, the term "Subsidiary" shall include only an entity that qualifies under Section 424(f) of the Code as a "subsidiary corporation" with respect to the Company.

3. <u>Administration</u>.

3.1   *Committee Members*.  The Plan shall be administered by the Committee, which shall be comprised of two or more independent, non-employee members of the Board, and the term "Committee" shall apply to any person or persons to whom such authority has been delegated. The Committee shall have the right, from time to time, to delegate to one or more officers of the Company the authority of the Committee to grant and determine the terms and conditions of Awards granted under the Plan, subject to the requirements of Section 157(c) of the Delaware General Corporation Law (or any successor provision) and such other limitations as the Committee shall determine.  The Committee shall also be permitted to delegate, to any appropriate officer or employee of the Company, responsibility for performing certain ministerial functions under the Plan.  In the event that the Committee's authority is delegated to officers or employees in accordance with the foregoing, all provisions of the Plan relating to the Committee shall be interpreted in a manner consistent with the foregoing by treating any such reference as a reference to such officer or employee for such purpose.  Any action undertaken in accordance with the Committee's delegation of authority hereunder shall have the same force and effect as if such action was undertaken directly by the Committee and shall be deemed for all purposes of the Plan to have been taken by the Committee.

3.2   *Committee Authority*.  The Committee shall have such powers and authority as may be necessary or appropriate for the Committee to carry out its functions as described in the

Plan.  Subject to the express limitations of the Plan, the Committee shall have authority in its discretion to determine the Eligible Persons to whom, and the time or times at which, Awards may be granted, the number of shares subject to each Award, the purchase price of an Award (if any), the time or times at which an Award will become vested, exercisable or payable, the performance criteria, performance goals and other conditions of an Award, the duration of the Award, and all other terms of the Award.  Subject to the terms of the Plan, the Committee shall have the authority to amend the terms of an Award in any manner that is not inconsistent with the Plan, provided that no such action shall adversely affect the rights of a Participant with respect to an outstanding Award without the Participant's consent.  The Committee shall also have discretionary authority to interpret the Plan, to make all factual determinations under the Plan, and to make all other determinations necessary or advisable for Plan administration, including, without limitation, to correct any defect, to supply any omission or to reconcile any inconsistency in the Plan or any Award Agreement hereunder.  The Committee may prescribe, amend, and rescind rules and regulations relating to the Plan.  The Committee's determinations under the Plan need not be uniform and may be made by the Committee selectively among Participants and Eligible Persons, whether or not such persons are similarly situated.  The Committee shall, in its discretion, consider such factors as it deems relevant in making its interpretations, determinations and actions under the Plan including, without limitation, the recommendations or advice of any officer or employee of the Company or such attorneys, consultants, accountants or other advisors as it may select.  All interpretations, determinations, and actions by the Committee shall be final, conclusive, and binding upon all parties.

      4.      <u>Shares Subject to the Plan</u>.

      4.1      *Number of Shares Reserved*.  Subject to adjustment pursuant to Section 4.2 hereof, the number of shares of Common Stock which may be issued under all (a) Awards granted to Participants under the Plan shall be **[____]** shares and (b) Incentive Stock Options granted to Participants under the Plan shall be **[____]** shares.  Shares of Common Stock issued under the Plan may be either authorized but unissued or shares held in the Company's treasury.  If any Awards expire unexercised or are otherwise forfeited, canceled or terminated, the shares of Common Stock which were subject to such Awards shall again be available for grants of Awards under the Plan to the extent of such forfeiture, cancellation or termination.

      4.2      *Adjustments*.  If there shall occur any change with respect to the outstanding shares of Common Stock by reason of any recapitalization, reclassification, stock dividend, extraordinary dividend, stock split, reverse stock split, or other distribution with respect to the shares of Common Stock, or any merger, reorganization, consolidation, combination, spin-off, or other similar corporate change, or any other change affecting the Common Stock, the Committee shall, in the manner and to the extent it considers equitable to the Participants and consistent with the terms of the Plan, cause an adjustment to be made to (i) the number and kind of shares of Common Stock, units, or other rights (including cancellation of the awards in exchange for a cash payment) subject to then outstanding Awards, (ii) the exercise price or base price for each share or unit or other right subject to then outstanding Awards, and (iii) any other terms of an Award that are affected by the event.  Notwithstanding the foregoing, (a) any such adjustments shall, to the extent necessary, be made in a manner consistent with the requirements of Section 409A of the Code, and (b) in the case of Incentive Stock Options, any such adjustments shall, to the extent practicable, be made in a manner consistent with the requirements of Section 424(a) of

the Code.  In addition, the Committee shall have the discretionary authority to make any of the foregoing adjustments in the event of any other material corporate transaction (including a joint venture transaction) involving the Company or any Affiliate, including by substituting (x) a different form of Award or (y) the equity securities of an Affiliate for the Common Stock of the Company under the Plan and outstanding Awards, if in the good faith discretion of the Committee such adjustment is necessary or advisable for purposes of compliance with securities law or other regulatory requirements.

5.  Eligibility and Awards.  Any Eligible Person may be selected by the Committee to receive an Award and become a Participant under the Plan.  The Committee has the authority, in its discretion, to determine and designate from time to time those Eligible Persons who are to be granted Awards, the types of Awards to be granted, the number of shares of Common Stock subject to Awards to be granted and the terms and conditions of such Awards consistent with the terms of the Plan.  In selecting Eligible Persons to be Participants, and in determining the type and amount of Awards to be granted under the Plan, the Committee shall consider any and all factors that it deems relevant or appropriate.

6.  Stock Options.

6.1  *Grant of Stock Options*.  A Stock Option may be granted to any Eligible Person selected by the Committee.  Subject to the provisions of Section 6.6 hereof and Section 422 of the Code, each Stock Option shall be designated, in the discretion of the Committee, as an Incentive Stock Option or as a Nonqualified Stock Option.  All Stock Options granted under the Plan are intended to comply with the requirements for exemption under Section 409A of the Code.

6.2  *Exercise Price*.  The exercise price per share of a Stock Option shall not be less than one hundred percent (100%) of the Fair Market Value of the shares of Common Stock on the Date of Grant.  The Committee may, in its discretion, specify for any Stock Option an exercise price per share that is higher than the Fair Market Value on the Date of Grant.

6.3  *Vesting of Stock Options*.  The Committee shall in its discretion prescribe the time or times at which, or the conditions upon which, a Stock Option or portion thereof shall become vested and/or exercisable.  The requirements for vesting and exercisability of a Stock Option may be based on the continued Service of the Participant, on the attainment of specified performance goals or on such other terms and conditions as approved by the Committee in its discretion.  The vesting and exercisability of a Stock Option may be accelerated by, and may be dependent upon, in whole or in part, the occurrence of a Qualified Liquidity Event.

6.4  *Term of Stock Options*.  The Committee shall, in its discretion, prescribe in an Award Agreement the period during which a vested Stock Option may be exercised, provided, however, that the maximum term of a Stock Option shall be ten (10) years from the Date of Grant.  A Stock Option may be earlier terminated as specified by the Committee and set forth in an Award Agreement upon or following the termination of a Participant's Service with the Company or any Subsidiary.  Except as otherwise provided in this Section 6 or in an Award Agreement, no Stock Option may be exercised at any time during the term thereof unless the

Participant is then in the Service of the Company or one of its Subsidiaries, as determined in accordance with Section 11.2 hereof.

6.5    *Stock Option Exercise; Tax Withholding*.  Subject to such terms and conditions as specified in an Award Agreement, a vested Stock Option may be exercised in whole or in part at any time during the term thereof by notice in the form required by the Company, together with payment of the aggregate exercise price therefore, provided that arrangements satisfactory to the Company have been made with respect to any applicable withholding tax, pursuant to Section 12.4 hereof.  Payment of the exercise price shall be made in the manner set forth in the Award Agreement, if so provided in an Award Agreement, or in one or more of the following forms of payment: (i) in cash or by cash equivalent acceptable to the Committee, (ii) in shares of Common Stock, valued at the Fair Market Value of such shares on the date of exercise, (iii) by reduction in the number of shares of Common Stock otherwise deliverable upon exercise of such Stock Option with a Fair Market Value equal to the aggregate exercise price of such Stock Option at the time of exercise, (iv) by a combination of the foregoing methods, or (v) by such other method as may be approved by the Committee and set forth in the Award Agreement.

6.6    *Additional Rules for Incentive Stock Options*.

a)    *Eligibility*.  An Incentive Stock Option may only be granted to an Eligible Person who is considered an employee for purposes of Treasury Regulation §1.421−7(h) with respect to the Company or any Subsidiary that qualifies as a "subsidiary corporation" with respect to the Company for purposes of Section 424(f) of the Code.

b)    Annual Limits.  No Incentive Stock Option shall be granted to a Participant as a result of which the aggregate Fair Market Value (determined as of the Date of Grant) of Common Stock with respect to which incentive stock options under Section 422 of the Code are exercisable for the first time in any calendar year under the Plan and any other stock option plans of the Company or any subsidiary or parent corporation, would exceed $100,000, determined in accordance with Section 422(d) of the Code.  This limitation shall be applied by taking stock options into account in the order in which granted.

c)    Termination of Employment.  An Award of an Incentive Stock Option may provide that such Stock Option may be exercised not later than three (3) months following termination of employment of the Participant with the Company and all Subsidiaries, or not later than one (1) year following a permanent and total disability within the meaning of Section 22(e)(3) of the Code, as and to the extent determined by the Committee to comply with the requirements of Section 422 of the Code.

d)    Other Terms and Conditions; Nontransferability.  Any Incentive Stock Option granted hereunder shall contain such additional terms and conditions, not inconsistent with the terms of the Plan, as are deemed necessary or desirable by the Committee, which terms, together with the terms of the Plan, shall be intended and interpreted to cause such Incentive Stock Option to qualify as an "incentive stock option" under Section 422 of the Code.  An Award Agreement for an Incentive Stock Option may provide that such Stock Option shall be treated as a Nonqualified Stock Option to the extent that certain requirements applicable to "incentive stock options" under the Code shall not be satisfied.  An Incentive Stock Option shall

by its terms be nontransferable other than by will or by the laws of descent and distribution, and shall be exercisable during the lifetime of a Participant only by such Participant.

e) Disqualifying Dispositions.  If shares of Common Stock acquired by exercise of an Incentive Stock Option are disposed of within two (2) years following the Date of Grant or one (1) year following the transfer of such shares to the Participant upon exercise, the Participant shall, promptly following such disposition, notify the Company in writing of the date and terms of such disposition and provide such other information regarding the disposition as the Company may reasonably require.

7. Restricted Stock Awards.

7.1 *Grant of Restricted Stock Awards*.  A Restricted Stock Award may be granted to any Eligible Person selected by the Committee.  The Committee may require the payment by the Participant of a specified purchase price in connection with any Restricted Stock Award.  The Committee may provide in an Award Agreement for the payment of dividends and distributions to the Participant at such times as paid to stockholders generally or at the times of vesting or other payment of the Restricted Stock Award.

7.2 *Vesting Requirements*.  The restrictions imposed on shares granted under a Restricted Stock Award shall lapse in accordance with the vesting requirements specified by the Committee in the Award Agreement.  The requirements for vesting of a Restricted Stock Award may be based on the continued Service of the Participant, on the attainment of specified performance goals or on such other terms and conditions as approved by the Committee in its discretion.  The vesting of a Restricted Stock Award may be accelerated by, and may be dependent upon, in whole or in part, the occurrence of a Qualified Liquidity Event.  If the vesting requirements of a Restricted Stock Award shall not be satisfied, the Award shall be forfeited and the shares of Stock subject to the Award shall be returned to the Company.

7.3 *Rights as Shareholder*.  Subject to the foregoing provisions of the Plan and the applicable Award Agreement, unless otherwise determined by the Committee, the Participant shall have the rights of a shareholder with respect to the shares granted to the Participant under a Restricted Stock Award, including the right to vote the shares and receive all dividends and other distributions paid or made with respect thereto.  Any Common Stock or other securities received as a stock dividend or distribution will be subject to the same restrictions as the underlying Restricted Stock Award.

7.4 *Section 83(b) Election*.  If a Participant makes an election pursuant to Section 83(b) of the Code with respect to a Restricted Stock Award, the Participant shall file, within thirty (30) days following the Date of Grant, a copy of such election with the Company and with the Internal Revenue Service, in accordance with the regulations under Section 83 of the Code.  The Committee may provide in an Award Agreement that the Restricted Stock Award is conditioned upon the Participant's making or refraining from making an election with respect to the Award under Section 83(b) of the Code.

7.5 *Tax Withholding*.  Subject to such terms and conditions as specified in an Award Agreement, the restrictions applicable to a Restricted Stock Award shall not lapse at the time

such Restricted Stock Award vests unless all withholding tax obligations have been satisfied pursuant to Section 12.4 of the Plan.

8. Restricted Stock Unit Awards.

8.1 *Grant of Restricted Stock Unit Awards*. A Restricted Stock Unit Award may be granted to any Eligible Person selected by the Committee. The Committee may require the payment by the Participant of a specified purchase price in connection with any Restricted Stock Unit Award.

8.2 *Payment*. A Restricted Stock Unit Award may be settled by the delivery of shares of Common Stock, their cash equivalent, any combination thereof, or in any other form of consideration, as determined by the Committee and contained in the Award Agreement.

8.3 *Vesting Requirements*. The restrictions or conditions imposed on shares granted under a Restricted Stock Unit Award shall lapse in accordance with the vesting requirements specified by the Committee in the Award Agreement. The requirements for vesting of a Restricted Stock Unit Award may be based on the continued Service of the Participant, on the attainment of specified performance goals or on such other terms and conditions as approved by the Committee in its discretion. The vesting of a Restricted Stock Unit Award may be accelerated by, and may be dependent upon, in whole or in part, the occurrence of a Qualified Liquidity Event. If the vesting requirements of a Restricted Stock Unit Award shall not be satisfied, the Award shall be forfeited. At the time of the grant of a Restricted Stock Unit Award, the Committee, as it deems appropriate, may impose such restrictions or conditions that delay the delivery of the shares of Common Stock (or their cash equivalent) subject to a Restricted Stock Unit Award to a time after the vesting of such Restricted Stock Unit Award.

8.4 *No Rights as Shareholder*. Unless and until shares of Common Stock underlying a Restricted Stock Unit Award are actually delivered to the Participant upon settlement of the Restricted Stock Unit Award, the Participant shall have no rights of a shareholder with respect to the shares granted to the Participant under a Restricted Stock Unit Award, including the right to vote the shares or receive dividends or other distributions paid or made with respect thereto.

8.5 *Dividend Equivalents*. Dividend equivalents may be credited in respect of shares of Common Stock covered by a Restricted Stock Unit Award, as determined by the Committee and contained in the Award Agreement. At the sole discretion of the Committee, such dividend equivalents may be converted into additional shares of Common Stock covered by the Restricted Stock Unit Award in such manner as determined by the Committee. Any such dividend equivalents (including any additional shares covered by the Restricted Stock Unit Award credited by reason of such dividend equivalents) will be subject to all of the same terms and conditions of the underlying Award Agreement to which they relate, including with respect to the vesting and settlement thereof.

8.6 *Tax Withholding*. Subject to such terms and conditions as specified in an Award Agreement, no Restricted Stock Unit Award shall be settled unless all withholding tax obligations have been satisfied pursuant to Section 12.4 of the Plan.

9. Forfeiture Events.

9.1    *General*.  The Committee may specify in an Award Agreement at the time of the Award that the Participant's rights, payments and benefits with respect to an Award shall be subject to reduction, cancellation, forfeiture or recoupment upon the occurrence of certain specified events, in addition to any otherwise applicable vesting or performance conditions of an Award.  Such events shall include, but shall not be limited to, termination of Service for Cause, violation of material Company policies, breach of noncompetition, confidentiality or other restrictive covenants that may apply to the Participant, or other conduct by the Participant that is detrimental to the business or reputation of the Company.

9.2    *Termination for Cause*.

a)    *General*.  Unless otherwise provided by the Committee and set forth in an Award Agreement or as set forth in a written employment agreement between a Participant and the Company, if a Participant's employment with the Company or any Subsidiary shall be terminated for Cause, such Participant's rights, payments and benefits with respect to an Award shall be subject to cancellation, forfeiture and/or recoupment.  The Company shall have the power to determine whether the Participant has been terminated for Cause and the date upon which such termination for Cause occurs.  Any such determination shall be final, conclusive and binding upon the Participant.  In addition, if the Company shall reasonably determine that a Participant has committed or may have committed any act which could constitute the basis for a termination of such Participant's employment for Cause, the Company may suspend the Participant's rights to exercise any option, receive any payment or vest in any right with respect to any Award pending a determination by the Company of whether an act has been committed which could constitute the basis for a termination for "Cause" as provided in this Section 9.2.

b)    *Definition of "Cause"*.  For purposes of the Plan, unless otherwise provided in an applicable Award Agreement, "Cause" shall mean the occurrence of either (i) the Participant's violation of any material written policy of the Company; (ii) the Participant's failure to obey the lawful orders of the Board or the Participant's principal reporting officer; (iii) the Participant's gross negligence in the performance of, or willful disregard of, his or her obligations to the Company; (iv) the breach of any of Participant's obligations under his or her employment agreement (if any), restrictive covenants agreement (if any), or any other material agreement entered into with the Company; (v) the commission of an act by the Participant constituting financial dishonesty against the Company; (vi) the Participant's indictment or other criminal charge for, or conviction of or entering a plea of guilty or nolo contendere to, a crime constituting a felony; or (vii) the commission of any act of dishonesty or moral turpitude by the Participant which is, or is reasonably likely to be, detrimental to the Company.  For the purposes of this definition, "Company" shall include any Affiliate or Subsidiary of the Company and any entity with whom the Participant holds a position at the request of the Company.

10.    <u>Restrictions on Transfer</u>.  Awards under the Plan shall not be assignable or transferable by the Participant, except by will or by the laws of descent and distribution, and shall not be subject in any manner to assignment, alienation, pledge, encumbrance or charge.  Notwithstanding the foregoing, in the event of the death of a Participant while employed by the Company or any of its Subsidiaries, except as otherwise provided by the Committee in an Award Agreement, an outstanding Award may become payable to the Participant's beneficiary as designated by the Participant in the manner prescribed by the Committee or, in the absence of an authorized beneficiary designation, by the a legatee or legatees of such Award under the

#4847-7931-5735v5                                         - 10 -

participant's last will, or by such Participant's executors, personal representatives or distributees of such Award in accordance with the Participant's will or the laws of descent and distribution.

11. General Provisions.

11.1 *Award Agreement*. To the extent deemed necessary by the Committee, an Award under the Plan shall be evidenced by an Award Agreement in a written or electronic form approved by the Committee setting forth the number of shares of Common Stock subject to the Award, the purchase price of the Award (if any), the time or times at which an Award will become vested, exercisable or payable and the term of the Award. The Award Agreement may also set forth the effect on an Award of a Qualified Liquidity Event and a termination of Service under certain circumstances. The Award Agreement shall be subject to and incorporate, by reference or otherwise, all of the applicable terms and conditions of the Plan, and may also set forth other terms and conditions applicable to the Award as determined by the Committee consistent with the limitations of the Plan. An Award Agreement may be in the form of an agreement to be executed by both the Participant and the Company (or an authorized representative of the Company) or certificates, notices or similar instruments as approved by the Committee. The Committee need not require the execution of an Award Agreement by a Participant, in which case, acceptance of the Award by the Participant shall constitute agreement by the Participant to the terms, conditions, restrictions and limitations set forth in the Plan and the Award Agreement.

11.2 *Determinations of Service.*

a) The Company shall make all determinations relating to the Service of a Participant with the Company or any Subsidiary in connection with an Award, including with respect to the continuation, suspension or termination of such Service. A Participant's Service shall not be deemed terminated if the Company determines that (i) a transition of employment to service with a partnership, joint venture or corporation not meeting the requirements of a Subsidiary in which the Company or a Subsidiary is a party is not considered a termination of Service, (ii) the Participant transfers between service as an employee and service as a consultant or other personal service provider (or vice versa), or (iii) the Participant transfers between service as an employee and that of a non-employee director (or vice versa). The Company may determine whether any corporate transaction, such as a sale or spin-off of a division or subsidiary that employs a Participant, shall be deemed to result in a termination of Service for purposes of any affected Awards, and the Company's decision shall be final and binding.

b) Notwithstanding any term or provision to the contrary in this Plan, any Award Agreement, or any employment agreement between the Company or any Affiliate and a Participant, the date of any termination of Service of a Participant for purposes of the Plan shall be as determined by the Company, and in the case of the termination without Cause of a Participant's Service, shall be deemed to be the date that actual notice of termination of Service is delivered to the Participant, as determined by the Company, without regard to any period of notice or reasonable notice of termination of Service, or pay in lieu thereof, to which the Participant may be entitled under applicable law or otherwise.

11.3     *No Right to Employment or Continued Service*.  Nothing in the Plan, in the grant of any Award or in any Award Agreement shall confer upon any Eligible Person or any Participant any right to continue in the Service of the Company or any of its Subsidiaries, or interfere in any way with the right of the Company or any of its Subsidiaries to terminate the employment or other service relationship of an Eligible Person or a Participant for any reason at any time.

11.4     *Rights as Shareholder*.  A Participant shall have no rights as a holder of shares of Common Stock with respect to any unissued securities covered by an Award until the date the Participant becomes the holder of record of such securities.  Except as provided in Section 4.2 hereof, no adjustment or other provision shall be made for dividends or other shareholder rights, except to the extent that the Award Agreement provides for dividend payments or dividend equivalent rights.  The Committee may determine, in its discretion, the manner of delivery of Common Stock to be issued under the Plan, which may be by delivery of stock certificates, electronic account entry into new or existing accounts or any other means as the Committee, in its discretion, deems appropriate. The Committee may require that the stock certificates be held in escrow by the Company for any shares of Common Stock or cause the shares to be legended in order to comply with the securities laws or other applicable restrictions, or should the shares of Common Stock be represented by book or electronic account entry rather than a certificate, the Committee may take such steps to restrict transfer of the shares of Common Stock as the Committee considers necessary or advisable.

11.5     *Other Compensation and Benefit Plans*.  The adoption of the Plan shall not affect any other share incentive or other compensation plans in effect for the Company or any Subsidiary, nor shall the Plan preclude the Company from establishing any other forms of share incentive or other compensation or benefit program for employees of the Company or any Subsidiary.  The amount of any compensation deemed to be received by a Participant pursuant to an Award shall not constitute includable compensation for purposes of determining the amount of benefits to which a Participant is entitled under any other compensation or benefit plan or program of the Company or a Subsidiary, including, without limitation, under any pension or severance benefits plan, except to the extent specifically provided by the terms of any such plan.

11.6     *Plan Binding on Transferees*.  The Plan shall be binding upon the Company, its transferees and assigns, and the Participant, the Participant's executor, administrator and permitted transferees and beneficiaries.

12.    Legal Compliance

12.1    *Securities Laws*.

a)    No shares of Common Stock will be issued or transferred pursuant to an Award unless and until all then applicable requirements imposed by Federal and state securities and other laws, rules and regulations and by any regulatory agencies having jurisdiction, and by any exchanges upon which the shares of Common Stock may be listed, have been fully met.  As a condition precedent to the issuance of shares pursuant to the grant or exercise of an Award, the Company may require the Participant to take any reasonable action to meet such requirements.  The Committee may impose such conditions on any shares of Common Stock issuable under the

Plan as it may deem advisable, including, without limitation, restrictions under the Securities Act or under the requirements of any exchange upon which such shares of the same class are then listed or of any regulatory agency having jurisdiction over the Company, and under any blue sky or other securities laws applicable to such shares.  The Committee may also require the Participant to represent and warrant at the time of issuance or transfer that the shares of Common Stock are being acquired only for investment purposes and without any current intention to sell or distribute such shares.  Certificates representing Common Stock acquired pursuant to an Award may bear such legend as the Company may consider appropriate under the circumstances.

b) From the time the Company commences reliance on the exemption from registration provided by Rule 12h-1(f)(1) of the Exchange Act and until the Company ceases such reliance or becomes subject to the reporting requirements of Sections 13 or 15(d) of the Exchange Act, the Company shall provide to the option holders the information required to be delivered under Rule 12h-1(f)(1)(vi) of the Exchange Act, as applicable, in accordance with such rule.

12.2   *Unfunded Plan*.  The adoption of the Plan and any reservation of shares of Common Stock or cash amounts by the Company to discharge its obligations hereunder shall not be deemed to create a trust or other funded arrangement.  Except upon the issuance of Common Stock pursuant to an Award, any rights of a Participant under the Plan shall be those of a general unsecured creditor of the Company, and neither a Participant nor the Participant's permitted transferees or estate shall have any other interest in any assets of the Company by virtue of the Plan.  Notwithstanding the foregoing, the Company shall have the right to implement or set aside funds in a grantor trust, subject to the claims of the Company's creditors or otherwise, to discharge its obligations under the Plan.

12.3   *Section 409A Compliance*.  To the extent applicable, it is intended that the Plan and all Awards hereunder comply with the requirements of Section 409A of the Code and the Treasury Regulations and other guidance issued thereunder, and that the Plan and all Award Agreements shall be interpreted and applied by the Committee in a manner consistent with this intent in order to avoid the imposition of any additional tax under Section 409A of the Code.  In the event that any provision of the Plan or an Award Agreement is determined by the Committee to not comply with the applicable requirements of Section 409A of the Code and the Treasury Regulations and other guidance issued thereunder, the Committee shall have the authority to take such actions and to make such changes to the Plan or an Award Agreement as the Committee deems necessary to comply with such requirements, provided that no such action shall adversely affect any outstanding Award without the consent of the affected Participant.  Notwithstanding anything contained herein to the contrary, a Participant shall not be considered to have terminated service with the Company for purposes of any payments under this Plan which are subject to Section 409A of the Code until the Participant has incurred a "separation from service" from the Company within the meaning of Section 409A of the Code.  Each amount to be paid or benefit to be provided under this Plan shall be construed as a separate identified payment for purposes of Section 409A of the Code.  If any payment or benefit provided to a Participant in connection with his or her separation from service is determined to constitute "nonqualified deferred compensation" within the meaning of Section 409A of the Code and Participant is determined to be a "specified employee" as defined in Section 409A(a)(2)(b)(i) of the Code, then such payment or benefit shall not be paid until the six-month anniversary of the separation from

service or, if earlier, on the Participant's date of death.  The Company makes no representation that any or all of the payments described in this Plan will be exempt from or comply with Section 409A of the Code.  In no event whatsoever shall the Company be liable for any additional tax, interest or penalties that may be imposed on a Participant by Section 409A of the Code or any damages for failing to comply with Section 409A of the Code.

   12.4 *Tax Withholding*.  The Participant shall be responsible for payment of any taxes or similar charges required by law to be paid or withheld from an Award or an amount paid in satisfaction of an Award.  Any required withholdings shall be paid by the Participant on or prior to the payment or other event that results in taxable income in respect of an Award.  In addition to the methods described in this Plan, the Award Agreement may specify the manner in which the withholding obligation shall be satisfied with respect to the particular type of Award.  Without limiting the foregoing, if the Company or any Subsidiary determines in its sole discretion that under the requirements of applicable taxation laws or regulations of any governmental authority whatsoever it is obliged to withhold for remittance to a taxing authority any amount upon the grant, vesting, or exercise of an Award, the other disposition or deemed disposition by a Participant of an Award or any Common Stock, or the provision of any other benefit under this Plan, the Company or any of its Subsidiaries, on its own behalf or on behalf of any third party purchaser of the Award or any Common Stock held by the Participant, may take any steps it considers necessary or appropriate in the circumstances in connection therewith, including, without limiting the generality of the foregoing:

    a) requiring the Participant to pay the Company or any of Subsidiaries such amount as the Company or any of its Subsidiaries is obliged to remit to such taxing authority in respect thereof, with any such payment, in any event, being due no later than the date as of which any such amount first becomes included in the gross income of the Participant for tax purposes (and further provided that, in the case of a Stock Option, such payment shall be made in the same manner as payment of any applicable exercise price or in any other manner that may be designated by the Committee);

    b) issuing any Common Stock issued pursuant to an Award to an agent on behalf of the Participant and directing the agent to sell a sufficient number of such shares on behalf of the Participant to satisfy the amount of any such withholding obligation, with the agent paying the proceeds of any such sale to the Company or any of its Subsidiaries for this purpose; or

    c) to the extent permitted by law and consistent with Section 409A of the Code, deducting the amount of any such withholding obligation from any payment of any kind otherwise due to the Participant.

   12.5 *No Guarantee of Tax Consequences*.  Neither the Company, the Board, the Committee nor any other person make any commitment or guarantee that any Federal, state or local tax treatment will apply or be available to any Participant or any other person hereunder.

   12.6 *Severability*.  If any provision of the Plan or any Award Agreement shall be determined to be illegal or unenforceable by any court of law in any jurisdiction, the remaining

provisions hereof and thereof shall be severable and enforceable in accordance with their terms, and all provisions shall remain enforceable in any other jurisdiction.

   12.7 *Governing Law*.  The Plan and all rights hereunder shall be subject to and interpreted in accordance with the laws of the State of Delaware, without reference to the principles of conflicts of laws, and to applicable Federal securities laws.

   13. <u>Term; Amendment and Termination</u>.

   13.1 *Term*.  The Plan has been adopted by the Board of the Company and shall become effective as of [●]  The term of the Plan will be ten (10) years from the date of adoption by the Board, subject to Section 13.2 hereof.

   13.2 *Amendment and Termination*.  The Board may from time to time and in any respect, amend, modify, suspend or terminate the Plan.  Notwithstanding the foregoing, no amendment, modification, suspension or termination of the Plan shall adversely affect any Award theretofore granted without the consent of the Participant or the permitted transferee of the Award.