IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:

ABLEST INC., et al.,[1]

             Debtors.

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

:  Chapter 11
:
:  Case No. 14-10717 (KJC)
:
:  (Jointly Administered)
:
:  Re: Docket Nos. 18, 20 and 21
:

**DEBTORS' MEMORANDUM OF LAW IN SUPPORT OF ENTRY
OF AN ORDER CONFIRMING THE PREPACKAGED JOINT
CHAPTER 11 PLAN OF REORGANIZATION OF
ABLEST INC., ET AL. DATED MARCH 11, 2014**

SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP

Anthony W. Clark (I.D. No. 2051)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Kenneth S. Ziman
Glenn S. Walter
Four Times Square
New York, New York 10036-6522
(212) 735-3000

PACHULSKI STANG ZIEHL & JONES LLP

Jeffrey N. Pomerantz
Debra Grassgreen
James E. O'Neill (I.D. No. 4042)
919 N. Market Street, 17th Floor
Wilmington, DE 19801
(302) 652-4100

Dated:  Wilmington, Delaware
       May 1, 2014

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification numbers are: Ablest Inc. (8462); Koosharem, LLC (4537); New Koosharem Corporation (9356); Real Time Staffing Services, Inc. (8189); Remedy Intelligent Staffing, Inc. (0963); Remedy Staffing, Inc. (0080); RemedyTemp, Inc. (0471); Remedy Temporary Services, Inc. (7385); RemX, Inc. (7388); Select Corporation (6624); Select Nursing Services, Inc. (5846); Select PEO, Inc. (8521); Select Personnel Services, Inc. (8298); Select Specialized Staffing, Inc. (5550); Select Temporaries, Inc. (7607); Select Trucking Services, Inc. (5722); Tandem Staffing Solutions, Inc. (5919); Westaff, Inc. (6151); Westaff (USA), Inc. (5781); Westaff Support, Inc. (1039); RemSC LLC (8072); and RemUT LLC (0793).  The mailing address for each of the Debtors is: 3820 State Street, Santa Barbara, CA 93105.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. iii

I.    BACKGROUND ..................................................................................................... 2

II.   SUMMARY OF THE PLAN .................................................................................. 3

    A.    The Plan Provides For A Comprehensive Restructuring Of The Debtors'
        Capital Structure ............................................................................................. 4

    B.    The Plan Has The Overwhelming Support Of The Debtors' Creditors ................. 6

III.  THE DISCLOSURE STATEMENT AND THE DEBTORS'
      SOLICITATION AND VOTING PROCEDURES SHOULD BE
      APPROVED ............................................................................................................ 6

IV.   THE PLAN SHOULD BE CONFIRMED ............................................................... 7

    A.    The Plan Complies With The Applicable Provisions Of Title 11 (Section
        1129(a)(l)) ...................................................................................................... 8
            1.    Classification Of Claims And Interests ............................................... 8
            2.    Mandatory Contents Of The Plan ...................................................... 10
            3.    Discretionary Contents Of The Plan .................................................. 14
            4.    Executory Contracts And Unexpired Leases ...................................... 19

    B.    The Debtors Have Complied With The Applicable Provisions Of Title 11
        (Section 1129(a)(2)) ..................................................................................... 20

    C.    The Plan Was Proposed In Good Faith (Section 1129(a)(3)) ........................... 20

    D.    All Payments To Be Made By The Debtors In Connection With These
        Cases Have Been Approved By Or Are Subject To The Approval Of The
        Court (Section 1129(a)(4)) ............................................................................ 22

    E.    The Plan Discloses All Required Information Regarding Post-
        confirmation Directors, Management And Insiders (Section 1129(a)(5)) ............ 23

    F.    The Plan Does Not Provide For Any Rate Change Subject To Regulatory
        Approval (Section 1129(a)(6)) ...................................................................... 25

    G.    The Plan Satisfies The "Best Interests" Test (Section 1129(a)(7)) ................... 25

    H.    The Plan Has Been Accepted By The Requisite Classes Of Creditors And
        Interest Holders Other Than With Respect To Classes 8 And 9 (Section
        1129(a)(8)) .................................................................................................... 27

I.     The Plan Provides For The Payment Of Priority Claims (Section 1129(a)(9)) ..........................................................................................28

J.     The Plan Has Been Accepted By At Least One Impaired, Non-Insider Class (Section 1129(a)(10)) ...................................................................29

K.    The Plan Is Feasible (Section 1129(a)(11)) ...............................................29

L.     The Plan Provides For The Payment Of Certain Fees (Section 1129(a)(12)) .........................................................................................................32

M.    Continuation Of Retiree Benefits (Section 1129(a)(13)) ........................32

N.    Miscellaneous Provisions (Sections 1129(a)(14)-(16)) ...........................32

O.    The Plan Satisfies The "Cramdown" Requirements ...............................32
       1.    The Plan Does Not Discriminate Unfairly With Respect To The Deemed Rejecting Classes ........................................................33
       2.    The Plan Is "Fair And Equitable" With Respect To The Deemed Rejecting Classes ......................................................................34

P.     Modifications To The Plan Do Not Materially Affect Holders Of Claims Or Interests And Do Not Require Further Solicitation Of The Plan ..................36

V.    IMMEDIATE EFFECTIVENESS ..............................................................37

VI.   CONCLUSION ..............................................................................................38

# TABLE OF AUTHORITIES

## CASES

In re 203 N. LaSalle St. Ltd. P'ship,
190 B.R. 567 (Bankr. N.D. Ill. 1995), aff'd, 195 B.R. 692 (N.D. Ill. 1996), aff'd, 126
F.3d 955 (7th Cir. 1997), rev'd on other grounds, 526 U.S. 434 (1999) ...................................33

In re Adamson Co.,
42 B.R. 169 (Bankr. E.D. Va. 1984) ...........................................................................................31

In re Adelphia Bus. Solutions, Inc.,
341 B.R. 415 (Bankr. S.D.N.Y. 2003) .........................................................................................30

In re Ambanc La Mesa Ltd. P'ship,
115 F.3d 650 (9th Cir. 1997)........................................................................................................33

In re Am. Capital Equip., LLC,
688 F.3d 145 (3d Cir. July 25, 2012) ...........................................................................................29

In re Aztec Co.,
107 B.R. 585 (Bankr. M.D. Tenn. 1989)......................................................................................33

In re Calpine,
No. 05-60200, 2007 WL 4565223 (Bankr. S.D.N.Y. Dec. 19, 2007)..........................................36

In re Cellular Info. Sys., Inc.,
171 B.R. 926 (Bankr. S.D.N.Y. 1994) .........................................................................................29

In re Clarkson,
767 F.2d 417 (8th. Cir. 1985)......................................................................................................30

In re Crowthers McCall Pattern, Inc.,
120 B.R. 279 (Bankr. S.D.N.Y. 1990) .........................................................................................25

In re Deluca,
No. 95-11924, 1996 WL 910908 (Bankr. E.D. Va. Apr. 12, 1996)............................................30

In re Drexel Burnham Lambert Group, Inc.,
138 B.R. 723 (Bankr. S.D.N.Y. 1992) ..............................................................................25, 28, 29

In re Drexel Burnham Lambert Group, Inc.,
960 F.2d 285 (2d Cir. 1992)........................................................................................................18

In re Exide Techs.,
303 B.R. 48 (Bankr. D. Del. 2003)..........................................................................................7, 34

In re Freymiller Trucking, Inc.,
    190 B.R. 913 (Bankr. W.D. Okla. 1996)................................................................33

In re Gilbertson Rests. LLC,
    No. 04-00385, 2005 WL 783063 (Bankr. N.D. Iowa Apr. 4, 2005) .........................21

In re Int'l Wireless Commc'ns Holdings, Inc.
    No. 98-2007 (MFW), 1999 Bankr. LEXIS 1853 (Bankr. D. Del. Mar. 26, 1999), aff'd
    and modified, 1999 Bankr. LEXIS 1832 (Bankr. D. Del. Dec. 29, 1999) .........................17, 18

Ion Media Networks, Inc. v. Cyrus Select Opportunities Master Fund, Ltd. (In re Ion
Media Networks, Inc.),
    419 B.R. 585 (Bankr. S.D.N.Y. 2009) ...................................................................35

In re Jartran, Inc.,
    44 B.R. 331 (Bankr. N.D. Ill. 1984) ..................................................................25, 26

John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.,
    987 F.2d 154 (3d Cir. 1993)..............................................................................8, 32

In re Johns-Manville Corp.,
    68 B.R. 618 (Bankr. S.D.N.Y. 1986), aff'd, 78 B.R. 407 (S.D.N.Y. 1987),
    aff'd, 843 F.2d 636 (2d Cir. 1988)....................................................................22, 29

In re Kaiser Aluminum Corp.,
    No. 02-10429, 2006 WL 616243 (Bankr. D. Del. Feb. 6, 2006),
    aff'd, 343 B.R. 88 (D. Del. 2006). .........................................................................8

Kane v. Johns-Manville Corp.,
    843 F.2d 636 (2d Cir. 1988) ............................................................................25, 29

In re Kmart Corp.,
    No. 02 B 02474, 2006 WL 952042 (Bankr. N.D. Ill. Apr. 11, 2006) .........................36

In re Leslie Fay Cos.,
    207 B.R. 764 (Bankr. S.D.N.Y. 1997) ...................................................................25

In re Machne Menachem, Inc.,
    233 F. App'x. 119, 120 (3d Cir. 2007) .....................................................................7

In re New Power Co.,
    438 F.3d 1113 (11th Cir. 2006)............................................................................36

In re One Times Square Assocs. Ltd. P'ship,
    159 B.R. 695 (Bankr. S.D.N.Y. 1993), aff'd, 165 B.R. 773 (S.D.N.Y.),
    aff'd mem., 41 F.3d 1502 (2d Cir. 1994) .................................................................29

In re Oneida Ltd.,
    351 B.R. 79 (Bankr. S.D.N.Y. 2006) .......................................................................16

In re PPI Enters. (U.S.), Inc.,
    228 B.R. 339 (Bankr. D. Del. 1998) aff'd, 324 F.3d 197 (3d Cir. 2003) ...................21

In re Prudential Energy Co.,
    58 B.R. 857 (Bankr. S.D.N.Y. 1986) .......................................................................30

In re PWS Holding Corp.,
    228 F.3d 224 (3d Cir. 2000) ...............................................................................16, 20

In re SGL Carbon Corp.,
    200 F.3d 154 (3d Cir. 1999) ....................................................................................20

In re Sherwood Square Assocs.,
    107 B.R. 872 (Bankr. D. Md. 1989) .........................................................................23

In re Sound Radio, Inc.,
    93 B.R. 849 (Bankr. D.N.J. 1988), aff'd in part, 103 B.R. 521 (D.N.J. 1989),
    aff'd, 908 F.2d 964 (3d Cir. 1990) ...........................................................................30

In re Source Enters., Inc.,
    No. 06-11707 (AJG), 2007 WL 2903954 (Bankr. S.D.N.Y. Oct. 1, 2007),
    aff'd, 392 B.R. 541 (S.D.N.Y. 2008) ........................................................................21

In re Spansion Inc.,
    426 B.R. 114 (Bankr. D. Del. 2010), appeal dismissed by 2011 WL 342441 ..........15

In re Spiegel, Inc.,
    No. 03-11540 (BRL), 2005 WL 1278094 (Bankr. S.D.N.Y. May 25, 2005) ............12

In re Texaco Inc.,
    84 B.R. 893 (Bankr. S.D.N.Y. 1988) ...........................................................24, 30, 31

In re Toy & Sports Warehouse, Inc.,
    37 B.R. 141 (Bankr. S.D.N.Y. 1984) ...........................................................21, 27, 31

In re Trans World Airlines, Inc.,
    185 B.R. 302 (Bankr. E.D. Mo. 1995) ...............................................................20, 24

In re Tribune Co.,
   464 B.R. 126 (Bankr. D. Del. 2011)...................................................................7, 29

In re Victory Constr. Co.,
   42 B.R. 145 (Bankr. C.D. Cal. 1984) ...................................................................26

In re Waern Bldg. Corp.,
   145 F.2d 584 (7th Cir. 1944) ...............................................................................30

In re Walker,
   165 B.R. 994 (Bankr. E.D. Va. 1994) ..................................................................30

In re Washington Mut. Inc.,
   442 B.R. 314 (Bankr. D. Del. 2011)...............................................................16, 17

In re W.E. Parks Lumber Co.,
   19 B.R. 285 (Bankr. W.D. La. 1982) ..............................................................23, 24

In re Whittaker Mem'l Hosp. Ass'n,
149 B.R. 812 (Bankr. E.D. Va. 1993)......................................................................30

In re Zenith Elecs. Corp.,
   241 B.R. 92 (Bankr. D. Del. 1999).................................................................17, 33

## STATUTES AND RULES

11 U.S.C. § 105...........................................................................................................22

11 U.S.C. § 327...........................................................................................................22

11 U.S.C. § 328...........................................................................................................22

11 U.S.C. § 330...........................................................................................................22

11 U.S.C. § 331...........................................................................................................22

11 U.S.C. § 365...........................................................................................................20

11 U.S.C. § 503(b).................................................................................................22, 28

11 U.S.C. § 507(a).................................................................................................10, 28

11 U.S.C. § 1114.....................................................................................................31, 32

11 U.S.C. § 1122...........................................................................................7, 8, 10, 22

vii

11 U.S.C. § 1123 ................................................. 7, 20, 37

11 U.S.C. § 1123(a) ................................................. 10

11 U.S.C. § 1123(a)(1) ............................................. 10

11 U.S.C. § 1123(a)(2) ............................................. 11

11 U.S.C. § 1123(a)(3) ............................................. 11

11 U.S.C. § 1123(a)(4) ............................................. 11

11 U.S.C. § 1123(a)(5) ............................................. 11

11 U.S.C. § 1123(a)(6) ............................................. 13

11 U.S.C. § 1123(a)(7) ............................................. 13, 14

11 U.S.C. § 1123(b) ................................................. 14

11 U.S.C. § 1123(b)(2) ............................................. 19

11 U.S.C. § 1123(b)(3)(A) ....................................... 15, 22

11 U.S.C. § 1123(b)(6) ............................................. 19, 22

11 U.S.C. § 1125 ..................................................... 7, 20

11 U.S.C. § 1126 .............................................. 7, 20, 27

11 U.S.C. § 1126(b)(1) ............................................... 6

11 U.S.C. § 1126(b)(2) ............................................... 6

11 U.S.C. § 1126(c) ................................................. 27

11 U.S.C. § 1126(f) ................................................. 27

11 U.S.C. § 1126(g) .............................................. 27, 32

11 U.S.C. § 1127 ................................................... 37

11 U.S.C. § 1127(a) ............................................. 25, 36

11 U.S.C. § 1127(d) ............................................. 35, 36

viii

11 U.S.C. § 1129 .................................................................................................. 22, 32, 37

11 U.S.C. § 1129(a)(1) ................................................................................................. 7, 19

11 U.S.C. § 1129(a)(2) ...................................................................................................... 20

11 U.S.C. § 1129(a)(3) ................................................................................................. 20, 22

11 U.S.C. § 1129(a)(4) ................................................................................................. 22, 23

11 U.S.C. § 1129(a)(5) ....................................................................................... 13, 23, 24, 25

11 U.S.C. § 1129(a)(5)(A)(ii) ........................................................................................... 23

11 U.S.C. § 1129(a)(6) ...................................................................................................... 25

11 U.S.C. § 1129(a)(7) ................................................................................................. 25, 26

11 U.S.C. § 1129(a)(8) ........................................................................................... 26, 27, 32

11 U.S.C. § 1129(a)(9) ................................................................................................. 27, 28

11 U.S.C. § 1129(a)(9)(A) .......................................................................................... 27, 28

11 U.S.C. § 1129(a)(9)(B) ................................................................................................ 28

11 U.S.C. § 1129(a)(9)(C) ................................................................................................ 28

11 U.S.C. § 1129(a)(10) .................................................................................................... 28

11 U.S.C. § 1129(a)(11) ............................................................................................... 29, 30

11 U.S.C. § 1129(a)(12) .................................................................................................... 31

11 U.S.C. § 1129(a)(13) ............................................................................................... 31, 32

11 U.S.C. § 1129(b) .......................................................................................................... 27

11 U.S.C. § 1129(b)(1) ..................................................................................................... 32

11 U.S.C. §§ 1129(b)(2)(B) .............................................................................................. 34

11 U.S.C. §§ 1129(b)(2)(C) .............................................................................................. 34

11 U.S.C. §§ 1129(a)(14)-(16) ......................................................................................... 32

11 U.S.C. § 1142 ................................................................................................22

28 U.S.C. § 1930 ................................................................................................31

Fed. R. Bankr. P. 3017 .........................................................................................7

Fed. R. Bankr. P. 3018 .........................................................................................7

Fed. R. Bankr. P. 3020(e) ...................................................................................36

Fed. R. Bankr. P. 6004(h) ...................................................................................36

Fed. R. Bankr. P. 7062 ........................................................................................36

Fed. R. Bankr. P. 8001 ........................................................................................36

Fed. R. Bankr. P. 8002 ........................................................................................36

H.R. Rep. No. 95-595 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963 ...........7

S. Rep. No. 95-989 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787 ................7

## OTHER AUTHORITIES

7 Collier on Bankruptcy ¶ 1123.01[7] (Alan N. Resnick & Henry J. Sommer, eds., 16th
    ed. 2010 ...........................................................................................................13

7 Collier on Bankruptcy ¶ 1129.02[11] (Alan N. Resnick & Henry J. Sommer, eds., 16th
    ed. 2010) ..........................................................................................................29

Ablest Inc. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned cases (the "Chapter 11 Cases"), submit this *Memorandum of Law in Support of Entry of an Order Confirming the Prepackaged Joint Chapter 11 Plan of Reorganization of Ablest Inc., et al.* dated March 11, 2014 [Docket No. 20] (as it may be amended or modified, the "Plan")[2] pursuant to section 1129 of title 11 of the United States Code (the "Bankruptcy Code"). At the hearing to consider confirmation of the Plan, the Debtors will request that the order confirming the Plan, a proposed form of which is filed concurrently herewith (the "Confirmation Order"), also approve the adequacy of the Disclosure Statement[3] and prepetition solicitation procedures (the "Solicitation Procedures"). The Debtors' Motion for Combined Hearing[4] sets forth the factual and legal support for approval of the Disclosure Statement and Solicitation Procedures and will not be repeated in detail herein.

The Plan, which is a prepackaged plan, was accepted by almost every impaired creditor that voted on the Plan. No one filed a formal objection to the Plan, and the Debtors have resolved all informal objections. The proposed confirmation order addresses several informal objections and requests for clarification. Additionally, the Debtors reached a settlement with certain franchisees to address their concerns and potential objection. This settlement agreement will be filed with the Bankruptcy Court prior to the confirmation hearing. Therefore, the Debtors believe they have resolved any potential objections to confirmation and that the Debtors' request to confirm the Plan will be uncontested and have the overwhelming support of all stakeholders.

---

[2]    Capitalized terms not otherwise defined herein have the meanings given to them in the Plan.

[3]    "Disclosure Statement" means the *Disclosure Statement for the Prepackaged Joint Plan of Reorganization for Ablest Inc., et al., Under Chapter 11 of the Bankruptcy Code* dated March 11, 2014 [Docket No. 21].

[4]    "Motion for Combined Hearing" means *Debtors' Motion For Entry Of Order (A) Scheduling Combined Hearing To Consider Approval Of Disclosure Statement And Prepackaged Plan; (B) Establishing Deadline For (cont'd)*

In support of confirmation, the Debtors respectfully represent as follows:[5]

## I.    BACKGROUND

1.    Certain of the Debtors were founded in Santa Barbara, California, in 1985, and today the Debtors are a leading national provider of temporary staffing services in the United States and are the largest provider of temporary staffing services in California.  Through a network of company-owned and franchise agent offices, the Debtors offer a wide range of temporary staffing solutions across many service categories, including light industrial, clerical, accounting and finance, and information technology.  The Debtors' customers include Fortune 1000 companies as well as small and mid-sized local and regional companies that operate in a variety of industries, such as manufacturing, services, retail, and banking as well as governmental agencies.

2.    The Debtors provide these services on temporary, "temp-to-hire," and project-by-project bases through a network of 312 offices in 48 states.  As of the Petition Date, the Debtors had 167 company-owned offices and 145 independently managed franchise agent offices.  The Debtors currently employ approximately 75,000 full and part time employees in hourly, salaried, supervisory, management, and sales positions (the "Associates").  In addition, the Debtors employ approximately 1,500 corporate and branch employees (together with the Associates, the "Employees") that manage the work assignments of the Associates.  Most of the Debtors'

---

*(cont'd from previous page)*
    *Objections To The Plan And Disclosure Statement; (C) Approving Solicitation Procedures; And (D) Granting Related Relief* [Docket No. 8].

[5]    This Memorandum of Law and confirmation of the Plan are further supported by the *Declaration of Randall S. Eisenberg in Support of the Joint Prepackaged Plan of Reorganization of Ablest Inc., et al.* (the "Eisenberg Declaration") filed contemporaneously herewith; the *Declaration of Bruce Mendelsohn in Support of the Joint Prepackaged Plan of Reorganization of Ablest Inc., et al.* filed contemporaneously herewith (the "Mendelsohn Declaration"); and the *Declaration of Robert Olson in Support of the Joint Prepackaged Plan of Reorganization of Ablest Inc., et al.* (the "Olson Declaration") filed contemporaneously herewith.

Employees work on assignment at over 10,000 client companies. During the fiscal year ended December 29, 2013, the Debtors placed approximately 300,000 temporary Employees and provided staffing services to approximately 11,500 customers. For the 2013 fiscal year, the Debtors had approximately $2 billion in gross revenue.

3.     As of the Petition Date, the Debtors had two credit facilities – the Prepetition First Lien Loans and Second Lien Loans. As of the Petition Date, the outstanding principal amount of the Prepetition First Lien Loans, plus accrued and unpaid interest, was approximately $492 million. As of the Petition Date, the outstanding principal amount of the Prepetition Second Lien Loans, plus accrued and unpaid interest, was approximately $159 million.

4.     Additional detail regarding the Debtors' business operations, corporate structure, pre-petition debt, related party transactions and events leading to the Chapter 11 filing are contained in the *Declaration of Randall S. Eisenberg in Support of First Day Motions* [Docket No. 3] and the Disclosure Statement and will not be repeated herein.

## II.    SUMMARY OF THE PLAN

5.     The purpose of the Plan is to provide for a restructuring of the Debtors' liabilities in a manner designed to maximize value to all stakeholders and to enhance the financial viability of the Reorganized Debtors. The Debtors have determined that prolonged chapter 11 cases would severely impair their business operations and threaten their viability as going concerns. Accordingly, the Debtors seek to expeditiously confirm and consummate the Plan. As set forth in the Eisenberg Declaration, the Plan represents the culmination of significant efforts by multiple parties in interest to reach a fair and equitable resolution of a myriad of complex business and legal issues. These efforts have resulted in a Plan that provides significant value for

the Debtors' stakeholders and provides a vehicle for the Debtors' successful emergence from chapter 11.

### A.    The Plan Provides For A Comprehensive Restructuring Of The Debtors' Capital Structure

6.    The Plan is a "pre-packaged" plan of reorganization. The Plan provides for a significant deleveraging of the Debtors' balance sheet through the infusion of $225 million of new equity capital, the raising of $490 million of new debt ($370 million of which will be funded at Plan consummation), the satisfaction or other resolution of the Prepetition First Lien Loan Claims, Prepetition Second Lien Loan Claims and certain other liabilities of the Debtors, and the contribution of additional staffing businesses by affiliates of the Debtors' principal equity holder (the "Consenting Equity Holder").

7.    Specifically, to satisfy creditor claims in accordance with the Plan, the Debtors have secured commitments for new equity aggregating $225 million, consisting of a commitment for an equity investment in cash, to be consummated at emergence pursuant to the Rights Offering, on the terms set forth in the Plan and the Backstop Agreement. In addition, Credit Suisse and Royal Bank of Canada have been retained to arrange a new $370 million term loan[6] and $120 million asset-based revolving loan facility, respectively, to be entered into at Plan consummation. The Debtors intend to utilize the proceeds of the $225 million equity investment and the $370 million term loan to meet their obligations under the Plan. The $120 million asset-based revolving loan facility will be used to fund the Debtors' working capital requirements and, if needed, to meet the Debtors' obligations under the Plan.

---

[6]    The Disclosure Statement and term sheet set forth in the Plan Supplement reference a $350 million term loan. In light of demand to participate in the term loan facility, the principal amount was increased from $350 million to $370 million, and the pricing became more favorable from what was anticipated (including a decrease of 50 basis points on the interest rate).

8.      As of April 1, 2014, the Debtors had outstanding debt in an aggregate amount, including accrued interest, of approximately $651 million.  Upon emergence from chapter 11, the Reorganized Debtors expect to have outstanding debt in an aggregate principal amount of approximately $370 million.  Accordingly, the Reorganized Debtors will have a significantly deleveraged and improved balance sheet and a more appropriate capital structure.  These improvements will result from (i) the conversion of approximately $492 million in the aggregate amount of Prepetition First Lien Loan Claims into $365 million in Cash and subscription rights for New Common Stock of Reorganized Parent, (ii) the conversion of approximately $159 million in the aggregate amount of Prepetition Second Lien Loan Claims into $12 million in Cash and New Warrants, and (iii) the issuance and sale for $225 million in cash of New Common Stock of Reorganized Parent in the Rights Offering and pursuant to the Backstop Agreement.  In addition to the reduction of leverage of the Reorganized Debtors upon emergence from chapter 11, the Reorganized Debtors also expect to benefit from an annual decrease in total credit facility interest expense obligations of approximately $30 million.

9.      Importantly, the Plan provides the Company with substantial additional liquidity, the lack of which has impeded the Company's operating performance in the past.  The Plan also will provide an efficient restructuring through the prepackaged process, designed to minimize disruption to the Debtors' business, stabilize the Debtors' balance sheet, and provide a platform for renewed success.  Through confirmation and consummation of the Plan, the Debtors will restructure and substantially deleverage their consolidated balance sheet, reduce their cash interest expense, provide working capital, and retain additional flexibility to invest in growth initiatives.

### B.    The Plan Has The Overwhelming Support Of The Debtors' Creditors

10.    Based upon the *Declaration of Michael J. Paque of Kurtzman Carson Consultants LLC Regarding the Mailing, Voting, and Tabulation of Ballots Accepting and Rejecting the Prepackaged Joint Plan of Reorganization of Ablest Inc., et al.* dated March 31, 2014 [Docket No. 19] (the "Tabulation Declaration") and the *Supplemental Declaration of Michael J. Paque of Kurtzman Carson Consultants LLC Regarding the Mailing, Voting, and Tabulation of Ballots Accepting and Rejecting the Prepackaged Joint Plan of Reorganization of Ablest Inc., et al.,* filed contemporaneously herewith (the "Supplemental Declaration"), holders of impaired claims in Class 4 (Prepetition First Lien Loan Claims), and Class 5 (Prepetition Second Lien Loan Claims) have voted overwhelmingly to accept the Plan:

| CLASS | % ACCEPTED (NUMBER) | % ACCEPTED (AMOUNT) | ACCEPT/REJECT |
|-------|---------------------|---------------------|---------------|
| 4 | 97.01% | 98.88% | Accept |
| 5 | 100% | 100% | Accept |

11.    As evidenced by the rigorous process and intensive negotiations that led to the Plan, described in detail in the Eisenberg Declaration, the near unanimous results of the Plan voting, the widespread and overwhelming support of the Plan by impaired creditors and other parties in interest, and the paucity of objections filed in these large, complex Chapter 11 Cases, the Plan is in the best interests of the Debtors' estates, creditors and other stakeholders and should be approved.

## III.    THE DISCLOSURE STATEMENT AND THE DEBTORS' SOLICITATION AND VOTING PROCEDURES SHOULD BE APPROVED

12.    Under section 1126(b) of the Bankruptcy Code, prepetition disclosure statements are subject to requirements distinct from postpetition disclosure statements.  The solicitation

must be "in compliance with any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation." 11 U.S.C. § 1126(b)(1). Alternatively, "if there is not any such law, rule, or regulation . . . acceptance or rejection of the Plan must have been solicited after disclosure to such holder of adequate information, as defined in section 1125(a) of the Bankruptcy Code." 11 U.S.C. § 1126(b)(2).

13.     As noted above, the factual and legal support for approval of the Disclosure Statement and Solicitation Procedures are detailed at length in the Motion for Combined Hearing, the Tabulation Declaration, and the Supplemental Declaration, and will not be duplicated in this Memorandum.  For the reasons set forth therein, the Debtors submit that (i) the Disclosure Statement is comprehensive and extensive; (ii) that the Debtors have distributed the Plan and the Disclosure Statement to substantially all affected holders of Claims and Equity Interests; (iii) that holders of Claims and Equity Interests were provided a reasonable period of time in which to accept or reject the Plan; and (iv) that the Disclosure Statement and the Debtors' solicitation and voting procedures otherwise comply with the applicable provisions of sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, and applicable non-bankruptcy law. The Debtors, therefore, request that the Court approve the Disclosure Statement and the Debtors' solicitation and voting procedures.

## IV.    THE PLAN SHOULD BE CONFIRMED

14.     To confirm the Plan, the Court must find that both the Plan and the Debtors are in compliance with each of the requirements of section 1129(a) of the Bankruptcy Code.  See In re Tribune Co., 464 B.R. 126 (Bankr. D. Del. 2011); In re Exide Techs., 303 B.R. 48, 58 (Bankr. D. Del. 2003).  As set forth below, the Debtors and the Plan satisfy all of the requirements of section 1129(a) of the Bankruptcy Code.  Accordingly, the Plan should be confirmed.

A.    **The Plan Complies With The Applicable Provisions Of Title 11 (Section 1129(a)(l))**

15.    Section 1129(a)(1) of the Bankruptcy Code provides that a plan of reorganization may be confirmed only if "[t]he plan complies with the applicable provisions of this title." 11 U.S.C. § 1129(a)(1). See In re Machne Menachem, Inc., 233 F. App'x. 119, 120 (3d Cir. 2007). The legislative history of section 1129(a)(1) explains that this provision encompasses the requirements of sections 1122 and 1123 of the Bankruptcy Code, which govern classification of claims and interests and the contents of the plan, respectively. See S. Rep. No. 95-989, at 126 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787, 5912; H.R. Rep. No. 95-595, at 412 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6368; see also In re Johns-Manville Corp., 68 B.R. 618, 629 (Bankr. S.D.N.Y. 1986) (noting that confirmation objections under section 1129(a)(1) usually involve failure of plan to conform to either section 1122(a) or section 1123 of Bankruptcy Code), aff'd, 78 B.R. 407 (S.D.N.Y. 1987), aff'd, 843 F.2d 636 (2d Cir. 1988).

1.    **Classification Of Claims And Interests**

16.    Section 1122 of the Bankruptcy Code provides:

(a)  Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

(b)  A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

11 U.S.C. § 1122.

17.    Courts in this Circuit and elsewhere have recognized that plan proponents have significant flexibility in placing claims and interests into different classes, provided there is a rational legal or factual basis to do so and all claims or interests within a particular class are substantially similar. See, e.g., John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.,

8

987 F.2d 154, 159 (3d Cir. 1993) (noting that a classification scheme is permissible if a legal

difference exists between the classes); In re Kaiser Aluminum Corp., No. 02-10429, 2006 WL

616243, at *5 (Bankr. D. Del. Feb. 6, 2006) (finding that the classification was proper under

section 1122 of the Bankruptcy Code because the classification scheme reflected the "diverse

characteristics" of those claims and interests), aff'd, 343 B.R. 88 (D. Del. 2006).

18.    The Plan meets these requirements.  In addition to Administrative Claims and

Priority Tax Claims, which are not required to be classified, the Plan designates ten (10) Classes

of Claims and Equity Interests.  Article III of the Plan provides for the separate classification of

these Claims and Equity Interests based upon differences in the legal nature or priority of such

Claims and Equity Interests.  Further, all Claims or Equity Interests within each class are

substantially similar to other Claims or Equity Interests included in the same Class.

19.    The Classes of Claims against and Equity Interests in the Debtors under the Plan

are as follows:

- Class 1 – Priority Claims

- Class 2 – Other Secured Claims

- Class 3 – Secured Tax Claims

- Class 4 – Prepetition First Lien Loan Claims

- Class 5 – Prepetition Second Lien Loan Claims

- Class 6 – SCIF Claims

- Class 7 – General Unsecured Claims

- Class 8 – Prepetition Warrants

- Class 9 – Equity Interests in Parent

- Class 10 – Equity Interests in Subsidiaries

20.    Class 1 – Priority Claims are separately classified based on the specific priority provided to such Claims under the Bankruptcy Code. Class 2 – Other Secured Claims, Class 3 – Secured Tax Claims, Class 4 – Prepetition First Lien Loan Claims, Class 5 – Prepetition Second Lien Loan Claims, and Class 6 – SCIF Claims are all secured claims, but are separately classified based upon the different rights and different collateral (or priority with respect to common collateral) securing such Claims. Class 7 – General Unsecured Claims are general unsecured trade claims that are unimpaired and will ride through the bankruptcy.

21.    Class 8 – Prepetition Warrants, Class 9 – Equity Interests in Parent and Class 10 – Equity Interests in Subsidiaries represent different types of equity interests (as opposed to claims) and are therefore classified separately from Classes 1 through 7.

22.    This classification scheme was not designed with an eye toward fashioning (nor, given the overwhelming and across-the-board acceptance, did it create) a single impaired accepting class. Rather, it is the variance in the nature of the Claims and Equity Interests in such Classes that requires separate classification. The classification scheme set forth in the Plan also allows each Class of Impaired creditors the opportunity to cast meaningful votes on the Debtors' Plan, satisfying the basic purposes of classification under section 1122 of the Bankruptcy Code. Thus, the Plan satisfies section 1122 of the Bankruptcy Code.

### 2.    Mandatory Contents Of The Plan

23.    Section 1123(a) of the Bankruptcy Code identifies seven requirements for the contents of a plan of reorganization. The Plan fully complies with each requirement of section 1123(a).

### (a)    The Plan Designates Classes Of Claims And Interests

24.     Section 1123(a)(1) of the Bankruptcy Code requires that a chapter 11 plan designate classes of claims and interests other than claims of a kind specified in section 507(a)(2) of the Bankruptcy Code (administrative expense claims), section 507(a)(3) of the Bankruptcy Code (claims arising during the "gap" period in an involuntary bankruptcy case), and section 507(a)(8) of the Bankruptcy Code (priority tax claims).  11 U.S.C. § 1123(a)(1).  Article III of the Plan complies with this requirement by expressly classifying all Claims and Equity Interests, other than Administrative Claims and Priority Tax Claims.

### (b)     The Plan Identifies Unimpaired Classes Of Claims And Interests

25.     Section 1123(a)(2) of Bankruptcy Code requires that a plan "specify any class of claims or interests that is not impaired under the plan."  11 U.S.C. § 1123(a)(2).  Article III of the Plan satisfies this requirement by specifying that Classes 1, 2, 3, 6, 7 and 10 are Unimpaired.

### (c)     The Plan Specifies The Treatment Of Impaired Classes

26.     Section 1123(a)(3) of the Bankruptcy Code requires that a plan "specify the treatment of any class of claims or interests that is impaired under the plan."  11 U.S.C. § 1123(a)(3).  Article III of the Plan satisfies this requirement by specifying that Classes 4, 5, 8 and 9 are Impaired, and by specifying the treatment of the Claims and Equity Interests in each of those Classes.

### (d)     The Plan Provides The Same Treatment Within Each Class

27.     Section 1123(a)(4) of the Bankruptcy Code requires that a plan "provide the same treatment for each claim or interest of a particular class."  11 U.S.C. § 1123(a)(4).  Article III of the Plan satisfies this requirement by providing the same treatment to each Claim or Equity

11

Interest in each respective Class, unless the Holder of a Claim or Equity Interest agrees to less favorable treatment on account of its Claim or Equity Interest.

**(e)    The Plan Provides Adequate Means For Implementation**

28.    Section 1123(a)(5) of the Bankruptcy Code requires that the Plan provide "adequate means" for its implementation.  11 U.S.C. § 1123(a)(5).  Adequate means for implementation of a plan may include retention by the debtor of all or part of its property; the transfer of property of the estate to one or more entities; cancellation or modification of any indenture; curing or waiving of any default; extension of a maturity date or change in an interest rate or other term of outstanding securities; amendment of the debtor's charter; or the issuance of securities in exchange for cash, property, or existing securities, all in exchange for claims or interests or for any other appropriate purpose.  See generally In re Spiegel, Inc., No. 03-11540 (BRL), 2005 WL 1278094, at *5 (Bankr. S.D.N.Y. May 25, 2005).

29.    Article V of the Plan and various other provisions of the Plan provide adequate means for the Plan's implementation.  Those provisions relate to, among other things: (a) the source of cash to make payments or distributions pursuant to the Plan; (b) the authority to implement and consummate the proposed restructuring transactions including, without limitation, the Rights Offering, the Backstop Agreement, the DRV Purchase Agreement, the Restricted Stock Award Agreement, the Sorensen Support Agreement, the Option Agreement, and the Stockholders Agreements; (c) the authority to implement and consummate the Post-Emergence ABL Agreement and Post-Emergence Term Loan Agreement; (d) cancellation of the Debtors' obligations, among other things, under the Prepetition First Lien Credit Agreement and Prepetition Second Lien Credit Agreement, and cancellation of Equity Interests in Parent; (e) the issuance and delivery of New Common Stock and New Warrants; (f) the authorization of each of

12

the matters provided for under the Plan involving the corporate structure of the Debtors or

corporate action to be taken by or required of the Debtors; (g) the provision for the appointment

of directors to the boards and officers of each of the Reorganized Debtors; (h) the continuation or

implementation of employee benefits and directors' and officers' liability insurance policies; (i)

implementation of a management incentive plan; (j) the vesting of all property of the estates

including the preservation of certain Causes of Action; and (k) approval of all corporate actions

contemplated by the Plan.

**(f)**      **The Plan Prohibits The Issuance Of Non-Voting Securities**

30.     Section 1123(a)(6) of the Bankruptcy Code requires that a debtor's corporate

constituent documents prohibit the issuance of non-voting equity securities. 11 U.S.C. §

1123(a)(6). Article V.L of the Plan provides that the Reorganized Parent Organizational

Documents shall be amended as necessary to satisfy the provisions of the Plan and the

Bankruptcy Code, including section 1123(a)(6). Accordingly, the Plan satisfies section

1123(a)(6) of the Bankruptcy Code.

**(g)**      **The Selection Of Officers And Directors Of The Reorganized Debtors Is Consistent With The Interests Of Creditors And Equity Security Holders And With Public Policy**

31.     Section 1123(a)(7) of the Bankruptcy Code requires that a plan of reorganization

"contain only provisions that are consistent with the interests of creditors and equity security

holders and with public policy with respect to the manner of selection of any officer, director, or

trustee under the plan." 11 U.S.C. § 1123(a)(7). This provision is supplemented by section

1129(a)(5) of the Bankruptcy Code, which directs the scrutiny of the Court to the methods by

which the directors and management of the reorganized corporation are to be chosen to provide

adequate representation of those whose investments are involved in the reorganization – i.e.,

13

creditors and equity holders.  See 7 Collier on Bankruptcy ¶ 1123.01[7] (Alan N. Resnick &

Henry J. Sommer, eds., 16th ed. 2010).

32.    The Debtors have identified the proposed directors and officers of the

Reorganized Debtors.  Officers of each of the Debtors immediately prior to the Effective Date

will remain officers of each of the Reorganized Debtors on the Effective Date.  The Disclosure

Statement and Plan Supplement disclose the identity of the members of the new board of each of

the Reorganized Debtors.  The Debtors' existing management team is highly experienced and

intimately familiar with the Debtors and their businesses.  The Backstop Investors designated the

members of the New Board other than D. Stephen Sorenson, who will remain Chief Executive

Officer of the Reorganized Debtors.  As the Backstop Investors will own a majority of the equity

in the Reorganized Debtors upon consummation of the Plan, the Backstop Investors selection of

the members of the New Boards is consistent with the interests of holders of Claims and Equity

Interests and with public policy.  Accordingly, the Plan provisions satisfy the requirements of

section 1123(a)(7) of the Bankruptcy Code.

### 3.    Discretionary Contents Of The Plan

33.    Section 1123(b) of the Bankruptcy Code identifies various discretionary

provisions that may be included in a plan of reorganization.  Most of these provisions have

already been described above.  Certain additional provisions relating to releases and exculpations

are described below.  Importantly, there are no non-consensual "third-party" releases that purport

to release claims held by one non-debtor against another non-debtor without such parties'

agreement.

14

### (a)    The Plan's Releases By The Debtors Are Permissible And Should Be Approved

34.     Under Article XI.B. of the Plan, the Debtors and Reorganized Debtors release any and all claims against the Released Parties,[7] subject to certain limited standard exceptions outlined in the Plan, including a carve-out from the release for acts of fraud, gross negligence or willful misconduct.

35.     Courts in this district have held that a plan may provide for releases by a debtor of non-debtor third parties after considering the specific facts and equities of each case. In re Spansion, Inc., 426 B.R. 114, 142-43 (Bankr. D. Del 2010), appeal dismissed by 2011 WL 342441 (citing In re Zenith Elec. Corp., 241 B.R. 92, 110 (Bankr. D. Del. 1999)).  Moreover, a debtor may release claims in a plan pursuant to Bankruptcy Code § 1123(b)(3)(A), if the release is a valid exercise of the debtor's business judgment, is fair, reasonable, and in the best interests of the estate.  Id. at 143 (citing In re DBSD N. Am., Inc., 419 B.R. 179, 217 (Bankr. S.D.N.Y. 2009)).

36.     Here, both creditor classes entitled to vote on the Plan voted overwhelmingly in favor of the Plan.  Further, there is no pending[8] litigation that would be discontinued by such release, and the Debtors do not believe there is any basis for the assertion of any estate claims against the Released Parties, including in particular any breach of fiduciary duty claims against

---

[7]    The term "Released Party" means collectively, each in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the current and former members of the Steering Committee; (d) the DIP Agent; (e) the DIP Lenders; (f) the Prepetition Secured Lenders; (g) the Backstop Investors; (h) the Prepetition Agents; (i) the Sorensen Parties; (j) the Participating Lenders and (k) the respective Related Persons of each of the foregoing Entities.

[8]    As required by the settlement embodied in the *Interim Order (I) Authorizing Debtors to Obtain Interim Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 507, (II) Authorizing Debtors to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363, (III) Granting Adequate Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363, 364 and 507, (IV) Modifying the Automatic Stay, and (V) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001*[ Docket No.  47] the only known action asserting a breach of fiduciary duty claims against the Consenting Equity Holder was dismissed with prejudice.

the Debtors' directors and officers related to the development, negotiation, and formulation of the Plan. Moreover, the Debtors have agreed to indemnify certain parties subject to the Debtor release provisions. Finally, the Released Parties were actively involved in negotiating and formulating the Plan, and the release provisions were a key element of the Plan. Under the circumstances, it is a valid exercise of the Debtors' business judgment to include a settlement of any claims it might own against such parties as a discretionary provision of the plan.

37.    Based on the foregoing, the Debtors' releases are appropriate and should be approved.

### (b)    The Plan's Exculpation Provision is Permissible

38.    Section XII.D of the Plan exculpates the Exculpated Parties[9] on account of any act or omission in connection with, relating to, or arising out of, the Debtors' in-court and out-of-court restructuring efforts, including formulation, preparation, dissemination, negotiation or filing of the Disclosure Statement or the Plan or any contract, instrument, release or other agreement or document created or entered into in connection with same, except for any act or omission that is determined in a final order to have constituted gross negligence or willful misconduct. The Debtors believe the exculpation is appropriate, insofar as they formulated the Plan after negotiating extensively with the Steering Committee and Backstop Investors in good faith in the time leading up to the Petition Date.

39.    The exculpation provision, including its carve out for gross negligence and willful misconduct, is consistent with established practice in this jurisdiction and others and should be approved. See, e.g., In re PWS Holding Corp., 228 F.3d 224, 235, 245 (3d Cir. 2000) (approving

---

[9]    The term "Exculpated Parties" means, collectively: (a) the Debtors; (b) the Reorganized Debtors; (c) the current and former members of the Steering Committee; (d) the DIP Agent; (e) the DIP Lenders; (f) the Prepetition

*(cont'd)*

plan provision that released claims except as to willful misconduct or gross negligence, and characterizing such a provision as "commonplace . . . in Chapter 11 plans"); In re Oneida Ltd., 351 B.R. 79, 94 & n.22 (Bankr. S.D.N.Y. 2006) (approving exculpation provision that covered prepetition lenders, DIP lenders, creditors committees and their members, and the respective affiliates of each, except in cases of gross negligence, willful misconduct, fraud or criminal conduct); In re Washington Mut. Inc., 442 B.R. 314, 350 (Bankr. D. Del. 2011) (noting that the "Third Circuit has held that a creditors' committee, its members, and estate professionals may be exculpated under a plan for their actions in the bankruptcy case except for willful misconduct or gross negligence").

### (c)   The Releases By Holders Of Claims Are Permissible And Should Be Approved

40.     Pursuant to section XII.A and XII.B of the Plan, each holder of a Claim who affirmatively elected to opt-in to the releases contained in Section XII.A and XII.B agreed to release each Creditor Releasing Party[10] and Sorensen Parties.[11]  A party could opt-in by checking the appropriate box on its timely submitted ballot, or, if the party in interest was not in a voting class, by providing written notice of its election.  These releases are entirely voluntary and

---

*(cont'd from previous page)*

Secured Lenders; (g) the Backstop Investors; (h) the Prepetition Agents; (i) the Sorensen Parties; (j) the Participating Lenders and (k) the respective Related Persons of each of the foregoing Entities.

[10]   The term "Creditor Releasing Party" means (a) each Holder of a Claim in the Voting Classes that affirmatively elects to grant the third party release provided in Article XII of the Plan by checking the appropriate box on the Ballot provided to such Holder in connection with solicitation of such Holder's vote to accept or to reject the Plan and (b) each of the following parties that affirmatively elects to grant the third party release provided in Article XII of the Plan by giving written notice to that effect to each of the Notice Parties: (i) the DIP agent, (ii) the Prepetition Agents and (iii) any other creditor in the Chapter 11 Cases that is not entitled to vote on the Plan.

[11]   The term "Sorensen Parties" means, collectively, (i) the Consenting Equity Holder, (ii) the Butler Companies, (iii) Shannon Sorensen, Stephanie Sorensen, John Sorensen, Paul Sorensen, Allyson Sorensen, the Sorensen Family Trust U/D/T July 26, 1991, as amended, SB Group Holdings, Inc., Battle Mountain Specialty Insurance, Inc., Esperer Holdings, Inc., SSST Holdings, LLC, 1640 Grove, LLC, and (iv) New Butler Holdco (as defined in the Sorensen Support Agreement".

mutual.  These releases are appropriate because they are entirely consensual and were granted by

highly sophisticated parties who are intimately familiar with the Debtors' affairs.  See In re

Zenith Elecs. Corp., 241 B.R. 92, 111 (Bankr. D. Del. 1999) (approving consensual release of

voting parties' potential claims); In re Int'l Wireless Commc'ns Holdings, Inc., No. 98-2007

(MFW), 1999 Bankr. LEXIS 1853, at *24-25 (Bankr. D. Del. Mar. 26, 1999) ("[A]s to each

creditor or shareholder who voted for the Plan which contains the Release language, we have no

hesitation in concluding that they have consented to the Release and are bound thereby under

contract law." (emphasis in original)), aff'd and modified, 1999 Bankr. LEXIS 1832 (Bankr. D.

Del. Dec. 29, 1999).

     41.     As set forth above, the Debtors formulated the Plan after negotiating extensively

with numerous parties, including the Creditor Releasing Parties and the Sorensen Parties, in good

faith.  The third party release provisions were specifically negotiated among the Creditor

Releasing Parties and the Sorensen Parties as part of this process and are an essential element of

the Plan.   Moreover, the Debtors have agreed to indemnify certain parties subject to the third

party release provisions.  Thus, failure to approve the third party release could negatively and

directly impact the Reorganized Debtors.

     42.     Finally, because the Plan does not purport to impose non-consensual releases, the

Debtors believe that limiting releases only to those creditors who affirmatively elected to opt-in

to such releases is entirely consistent with applicable law.

### (a)    The Plan's Injunction Provisions Are Permissible And Should Be Approved

     43.     In addition, Article XII.F of the Plan (the "Injunction") provides that except as

provided in the Plan, or related documents, as of the Effective Date, all Persons that have held,

hold or may hold Claims or Equity Interests that have been released or discharged pursuant to the

Plan or are subject to exculpation pursuant to the Plan, are permanently enjoined from, among other things, commencing or continuing any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Equity Interests.

44.    The Injunction provisions are necessary to preserve and enforce (i) the Debtors' releases, (ii) the releases by holders of Claims and (iii) the exculpation provision, and is narrowly tailored to achieve that purpose. Further, the Injunction is a key component of the ultimate reorganization. See In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 293 (2d Cir. 1992). Thus, the Court should approve the Injunction to the same extent it approves the Debtors' releases, releases by holders of Claims, exculpation and discharge provisions.

**(b)    The Plan Includes Additional Appropriate
Provisions That Are Not Inconsistent With
Applicable Sections Of The Bankruptcy Code**

45.    In accordance with section 1123(b)(6) of the Bankruptcy Code, the Plan includes additional appropriate provisions that are not inconsistent with applicable sections of the Bankruptcy Code, including: (a) the provisions of Article VII of the Plan governing distributions on account of allowed Claims; (b) the provisions of Article VIII establishing procedures for resolving contingent, unliquidated and disputed Claims; and (c) the provisions of Article XIV governing retention of jurisdiction by the Court over certain matters after the Effective Date. Accordingly, the Plan complies with the applicable provisions of the Bankruptcy Code and, therefore, meets the requirements of section 1129(a)(1) of the Bankruptcy Code.

**4.    Executory Contracts And Unexpired Leases**

46.    Section 1123(b)(2) of the Bankruptcy Code provides that a plan may, subject to section 365 of the Bankruptcy Code, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section. 11 U.S.C. § 1123(b)(2). In accordance with section 1123(b)(2) of the Bankruptcy Code, Article

19

VI.A of the Plan provides that all executory contracts or unexpired leases of the Debtors not previously assumed by the Debtors, other than any executory contract or unexpired lease that (a) was previously rejected, (b) was listed in the Plan Supplement as an executory contract or unexpired lease to be rejected by the Debtors pursuant to the Plan, (c) is subject to a pending motion to reject as of the Confirmation Date, or (d) is rejected pursuant to the terms of the Plan, shall be deemed assumed as of the Confirmation Date (but subject to the occurrence of the Effective Date) in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code.

**B.    The Debtors Have Complied With The Applicable Provisions Of Title 11 (Section 1129(a)(2))**

47.    Section 1129(a)(2) of the Bankruptcy Code requires that the plan proponent "compl[y] with the applicable provisions of [title 11 of the Bankruptcy Code]." 11 U.S.C. § 1129(a)(2). The primary purpose of section 1129(a)(2) is to ensure that the plan proponents have complied with the requirements of sections 1125 and 1126 of the Bankruptcy Code. See, e.g., In re PWS Holding Corp., 228 F.3d at 248 n.23 (quoting In re Trans. World Airlines, Inc., 185 B.R. 302, 313 (Bankr. E.D. Mo. 1995) in noting that: "'The principal purpose of section 1129(a)(2) of the Bankruptcy Code is to assure that the plan proponents have complied with the disclosure requirements of section 1125 of the Bankruptcy Code in connection with solicitation of acceptances of the plan.'"). As set forth in more detail in the Motion for Combined Hearing, the Debtors have complied with all applicable disclosure and solicitation requirements of sections 1125 and 1126 of the Bankruptcy Code. The Plan thus complies with the requirements of section 1129(a)(2) of the Bankruptcy Code.

**C.    The Plan Was Proposed In Good Faith (Section 1129(a)(3))**

20

48.     Section 1129(a)(3) of the Bankruptcy Code requires that a plan of reorganization be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). "'[F]or purposes of determining good faith under section 1129(a)(3) . . . the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code.'" PWS Holding, 228 F.3d at 242 (alterations in original) (citation omitted); see also In re SGL Carbon Corp., 200 F.3d 154, 165 (3d Cir. 1999) (holding the good faith standard in section 1129(a)(3) requires that there must be "some relation" between the chapter 11 plan and the "reorganization-related purposes that [Chapter 11] was designed to serve" and that "The good faith standard requires that the plan be 'proposed with honesty, good intentions and a basis for expecting that a reorganization can be effected with results consistent with the objectives and purposes of the Bankruptcy Code'" (alteration in original) (citations omitted)).

49.     "[I]n the context of a Chapter 11 plan, courts have held [that] a plan is to be considered in good faith 'if there is a reasonable likelihood that the plan will achieve a result consistent with the standards prescribed under the [Bankruptcy] Code.'" In re PPI Enters. (U.S.), Inc., 228 B.R. 339, 347 (Bankr. D. Del. 1998) (quoting In re Toy & Sports Warehouse, Inc., 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984)), aff'd, 324 F.3d 197 (3d Cir. 2003). The good faith requirement is satisfied if the plan has been proposed "for the purpose of reorganizing the debtor, preserving the value of the bankruptcy estate and distributing that value to the creditors." In re Gilbertson Rests. LLC, No. 04-00385, 2005 WL 783063, at *4 (Bankr. N.D. Iowa Apr. 4, 2005); see also In re Source Enters., Inc., No. 06-11707, 2007 WL 2903954, at *6 (Bankr. S.D.N.Y. Oct. 1, 2007) (finding good faith requirement satisfied in plan filed with legitimate and honest

purposes of maximizing value of estate and effectuating equitable distribution), aff'd, 392 B.R. 541 (S.D.N.Y. 2008).

50.     The Plan has been proposed by the Debtors in good faith, with the legitimate and honest purposes of reorganizing the Debtors' ongoing businesses and enhancing the financial viability of each of the Debtors, while providing significant recovery to claimholders under the circumstances of these Chapter 11 Cases. The Plan is the result of arm's length negotiations among the Debtors, the Steering Committee, the Backstop Investors, and their respective professionals. Furthermore, the Plan has received the overwhelming support of the Classes entitled to vote on the Plan. Finally, the Plan's classification, indemnification, exculpation, release and injunction provisions have been negotiated in good faith and at arm's-length, are consistent with sections 105, 1122, 1123(b)(6), 1123(b)(3)(A), 1129 and 1142 of the Bankruptcy Code, are fair and reasonable and an essential part of the Plan, and are each necessary for the Debtors' successful reorganization because such indemnification, exculpation, release and injunctions are the bargained-for consideration provided to each of the Released Parties and Exculpated Parties in the Plan. In light of the foregoing, the Plan complies with section 1129(a)(3) of the Bankruptcy Code.

**D.     All Payments To Be Made By The Debtors In Connection With These Cases Have Been Approved By Or Are Subject To The Approval Of The Court (Section 1129(a)(4))**

51.     Section 1129(a)(4) of the Bankruptcy Code requires that:

> Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

11 U.S.C. § 1129(a)(4). In essence, this subsection requires that any and all fees promised or received from the estate in connection with or in contemplation of a chapter 11 case must be

22

disclosed and subject to the court's review.  See Johns-Manville, 68 B.R. at 632 (implying that court must be permitted to review and approve reasonableness of professional fees made from estate assets).

52.     Pursuant to Article II.A.1 of the Plan and the proposed Confirmation Order, Professionals holding Professional Fee Claims are required to file their final fee applications with the Court no later than thirty (30) days after the Effective Date.  These applications remain subject to Court approval under the standards established by the Bankruptcy Code, including the requirements of sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code, as applicable.  The Transaction Expenses, including the reasonable fees and expenses of attorneys and financial advisors incurred by the Backstop Investors, the Prepetition Agents, the DIP Agents, the DIP Lenders and the Steering Committee, constitute Allowed Administrative Expense Claims and shall be paid in full in Cash in the ordinary course of business without further notice to or order of the Bankruptcy Court.  Finally, Article XIV of the Plan provides that the Court will retain jurisdiction after the Effective Date to hear and determine all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, including requests by Professionals.  Accordingly, the Plan fully complies with the requirements of section 1129(a)(4) of the Bankruptcy Code.

E.      **The Plan Discloses All Required Information Regarding Post-confirmation Directors, Management And Insiders (Section 1129(a)(5))**

53.     Section 1129(a)(5) of the Bankruptcy Code provides that a plan of reorganization may be confirmed if the proponent discloses the identity of those individuals who will serve as management of the reorganized debtor, the identity of any insider to be employed or retained by the reorganized debtor and the compensation proposed to be paid to such insider.  See 11 U.S.C. § 1129(a)(5).  In addition, under section 1129(a)(5)(A)(ii), the appointment of, or continuation in

23

office of, existing management must be consistent with the interests of creditors, equity security

holders, and public policy. 11 U.S.C. § 1129(a)(5)(A)(ii).

54.     In determining whether the post-confirmation management of a debtor is

consistent with the interests of creditors, equity security holders, and public policy, a court must

consider proposed management's competence, discretion, experience, and affiliation with entities

having interests adverse to the debtor. See In re Sherwood Square Assocs., 107 B.R. 872, 878

(Bankr. D. Md. 1989); see also In re W.E. Parks Lumber Co., 19 B.R. 285, 292 (Bankr. W.D. La.

1982) (a court should consider whether "the initial management and board of directors of the

reorganized corporation will be sufficiently independent and free from conflicts and the potential

of post-reorganization litigation so as to serve all creditors and interested parties on an even and

loyal basis"). In general, however, "[t]he [d]ebtor should have first choice of its management,

unless compelling cause to the contrary exists." Sherwood Square Assocs., 107 B.R. at 878.

The case law also is clear that a plan may contemplate the retention of the debtor's existing

directors and officers. See, e.g., In re Texaco Inc., 84 B.R. 893, 908 (Bankr. S.D.N.Y. 1988)

(determining that section 1129(a)(5) was satisfied where plan disclosed debtor's existing

directors and officers who would continue to serve in office after plan confirmation); see also In

re Trans World Airlines, Inc., 185 B.R. 302, 314 (Bankr. E.D. Mo. 1995).

55.     The Debtors have fully satisfied the requirements of section 1129(a)(5) of the

Bankruptcy Code. The Debtors, through the Disclosure Statement and the Plan Supplement,

have disclosed the initial officers and members of the new board of each of the Reorganized

Debtors, including the identity of any insider that will be employed or retained by the

Reorganized Debtors, as well as the nature of the compensation that will be received by any

insider of the Debtors. The appointment to, or continuance in, such office of each individual,

and the methods established therefore, are consistent with the interests of holders of Claims and Equity Interests, and with public policy.

56.    The Debtors' existing management team, which is highly experienced and intimately familiar with the Debtors' affairs, will stay in place on the Effective Date. Furthermore, the Backstop Investors designated the members of the New Board other than D. Stephen Sorenson, who will remain Chief Executive Officer of the Reorganized Parent.  As the Backstop Investors will own a majority of the equity in the Reorganized Debtors upon consummation of the Plan, the Backstop Investors' selection of the members of the New Boards is consistent with the interests of holders of Claims and Equity Interests and with public policy. Accordingly, the Plan fully satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

**F.    The Plan Does Not Provide For Any Rate Change Subject To Regulatory Approval (Section 1129(a)(6))**

57.    Section 1129(a)(6) of the Bankruptcy Code requires, with respect to a debtor whose rates are subject to governmental regulation following confirmation, that appropriate governmental approval has been obtained for any rate change provided for in the plan, or that such rate change be expressly conditioned on such approval.  11 U.S.C. § 1129(a)(6).  Section 1129(a)(6) of the Bankruptcy Code does not apply here because there is no governmental regulatory commission that has jurisdiction over the Debtors' or the Reorganized Debtors' rates.

**G.    The Plan Satisfies The "Best Interests" Test (Section 1129(a)(7))**

58.    The "best interests of creditors" test, as set forth in section 1129(a)(7) of the Bankruptcy Code, requires that, with respect to each impaired class of claims or interests, each holder of a claim or interest has accepted the plan or will receive property of a value not less than what such holder would receive if the debtor were liquidated under chapter 7.  See In re Leslie

25

Fay Cos., 207 B.R. 764, 787 (Bankr. S.D.N.Y. 1997); Kane v. Johns-Manville Corp., 843 F.2d

636, 649 (2d Cir. 1988). Also, the best interest test focuses on individual dissenting creditors or

interestholders, rather than classes of claims or interests. Leslie Fay, 207 B.R. at 787; In re

Drexel Burnham Lambert Group, Inc., 138 B.R. 723, 761 (Bankr. S.D.N.Y. 1992).

59.    A court, in considering whether a plan is in the "best interests" of creditors, is not

required to consider any alternative to the plan other than the dividend projected in a liquidation

of all of the debtor's assets under chapter 7 of the Bankruptcy Code. See In re Crowthers McCall

Pattern, Inc., 120 B.R. 279, 297-98 (Bankr. S.D.N.Y. 1990); In re Jartran, Inc., 44 B.R. 331, 389-

93 (Bankr. N.D. Ill. 1984) (best interests test satisfied by showing that, upon liquidation, cash

received would be insufficient to pay priority claims and secured creditors so that unsecured

creditors and stockholders would receive no recovery); In re Victory Constr. Co., 42 B.R. 145,

151 (Bankr. C.D. Cal. 1984) (same).

60.    The Debtors with the assistance of their financial advisors, performed a

liquidation analysis, attached to the Disclosure Statement as Exhibit F (the "Liquidation

Analysis"), to determine whether the Plan satisfies the "best interests" test and to assist creditors

in determining whether to accept the Plan. See Disclosure Statement Exhibit F. As set forth in

Exhibit F of the Disclosure Statement, the overall values that may be realized by the holders of

Claims in hypothetical chapter 7 cases are significantly less than the value of the recoveries to

these holders under the Plan.

61.    Specifically, holders of Class 4 – Prepetition First Lien Loan Claims will receive

an aggregate of $350 million plus the ability to participate in the Rights Offering under the Plan,

but would receive an aggregate projected recovery of between $113,691,000 and $168,430,000

in a liquidation. Holders of Class 5 – Prepetition Second Lien Claims will receive an aggregate

of $12 million and New Warrants under the Plan but would not receive any recovery in a liquidation. Holders of Class 8 – Prepetition Warrants and Class 9 – Equity Interests in Parent, who are deemed to have rejected the Plan, will receive the same distribution under the Plan as in liquidation, i.e. zero. As a result, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

### H.    The Plan Has Been Accepted By The Requisite Classes Of Creditors And Interest Holders Other Than With Respect To Classes 8 And 9 (Section 1129(a)(8))

62.    Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests under a plan has either accepted the plan or is not impaired under the plan. With respect to an unimpaired class of claims, under section 1126 of the Bankruptcy Code, such unimpaired class of claims is "conclusively presumed to have accepted the plan" and need not be further examined under section 1129(a)(8). 11 U.S.C. § 1126(f); see Toy & Sports Warehouse, 37 B.R. at 150 (unimpaired classes of claims deemed to have accepted the plan pursuant to section 1126(f) of the Bankruptcy Code). Thus, Classes 1, 2, 3, 6, 7 and 10 are conclusively presumed to have accepted the Plan.

63.    Section 1126 of the Bankruptcy Code provides that a plan is accepted by an impaired class of claims if the class members accepting hold at least two-thirds in amount and more than one-half in number of the claims held by the class members who have cast votes on the plan. 11 U.S.C. § 1126(c). As set forth above, in these Chapter 11 Cases, the two Classes of Impaired Claims, entitled to vote on the Plan (i.e. Class 4 – Prepetition First Lien Loan Claims and Class 5 – Prepetition Second Lien Loan Claims) voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code.

64.    Finally, under section 1126(g) of the Bankruptcy Code, impaired classes that neither receive nor retain property under the plan are deemed to have rejected the plan. See 11

U.S.C. § 1126(g). As holders of Equity Interests in Classes 8 and 9 are neither receiving nor retaining property under the Plan, such Classes are deemed to have rejected the Plan pursuant to 11 U.S.C. § 1126(g). As discussed more fully below, the Debtors have met the "cramdown" requirements in section 1129(b) of the Bankruptcy Code necessary to obtain confirmation of the Plan notwithstanding the deemed rejection of the Plan by Classes 8 and 9.

       **I.**     **The Plan Provides For The Payment Of Priority Claims (Section 1129(a)(9))**

      65.    Section 1129(a)(9) of the Bankruptcy Code requires that certain priority claims be paid in full on the effective date of a plan and that the holders of certain other priority claims receive deferred cash payments. In particular, pursuant to section 1129(a)(9)(A) of the Bankruptcy Code, holders of claims of a kind specified in section 507(a)(2) of the Bankruptcy Code – administrative claims allowed under section 503(b) of the Bankruptcy Code -- must receive cash equal to the allowed amount of such claims on the effective date of the plan. 11 U.S.C. § 1129(a)(9)(A).

      66.    Section 1129(a)(9)(B) of the Bankruptcy Code requires that each holder of a claim of a kind specified in sections 507(a)(1) and 507(a)(4) through (7) of the Bankruptcy Code – generally, wage, employee benefit and deposit claims entitled to priority – must receive deferred cash payments of a value equal to the allowed amount of such claim or cash equal to the allowed amount of such claim on the effective date of the plan, depending upon whether the class has accepted the plan. See 11 U.S.C. § 1129(a)(9)(B). Finally, section 1129(a)(9)(C) provides that the holder of a claim of a kind specified in section 507(a)(8) of the Bankruptcy Code – i.e., priority tax claims – must receive deferred cash payments over a period not to exceed five years after the petition date, the present value of which equals the allowed amount of the claim. See 11 U.S.C. § 1129(a)(9)(C).

67.    The Plan satisfies these requirements. As set forth in Article II and Article III.B.1 of the Plan each holder of an Allowed Administrative Claim, Priority Tax Claim and Priority Claim will have such claims paid in full in cash. This proposed treatment complies with the requirement under Bankruptcy Code section 1129(a)(9).

### J.    The Plan Has Been Accepted By At Least One Impaired, Non-Insider Class (Section 1129(a)(10))

Section 1129(a)(10) of the Bankruptcy Code provides that:

If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.

11 U.S.C. § 1129(a)(10); see Drexel Burnham, 138 B.R. at 771.

68.    As described in the Voting Declaration and Supplemental Declaration, the Plan has been accepted by all Classes of Impaired Claims entitled to vote on the Plan. The Debtors believe that both Class 4 – Prepetition First Lien Loan Claims and Class 5 – Prepetition Second Lien Loan Claims are comprised exclusively of non-insider claims. Accordingly, the Debtors have satisfied this requirement.

### K.    The Plan Is Feasible (Section 1129(a)(11))

69.    Pursuant to section 1129(a)(11) of the Bankruptcy Code, a plan of reorganization may be confirmed only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). This section "requires courts to scrutinize carefully the plan to determine whether it offers a reasonable prospect of success and is workable." 7 Collier on Bankruptcy ¶ 1129.02 [11] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2010); see also In re One Times Square Assocs. Ltd. P'ship, 159 B.R. 695, 709 (Bankr. S.D.N.Y. 1993), aff'd, 165 B.R.

29

773 (S.D.N.Y.), aff'd mem., 41 F.3d 1502 (2d Cir. 1994); In re Cellular Info. Sys., Inc., 171 B.R.

926, 945 (Bankr. S.D.N.Y. 1994); Johns-Manville, 68 B.R. at 635.

  70. It is clear, however, that section 1129(a)(11) does not require a guarantee of the

plan's success; rather, the proper standard is whether the plan offers a reasonable assurance of

success. See In re Am. Capital Equip., LLC, 688 F.3d 145, 162 (3d Cir. July 25, 2012); Tribune,

464 B.R. at 185; Drexel Burnham, 138 B.R. at 762 ("'It is not necessary that success be

guaranteed, but only that the plan present a workable scheme of reorganization and operation

from which there may be a reasonable expectation of success.' . . . The mere prospect of financial

uncertainty cannot defeat confirmation on feasibility grounds since a guarantee of the future is

not required." (citations omitted)); Kane, 843 F.2d at 649 (a plan may be feasible although its

success is not guaranteed); In re Adelphia Bus. Solutions, Inc., 341 B.R. 415, 421-22 (Bankr.

S.D.N.Y. 2003) ("All [a bankruptcy court] needs to know is that the plan has a reasonable

likelihood of success."); Texaco Inc., 84 B.R. at 910 ("All that is required is that there be

reasonable assurance of commercial viability."); In re Prudential Energy Co., 58 B.R. 857, 862

(Bankr. S.D.N.Y. 1986) ("Guaranteed success in the stiff winds of commerce without the

protection of the Code is not the standard under § 1129(a)(11)."); see also In re Waern Bldg.

Corp., 145 F.2d 584, 588 (7th Cir. 1944) ("[T]he word feasible does not connote absolute

insurance of success but only reasonable assurance of success."); In re Whittaker Mem'l Hosp.

Ass'n, 149 B.R. 812, 816 (Bankr. E.D. Va. 1993) ("It is not a blanket guarantee [of success]

which is required, but rather a reasonable likelihood of success.").

  71. The plan proponent has an obligation to provide the court and interested parties

with sufficient information to make the feasibility determination. See In re Walker, 165 B.R.

994, 1005 (Bankr. E.D. Va. 1994). Courts have identified a number of factors relevant to

evaluating the feasibility of a proposed plan of reorganization, including: (a) the prospective

earnings or earning power of the debtor's business, (b) the soundness and adequacy of the capital

structure and working capital for the debtor's post-confirmation business, (c) the debtor's ability

to meet its capital expenditure requirements, (d) economic conditions, (e) the ability of

management and the likelihood that current management will continue, and (f) any other material

factors that would affect the successful implementation of the plan. See, e.g., Prudential Energy

Co., 58 B.R. at 862-63; see also In re Clarkson, 767 F.2d 417, 420 (8th. Cir. 1985); In re Deluca,

No. 95-11924, 1996 WL 910908, at *17 (Bankr. E.D. Va. Apr. 12, 1996); In re Sound Radio,

Inc., 93 B.R. 849, 856 (Bankr. D.N.J. 1988), aff'd in part, 103 B.R. 521 (D.N.J. 1989), aff'd, 908

F.2d 964 (3d Cir. 1990); Texaco Inc., 84 B.R. at 910; In re Adamson Co., 42 B.R. 169, 176

(Bankr. E.D. Va. 1984); Toy & Sports Warehouse, 37 B.R. at 151.

72.     As part of the negotiations that led to the Plan, the Debtors have focused their

efforts on achieving a viable capital structure with cash flows sufficient to service outstanding

debt and satisfy ongoing working capital needs. As a result, the Debtors' capital structure on exit

includes substantially reduced debt service obligations postpetition.

73.     Moreover, the Reorganized Debtors' financial projections ("Projections"),

attached to the Disclosure Statement as Exhibit C, indicate that, after giving effect to

confirmation of the Plan, the Reorganized Debtors will have sufficient liquidity and capital

resources to conduct their businesses. See Disclosure Statement Exhibit C.

74.     Based on the Projections, the Reorganized Debtors will be able to make all

payments required under the Plan while conducting ongoing business operations, and, therefore,

confirmation of the Plan is not likely to be followed by liquidation or the need for further

reorganization.

**L.    The Plan Provides For The Payment Of Certain Fees (Section 1129(a)(12))**

75.    Section 1129(a)(12) of the Bankruptcy Code requires that certain fees listed in 28 U.S.C. § 1930, determined by the court at the hearing on confirmation of a plan, be paid or that provision be made for their payment. 11 U.S.C. § 1129(a)(12). All fees payable under 28 U.S.C. § 1930 are treated as Administrative Claims under the Plan and will be paid in full, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

**M.    Continuation Of Retiree Benefits (Section 1129(a)(13))**

76.    Section 1129(a)(13) of the Bankruptcy Code requires that a plan of reorganization provide for the continuation, after the plan's effective date, of all retiree benefits at the level established by agreement or by court order pursuant to section 1114 of the Bankruptcy Code at any time prior to confirmation of the plan, for the duration of the period that the debtor has obligated itself to provide such benefits. The Debtors do not provide any "retiree benefits" (as defined in section 1114(a) of the Bankruptcy Code). Thus, the Plan satisfies section 1129(a)(13) of the Bankruptcy Code.

**N.    Miscellaneous Provisions (Sections 1129(a)(14)-(16))**

77.    Sections 1129(a)(14)-(16) are inapplicable as the Debtors (i) have no domestic support obligations (section 1129(a)(14)), (ii) are not individuals (section 1129(a)(15)), and (iii) are for-profit businesses (section 1129(a)(16)).

**O.    The Plan Satisfies The "Cramdown" Requirements**

78.    As described above, the votes of holders of Class 8 – Prepetition Warrants and Class 9 – Equity Interests in Parent (the "Deemed Rejecting Classes") are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. As a result, section 1129(a)(8) of the Bankruptcy Code, which requires that all impaired Classes accept the Plan, has not been satisfied with respect to the Deemed Rejecting Classes. Nonetheless, section 1129(b)(1) of the

Bankruptcy Code provides that, if certain requirements are met, a plan shall be confirmed

notwithstanding that section 1129(a)(8) is not satisfied with respect to one or more classes:

> [I]f all of the applicable requirements of . . section [1129(a) of the Bankruptcy
> Code] other than paragraph (8) are met with respect to a plan, the court, on
> request of the proponent of the plan, shall confirm the plan notwithstanding the
> requirements of such paragraph if the plan does not discriminate unfairly, and is
> fair and equitable, with respect to each class of claims or interests that is impaired
> under, and has not accepted, the plan.

11 U.S.C. § 1129(b)(1).

79.    To confirm a plan that has not been accepted by all impaired classes, the plan

proponent must show that the plan "does not discriminate unfairly" and is "fair and equitable"

with respect to the non-accepting impaired classes. John Hancock Mut. Life Ins. Co., 987 F.2d

at 157 n.5; see also In re Zenith Elecs. Corp., 241 B.R. at 105 (explaining that "[w]here a class of

creditors or shareholders has not accepted a plan of reorganization, the court shall nonetheless

confirm the plan if it 'does not discriminate unfairly and is fair and equitable'") (citation omitted).

### 1.    The Plan Does Not Discriminate Unfairly With Respect To The Deemed Rejecting Classes

80.    The Plan does not discriminate unfairly against holders of Claims or Equity

Interests in the Deemed Rejecting Classes. The Bankruptcy Code does not provide a standard

for determining when "unfair discrimination" exists. See In re 203 N. LaSalle St. Ltd. P'ship,

190 B.R. 567, 585 (Bankr. N.D. Ill. 1995), aff'd, 195 B.R. 692 (N.D. Ill. 1996), aff'd, 126 F.3d

955 (7th Cir. 1997), rev'd on other grounds, 526 U.S. 434 (1999). Rather, courts typically

examine the facts and circumstances of the particular case to determine whether unfair

discrimination exists. See, e.g., In re Freymiller Trucking, Inc., 190 B.R. 913, 916 (Bankr. W.D.

Okla. 1996) (holding that a determination of unfair discrimination requires a court to "consider

all aspects of the case and the totality of all the circumstances"). At a minimum, however, the

unfair discrimination standard prevents creditors and interest holders with similar legal rights

from receiving materially different treatment under a proposed plan without compelling

justifications for doing so.  See, e.g., In re Aztec Co., 107 B.R. 585, 588 (Bankr. M.D. Tenn.

1989); In re Ambanc La Mesa Ltd. P'ship, 115 F.3d 650, 656 (9th Cir. 1997).

81.     There is no unfair discrimination among creditors and interest holders with

respect to Class 8 – Prepetition Warrants or Class 9 – Equity Interests in Parent.  Neither class is

entitled to receive any recovery because there is insufficient value to pay more senior creditors in

full and no holders of similar legal rights are receiving different treatment under the Plan.

82.     In short, the Plan does not discriminate among any classes of claims or interests

that rejected the Plan.

### 2.     The Plan Is "Fair And Equitable" With Respect To The Deemed Rejecting Classes

83.     A plan is fair and equitable with respect to a class of general unsecured claims if

either (i) the plan provides that each holder of a claim of such class will receive property of a

value, as of the effective date of the plan, equal to the allowed amount of such claim, or (ii) the

holder of any claim of or interest that is junior to the claims of such classes will not receive or

retain any property under the plan on account of such junior claim or interest.  See 11 U.S.C. §

1129(b)(2)(B).  A similar concept applies with respect to classes of interests.  See 11 U.S.C. §

1129(b)(2)(C).  A corollary to these absolute priority rules is that no creditor in a more senior

class may receive more than what it is owed.  In re Exide Techs., 303 B.R. at 61.

84.     The Plan is fair and equitable with respect to the Deemed Rejecting Classes.  First,

no creditor in a senior class is receiving more than it is owed.  Further, there are no holders of

Claims or Equity Interests junior to any creditors or interest holders in the rejecting classes who

are receiving any recovery under the Plan on account of such Claims or Equity Interests.

Notably, none of the consideration provided to the Sorensen Parties is on account of existing

equity in the Debtors. Rather, certain of the Sorensen Parties will receive, in settlement of any and all claims such Sorensen Party may have, in each case, against the Debtors: (a) New Common Stock of the Reorganized Parent in consideration for contributing new assets to the Reorganized Parent under the terms of the DRV Purchase Agreement, (b) New Common Stock under the terms of the Restricted Stock Award Agreement, (c) New Common Stock in connection with the conversion of certain Related Party Notes under the terms of the Sorensen Support Agreement, and (d) an option to designate and purchase additional New Common Stock for Cash in an aggregate amount of $4 million under the terms of the Sorensen Support Agreement. The contribution of assets by and continued employment of Mr. Sorensen are critical elements of the Plan and were heavily negotiated. Notably, the senior creditors, who are entitled to all value under the Plan, have consented to the Sorensen Parties receiving such distributions.

85.     Furthermore, the preservation of Equity Interests in Subsidiaries is a means to preserve the Reorganized Debtors' corporate and tax structure that does not have any economic substance and that does not enable any holder of Claims or Equity Interests junior to the Deemed Rejecting Classes to retain or recover any value under the Plan. See Ion Media Networks, Inc. v. Cyrus Select Opportunities Master Fund, Ltd. (In re Ion Media Networks, Inc.), 419 B.R. 585, 601 (Bankr. S.D.N.Y. 2009) ("This technical preservation of equity is a means to preserve the corporate structure that does not have any economic substance and that does not enable any junior creditor or interest holder to retain or recover any value under the Plan. The Plan's retention of intercompany equity interests for holding company purposes constitutes a device utilized to allow the Debtors to maintain their organizational structure and avoid the unnecessary cost of having to reconstitute that structure.").

35

**P.     Modifications To The Plan Do Not Materially Affect Holders Of Claims Or Interests And Do Not Require Further Solicitation Of The Plan**

86.     Since the Plan was solicited, the Debtors have agreed to certain modifications to address informal comments or concerns, received from parties in interest.  These modifications are set forth in the Confirmation Order filed concurrently herewith.

87.     Section 1127(a) of the Bankruptcy Code provides the Debtors with the right to modify the Plan "at any time" before confirmation. Section 1127(d) of the Bankruptcy Code provides that any holders of claims or interests that previously accepted the plan should also be deemed to accept the modified plan. Non-material changes to a plan are routinely allowed without a resolicitation of votes on the plan.  See, e.g., In re New Power Co., 438 F.3d 1113, 1117-18 (11th Cir. 2006) ("the bankruptcy court may deem a claim or interest holder's vote for or against a plan as a corresponding vote in relation to a modified plan unless the modification materially and adversely changes the way that claim or interest holder is treated"); In re Calpine, No. 05-60200, 2007 WL 4565223, at *6 (Bankr. S.D.N.Y. Dec. 19, 2007) (approving immaterial modification to plan without requiring the debtors to resolicit the plan); In re Kmart Corp., No. 02 B 02474, 2006 WL 952042, at *27 (Bankr. N.D. Ill. Apr. 11, 2006) (if modification does not adversely change the treatment of claims, then resolicitation is not required).

88.     The plan modifications set forth in the Confirmation Order do not materially and adversely affect the recoveries of any holders of Claims or Interests. As a result, pursuant to sections 1127(a) and (d) of the Bankruptcy Code, all holders of Claims or Equity Interests that voted to accept the Plan should also be deemed to accept the Plan as modified, and the Plan should be confirmed without re-solicitation of acceptances.

## V.    IMMEDIATE EFFECTIVENESS

89.    The Debtors request that the terms of the Confirmation Order be effective immediately upon entry thereof, notwithstanding any stay that might be imposed by Bankruptcy Rules 3020(e), 6004(h), 7062, 8001, 8002 or otherwise.  Among other things, the immediate effectiveness of the Plan will allow the Debtors to satisfy their pre-petition tax obligations, thereby avoiding the material accrual of additional interest and penalties.  Under the circumstances, including the overwhelming support for the Plan and lack of objections to confirmation, the Debtors submit that allowing the terms of the Confirmation Order to be effective immediately is appropriate and will facilitate the Debtors' emergence from bankruptcy without undue delay.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

## VI.    CONCLUSION

The Plan complies with and satisfies all of the requirements of sections 1123, 1127, and 1129 of the Bankruptcy Code.  Accordingly, the Debtors request that the Court (i) confirm the Plan, and (ii) grant the Debtors such other and further relief as is just and proper.

Dated: Wilmington, Delaware

May 1, 2014

/s/ James E. O'Neill
Jeffrey N Pomerantz
Debra Grassgreen
James E. O'Neill (I.D. No. 4042)
PACHULSKI STANG ZIEHL & JONES LLP
919 N. Market Street, 17th Floor
Wilmington, DE 19801
(302) 652-4100

– and –

Anthony W. Clark (I.D. No. 2051)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000
(302) 651-3001

– and –

Kenneth S. Ziman
Glenn S. Walter
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036-6522
T: (212) 735-3000
F: (212) 735-2000

Co-Counsel for Debtors and Debtors in Possession