# EXHIBIT 2

## CORRECTED BLACKLINE CONFIRMATION ORDER

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ABLEST INC., et al.,[1] | ) | Case No. 14-10717 (KJC) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | | Re: Docket Nos. 18, 20 and 21 |

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER (I) APPROVING (A) THE DISCLOSURE STATEMENT PURSUANT TO SECTIONS 1125 AND 1126(c) OF THE BANKRUPTCY CODE, (B) THE PREPETITION SOLICITATION PROCEDURES, AND (C) FORMS OF BALLOTS, AND (II) CONFIRMING THE PREPACKAGED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF ABLEST INC., ET AL.**

Upon the motion (the "Motion") of the Debtors for entry of an order:  (i)

scheduling a combined hearing to consider approval of (a) *Disclosure Statement for the*

*Prepackaged Joint Plan of Reorganization for Ablest Inc., et al., Under Chapter 11 of the*

*Bankruptcy Code* dated March 11, 2014 [Docket No. 21] (the "Disclosure Statement") and (b)

the *Prepackaged Joint Plan of Reorganization for Ablest Inc., et al.* dated March 11, 2014

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification numbers are:  Ablest Inc. (8462); Koosharem, LLC (4537); New Koosharem Corporation (9356); Real Time Staffing Services, Inc. (8189); Remedy Intelligent Staffing, Inc. (0963); Remedy Staffing, Inc. (0080); RemedyTemp, Inc. (0471); Remedy Temporary Services, Inc. (7385); RemX, Inc. (7388); Select Corporation (6624); Select Nursing Services, Inc. (5846); Select PEO, Inc. (8521); Select Personnel Services, Inc. (8298); Select Specialized Staffing, Inc. (5550); Select Temporaries, Inc. (7607); Select Trucking Services, Inc. (5722); Tandem Staffing Solutions, Inc. (5919); Westaff, Inc. (6151); Westaff (USA), Inc. (5781); Westaff Support, Inc. (1039); RemSC LLC (8072); and RemUT LLC (0793).  The mailing address for each of the Debtors is:  3820 State Street, Santa Barbara, CA 93105.

[Docket No. 20] (the "Plan");[2] (ii) approving the Solicitation Procedures (as defined in the Motion); (iii) approving the form and manner of notice of the confirmation hearing on the Plan and commencement of these cases; and (iv) granting related relief; and upon the order dated April 2, 2014, granting, in part, the Motion (the "Scheduling Order") [Docket No. 54]; and the Court having considered the *Debtors' Memorandum of Law in Support of Entry of an Order Confirming the Joint Prepackaged Chapter 11 Plan of Reorganization of Ablest Inc., et al.* (the "Confirmation Brief") [Docket No. 217], the *Declaration of Randall S. Eisenberg in Support of the Joint Prepackaged Plan of Reorganization of Ablest Inc., et al.* (the "Eisenberg Declaration") [Docket No. 215]; the Declaration of Bruce Mendelsohn in Support of the Joint Prepackaged Plan of Reorganization of Ablest Inc., et al. (the "Mendelsohn Declaration") [Docket No. 214]; the Declaration of Robert Olson in Support of the Joint Prepackaged Plan of Reorganization of Ablest Inc., et al. (the "Olson Declaration") [Docket No. 216]; and the Court having held a hearing on May 5, 2014 pursuant to sections 1128 and 1129 of the Bankruptcy Code to consider confirmation of the Plan (the "Confirmation Hearing"); and the Court having admitted into the record and considered evidence at the Confirmation Hearing; and the Court having taken judicial notice of the contents of the docket of the above-captioned Chapter 11 Cases (as defined below) maintained by the clerk of the Court and/or its duly-appointed agent, including all pleadings and other documents filed and orders entered thereon; and after due deliberation thereon and good and sufficient cause appearing therefor, it is hereby

---

[2] Capitalized terms used but not defined herein have the meaning set forth in the Plan.

ORDERED, ADJUDGED, AND DECREED THAT:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW[3]

A.    <u>Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a))</u>.  This Court has jurisdiction over the above-captioned jointly administered chapter 11 cases of the Debtors (the "<u>Chapter 11 Cases</u>") pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and this Court has jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

B.    <u>Filing of Plan</u>.  On April 1, 2014, the Debtors filed the Plan and the Disclosure Statement.

C.    <u>Plan Supplement</u>.  On April 25, 2014 the Debtors filed a supplement (the "<u>Plan Supplement</u>") to the Plan [Docket No. 196].  The Plan Supplement contained the following documents: (i) Management Incentive Plan, (ii) a description of the New Common Stock, (iii) form of New Warrants, (iv) term sheet for the Post-Emergence Term Loan Agreement, (v) term sheet for the Post-Emergence ABL Loan Agreement, (vi) the Subordination and Intercreditor Agreement, (vii) the certificate of incorporation and by-laws of the Reorganized Parent, (viii) to the extent not previously disclosed in the Disclosure Statement, the affiliations of each person proposed to serve on the initial board of directors or

---

[3]    Each finding of fact set forth or incorporated herein, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law.  Each conclusion of law set forth or incorporated herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

Redline Confirmation Order 738478v7C and Confirmation Order 738478v8A 5/7/2014 3:29:34 PM

as an officer of the Reorganized Debtors, and, to the extent such person is an insider of a Debtor, the nature of any compensation for such Person, (ix) a schedule of permitted related party transactions, and (x) a schedule indicating that no additional executory contracts or unexpired leases other than those set forth in the Plan are being rejected.

D.     <u>Transmittal of Solicitation Package</u>. As set forth in the *Declaration of Michael J. Paque of Kurtzman Carson Consultants LLC Regarding the Mailing, Voting, and Tabulation of Ballots Accepting and Rejecting the Prepackaged Joint Plan of Reorganization of Ablest Inc., et al.* dated March 31, 2014 [Docket No. 19] (the "<u>Tabulation Declaration</u>"), prior to the Petition Date, the Debtors, caused, among other documents identified in the Tabulation Declaration, the applicable forms of ballots, in the forms attached to the Motion as Exhibits B (the "<u>Ballots</u>"), and copies of the Disclosure Statement and Plan (the "<u>Solicitation Packages</u>") to be distributed as required by sections 1125 and 1126 of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 3017 and 3018 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), all other applicable provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations applicable to such solicitation, including sections 3(a)(9) and 4(a)(2) of the Securities Act of 1933 (as amended, and including the rules and regulations promulgated thereunder, the "<u>Securities Act</u>"). The Plan and the Disclosure Statement were transmitted to all creditors entitled to vote on the Plan and sufficient time was prescribed for creditors to

4

accept or reject the Plan. Such transmittal and service was adequate and sufficient under the circumstances and no other or further notice is or shall be required.

E. _Mailing and Publication of Combined Notice_. On April 4, 2014, the Debtors caused (i) the Confirmation Hearing Notice in substantially the form attached to the Scheduling Order as Exhibit A to be mailed to all of the Debtors' known creditors and interest holders of record and (ii) the Notice of Non-Voting Status in substantially the form attached to the Scheduling Order as Exhibit C to be mailed to all of the Debtors' known creditors and interests holders not entitled to vote on the Plan. _See_ Affidavit of Service of Robert D. Tomasch [Docket No. 106]. The Debtors have given proper, adequate and sufficient notice of the hearing to approve the Disclosure Statement as required by Bankruptcy Rule 3017(a). The Debtors have given proper, adequate and sufficient notice of the Confirmation Hearing as required by Bankruptcy Rule 3017(d). Due, adequate, and sufficient notice of the Disclosure Statement, the Plan, along with deadlines for filing objections to the Plan and the Disclosure Statement, has been given to all known holders of Claims and Equity Interests substantially in accordance with the procedures set forth in the Scheduling Order. No other or further notice is or shall be required.

F. _Objections_. All objections and all reservations of rights that have not been withdrawn, waived or settled, pertaining to confirmation of the Plan are overruled on the merits.

G. _Adequacy of Disclosure Statement_. Because the Plan was solicited prior to the Petition Date, the adequacy of the Disclosure Statement is governed by Bankruptcy

5

Code sections 1125(b) and (g). The information contained in the Disclosure Statement contained extensive material information regarding the Debtors so that parties entitled to vote on the Plan could make informed decisions regarding the Plan. Additionally, the Disclosure Statement contains adequate information as that term is defined in Bankruptcy Code section 1125(a) and complies with any additional requirements of the Bankruptcy Code and the Bankruptcy Rules, as well as with applicable non-bankruptcy law. The Disclosure Statement complies with the requirements of Bankruptcy Rule 3016(c) by sufficiently describing in specific and conspicuous language the provisions of the Plan that provide for releases and injunctions against conduct not otherwise enjoined under the Bankruptcy Code and sufficiently identifies the persons and entities that are subject to the releases and injunctions.

      H.    <u>Solicitation</u>. Sections 1125(g) and 1126(b) of the Bankruptcy Code apply to the solicitation of acceptances and rejections of the Plan prior to the commencement of these Chapter 11 Cases. Votes for acceptance or rejection of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, and all other applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other rules, laws, and regulations. In particular, the solicitation of the Plan commenced on March 11, 2014, in accordance with applicable non-bankruptcy law, and the Voting Deadline remained open until March 27, 2014 (as was further extended to certain lenders until April 4, 2014 under the interim order approving debtor-in-possession financing and use of cash collateral [Docket No. 59]). The establishment of the Voting Deadline as March 27, 2014 was reasonable under Bankruptcy Rule 3018(b) and did not prescribe an unreasonably short time for creditors to accept or reject the plan. The form

6

of the Ballots was adequate and appropriate and complied with Bankruptcy Rule 3018(c).  The

forms of the Ballots were sufficiently consistent with Official Form No. 14 and adequately

addressed the particular needs of these Chapter 11 Cases and were appropriate for the Classes

entitled to vote to accept or reject the Plan.  Accordingly, the solicitation of the Plan complied

with the provisions of Bankruptcy Code section 1125(g).

    I.  <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>.  All persons who

solicited votes on the Plan, including any such persons released pursuant to Articles XI and XII

of the Plan, solicited such votes in good faith and in compliance with the applicable provisions

of the Bankruptcy Code and are entitled to the protections afforded by section 1125(e) of the

Bankruptcy Code as well as the exculpation and limitation of liability provisions set forth in

Article XIII.D of the Plan.

    J.  <u>Tabulation Results</u>.  On April 1, 2014, the Debtors filed the Tabulation

Declaration, certifying the method and results of the ballot tabulation for each of the Classes

entitled to vote under the Plan (the "Voting Classes").  On May 1, 2014, the Debtors filed the

*Supplemental Declaration of Michael J. Paque of Kurtzman Carson Consultants LLC*

*Regarding the Mailing, Voting, and Tabulation of Ballots Accepting and Rejecting the*

*Prepackaged Joint Plan of Reorganization of Ablest Inc., et al.* (the "Supplemental Tabulation

Declaration") [Docket No. 218].  As evidenced by the Tabulation Declaration and the

Supplemental Tabulation Declaration, all Voting Classes for which votes were received have

accepted the Plan with respect to each of the Debtors in accordance with section 1126 of the

Bankruptcy Code.  All procedures used to tabulate the Ballots were fair and reasonable and

conducted in accordance with the applicable provisions of the Bankruptcy Code, the

Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

K.    <u>Bankruptcy Rule 3016</u>.  The Plan is dated and identifies the entities

submitting it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure

Statement with the clerk of the Court simultaneously with the Plan satisfied Bankruptcy Rule

3016(b).

L.    <u>Burden of Proof</u>.  As more fully set forth herein, the Debtors, as

proponents of the Plan, have met their burden of proving each of the elements of sections

1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the

applicable evidentiary standard for confirmation of the Plan.

M.    <u>Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  The

Plan satisfies section 1129(a)(1) of the Bankruptcy Code because it complies with the

applicable provisions of the Bankruptcy Code, including, but not limited to: (a) the proper

classification of Claims and Equity Interests (11 U.S.C. §§ 1122, 1123(a)(1)); (b) the

specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2)); (c) the specification of treatment

of Impaired Classes (11 U.S.C. § 1123(a)(3)); (d) provision for the same treatment of each

Claim or Equity Interest within a Class (11 U.S.C. § 1123(a)(4)); (e) provision for adequate

and proper means for implementation (11 U.S.C. § 1123(a)(5)); (f) the prohibition against the

issuance of non-voting equity securities (11 U.S.C. § 1123(a)(6)); (g) adequate disclosure of

the procedures for determining the identities and affiliations of the directors, members and

officers with respect to the Reorganized Debtors (11 U.S.C. § 1123(a)(7)); and (h) the

Redline Confirmation Order 738478v7C and Confirmation Order 738478v8A 5/7/2014 3:29:34 PM

inclusion of additional plan provisions permitted to effectuate the restructuring of the Debtors (11 U.S.C. § 1123(b)).

        (a)   <u>Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1))</u>.  In particular, Article III of the Plan adequately and properly identifies and classifies all Claims and Equity Interests.  The Plan designates seven (7) Classes of Claims and three (3) Classes of Equity Interests.  The Claims or Equity Interests placed in each Class are substantially similar to other Claims or Equity Interests, as the case may be, in each such Class, and such classification therefore satisfies section 1122 of the Bankruptcy Code.  Valid business and legal reasons exist for the various Classes of Claims and Equity Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims or Equity Interests.  Thus, the Plan satisfies section 1123(a)(1) of the Bankruptcy Code.

        (b)   <u>Specified Treatment of Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>.  The Plan specifies in Article III that Classes 1, 2, 3, 6, 7 and 10 are Unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

        (c)   <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>.  The Plan specifies in Article III that Classes 4, 5, 8 and 9 are Impaired under the Plan and sets forth the treatment of the Impaired Classes in Article III of the Plan, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

        (d)   <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>.  Article III of the Plan provides for the same treatment for each Claim or Equity Interest in each respective Class unless the holder of a particular Claim or Equity Interest has agreed to a less favorable

9

treatment of such Claim or Equity Interest.  Accordingly, the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

(e)    <u>Implementation of the Plan (11 U.S.C. § 1123(a)(5))</u>.  Article V of the Plan provides adequate and proper means for implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

(f)    <u>Nonvoting Equity Securities (11 U.S.C. § 1123(a)(6))</u>.  Article V.L of the Plan provides that the Reorganized Parent Organizational Documents shall be amended as necessary to satisfy the provisions of the Plan and the Bankruptcy Code, including section 1123(a)(6).  Accordingly, the Plan satisfies section 1123(a)(6) of the Bankruptcy Code.

(g)    <u>Selection of Officers and Directors (11 U.S.C. § 1123(a)(7))</u>.  The Debtors have identified proposed directors and officers of the Reorganized Debtors.  Officers of each of the Debtors immediately prior to the Effective Date will remain officers of each of the Reorganized Debtors on the Effective Date.  The Disclosure Statement and Plan Supplement discloses the identity of the members of the new board of each of the Reorganized Debtors.  The manner of selection and appointment of directors of each of the Reorganized Debtors under the Plan is consistent with the interests of holders of Claims and Equity Interests and with public policy and, thus, satisfies section 1123(a)(7) of the Bankruptcy Code.

(h)    <u>Additional Plan Provisions (11 U.S.C. § 1123(b)(6))</u>.  The Plan's additional provisions are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code.

N.    <u>Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>.  The Debtors have complied with the applicable provisions of the Bankruptcy Code, the

Bankruptcy Rules, the Scheduling Order, and other orders of this Court, thereby satisfying

section 1129(a)(2) of the Bankruptcy Code. In particular, the Debtors are proper debtors

under section 109 of the Bankruptcy Code. The Debtors are proper proponents of the Plan

pursuant to section 1121(a) of the Bankruptcy Code. The Debtors, as proponents of the Plan,

complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the

Local Rules and the Scheduling Order in transmitting the Plan, the Disclosure Statement, the

Ballots and notices and in soliciting and tabulating votes on the Plan.

      O.    <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Debtors

have proposed the Plan in good faith, for proper purposes and not by any means forbidden by

law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. In determining that the

Plan has been proposed in good faith, the Court has examined the totality of the circumstances

surrounding the filing of the Chapter 11 Cases, the formulation of the Plan and all

modifications thereto. The Chapter 11 Cases were filed, and the Plan and all modifications

thereto were proposed, with the legitimate and honest purpose of reorganizing and maximizing

the value of the Debtors and the recovery to stakeholders.

      P.    <u>Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>.

Pursuant to Article II.A.1 of the Plan, professionals holding Professional Fee Claims are

required to file their final fee applications with the Court no later than thirty (30) days after the

Effective Date. These applications remain subject to Court approval under the standards

established by the Bankruptcy Code, including the requirements of sections 327, 328, 330, 331,

503(b) and 1103 of the Bankruptcy Code, as applicable. The Transaction Expenses including

the reasonable fees and expenses of attorneys and financial advisors incurred by the Backstop

Investors, the Prepetition Agents, the DIP Agent and the Steering Committee, constitute

Allowed Administrative Expense Claims and as to amounts outstanding on the Effective Date,

shall be paid in full in Cash on the Effective Date, and as to amounts accrued after the

Effective Date, shall be paid in full in Cash in the ordinary course of business, in each case,

without further notice to or order of the Bankruptcy Court.  Finally, Article XIV of the Plan

provides that the Court will retain jurisdiction after the Effective Date to hear and determine all

applications for allowance of compensation or reimbursement of expenses authorized pursuant

to the Bankruptcy Code or the Plan, including requests by Professionals.  Accordingly, the Plan

fully complies with the requirements of section 1129(a)(4) of the Bankruptcy Code.

> Q.    Board of Directors and Officers (11 U.S.C. § 1129(a)(5)).  The Debtors

have sufficiently disclosed the initial officers and members of the new board of each of the

Reorganized Debtors, including the identity of any insider that will be employed or retained by

the Reorganized Debtors.  The Disclosure Statement and Plan Supplement discloses the

identity of the officers and members of the new board of each of the Reorganized Debtors, as

well as the nature of the compensation that will be received by any insider of the Debtor.  The

appointment to, or continuance in, such office of each individual, and the methods established

therefore, are consistent with the interests of holders of Claims and Equity Interests, and with

public policy.  Therefore, section 1129(a)(5) of the Bankruptcy Code is satisfied with respect

to the Plan.

R.    <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>.  Section 1129(a)(6) of the Bankruptcy Code is satisfied because the Plan does not provide for any change in rates over which a governmental regulatory commission has jurisdiction.

S.    <u>Best Interests Test (11 U.S.C. § 1129(a)(7))</u>.  The liquidation analysis attached as Exhibit F to the Disclosure Statement, the Eisenberg Declaration, and other evidence proffered or adduced at the Confirmation Hearing (1) are persuasive and credible, (2) are based upon reasonable and sound assumptions, (3) provide a reasonable estimate of the liquidation values of the Debtors in the event the Debtors were liquidated under Chapter 7 of the Bankruptcy Code, and (4) establish that each holder of a Claim or Equity Interest in an Impaired Class that has not accepted the Plan will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date.  Therefore, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

T.    <u>Acceptance By Certain Classes (11 U.S.C. § 1129(a)(8))</u>.  Classes 1, 2, 3, 6, 7 and 10 are Unimpaired by the Plan and, therefore, under section 1126(f) of the Bankruptcy Code, such Classes are conclusively presumed to have accepted the Plan.  Classes 4 and 5 were entitled to vote on the Plan and each of such Classes has voted to accept the Plan.  Accordingly, Bankruptcy Code section 1129(a)(8) has been satisfied with respect to Classes 1 through 7 and 10.  Classes 8 and 9 are deemed to reject the Plan pursuant to Bankruptcy Code section 1126(g), but, as found below, the Plan is confirmable under

Redline Confirmation Order 738478v7C and Confirmation Order 738478v8A 5/7/2014 3:29:34 PM

Bankruptcy Code section 1129(b) notwithstanding the rejections by such Classes. Therefore, section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to these Classes.

U.    Treatment of Administrative and Priority Tax Claims and Priority Non-Tax Claims (11 U.S.C. § 1129(a)(9)). The treatment of Administrative Claims and Priority Claims under the Plan satisfies the requirements of section 1129(a)(9)(A) and (B) of the Bankruptcy Code, and the treatment of Priority Tax Claims under the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

V.    Acceptance By Impaired Class (11 U.S.C. § 1129(a)(10)). At least one Impaired Class of Claims voted to accept the Plan determined without including any acceptance of the Plan by any "insiders." Therefore, section 1129(a)(10) of the Bankruptcy Code is satisfied with respect to the Plan.

W.    Feasibility (11 U.S.C. § 1129(a)(11)). The Plan does not provide for the liquidation of all or substantially all of the property of the Debtors. The financial projections in Exhibit C to the Disclosure Statement, the valuation analysis set forth in Article III.N.4 of the Disclosure Statement, the Eisenberg Declaration, the Mendelsohn Declaration, the Olson Declaration and the evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other credible evidence or sufficiently challenged in any of the objections to the Plan, and (iii) establish that the Plan is feasible and that confirmation of the Plan is not likely to be followed by the liquidation of the Reorganized Debtors or the need for further financial reorganization of the Reorganized Debtors. Therefore, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

14

X.    Payment of Fees (11 U.S.C. § 1129(a)(12)).  The Debtors have paid or, pursuant to the Plan, will pay by the Effective Date, fees payable under 28 U.S.C. § 1930, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

Y.    Retiree Benefits (11 U.S.C. § 1129(a)(13)).  Section 1129(a)(13) is inapplicable as the Debtors do not provide any retiree benefits (as defined in section 1114 of the Bankruptcy Code).

Z.    Miscellaneous Provisions (11 U.S.C. §§ 1129(a)(14)-(16)).  Sections 1129(a)(14)-(16) are inapplicable as the Debtors (i) have no domestic support obligations (1129(a)(14)), (ii) are not individuals (1129(a)(15)), and (iii) are for-profit businesses (1129(a)(16)).

AA.    Section 1129(b); Confirmation of Plan Over Nonacceptance of Impaired Classes.  Holders of Claims and Equity Interests in Classes 8 and 9 are deemed to have rejected the Plan (the "Deemed Rejecting Classes").  All of the requirements of section 1129(a) of the Bankruptcy Code, other than section 1129(a)(8) with respect to such Classes, have been met.  Notwithstanding the fact that the Deemed Rejecting Classes are deemed to reject the Plan and thus do not satisfy section 1129(a)(8), the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code because the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes.  After entry of this Confirmation Order and upon consummation of the Plan, the Plan shall be binding upon the members of the Deemed Rejecting Classes.

BB.    The Plan does not unfairly discriminate because members within each Class are treated similarly.  In particular, all Holders of Prepetition Warrants and Equity

15

Interests in Parent are placed into their individual classes and given the same respective treatment. Accordingly, the Plan does not discriminate unfairly in respect to the Deemed Rejecting Classes or any other Class of Claims or Equity Interests.

CC.    The Plan is fair and equitable with respect to the Deemed Rejecting Classes, because, in accordance with Bankruptcy Code section 1129(b)(2)(B) and (C), there are no holders of Claims or Equity Interests junior to the holders of Class 8 Prepetition Warrants and Class 9 Equity Interests in Parents who will receive or retain any property under the Plan. Moreover, pursuant to the Plan, no holders of Claims against the Debtors senior to the Deemed Rejecting Classes are receiving more than full payment on account of such Claims against the Debtors. Additionally, the reinstatement of Class 10 Equity Interests in Subsidiaries does not violate Bankruptcy Code sections 1129(b)(2)(B) and (C). The senior creditors, who are entitled to all value under the Plan, have consented to these Classes, both of whom have lower priority, being reinstated. The preservation of Equity Interests in Subsidiaries is a means to preserve the Reorganized Debtors' corporate structure that does not have any economic substance and that does not enable any claimholder or interest holder junior to the Deemed Rejecting Classes to retain or recover any value under the Plan. Accordingly, the reinstatement of Class 10 Equity Interests in Subsidiaries is consistent with the requirement that no holders of Claims or Equity Interests junior to the holders of Claims or Equity Interests in the Deemed Rejecting Classes will receive or retain any property under the Plan on account of such Claims or Equity Interests. Accordingly, the Plan is fair and equitable and does not discriminate unfairly, as required by section 1129(b) of the Bankruptcy Code, and may be confirmed under

Bankruptcy Code section 1129(b) notwithstanding the Deemed Rejecting Classes' deemed rejection of the Plan.

DD.    Only One Plan (11 U.S.C. § 1129(c)).   Only one Plan is being sought to be confirmed in the Chapter 11 Cases.  Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

EE.    Principal Purpose of Plan (11 U.S.C. § 1129(d)).   The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 (15 U.S.C. § 77e).  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

FF.    Small Business Case (11 U.S.C. § 1129(e)).   Section 1129(e) is inapplicable because these Chapter 11 Cases do not qualify as small business cases thereunder.

GG.    Satisfaction of Confirmation Requirements.   Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

HH.    Executory Contracts.   The Debtors have exercised reasonable business judgment in determining whether to assume or reject their executory contracts and unexpired leases pursuant to Article VI of the Plan.  Each assumption of an executory contract or unexpired lease pursuant to Article VI of the Plan shall be legal, valid and binding upon the applicable Debtor or Reorganized Debtor and their assignees or successors and all non-Debtor parties (and their assignees or successors) to such executory contract or unexpired lease, all to the same extent as if such assumption had been effectuated pursuant to an order of the Court

17

entered before the date of the entry of this Confirmation Order (the "Confirmation Date")
under section 365 of the Bankruptcy Code.

II.   Adequate Assurance.  The Debtors have cured, or provided adequate
assurance that the Reorganized Debtors will cure, defaults (if any) under or relating to each of
the executory contracts and unexpired leases that are being assumed by the Debtors pursuant
to the Plan.

JJ.   Releases and Discharges.  The releases and discharges of Claims and
causes of action described in Article XI and XII of the Plan constitute good faith compromises
and settlements of the matters covered thereby.  Such compromises and settlements are
(i) made in exchange for adequate consideration, (ii) in the best interests of the Debtors'
Estates, claimholders and other parties in interest, (iii) fair, equitable and reasonable, (iv)
integral elements of the restructuring and resolution of the Chapter 11 Cases in accordance
with the Plan and (v) in the cases of releases provided pursuant to Article XII.A and Article
XII.B of the Plan,  consensual by holders of Claims that affirmatively elected to opt-in to such
releases.  Each of the discharge, release, injunction, indemnification and exculpation provisions
set forth in the Plan: (i) is within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), (b),
and (d); (ii) is an essential means of implementing the Plan pursuant to section 1123(a)(5) of
the Bankruptcy Code; (iii) is an integral element of the transactions incorporated into the Plan;
(iv) confers a material benefit on, and is in the best interests of, the Debtors, their Estates and
their creditors; (v) is important to the overall objectives of the Plan to finally resolve all Claims
among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors,

18

their organization, capitalization, operation and reorganization; and (vi) is consistent with sections 105, 1123, 1129, and other applicable provisions of the Bankruptcy Code.

KK.    Issuance of New Common Stock.  Issuance of the New Common Stock under the Rights Offering, the Backstop Agreement, the DRV Purchase Agreement, the Restricted Stock Award Agreement, the Sorensen Support Agreement and the New Warrants, and the issuance of the New Warrants, are essential elements of the Plan and is in the best interests of the Debtors, their Estates, and their creditors. The Debtors are authorized, without further approval of this Court or any other party, to issue the New Common Stock and the New Warrants in accordance with the Plan and to execute and deliver all agreements, documents, instruments, and certificates relating thereto.

LL.    Exemption from Securities Laws (11 U.S.C. § 145).  Pursuant to the Plan, any securities issued and any subsequent sales, resales, transfers, or other distributions of any such securities shall be exempt from any federal or state securities laws registration requirements, including section 5 of the Securities Act, to the fullest extent permitted by section 1145 of the Bankruptcy Code.  The issuance of the New Common Stock is not being made pursuant to section 1145(a) of the Bankruptcy Code but is being issued in reliance upon the exemption set forth in Section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder and are issued to the extent of such exemption.  The New Warrants and the stock issuable upon exercise of the New Warrants are being issued in reliance upon the exemption provided by, and shall be exempt from registration pursuant to, Section 1145(a) of the Bankruptcy Code or Section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder.

19

MM.   <u>Restructuring Transactions</u>.  The Reorganized Debtors' entry into and assumption of all obligations under and in respect of the transactions contemplated by Article V of the Plan and the other transactions contemplated by the Plan including without limitation the Rights Offering, the Backstop Agreement, the DRV Purchase Agreement, the Restricted Stock Award Agreement, the Sorensen Support Agreement, the Option Agreement, the Stockholders Agreement, and the New Warrants (collectively, the "<u>Restructuring Transactions</u>") is an exercise of reasonable business judgment, proposed in good faith, critical to the success and feasibility of the Plan and in the best interests of the Debtors, the Reorganized Debtors, the Estates and creditors.  The Restructuring Transactions were negotiated, proposed, and entered into or will be entered into, as the case may be, by the Debtors, the Reorganized Debtors, and the counterparties thereto without collusion, in good faith, and from arm's-length bargaining positions.  All documents heretofore executed in connection with the Restructuring Transactions are valid, binding and enforceable agreements and are not in conflict with any applicable federal or state law, and all documents to be executed following entry of this Confirmation Order in connection with the Restructuring Transactions, upon their execution, will be valid, binding and enforceable agreements and will not be in conflict with any applicable federal or state law.

NN.   <u>Post-Emergence Financing</u>.  Without limiting the generality of paragraph M.M. above, the Reorganized Debtors' entry into and assumption of all obligations under and in respect of the transactions contemplated by the Post-Emergence ABL Agreement and Post-Emergence Term Loan Agreement, including the loans and other extensions of credit to be provided thereunder, and all other documents contemplated thereby is an exercise of reasonable

20

business judgment, proposed in good faith, critical to the success and feasibility of the Plan and in the best interests of the Debtors, the Reorganized Debtors, the Estates and creditors.  The Post-Emergence ABL Agreement and Post-Emergence Term Loan Agreement were negotiated, proposed, and entered into or will be entered into, as the case may be, by the Debtors, the Reorganized Debtors, and the counterparties thereto without collusion, in good faith, and from arm's-length bargaining positions without the intent to hinder, delay or defraud any creditor of the Debtors.  All documents heretofore executed in connection with the Post-Emergence ABL Agreement and Post-Emergence Term Loan Agreement are valid, binding and enforceable agreements and are not in conflict with any applicable federal or state law, and all documents to be executed following entry of this Confirmation Order in connection with the Post-Emergence ABL Agreement and Post-Emergence Term Loan Agreement, upon their execution, will be valid, binding and enforceable agreements and will not be in conflict with any applicable federal or state law.

OO.   Plan Conditions to Confirmation.  The conditions to confirmation set forth in Article X of the Plan have been satisfied or waived in accordance with the terms of the Plan.

PP.   Plan Conditions to Consummation.  Each of the conditions to the Effective Date, as set forth in Article IX of the Plan, is reasonably likely to be satisfied or waived in accordance with the terms of the Plan.

QQ.   Retention of Jurisdiction.  The Court properly may retain jurisdiction over the matters set forth in Article XIV of the Plan.

## DECREES

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

### Confirmation of Plan and Related Matters

1.    Approval Of Disclosure Statement.  Pursuant to Bankruptcy Rule 3017(b), the Disclosure Statement is approved under Bankruptcy Code sections 1125(a) and 1125(g).

2.    Solicitation.  The Solicitation Procedures including the procedures for transmittal of Solicitation Packages (as defined in the Motion), the form of Ballots, and the Voting Deadline, are approved under sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Local Rules, all other applicable provisions of the Bankruptcy Code, and all other rules, laws, and regulations applicable to such solicitation.  The solicitation materials are approved under sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Local Rules, all other applicable provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations.

3.    Confirmation.  The Plan, as modified by this Confirmation Order, including all provisions thereof and all Exhibits attached thereto, is approved and confirmed under section 1129 of the Bankruptcy Code.  All acceptances and rejections previously cast for or against the Plan are hereby deemed to constitute acceptances or rejections of the Plan as modified by this Confirmation Order.

4.    Confirmation Order Binding on All Parties.  Subject to the provisions of the Plan and Bankruptcy Rule 3020(e), in accordance with section 1141(a) of the Bankruptcy Code and notwithstanding any otherwise applicable law, upon the occurrence of the Effective

Redline Confirmation Order 738478v7C and Confirmation Order 738478v8A 5/7/2014 3:29:34 PM

Date, the terms of the Plan and this Confirmation Order shall be binding upon, and inure to the benefit of: (a) the Debtors; (b) the Reorganized Debtors; (c) any and all holders of Claims or Equity Interests (irrespective of whether such Claims or Equity Interests are Impaired under the Plan or whether the holders of such Claims or Equity Interests accepted, rejected or are deemed to have accepted or rejected the Plan); (d) any other person giving, acquiring or receiving property under the Plan; (e) any and all non-Debtor parties to executory contracts or unexpired leases with any of the Debtors; and (f) the respective heirs, executors, administrators, trustees, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, guardians, successors or assigns, if any, of any of the foregoing. On the Effective Date, all settlements, compromises, releases, waivers, discharges, exculpations and injunctions set forth in the Plan shall be effective and binding on all Persons who may have had standing to assert any settled, released, discharged, exculpated or enjoined causes of action, and no other Person or entity shall possess such standing to assert such causes of action after the Effective Date.

5.    Notice. Notice of the Plan, the exhibits thereto (and all amendments and modifications thereto), the Disclosure Statement, the Solicitation Packages and the Confirmation Hearing was proper and adequate.

6.    Objections. All objections and all reservations of rights that have not been withdrawn, waived or settled, pertaining to the confirmation of the Plan are overruled on the merits.

7.    Effectiveness of All Actions. All actions contemplated by the Plan are hereby authorized and approved in all respects (subject to the provisions of the Plan). The

approvals and authorizations specifically set forth in this Confirmation Order are nonexclusive and are not intended to limit the authority of any Debtor or Reorganized Debtor or any officer or director thereof to take any and all actions necessary or appropriate to implement, effectuate and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order.  Pursuant to this Order, Delaware General Corporate Law section 303, California Corporations Code section 1400 and other applicable law, the Debtors and the Reorganized Debtors are authorized and empowered, without action of their respective stockholders or members or boards of directors or managers (but subject to consent rights, if any, set forth in the Plan) to take any and all such actions as any of their executive officers may determine are necessary or appropriate to implement, effectuate and consummate any and all documents (including, without limitation, the Lender RSA, the Rights Offering, the Backstop Agreement, the DRV Purchase Agreement, the Restricted Stock Award Agreement, the Sorensen Support Agreement, the Option Agreement, the Stockholders Agreement, and the New Warrants) or transactions contemplated by the Plan or this Confirmation Order.

8.    <u>Revesting of Assets and Operation as of the Effective Date</u>.  Except as otherwise explicitly provided in the Plan, on the Effective Date, all property comprising the Estates and all Causes of Action (except those released by the Debtors pursuant to Article X.B of the Plan) shall revest in each of the Debtors and, ultimately, in the Reorganized Debtors, free and clear of all Claims, Liens, charges and other encumbrances of any entity other than the Debtors, other than as expressly provided in the Plan.  No Person (other than the Released Parties to the extent of the relevant release or releases) may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any

24

indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action against them. The Debtors and the Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Person (other than the Released Parties to the extent of the relevant release or releases), except as otherwise provided in the Plan. As of the Effective Date, each of the Reorganized Debtors may operate its business and use, acquire, and dispose of property and settle and compromise Claims without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and this Confirmation Order.

9.      <u>Release of Liens, Claims and Encumbrances</u>.  Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all Liens, Claims, encumbrances, charges, mortgages, deeds of trust, or other security interests against the property of the Estates, including without limitation, the liens and security interests held by the DIP Agent, the Prepetition First Lien Agent and the Prepetition Second Lien Agent, will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity. Any Entity holding such Liens or interests will, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Reorganized Debtors such instruments (including, without limitation, UCC-3 termination statements or their equivalent in any other jurisdiction and such forms, statements and documents necessary to discharge any real property security) of termination, release,

satisfaction and/or assignment (in recordable form) as may be reasonably requested by either the Reorganized Debtors or the Post-Emergence Term Loan Agent and/or the Post-Emergence ABL Agent and release, assign and transfer to or to the order of the Reorganized Debtors all collateral or other property of the Debtor or Reorganized Debtor which is in the control of such Entity. The Debtors or Reorganized Debtors may also in their discretion execute and/or record such instruments of release, satisfaction, discharge and/or assignment as attorney-in-fact. For the avoidance of doubt, on the full payment or other satisfaction of any Allowed Class 3 Claim, the Liens securing such Allowed Class 3 Claim will be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.

10.    Corporate Structure.  On or prior to the Effective Date, Parent is authorized to consummate the merger set forth in Article V.B of the Plan.  After the Confirmation Date, the Debtors and Reorganized Debtors are authorized to convert all Debtors or Reorganized Debtors that are qualified S corporation subsidiaries into limited liability companies.

11.    Restructuring Transactions.  The Restructuring Transactions are approved, and the Debtors and Reorganized Debtors and their officers, managers and directors are authorized, subject to the consent rights contained in the Plan, to execute and/or amend such documents (including, without limitation, the Lender RSA, the Rights Offering, the Backstop Agreement, the DRV Purchase Agreement, the Restricted Stock Award Agreement, the Sorensen Support Agreement, the Option Agreement, the Stockholders Agreement, and the

26

New Warrants) and take such actions as may be reasonably required in order to effectuate the Restructuring Transactions.  On the Effective Date, as part of the restructuring under the Plan, the "Par Alma Note Receivable" and the "Related Party Receivables" described in paragraphs 1 and 2 of Schedule 2 to the Plan will be automatically deemed treated in accordance with Schedule 2 without any further action.

      12.   <u>Post-Emergence Financing</u>.

      (a)   The terms and conditions of Post-Emergence Term Loan Agreement and the Post-Emergence ABL Loan Agreement are approved, including all transactions contemplated thereby and all actions to be taken, made and obligations to be incurred by the Debtors or the Reorganized Debtors, as applicable, in connection therewith, including the payment of all fees, expenses, indemnities and other amounts provided for in each of the Post-Emergence Term Loan Agreement and the Post-Emergence ABL Loan Agreement together with the other instruments, agreements, guaranties and documents entered into in connection therewith.

      (b)   On the Effective Date, the applicable Debtors or Reorganized Debtors are authorized to execute, deliver, file, record and issue (i) the Post-Emergence Term Loan Agreement, together with other notes, guarantees, deeds of trust, documents (including UCC financing statements), instrument, certificates, amendments to the foregoing, or agreements in connection therewith (collectively, the "Post-Emergence Term Loan Documents"), and (ii) the Post-Emergence ABL Loan Agreement, together with other notes, guarantees, deeds of trust, documents (including UCC financing statements), instrument, certificates, amendments to the foregoing, or agreements in connection therewith (collectively,

the "Post-Emergence ABL Loan Documents"), and are authorized to enter into, perform and take all other actions to consummate any and all transactions contemplated thereby, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity (other than expressly required by the Post-Emergence Term Loan Agreement or the Post-Emergence ABL Loan Agreement, as applicable).  The Debtors or the Reorganized Debtors, as applicable, are authorized to borrow under each of the Post-Emergence Term Loan Agreement and the Post-Emergence ABL Loan Agreement and use the proceeds of such borrowings for any purpose permitted thereunder and to perform all of their obligations under each of the Post-Emergence Term Loan Agreement and the Post-Emergence ABL Loan Agreement, including the payment of all fees, expenses, indemnities and other amounts provided thereunder.

        (c)    Each of the Post-Emergence Term Loan Agreement, the Post-Emergence Term Loan Documents, the Post-Emergence ABL Loan Agreement and the Post-Emergence ABL Loan Documents and the obligations of the applicable Debtors or Reorganized Debtors thereunder, including all related mortgages, pledges and security agreements, shall upon execution, constitute legal, valid, binding and authorized obligations of each of the Debtors or the Reorganized Debtors, as applicable, enforceable in accordance with their terms.  The loans, advances and financial accommodations to be extended pursuant to the Post-Emergence Term Loan Agreement and the Post-Emergence ABL Loan Agreement are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to avoidance, recharacterization or

28

subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent transfers or conveyances or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law.

(d)    On the Effective Date, all of the mortgages, pledges, Liens and other security interests being granted in favor of each the Post-Emergence Term Loan Agent and the Post-Emergence ABL Agent (i) shall be deemed approved, (ii) shall be legal, valid, binding and enforceable liens on and security interests in the collateral granted under each of the Post-Emergence Term Loan Agreement and the Post-Emergence ABL Loan Agreement and shall constitute legal, valid, binding and enforceable obligations of the Debtors or the Reorganized Debtors, as applicable, (iii) shall be deemed perfected on the Effective Date in accordance with the terms of the Post-Emergence Term Loan Agreement and the Post-Emergence ABL Loan Agreement, (iv) are granted in good faith, for legitimate business purposes, fair consideration and reasonably equivalent value, and shall be, and are, deemed not to be subject to avoidance, recharacterization or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent transfers or conveyances or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law and the priorities of such liens and security interests shall be set forth in each of in the Post-Emergence Term Loan Agreement, the Post-Emergence ABL Loan Agreement, and the Subordination and Intercreditor Agreement, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity (other

than expressly required by the Post-Emergence Term Loan Agreement, the Post-Emergence ABL Loan Agreement or the Subordination and Intercreditor Agreement, as applicable).

(e)    The Debtors or the Reorganized Debtors, as applicable, and each of Post-Emergence Term Loan Agent and the Post-Emergence ABL Agent (and their designees and agents) are authorized to make all filings and recordings, and to obtain all government approvals and consents to evidence, establish and perfect such liens and security interests under the provisions of the applicable state, federal or other law (whether foreign or domestic).

(f)    Notwithstanding anything to the contrary in this Order or the Plan, the Bankruptcy Court's jurisdiction shall not apply to, and the Bankruptcy Code and Bankruptcy Rules shall not govern, the enforcement of any rights or remedies related to, or any other matters arising under the Post-Emergence Term Loan Agreement and the Post-Emergence ABL Loan Agreement.

13.    Cancellation of Notes, Certificates and Instruments.  On the Effective Date, upon (i) execution and delivery by the Reorganized Debtors of the New Securities and Debt Documents and (ii) delivery of sufficient cash to the Distribution Agent (which, at the election of the Debtors and with the agreement of the respective Prepetition Agents, may be Kurtzman Carson Consultants LLC ("KCC") for cash distributions, American Stock Transfer & Trust Company, LLC for New Common Stock and New Warrants distributions, or another entity that is not a Prepetition Agent notwithstanding anything to the contrary contained in the Plan or the Prepetition Secured Loan Agreements) to make all distributions to be made under the Plan to Holders of Class 4 and Class 5 Claims (the "Prepetition Lender Distributions"), all notes, stock, instruments, certificates, agreements and other documents evidencing the DIP

30

Facility Claims, the Prepetition First Lien Loan Claim, the Prepetition Second Lien Loan Claim, the Prepetition Intercreditor Agreement, the Related Party Notes, the Prepetition Warrants and the Parent Equity Interests will be canceled, and, except as set forth in the Plan (including Article VI.G thereof), the obligations of the Debtors thereunder or in any way related thereto will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person.  ~~On the day following the date that the final distribution is made by the Reorganized Parent, the Prepetition Agents, or such other entity designated by~~If the Distribution Agent for Prepetition Lender Distributions shall be a person other than the respective Prepetition Agent, such Prepetition Agent shall provide to such Distribution Agent, prior to the Effective Date, upon request, a copy of its Register (as defined in the Prepetition First Lien Loan Agreement or the Prepetition Second Lien Loan Agreement, as applicable) and wire instructions for each applicable Holder of Class 4 or Class 5 Claims receiving such Prepetition Lender Distributions.

14.    If the Distribution Agent for any Prepetition Lender Distributions is not a Prepetition Agent, (i) each non-distributing Prepetition Agent is discharged from any duties, responsibilities or obligations under the Plan or the applicable Prepetition Secured Loan Agreement and related Transaction Documents with respect to such distributions , (ii) such Distribution Agent is entitled to rely on any lender registries provided by each non-distributing Prepetition Agent, (iii) each non-distributing Prepetition Agent shall be entitled to rely on the representation of KCC (or such other Distribution Agent) that sufficient cash has been received

31

by KCC (or such other Distribution Agent) in connection with the releasing by such Prepetition

Agent of any and all liens on collateral or other property of the Debtors held by such

Prepetition Agent and (iv) no non-distributing Prepetition Agent shall have any responsibility to

confirm or verify, or any liability with respect to, the netting of amounts due to Holders as

contemplated in this clause 14 or the final amount payable to any Holder by such Distribution

Agent.  For purposes of Prepetition Lender Distributions, the Distribution Agent, at the

direction of the Debtors or Reorganized Debtors, shall (a) net any cash amounts due to any

Holder of Class 4 Claims against any cash amount owed by such Holder to the Debtors in

connection with the Rights Offering or the Backstop Agreement, (b) net any cash amounts due

to any Holder of Class 4 Claims against any cash amount owed to the Debtors by any

Backstop Investor upon email direction to such Distribution Agent by such Holder of Class 4

Claims and (c) distribute any Prepetition Lender Distributions due to any Holder of Class 4 or

Class 5 Claims to any other party upon email direction to such Distribution Agent by such

Holder.

     15.     On the Effective Date (or, with respect to the Reorganized Parent asand

the Distribution Agent, on the day following the date that the final distribution is made by the

Reorganized Parent or such Distribution Agent), the Prepetition Agents and the Distribution

Agent will be released and discharged from any further responsibility under the Prepetition

Secured Loan Agreements, the related Transaction Documents and all related documents;

provided, however, that any and all rights of indemnification applicable to the Prepetition

Agents, respectively, under the Prepetition Secured Loan Agreements, the related Transaction

Documents and related documents shall survive and remain in full force and effect; provided

Redline Confirmation Order 738478v7C and Confirmation Order 738478v8A 5/7/2014 3:29:34
PM

further, however, until the Prepetition Agents' fees and expenses (including attorneys' fees) have been paid in full, the Prepetition Agents will retain their respective charging liens under the Prepetition Secured Loan Agreements and related Transaction Documents with respect to any cash distributions to be made under the Plan by the Reorganized Parent, the Prepetition Agents, or such other entity designated by the Reorganized Parent as the Distribution Agent.

1416.  Issuance of New Securities and Debt Documents Common Stock.  On the Effective Date, the Reorganized Parent is authorized to, and will, issue and execute, as applicable, the New Securities and Debt Documents, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.  The (a) issuance, distribution and exercise of the Subscription Rights, (b) issuance and distribution of the New Common Stock in connection with the Subscription Rights, Backstop Agreement, DRV Purchase Agreement, Sorensen Support Agreement, and Restricted Stock Award Agreement, (c) issuance and distribution of the New Warrants, and (d) issuance and distribution of New Common Stock upon exercise of the New Warrants, will be made in reliance on the exemption from registration provided by section 1145(a) of the Bankruptcy Code, or section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder, and will be exempt from registration under applicable securities laws.  Without limiting the effect of section 1145 of the Bankruptcy Code, or section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder, all financing documents, agreements, and instruments entered into and delivered on or as of the Effective Date contemplated by or in furtherance of the Plan, including, without limitation, the Post-Emergence Term Loan Agreement, the Post-Emergence ABL Loan Agreement, the DRV

Purchase Agreement, the Sorensen Support Agreement, the New Common Stock and any other agreement or document related to or entered into in connection with any of the foregoing, will become, and the Backstop Agreement will remain, effective and binding in accordance with their respective terms and conditions upon the parties thereto, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity (other than as expressly required by such applicable agreement).

15~~15~~17.  Executory Contracts and Unexpired Leases.  On the Effective Date, all executory contracts or unexpired leases of the Debtors not previously assumed by the Debtors, other than any executory contract or unexpired lease that (a) was previously rejected, (b) was listed in the Plan Supplement as an executory contract or unexpired lease to be rejected by the Debtors pursuant to the Plan, (c) is subject to a pending motion to reject as of the Effective Date, or (d) are rejected pursuant to the terms of the Plan, shall be deemed assumed as of the Confirmation Date (but subject to the occurrence of the Effective Date) in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code.

~~16~~18.  All executory contracts or unexpired leases assumed by the Debtors pursuant to the foregoing (the "Assumed Agreements") shall remain in full force and effect for the benefit of the Reorganized Debtors, as applicable, and be enforceable by the Reorganized Debtors, as applicable, in accordance with their terms notwithstanding any provision in such Assumed Agreements that purports to prohibit, restrict or condition such assumption.  Any provision in the Assumed Agreements that purports to declare a breach or default based in

34

whole or in part on the above-captioned cases is hereby deemed unenforceable, and the Assumed Agreements shall remain in full force and effect.

1719.  Rejection Damages Bar Date.  All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Bankruptcy Court within 30 days after the date of service of notice of such rejection by order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; *provided, that* the Debtors retain the right to object to any such Claims on any grounds permitted by law, including but not limited to any caps under Bankruptcy Code section 502(b). Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates or their property. All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as Class 7 General Unsecured Claims against the applicable Debtor and shall be treated in accordance with Article III of the Plan.

1820.  Boards of Directors.  Immediately upon the occurrence of the Effective Date, (i) the authority, power and incumbency of the individuals then serving as directors of the Debtors shall be terminated and such individuals shall be deemed to have resigned and (ii) the members of the New Board of Reorganized Parent and each of the other Reorganized Debtors as designated under Article V.M. of the Plan will be appointed and commence serving in such capacity without further order of the Bankruptcy Court or any action by the boards of directors or shareholders of the Debtors or Reorganized Debtors.  For the avoidance of doubt,

Redline Confirmation Order 738478v7C and Confirmation Order 738478v8A 5/7/2014 3:29:34 PM

unless the Debtors with the consent of the Backstop Investors file an amended Plan Supplement prior to the Effective Date, immediately upon the occurrence of the Effect Date the New Board of Reorganized Parent shall be constituted of the following directors: D. Stephen Sorensen, Al Aguirre, Gregory A. Netland, Gary DiCamillo, and Stephen J Giusto.

19~~20~~21. Exemption from Certain Transfer Taxes. The issuance, transfer or exchange of debt and equity under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any contract, lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan shall be exempt from all taxes (including, without limitation, stamp tax or similar taxes) to the fullest extent permitted by section 1146 of the Bankruptcy Code, and the appropriate state or local governmental officials or agents shall not collect any such tax or governmental assessment and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

20~~21~~22. Payment of Fees. All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code prior to the Effective Date shall be paid by the Debtors on or prior to the Effective Date. After the Effective Date, each Debtor shall remain obligated to pay quarterly fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code.

21~~22~~23. Allowance of Claims. Notwithstanding anything in the Plan or this Confirmation Order to the contrary, after the Effective Date and subject to the other provisions of the Plan, the Reorganized Debtors will have and will retain any and all rights and defenses

36

that the Debtors had with respect to any Claim or Equity Interest, except with respect to any Claim or Equity Interest deemed Allowed under the Plan or by orders of the Bankruptcy Court.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including, without limitation, this Confirmation Order and the DIP Orders), no Claim or Equity Interest will become an Allowed Claim unless and until such Claim or Equity Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in the Chapter 11 Cases allowing such Claim or Equity Interest.  For avoidance of doubt, the Debtors and Reorganized Debtors are not required to object to any proof of claim or interest for any Claim or Equity Interest, and all such proofs of claims or interests (other than proofs of claim arising from the rejection of Executory Contracts and Unexpired Leases and requests for the Payment of Professional Fee Claims) shall be of no force and effect.

### Discharge of Debtors, Releases and Injunctions

2224.  Discharge of Debtors.  Except as otherwise provided in the Plan and subject to the occurrence of the Effective Date:  (i) the rights afforded under the Plan and this Confirmation Order and the treatment of all Claims and Equity Interests are in exchange for and in complete satisfaction, settlement, discharge, and release of all Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors or any of their assets, property, or Estates; (ii) the Plan binds all Holders of Claims and Equity Interests, notwithstanding whether any such Holders abstained from voting to accept or reject the Plan or voted to reject the Plan; (iii) all Claims and Equity Interests are deemed satisfied, discharged, and released in full, and the

37

Debtors' liability with respect thereto is extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (iv) all Entities are precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, each of their successors and assigns, and each of their assets and properties, any other Claims or Equity Interests based upon any documents, instruments or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

~~23~~25. For the avoidance of doubt, no provision of the Plan (and, in particular, no provision of the discharge described in Plan Article XII C.) shall diminish, enhance or modify in any way the legal, equitable or contractual rights and remedies of any Entity holding a Claim in any of the classes of Claims which are classified in the Plan as Unimpaired. In any action or proceeding to determine the existence, validity or amount of any Unimpaired Claim (whether in Bankruptcy Court or in any appropriate non-bankruptcy forum), any and all claims or defenses that could have been asserted by the respective Debtor(s) or the Entity holding such Unimpaired Claim are expressly preserved as if the Debtors' Chapter 11 Cases had not been commenced.

~~24~~26. Releases, Limitations of Liability and Indemnification. The releases set forth in Article XI.B, XII.A and XII.C of the Plan, the exculpation and limitation of liability provisions set forth in Article XII.D of the Plan, and the indemnification obligations set forth in Article VI.G of the Plan are incorporated in this Confirmation Order as if set forth in full herein and are hereby approved and authorized in their entirety and shall be, and hereby are, effective and binding, subject to the respective terms thereof, on all persons and entities who may have had standing to assert released Claims or Causes of Action, and no person or entity

38

shall possess such standing to assert such Claims or Causes of Action after the Effective Date. For the avoidance of doubt, the Exculpated Parties shall include any Prepetition Agent that acts as Distribution Agent in such capacity as Distribution Agent.

2527.  Injunctions.  Except as otherwise expressly provided in the Plan, the Plan Supplement, or related documents, or for obligations issued pursuant to the Plan, all Persons who have held, hold or may hold Claims or Equity Interests that have been released pursuant to Articles XI.B, XII.A and XII.C, discharged pursuant to Article XII.C, or are subject to Exculpation pursuant to Article XII.D, are permanently enjoined from and after the Effective Date, from taking any of the following actions: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Equity Interests; (2) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against such Persons on account of or in connection with or with respect to any such Claims or Equity Interests; (3) creating, perfecting or enforcing any encumbrance of any kind against such Persons or the property or estates of such Persons on account of or in connection with or with respect to any such Claims or Equity Interests; and (4) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Equity Interests released, settled or discharged pursuant to the Plan.

28.  Additional Agreements with the Sorensen Parties.  The Debtors, the Backstop Parties and the Sorensen Parties, in settlement of certain disagreements over the scope of certain of the provisions of the Plan, have further agreed to the following, which shall be binding as to all such parties:

39

(a)    Notwithstanding the releases set forth in the Plan, each of the Sorensen Parties and each non-Debtor Affiliate of one or more of the Sorensen Parties (each, a member of the "Sorensen Group"), on a several and not joint basis, hereby agrees to indemnify, defend and hold harmless the Debtors and each of their non-Debtor subsidiaries, if any (each of the Debtors and each such non-Debtor subsidiary, a "Koosharem Entity"), from and against all Losses (as defined below) suffered, incurred or sustained by any of them on or following the Effective Date, or to which any of them becomes subject on or following the Effective Date, resulting from or arising out of any Additional Sorensen Arrangement (as defined below) (the foregoing obligations being referred to as the "Sorensen Indemnification Obligations"); provided, however, that (A) only Additional Sorensen Arrangements that are identified by the Koosharem Entities within four (4) years after the Effective Date shall be subject to the Sorensen Indemnification Obligations; (B) no Excluded Additional Sorensen Arrangement (as defined below) shall be subject to the Sorensen Indemnification Obligations; (C) only those members of the Sorensen Group that are or were parties to the applicable Additional Sorensen Arrangement or benefited from the applicable Additional Sorensen Arrangement (other than strictly through direct or indirect equity ownership in one or more of the Koosharem Entities or direct or indirect equity ownership in one or more other members of the Sorensen Group) shall have Sorensen Indemnification Obligations in connection with such Additional Sorensen Arrangement; (D) any Losses in respect of an Additional Sorensen

40

Arrangement subject to indemnification hereunder shall be reduced by the value of the consideration, if any, received by the Reorganized Debtors or their non-Debtor subsidiaries prior to, on or following the Effective Date on account of such Additional Sorensen Arrangement; and (E) in each instance in which any Sorensen Indemnification Obligation applies to Losses to be borne by a Koosharem Entity over a period of four (4) or more years from and after the Effective Date, any Sorensen Indemnification Obligations with respect to such Additional Sorensen Arrangement shall be discounted to present value assuming a discount rate equal to seven percent (7%). Notwithstanding anything to the contrary herein, in no event shall this paragraph 28 in any way limit the liability or obligations of any member of the Sorensen Group or any of the Koosharem Entities under the Transition Services Agreement to be entered into on the Effective Date.

(b)     For purposes of this paragraph 28, the following terms shall have the respective meanings set forth below:

(i)     "Additional Sorensen Arrangement" means any material Arrangement (i) that is between or among one or more members of the Sorensen Group, on the one hand, and one or more of the Koosharem Entities, on the other hand, and was entered into principally for the direct benefit of one or more members of the Sorensen Group, and not for the benefit of one or more Koosharem Entities (determined by reference to a standard of commercial reasonableness), or (ii) pursuant to which any of

41

the Koosharem Entities have become obligated or liable to a party other than a member of the Sorensen Group or another Koosharem Entity where the principal purpose of such Arrangement is to directly benefit one or more members of the Sorensen Group, and not to benefit one or more of the Koosharem Entities (determined by reference to a standard of commercial reasonableness). For the avoidance of doubt, the term Additional Sorensen Arrangement shall include only such Arrangements that are not expressly contemplated as continuing in effect after the Effective Date under Schedule B to the Covenants in Connection with Sale of Business Agreement. Notwithstanding the foregoing, an Arrangement shall cease to be an Additional Sorensen Arrangement if terminated promptly upon request of one or more of the Koosharem Entities party thereto at any time on or after the Effective Date (provided that a Sorensen Indemnification Obligation shall continue to exist with respect to any Losses incurred or sustained by one or more of the Koosharem Entities prior to the date of termination of such Additional Sorensen Arrangement).

(ii)    "Arrangement" means any agreement, lease, license, mortgage, indenture, security agreement or other contract, arrangement or practice (whether written or oral).

(iii) "Excluded Additional Sorensen Arrangement" means an Arrangement entered into prior to the Effective Date if (a) the Board of Directors of

42

the Reorganized Parent has been informed in writing of the material details of such Arrangement and either (1) the information provided to the Board of Directors of the Reorganized Parent is sufficient for such Board of Directors reasonably to determine that such Arrangement constitutes an "Additional Sorensen Arrangement" or (2) the Board of Directors of the Reorganized Parent is specifically informed in writing that such Arrangement constitutes an "Additional Sorensen Arrangement" and (b) within 45 days after the last to occur of the foregoing clauses (a)(1) and (a)(2), the Koosharem Entities fail to provide written notice thereof to one or more of the applicable members of the Sorensen Group party to, or benefiting from, such Arrangement.

(iv)    "Losses" means any and all damages, fines, fees, penalties, deficiencies, losses and expenses (including without limitation interest, court costs, reasonable and documented fees of attorneys, accountants and other experts or other reasonable and documented expenses of litigation or other proceedings or of any claim, default or assessment); provided, however, that Losses shall not include any consequential, indirect, special or punitive damages or any damages in respect of lost profits or determined by reference to a multiple of revenues, earnings or EBITDA (unless paid by a Koosharem Entity to a third party as a result of a judgment entered in a *bona fide* third-party claim).

43

(c)     Each member of the Sorensen Group, the Koosharem Entities and the Backstop Parties shall execute an agreement acknowledging the obligations set forth in this paragraph 28.

(d)     On the Effective Date, subject to delivering to counsel to the Backstop Parties reasonable documentation, the Debtors will reimburse the reasonable fees and expenses of the Consenting Equity Holder in an amount not to exceed $175,000.

~~26~~29.  Continued Effect of Stay and Injunctions.  All injunctions or stays in effect in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions, stays or exculpation provisions contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

**Plan Modifications**

~~27~~30.  Plan Modifications.  The Plan, as modified by this Order, satisfies the requirements of Bankruptcy Code sections 1122 and 1123.  Accordingly, pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan.  Such changes are approved pursuant to section 1127(a).  At the request of the Debtors, the Plan is hereby modified pursuant to section 1127(a) of the Bankruptcy Code as set forth in this Confirmation Order.

44

Redline Confirmation Order 738478v7C and Confirmation Order 738478v8A 5/7/2014 3:29:34 PM

2831. The Plan is hereby amended as follows:

(a)    Article II.C is amended and restated in its entirety as follows:

On or as soon as reasonably practicable after, the later of (i) the Initial Distribution Date if such Priority Tax Claim is an Allowed Priority Tax Claim as of the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Priority Tax Claim as to the Debtors or Reorganized Debtors, at the election of the Debtors or Reorganized Debtors: (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; or (b) such other less favorable treatment as agreed to in writing by the Debtors or Reorganized Debtors, as applicable, and such Holder; provided, however, that such parties may further agree for the payment of such Allowed Priority Tax Claim at a later date. Payment of statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) will be made at all appropriate times until the entry of a final decree or order converting or dismissing the Chapter 11 Cases provided, however, that the Debtors may prepay any or all such Claims at any time, without premium or penalty.

(b)    Article II of the Plan is amended by adding the following  Article II.D:

Notwithstanding any other provision of this Plan, any Priority Tax Claims, Secured Tax Claims, and Administrative Claims of the United States paid after the Effective Date shall accrue post-petition interest at the rate and in the manner established under 11 U.S.C. § 511 and 26 U.S.C. § 6621 and 6622.

(c)    The following sentence is added to the end of  Article XII.D of the Plan:

Nothing in the foregoing exculpation or releases in Articles XII.A-D shall apply to the United States with respect to any non-Debtors.

### Notice and Other Provisions

2932. Notice of Confirmation Order. On or before the fifth (5th) business day following the occurrence of the Effective Date, the Debtors shall serve notice of entry of this Confirmation Order pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c), on (i) the

Office of the United States Trustee; (ii) the Steering Committee; (iii) the Prepetition First Lien Agent; (iv) the Prepetition Second Lien Agent; (v) the Consenting Equity Holder, (vi) the Debtors' top thirty (30) largest creditors listed on each of their bankruptcy petitions; and (vii) all holders of Claims and Equity Interests, by causing a notice of this Confirmation Order in substantially the form of the notice annexed hereto as Exhibit A (the "Notice of Confirmation"), which form is hereby approved, to be delivered to such parties by first class mail, postage prepaid.

3033. Notice need not be given or served under the Bankruptcy Code, the Bankruptcy Rules, or this Confirmation Order to any Person to whom the Debtors mailed a Combined Notice, but received such notice returned marked "undeliverable as addressed," "moved - left no forwarding address," "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Person of that Person's new address.

3134. Record Date. The record date to determine Pro Rata shares for each of the Holders of Class 4 and Class 5 Claims for all distributions pursuant to Article III.B of the Plan is April 1, 2014, except for the distribution of the Subscription Rights, which record date is March 20, 2014. Notwithstanding the foregoing record date or anything to the contrary in the Plan or the Prepetition Secured Loan Agreements, distributions pursuant to Article III.B of the Plan, other than distribution of the Subscription Rights, will be made according to the Prepetition Agents' respective lender registers as of the date hereofMay 5, 2014.

3235. ACE Reservation of Rights. Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, the Plan Schedule, the Plan Supplement, the Backstop Agreement, the Lender RSA, the Sorensen Support Agreement, the DRV Purchase Agreement,

46

the Confirmation Order, any agreement or order related to post-petition or exit financing or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening or grants an injunction or release):

(a) nothing therein alters, modifies or otherwise amends the terms and conditions of Insurance Program (including any agreement to arbitrate disputes and any provisions regarding the provision, maintenance, use, nature and priority of the ACE Collateral) except that on and after the Effective Date, the Reorganized Debtors shall become and shall remain liable for all of the Obligations under the Insurance Program, regardless of whether such Obligations arise before or after the Effective Date,

(b) nothing therein releases or discharges (i) ACE's security interests in and liens on the ACE Collateral and (ii) the claims of ACE arising from or pursuant to the Insurance Program and such claims shall be paid in full by the Debtors (or after the Effective Date, the Reorganized Debtors) in the ordinary course of business in accordance with the Insurance Program without the need or requirement for ACE to file or serve a request, motion, or application for payment of or proof of any Administrative Claim (and further and for the avoidance of doubt, any claim bar date shall not be applicable to ACE),

(c) the automatic stay of Bankruptcy Code section 362(a) and the injunction set forth in Article XI of the Plan, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court, solely to permit:  (A) claimants with valid workers' compensation claims covered by the Insurance

47

Program to proceed with their claims; (B) ACE to administer, handle, defend, settle, and/or pay, in the  ordinary course of business and without further order of the Bankruptcy Court, (i) all workers' compensation claims covered by the Insurance Program, (ii) all claims where a claimant asserts a direct claim against ACE under applicable law or an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay or the injunction set forth in Article XI of the Plan to proceed with its claim and (iii) all costs in relation to each of the foregoing; (C) ACE to draw against any or all of the ACE Collateral provided by or on behalf of the Debtors (or the Reorganized Debtors, as applicable) at any time and to hold the proceeds thereof as security for the obligations of the Debtors (and the Reorganized Debtors, as applicable) to ACE and/or apply such proceeds to the Obligations of the Debtors (and the Reorganized Debtors, as applicable) under the Insurance Program, in such order as ACE may determine; and (D) subject to the terms of the Insurance Program and/or applicable non-bankruptcy law, ACE to (i) cancel any policies under the Insurance Program, and (ii) take other actions relating thereto, to the extent permissible under applicable non-bankruptcy law, each in accordance with the terms of the Insurance Program, and

(d)  the Insured Parties Release and the Covenant are reaffirmed hereby and further, on the Effective Date shall be binding on the Debtors' successors and assigns pursuant to the Plan including, but not limited to, the Reorganized Debtors., and

48

(c) in the event ACE agrees, in its sole discretion, to allow the Debtors or the Reorganized Debtors to substitute certain collateral under the Insurance Program, the Debtors or the Reorganized Debtors, as applicable, are authorized, without further order of the Court, to execute all agreements and/or amendments to existing agreements related thereto and perform their obligations thereunder including, inter alia, delivering or causing to be delivered to ACE such substitute collateral.

Terms used in this paragraph but not defined in the Plan shall have the meaning attributed to them in that certain *Order (I) Authorizing Assumption of the Insurance Program, (II) Authorizing the Debtors to Enter into the Postpetition Insurance Program and (III) Granting Related Relief* entered by the Bankruptcy Court on April 14, 2014 [Docket No. 109].

33~~33~~36. <u>Franchisee Reservation of Rights.</u>  For the avoidance of doubt, any and all Claims or Causes of Action, and any and all litigation, arbitration or mediation, currently existing or which may exist in the future, and any known or unknown Claims or Causes of Action, which may be pursued between any Debtor or any Related Persons of any Debtor (including but not limited to any of the Sorensen Parties) and any franchisee of any Debtor or anyone asserting the rights of any franchisee of any Debtor, in any forum at any time, are expressly preserved by the Plan, and neither the Plan nor any release, exculpation, discharge or any other provision contained therein or in any other Plan related document or pleading shall have any effect on any Causes of Action or the relief sought therein and any Claims or Causes of Action are hereunder preserved, whether in the form of equitable relief, damages, or otherwise.  The Debtors do not waive their rights to contest the amount and validity of such

49

Claims or Causes of Action and may contest such Claims or Causes of Action in the manner and venue in which such Claim or Cause of Action would have been determined, resolved or adjudicated if the Chapter 11 Cases had not been commenced.

3437. Arbitrating Franchisees. Upon the ~~Effective Date~~entry of this Order, the terms of that certain *Settlement ~~Term Sheet~~Agreement Among Ablest, Inc. et al. and Remedy Arbitration Group*, dated as of April 30, 2014 [Docket No. ——223], shall be immediately effective and enforceable and deemed binding upon the entities party thereto.

3538. State of Washington. In the event of default by the Debtors of any of the provisions of the Plan regarding payment of the tax claims of the State of Washington, after 15 days written notice of the default and failure by the Debtors to cure, all deferred tax liabilities are immediately due and payable, and the State of Washington may proceed against the assets of the Reorganized Debtors using any state or federal remedies.

3639. 595 Market Street. Notwithstanding anything to the contrary contained herein, security for the Exit Financing shall not include a security interest in Debtors' lease for the real property located at 595 Market Street, Suite 820, San Francisco, California, but, rather, as to that leasehold interest, the security interests granted hereunder shall be limited to a lien on the proceeds, if any, of the prospective disposition (by assignment, sublease or otherwise) of such lease and not constitute a direct lien on the lease.

40. The Travelers Indemnity Company and Certain Affiliates. The Travelers Indemnity Company and certain of its property casualty insurance company affiliates (collectively, "Travelers") issued or entered into certain insurance policies, and payment agreements for various policy periods (together with all agreements documents or instruments

Redline Confirmation Order 738478v7C and Confirmation Order 738478v8A 5/7/2014 3:29:34 PM

related thereto, the "Travelers Policies and Agreements") that may, among other things, provide prepetition insurance and premium payment and loss reimbursement obligations for the Debtors.

41.     For clarification and the avoidance of doubt, in accordance Article VI.I of the Plan, the Travelers Policies and Agreements shall be treated as executory contracts under the Plan, and shall be assumed by the Debtors and Reorganized Debtors, as the case may be, on the Effective Date pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code. All obligations and liabilities of the Debtors and Reorganized Debtors under the Travelers Policies and Agreements, whether now existing or hereafter arising, shall be fully performed and paid by the Debtors and Reorganized Debtors in the ordinary course of business, without any requirement for Travelers to file or serve a proof(s) of claim, cure amount claim or objection or a motion or application for payment of such claim(s).  To the extent that any Debtor or Reorganized Debtor (or any non-Debtor affiliate of the foregoing) has any obligation or liability under the Travelers Policies and Agreements, such obligation or liability shall survive and remain binding on the Debtor, Reorganized Debtor or affiliate notwithstanding anything in the Disclosure Statement, the Plan, the Plan Supplement, the Plan Schedule or Confirmation Order (collectively, the "Plan Documents").

42.     Moreover, for clarification and the avoidance of doubt,  nothing in the Plan Documents shall in any way:  (a) alter, modify or amend the terms and conditions of the Travelers Policies and Agreements, the coverage provided thereunder or the rights and obligations of the parties thereunder and under applicable non-bankruptcy law; (b) discharge, release or relieve the Debtors, the Reorganized Debtors or any other entity from any debt or

51

other liability under the Travelers Policies and Agreements or (c) limit, diminish, or otherwise alter or impair the Debtors', Reorganized Debtors' and/or Travelers' defenses, claims, causes of action, or other rights under applicable non-bankruptcy law with respect to the Travelers Policies and Agreements.

3743. Return of Deposits. All utilities, including any Person who received a deposit or other form of adequate assurance of performance pursuant to section 366 of the Bankruptcy Code during the Chapter 11 Cases (collectively, the "Adequate Assurance Deposits"), including any deposit provided pursuant to the *Interim* or *Final Order Under Sections 105 and 366 of the Bankruptcy Code (a) Prohibiting Utility Providers from Alerting, Refusing or Discontinuing Service, (b) Deeming Utilities Adequately Assured of Future Performance, and (c) Establishing Procedures for Determining Adequate Assurance of Payment* [Docket Nos. 48 and 155] shall return such Adequate Assurance Deposits to the Reorganizational Debtors, at the conclusion of the Chapter 11 Cases, if not returned or applied earlier.

3844. Reversal/Stay/Modification/Vacatur of Confirmation Order. Except as otherwise provided in the Confirmation Order, if any or all of the provisions of the Confirmation Order are hereafter reversed, modified, vacated or stayed by subsequent order of the Court, or any other court, such reversal, stay, modification or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority or lien incurred or undertaken by the Debtors or the Reorganized Debtors, prior to the effective date of any such reversal, stay, modification or vacatur, including, without limitation the validity of any obligation, indebtedness or liability incurred by the Reorganized Debtors. Notwithstanding any

such reversal, stay, modification or vacatur of the Confirmation Order, any such act or

obligation incurred or undertaken pursuant to, or in reliance on, the Confirmation Order prior

to the effective date of such reversal, stay, modification or vacatur shall be governed in all

respects by the provisions of the Confirmation Order and the Plan or any amendments of

modifications thereto.  Specifically, notwithstanding any such reversal, stay, modification or

vacatur of the Confirmation Order, any obligation, indebtedness or liability incurred by the

Debtors or the Reorganized Debtors shall be governed in all respect by the provisions of the

Confirmation Order and the Plan or any amendments or modifications thereto.

3945.  Mailing of the Notice of Confirmation in the time and manner set forth in

the preceding paragraphs shall be good and sufficient notice under the particular circumstances

and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no other

or further notice is necessary. The Notice of Confirmation shall have the effect of an order of

the Bankruptcy Court, shall constitute sufficient notice of the entry of the Confirmation Order

to any filing and recording officers, and shall be a recordable instrument notwithstanding any

contrary provision of applicable non-bankruptcy law.

4046.  Failure to Consummate Plan and Substantial Consummation.  If the

Effective Date does not occur, then the Plan, any settlement or compromise embodied in the

Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), the

assumption or rejection of executory contracts or unexpired leases effected by the Plan, and

any document or agreement executed pursuant to the Plan, shall be null and void.  In such

event, nothing contained in the Plan or this Confirmation Order, and no acts taken in

preparation for consummation of the Plan, shall, or shall be deemed to, (a) constitute a waiver

Redline Confirmation Order 738478v7C and Confirmation Order 738478v8A 5/7/2014 3:29:34
PM

or release of any Claims by or against or Equity Interests in the Debtors or any other Person, (b) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, (c) constitute an admission of any sort by the Debtors or any other Person, or (d) be construed as a finding of fact or conclusion of law with respect thereto.

4147. References to Plan Provisions. The failure to include or specifically reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed in its entirety.

4248. Exhibits. Each reference to a document, agreement or summary description that is in the form attached as an exhibit to the Plan in this Confirmation Order, or in the Plan shall be deemed to be a reference to such document, agreement or summary description in substantially the form of the latest version of such document, agreement or summary description filed with the Court (whether filed as an attachment to the Plan or filed separately).

4349. Plan Provisions Mutually Dependent. The provisions of the Plan are hereby deemed nonseverable and mutually dependent.

4450. Confirmation Order Provisions Mutually Dependent. The provisions of this Confirmation Order are hereby deemed nonseverable and mutually dependent.

4551. Confirmation Order Supersedes. It is hereby ordered that this Confirmation Order shall supersede any orders of this Court issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order.

Redline Confirmation Order 738478v7C and Confirmation Order 738478v8A 5/7/2014 3:29:34 PM

4652. Conflicts Between Confirmation Order and Plan. The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided, however, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

4753. Separate Confirmation Orders. This Confirmation Order shall be deemed to be a separate confirmation order with respect to each Debtor and it shall be sufficient for the purposes thereof that the Clerk of this Court enters this Confirmation Order in the docket of the jointly administered case.

4854. Retention of Jurisdiction. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, this Court, except as otherwise provided in the Plan or herein, shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, but not limited to, the matters set forth in Article XIV of the Plan.

4955. Immediate Effectiveness. Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, 8001, 8002 or otherwise, immediately upon the entry of this Confirmation Order, the terms of the Plan, the Plan Supplement, and this Confirmation Order shall be, and hereby are, immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, any and all holders of Claims or Equity Interests (irrespective of whether

55

such Claims or Equity Interests are Impaired under the Plan or whether the holders of such Claims or Equity Interests accepted, were deemed to have accepted, rejected or were deemed to have rejected the Plan), any trustees or examiners appointed in the Chapter 11 Cases, all persons and entities that are party to or subject to the settlements, compromises, releases, discharges, injunctions, stays and exculpations described in the Plan or herein, each person or entity acquiring property under the Plan, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors and the respective heirs, executors, administrators, successors or assigns, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or guardians, if any, of any of the foregoing.  The Debtors are authorized to consummate the Plan at any time after the entry of the Confirmation Order subject to satisfaction or waiver of the conditions precedent to consummation set forth in Article IX.B of the Plan.

50 56.  Final Order.  The Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

Dated: Wilmington, Delaware
May ___, 2014

_____
Honorable Kevin J. Carey
UNITED STATES BANKRUPTCY JUDGE

Redline Confirmation Order 738478v7C and Confirmation Order 738478v8A 5/7/2014 3:29:34 PM

| Summary report: | |
| --- | --- |
| **Litéra® Change-Pro TDC 7.5.0.45 Document comparison done on 5/7/2014 3:29:34 PM** | |
| **Style name:** Option 3a Strikethrough Double Score No Moves | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** dm://LACSR02A/738478/7C | |
| **Modified DMS:** dm://LACSR02A/738478/8A | |
| **Changes:** | |
| Add | 69 |
| Delete | 45 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format Changes | 0 |
| **Total Changes:** | 114 |

Redline Confirmation Order 738478v7C and Confirmation Order 738478v8A 5/7/2014 3:29:34 PM